Elda M. Sidhu (NV Bar No. 7799)
General Counsel
Email: elda.sidhu@unlv.edu
Andrew D. Smith (NV Bar No. 8890)
Email: andrew.d.smith@unlv.edu
**UNIVERSITY OF NEVADA, LAS VEGAS**
4505 S. Maryland Parkway, Box 451085
Las Vegas, Nevada 89154-1085
Telephone: (702) 895-5185
Facsimile: (702) 895-5299
*Attorneys for Keith Whitfield*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COREY GERWASKI,<br><br>           Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>           Defendants. | Case No.: 2:24-cv-00985-APG-MDC<br><br>**DEFENDANT KEITH WHITFIELD'S MOTION TO DISMISS** |

Keith Whitfield moves to dismiss this case under FRCP 12(b)(5) because plaintiff failed to timely effect service of process within 90 days of the filing of his complaint. The case should also be dismissed because Whitfield is entitled to immunity under the Eleventh Amendment and to qualified immunity. Further, plaintiff's claims I through XI should be dismissed as he lacks standing to assert them.

Finally, the case should be dismissed under Fed. R. Civ. P. 12(b)(6) because plaintiff fails to state a claim against Whitfield.

Dated September 18, 2024.

/s/   Andrew D. Smith

Elda M. Sidhu (NV Bar No. 7799)
Andrew D. Smith (NV Bar No. 8890)
University of Nevada, Las Vegas
4505 S. Maryland Parkway, Box 451085
Las Vegas, Nevada  89154-1085
*Attorneys for Keith Whitfield*

**Points and Authorities**

## I.   Introduction

The Nevada System of Higher Education (NSHE) and the University of Nevada, Las Vegas ("UNLV") are committed to the free speech and free exercise rights of all members of the university community. Shortly after the horrific events of October 7, 2023, NSHE condemned the senseless acts of violence in Israel. In a statement, NSHE's Chancellor wrote:

> Across NSHE, **we will continue to provide support to our students and colleagues, respecting the widely different views of the Israeli-Palestinian conflict, but letting it be known that incidents of targeted harassment, direct threats, or the creation of pervasively hostile environments for vulnerable populations will not be tolerated.** Our institutions will remain steadfast in our commitment to providing safe and inclusive learning environments during these particularly challenging times when our commitment to mutual respect and support are tested.

Whitfield Decl., ¶12 Ex. A to the Declaration,

Echoing those sentiments at UNLV, President Whitfield wrote to the campus community:

> The atrocities committed against civilians, including Americans, by Hamas in Israel over the weekend were reprehensible and has resulted in growing heartbreak, shock, and outrage. **There is simply no justification for the abhorrent acts from those that will kill vulnerable**

2

> **civilian men, women, and children.** . . .
>
> **I know and fully appreciate that emotions are running high, but our university community must remain respectful, kind, and considerate of each other. Civility and thoughtful expression are key parts of peaceful discourse in higher education.**

Whitfield Decl., ¶13, Ex. B to the Declaration.

Plaintiff brings this action against Whitfield in either his individual or official capacity. The complaint must be dismissed. To date, plaintiff has failed to timely serve any of the defendants in this action. As to Whitfield, service was not only untimely but also ineffective because plaintiff left papers on the threshold of Whitfield's house after his pet sitter refused to accept the papers from the process server. Further, Whitfield is entitled to both Eleventh Amendment immunity and qualified immunity from suit because plaintiff fails to allege that Whitfield violated plaintiff's clearly-established constitutional rights. Finally, plaintiff fails to allege sufficient facts against Whitfield to state a claim against him. All of these circumstances warrant dismissal.

## II.   Statement of Facts as to Service of Process

On May 26, 2024, plaintiff filed his *Complaint* against Whitfield. [ECF 1].

On August 9, 2024, plaintiff filed his *First Amended Complaint* to add an employment claim under Title VII. [ECF 6].

Under Fed. R. Civ. P. 4 ("Rule 4"), plaintiff was required to effect service of process 90 days from the filing of his initial pleading, which was no later than August 24, 2024.

Plaintiff did not effect timely service on any defendant. The attempted service of Whitfield was not effective.

### Untimely and Ineffective Service on Whitfield

Plaintiff named Whitfield as a defendant. [ECF 6, ¶12]. Whitfield is an employee of NSHE. [ECF 6, ¶12]. It is unclear whether or not plaintiff sued him in his official capacity as president of UNLV, individually, or both.

Plaintiff's process server says she served the summons and complaint on "Erica," a co-occupant residing at Whitfield's home, at 7:26 p.m. on August 28, 2024. [ECF 9].

Whitfield resides at 6850 Hidden Sunset Lane, Las Vegas, NV 89120. Whitfield Decl., ¶4. He lives alone. Whitfield Decl., ¶4.

Whitfield left town on August 28 before the process server arrived at his house. Whitfield Decl., ¶5. While he was away, he had a colleague, Ericka Smith, come to his house to take care of his dog. Whitfield Decl., ¶6.

Smith does not reside at Whitfield's house. Whitfield Decl., ¶9; Smith Decl., ¶4.

On August 28, 2024, while at Whitfield's house, Smith greeted a process server through the front door. Smith Decl., ¶8. She informed the process server that Whitfield was not home and that she was just there to take care of Whitfield's dog. Smith Decl., ¶6-10. She did not open the screen door nor did she accept any papers from the process server. Smith Decl., ¶8-9. Later, when she was leaving, she found on the front door steps a copy of the summons and amended complaint. Smith Decl., ¶11.

### III.    Statement of Facts[1]

Plaintiff is a student at UNLV. ¶217. Plaintiff is a devout Jew and wears a kippah at all times. [ECF 6, ¶219]. He is a member of the Consolidated Students of the University of Nevada, Las Vegas (CSUN), UNLV's undergraduate student government. [ECF 6, ¶225].

Plaintiff alleges discrimination and hostility in his role in CSUN. [ECF 6, ¶227]. An advisor for CSUN was visibly upset learning he was a conservative candidate running for office. [ECF 6, ¶227]. The advisor spoke to a CSUN officer to dissuade people from supporting him for office, telling people she did not want him to win. [ECF 6, ¶227].

---

[1] The facts are taken from plaintiff's amended complaint, which must be treated as true for the purposes of this motion. Whitfield disputes plaintiff's version of the facts.

A resolution he collaborated on did not move forward due to the advisor's intervention without a valid reason. [ECF 6, ¶227]. The advisor said that plaintiff makes women feel defensive because he is a "white male of large size." [ECF 6, ¶227]. The advisor encouraged the student body president to file impeachment charges against nine Senators, including plaintiff, for discussing a candidate via G-Chat in violation of Nevada Open Meeting Law. [ECF 6, ¶227]; Whitfield Decl. Ex. C. The advisor disclosed FERPA-protected credit information about plaintiff to another student. [ECF 6, ¶227]. The advisor encouraged another student to spread false accusations of racism and homophobia about him across campus. [ECF 6, ¶227]. Other students have told plaintiff that the advisor dislikes him because he is "a conservative Jew." [ECF 6, ¶229]. "Many members of [CSUN] are pro-Palestine and have verbally attacked plaintiff and treated him poorly due to his identity a kippa-waring Jew." [ECF 6, ¶230].

Plaintiff struggled academically, failing two classes due to stress. [ECF 6, ¶231]. Plaintiff "has been effectively exiled from the Senate chambers because of his Jewish identity." [ECF 6, ¶231].

In June 2023, plaintiff was asked questions about his Jewish heritage and sexual orientation when he began working at the campus library. [ECF 6, ¶218].

In August 2023, plaintiff was terminated from his position at the library. [ECF 6, ¶222].

Plaintiff does not allege any facts of the disparate treatment by his supervisors.

"On October 7, 2023, Hamas had killed 1,200 people and abducted over 200 more including American citizens, still being held by Hamas as hostages." [ECF 6, ¶154]. Hamas is a terrorist organization. [ECF 6, ¶150].

"Shockingly, numerous students and faculty members at UNLV celebrate, justify, and excuse Hamas's mass rape, murder, and kidnapping. Many have resorted to harassment and even violence against Jewish students in support of Hamas's attack and in condemnation of Israel's defensive response. UNLV faculty members and

Administration publicly support these students and oppose even the smallest measures to combat UNLV's antisemitism." [ECF 6, ¶156].

"UNLV has allowed non-student organizations like Nevadans for Palestinian Liberation, Red Desert Collective and Fifth sun Project to attend student rallies and harass UNLV's students." [ECF 6, ¶159].

On November 17, 2023, UNLV leadership met with Jewish students and community members from local Jewish groups to hear their concerns. [ECF 6, ¶¶ 169–75].

Plaintiff did not attend the meeting.

On December 1, 2023, plaintiff spoke during public comment at the meeting of the Board of Regents to express his concerns about antisemitism. [ECF 6, ¶176].

In December 2023, plaintiff returned to the library to study when the individual who fired saw him as a threat and called the police. [ECF 6, ¶223].

On January 22, 2024, the CSUN Senate held a meeting at which Whitfield attended to discuss the December 6, 2023 shotting at UNLV. [ECF 6, ¶234]. Plaintiff told Whitfield at the meeting "that students needed faculty help in fighting antisemtism and writing a resolution." [ECF 6, ¶234]. "Whitfield said that was not something faculty should do to fix the tension between Jewish and Muslim students." [ECF 6, ¶235]. Plaintiff then requested Whitfield bring together the two groups to facilitate a peaceful resolution, to which Whitfield replied that such action should come from the students and not UNLV. [ECF 6, ¶236].

In February 2024, plaintiff reached out to Whitfield and another employee "to explain that he felt targeted for being Jewish" without a response. [ECF 6, ¶237].

On February 27, 2024, a visiting Israeli physics professor delivered an open lecture about black holes, as part of a public physics symposium when he was interrupted by protestors voicing their views about the ongoing conflict in Gaza. [ECF 6, ¶177]. The lecture ended due to the interruption by the protesters. [ECF 6, ¶178].

1    Plaintiff was not in attendance.

2    "In March 2024, plaintiff made formal complaints to the Board of Regents about

3    the antisemitism he was experiencing, but never heard back from anyone regarding

4    same." ¶238.

5    In a March 5, 2024 email to Whitfield, plaintiff, in part, wrote:

6    I am reaching out to bring to your attention a concern that has
     arisen within the student-governed senate. As both the chair
7    of the scholarship and grants committee and a senator for the
     School of Engineering, your insight and guidance would be
8    invaluable in this matter.

9    It has come to my attention that there may be instances where
     our advisors are potentially exceeding the boundaries of their
10   roles by self-nominating faculty members to act as attorney
     generals.
11
     among many other things I'm currently being targeted and
12   attacked for my religious affiliation by an csun advisor. I have
     gone through all the proper procedures however it is getting
13   worse. Csun advisors are openly spreading misinformation
     about my faith credits and background to students. Violating
14   my confidentiality as a student and a student Body senator.

15   This situation raises concerns regarding the proper conduct
     and the intended student governance structure.
16
     I would greatly appreciate your advice on how we should
17   proceed to address this issue, ensuring the integrity of our
     student senate's operations. As well as maintaining the
18   security and protection of students on campus

19   ¶239. Whitfield Decl. ¶14, Ex. C to the Declaration.

20   In May 2024, organized protests demanded UNLV divest in any companies that

21   deal with Israel. ¶189. The protesters chanted various slogans. ¶191.

22   Whitfield met with Students for the Justice of Palestine to hear their concerns as

23   he had like meetings with UNLV Jewish faculty group and the Hillel student group.

24   ¶¶195–96.

25   On May 11, 2024, UNLV held commencement at which a student gave a speech

26   that was not approved. ¶201. On June 2, 2024, Whitfield sent an email to the university

27   community that, in part, states:

28

Commencement is the absolute best part of my job and a truly unique and uplifting experience at UNLV. It's a chance to highlight the enormous success of our students alongside their families, friends, and the entire Rebel community.

Unfortunately, what should have been a celebration for all in attendance has become the focus of scrutiny because of remarks shared during one of the speeches. A student speaker at UNLV's morning commencement changed their speech from what was originally submitted in advance of the ceremony. I am disappointed by what I believe was an intent of deception and to mislead. That is not the Rebel way, nor do such actions represent the values we embrace as a university. The vast majority of UNLV graduates will be joining professions that have codes of conduct which they will be mandated to follow or face reprimands and discipline that will dictate their ultimate success or failure.

Protecting free speech and academic freedom is something that I am very serious about upholding. However, we are all responsible for what we say, when we say it, what venue we choose to say it in, and how it may impact others. The guidelines and policies we have in place are important standards to ensure every individual is afforded the dignity and respect this milestone celebration demands.

I understand that the words spoken during the commencement ceremony were hurtful to some graduates and others in attendance, and I want to make it clear that this speech does not represent the views of this university.

I hope this is a lesson not lost on our students, faculty, or staff, as it is one that I have taken to heart too. It reminds me that I must do better in making clear my intentions and the expectations we have for the members of our campus community. Not in an effort to silence anyone – but to ensure everyone feels welcome and can be heard in the proper forums. I believe this is a teaching moment we all can learn from.

I will be reviewing our process to select our student speakers as well as other university policies to ensure that we maintain the celebratory spirit of commencement for our graduates and their families and friends.

Additionally, I will look for and be open to educational opportunities for our campus community. That is what we do and who we are – it is central to our mission to provide an academic forum for discourse on matters of importance to our students and our campuses.

In that same spirit, I met with several groups near the end of the spring semester regarding the ongoing conflict in Israel and Gaza to hear their concerns and perspectives. Some have

> criticized me for my open-door policy. And some have made assumptions and misrepresentations in the media or elsewhere.
>
> This includes an (incorrect) assertion that UNLV will disclose our investments with any ties to Israel or that we would consider divesting from those investments. We will not. I will not.
>
> As a life-long educator, I do feel that dialogue often provides an opportunity for better understanding and learning. That doesn't mean I agree with everything shared or said in these meetings, but I do take very seriously the concerns of any student who feels unsafe or marginalized. There is absolutely no room on our campuses for that.
>
> UNLV is an academic institution that represents the diversity in the State of Nevada. We have policies in place regarding the use of venues and the opportunities to exercise First Amendment rights on our campus, and I expect everyone to adhere to these rules. We will not tolerate any form of prejudice, discrimination, threatening behavior, harassment, bullying, or intimidation of members of our university community that disrupt education on our campus. Any student, faculty, or staff member that experiences such behavior is encouraged to report it so that it may be addressed. I will not hesitate to get our university police involved to ensure the safety and security of everyone on our campuses.
>
> I encourage everyone to take some time this summer to reflect, as I will, on ways in which we can build on our core values as a university, find common ground, and begin the new academic year stronger and more focused on our shared mission.

¶¶202–205; Whitfield Decl., ¶16, Ex. E to the Declaration.

Plaintiff asserts he's been under severe emotional strain from the distress of being accosted by antisemitic protestors. ¶209.

On July 8, 2024, Whitfield announced the launch of an expanded anti-bias and anti-discrimination education and training program for UNLV's employees. Whitfield Decl., ¶17, Ex. F to the Declaration.

On August 8, 2024, plaintiff received a Right to Sue letter from the EEOC. ¶221.

## IV.    Dismissal is Proper Due to Untimely and Insufficient Service

This argument consists of two parts: First, the attempt at service on Whitfield was untimely because it was not done within 90 days of the filing of the Complaint, as

required by Rule 4(m). Second, the attempt did not accomplish service under any potentially applicable provision of Rule 4. Rule 4(j) governs service on a defendant who is sued in his capacity as a state government employee. Rule 4(f) governs service on an individual in his individual capacity. It appears from the content of the Complaint that Rule 4(j) applies to Whitfield in this case, but service was ineffective under either subsection of the rule.

### Untimely Service

Rule 4(m) requires that service be made by within 90 days from the filing of his complaint. Here, he was required to serve all defendants by August 24, 2024. He did not do so. The Court should therefore dismiss this action against Whitfield.

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule] 4." *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988); *see also Murphy Bros., Inc. v. Mitchell Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."). Where the validity of service is contested, the burden is on the party claiming proper service to establish its validity. *Cranford v. United States*, 359 F.Supp.2d 981, 984 (E.D.Cal. 2005) (citing *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993)). Assuming insufficiency of process or insufficiency of service of process, the Court has discretion to dismiss an action or simply quash service. *See e.g., SHJ v. Issaquah School District No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)) ("the choice between dismissal and quashing service of process is in the district court's discretion.").

### Ineffective Attempt at Service

Plaintiff failed to effect proper service on Whitfield either in his official or individual capacity relating to the performance of his duties as an NSHE employee.

To properly serve an employee of NSHE in their official capacity, Rule 4(j)(2) requires a plaintiff to either (a) deliver a copy of the summons and of the complaint to the state-created governmental organization's chief executive office, or (b) serve a copy of each as required by Nevada law for serving a summons on such a defendant. Under applicable state law, Nev. Rev. Stat. 41.031(2) and Nev. R. Civ. P. 4.2(d), a plaintiff must serve both the Nevada Attorney General and the individual or someone designated by the individual to receive service. The Nevada state rule for service of process on state employees does not expressly permit substitute service, except upon someone specifically designated for that purpose.[2]

The rule is clear that service upon a government employee must be made by serving the employee's employer under federal law, or by serving the employee and the Attorney General under state law. Plaintiff has not complied with either option.

To properly serve an individual defendant outside of his or her role as a state employee, Rule 4(i) applies. A plaintiff must either (a) deliver a copy of the summons and of the complaint to the individual personally; (b) leave a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (c) deliver a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). "Where substitute service is used, the person with whom the copy is left must also be a resident of the usual place of abode." *United States v. Rose*, 437 F. Supp. 2d 1166, 1172 (S.D. Cal. 2006).

**Effect of Deficient Service**

If a plaintiff fails to serve a defendant within the 90-day period, the court "must

---

[2] Plaintiff filed an Affidavit of Service on September 11, 2024, stating that the summons and complaint were served on the Nevada Attorney General's office. [ECF #11]. This is irrelevant to the question of service on Whitfield. The Affidavit of Service [ECF #11] expressly states that the documents were served upon "UNLV, Nevada System of higher Education C/O Attorney General Office." Whitfield was not the target of this service attempt. Furthermore, this attempt at service came after the deadline.

dismiss the action without prejudice against that defendant or order that service be made within a specified time." FRCP 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*. A showing of good cause means "at minimum excusable neglect," and may also require a showing that "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." Almont *Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1186 (C.D. Cal. 2015) (cleaned up).

Regardless of whether or not plaintiff sued Whitfield either individually or in his official capacity, he failed to effect service within 90 days of the filing of his complaint. Plaintiff offers no evidence that he served the head of NSHE for the Court to acquire jurisdiction over Whitfield in his official capacity as president.

Further, plaintiff did not effect substitute service on Whitfield when the process server left papers at his front door while he was away. That is because Smith does not live at Whitfield's home. Smith is not a co-occupant at Whitfield's home. Smith was present only to take care of Whitfield's dog while he was out of town. Smith told the process server these facts, which the process server ignored. She was not authorized to accept service, and she was not a proper person to receive substitute service.

Whitfield is prejudiced due to plaintiff's failure to effect timely service because none of the other defendants in this action have been timely served, causing unnecessary delay and limiting his ability to defend against this action. If the Complaint is not dismissed, he would be the only defendant among five to be required to participate in this case.[3] Plaintiff, on the other hand, would not be severely prejudiced if his complaint was dismissed because the statute of limitations has not yet run. Therefore,

---

[3] Plaintiff filed an Affidavit of Service on September 10, 20204, indicating defendant AJP Educational Services was served on September 3, 2024 [ECF #10]. Whitfield's counsel does not represent AJP Educational Services, but it should be noted this was also untimely.

the Court should dismiss this action against Whitfield because plaintiff failed to effect service within 90 days from the filing of his complaint.

## V.    Eleventh Amendment Immunity Applies to Whitfield

UNLV employees sued in their official capacities are entitled to Eleventh Amendment immunity. *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010). As the court reasoned:

> "The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (citing *Pennhurst v. Halderman*, 465 U.S. 89, 100, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). The Eleventh Amendment jurisdictional bar applies regardless of the nature of relief sought and extends to state instrumentalities and agencies. *See Papasan v. Allain*, 478 U.S. 265, 276 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

> Eleventh Amendment immunity also shields state officials from official capacity suits. *See Central Reserve Life of N. Am. Ins. Co. v. Struve* ("Central Reserve"), 852 F.2d 1158, 1160–61 (9th Cir. 1988). A narrow exception exists "where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's *federal* constitutional or statutory rights." *Id.* at 1161 (emphasis in original); *see also Papasan*, 478 U.S. at 277–78; *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 660 (9th Cir. 2009) ("[A] plaintiff may ... maintain a federal action to compel a state official's prospective compliance with the plaintiff's federal rights.") (citations omitted).

*Krainski*, 616 F.3d at 967–68. Suits against state official in their official capacity are no different from suits against the state itself. *Id.* at 968. As such inclusion of the individual state officer may be dismissed as "a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).

Here, plaintiff asks the Court to enjoin *other groups* from exercising their constitutional rights on UNLV's campus—something the Court flatly cannot do. Plaintiff requests that the Court: "Permanently enjoin Defendants SJP-UNLV and NSJP from engaging in any campus activities, banning them from UNLV's campus." [ECF 6 at p. 76]. He further requests the Court "Permanent(ly) enjoin all non-student

organizations that violate NSHE student conduct and policies from engaging in any campus activities, banning them from UNLV's campus." *Id*. He does not request any prospective injunctive relief against Whitfield in his official capacity. Therefore, this case should be dismissed as to Whitfield.

## VI.    Qualified Immunity Applies to Whitfield

Whitfield is entitled to qualified immunity. In *Krainski*, the court held:

> State officials are entitled to qualified immunity from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *al–Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal quotation marks omitted). "It is within our 'sound discretion' to address these two prongs in any sequence we see fit." *al–Kidd*, 580 F.3d at 964 (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)).

*Krainski*, 616 F.3d at 968.

Here, plaintiff does not allege any violations of a clearly established constitutional right committed by Whitfield. As such, Whitfield is entitled to qualified immunity and the Court should dismiss this action against him.

## VII.    Plaintiff Lacks Standing

Plaintiff lacks standing to prosecute claims that does not redress an injury to him. Plaintiff bears the burden to establish Article III standing for each of his claims and for the form of the relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021); *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021). First, he must show an

injury in fact, which is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Weber*, 2 F.4th at 844. The threatened injury must be certainly impending to be an actual or imminent injury. *Id*. It is insufficient to allege a possibility of future injury. *Id*. Plaintiff must be personally affected by the injury that is beyond the psychological consequence presumably produced by observation of conduct with which one disagrees. *Id*. Second, there must be a causal connection between the injury and the conduct complained of that is fairly traceable to the defendant and not the result of the independent action of some third party. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Third, plaintiff must show redressability. *Id*. at 561.

Here, aside from alleging termination from his employment at the library, plaintiff has failed to allege any concrete injuries. His claims

## VIII.    Legal Standard for Failure to State a Claim

Under FRCP 12(b)(6), a complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. APT Sec. Services, Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action. . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." *Id*. at 678 (internal quotation and citation omitted). For a complaint to survive dismissal, the plaintiff must allege

1   non-conclusory facts that, together with reasonable inferences from those facts, are

2   "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

3   *Service*, 572 F.3d 962, 969 (9th Cir. 2009).

## IX.   Plaintiff's First Claim Should be Dismissed

5   Plaintiff asserts a claim against Whitfield under 18 U.S.C. § 2333, which permits

6   United States nationals to sue a "person" for damages if they "have been . . . injured by

7   reason of an act of international terrorism." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 478

8   (2023). Liability rests on "any person who aids and abets, by knowingly providing

9   substantial assistance, or who conspires with the person who committed such an act of

10  international terrorism." 18 U.S.C. §2333(d)(2). A "person" for purposes of § 2333(d)(1)

11  excludes the government under the Dictionary Act's (1 U.S.C. § 1) definition of person.

12  The exclusion of the government from the list of persons implies that Congress did not

13  intend to include the government absent some affirmative showing of statutory intent

14  to the contrary. *Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618, 627 (2019).

15  Here, plaintiff fails to allege any of the elements of the claim against Whitfield.

16  First, Whitfield, as an employee of a state government, cannot be a person who can be

17  held liable under § 2333. Second, plaintiff does not allege a cognizable injury traceable

18  to Hamas. Third, plaintiff does not allege any facts that Whitfield, either officially or

19  individually, aided and abetted a terrorist organization. The claim must be dismissed

20  with prejudice.

## X.   Plaintiff's Second Claim Should be Dismissed

22  Plaintiff fails to allege sufficient facts to make out a claim that Whitfield violated

23  his Equal Protection rights. For plaintiff to state a claim under 42 U.S.C. § 1983 for a

24  violation of his Equal Protection rights under the Fourteenth Amendment, he must

25  show that Whitfield acted with an intent or purpose to discriminate against him based

26  upon membership in a protected class. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th

27  Cir. 2013).

28

Plaintiff does not allege any discriminatory intent on Whitfield's part. Nor does plaintiff allege the government action that Whitfield took against him. He only alleges that he was denied educational services, which is clearly contradicted since he says that he continues to be a student and enrolled in classes. As such, plaintiff fails to state a claim against Whitfield and the claim should be dismissed.

## XI.    Plaintiff's Third, Fourth, Seventh, and Twelfth Claims Should be Dismissed

As to Whitfield, plaintiff cannot maintain his action against him under Title VI of the Civil Rights Act of 1964 (Third Claim), or under § 1983, which is a repackaged version of his Title VI claim (Fourth Claim), or under § 1983, which alleges adverse employment action based on speech (Seventh Claim), or under Title VII of the Civil Rights Act of 1964 (Twelfth Claim) because Whitfield is not plaintiff's employer who received federal financial assistance.

Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "In a Title VI claim, the proper defendant is the entity receiving federal funds, not the employees who are employed by the entity." *Drawsand v. F.F. Properties, L.L.P.*, 866 F. Supp. 2d 1110, 1122 (N.D. Cal. 2011).

"In order to state a claim against a government *employer* for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took adverse employment action; and (3) that his or her speech was a substantial or motivating factor for the adverse employment action." *Flesch v. Cnty. of Lake*, 2021 WL 3633835, at *4 (N.D. Cal. Aug. 17, 2021) (emphasis in original, internal citations and quotations omitted).

Whitfield is not a recipient of Federal financial assistance. He is also not plaintiff's employer. Finally, plaintiff cannot maintain his action against Whitfield

under Title VII because he is not plaintiff's employer. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007). Thus, these claims must be dismissed with prejudice.

## XII.    Plaintiff's Fifth Claim Should be Dismissed

Under § 1983, a plaintiff must show: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In an action alleging ratification by a supervisor, "supervisors can be held liable for: (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the complained-of constitutional deprivation; and (3) conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). Further,

> [i]n limited circumstances a supervisor's subsequent "ratification" of another's conduct can form the basis for liability under § 1983. The decision to ratify specific conduct, however, must approve both the subordinate's decision and the basis for it, and the ratification decision must be the product of a conscious, affirmative, choice to ratify the conduct in question. It must be a decision to ratify unconstitutional conduct.

*Peschel v. City of Missoula*, 686 F.Supp.2d 1092, 1102 (D. Mont. 2009).

Plaintiff fails to allege a constitutional violation that Whitfield ratified expressly. Plaintiff complains that protesters exercising their constitutional rights caused a risk of serious harm, embarrassment, and humiliation to him. ¶322. Yet this speculation and feelings he experienced do not amount to a constitutional concern. This claim must be dismissed.

## XIII.   Plaintiff's Sixth Claim Should be Dismissed

Plaintiff fails to make out a claim against Whitfield for a deprivation of his free exercise rights under § 1983. Plaintiff alleges that the statements made by third parties to protest on campus prevents him from wearing his kippa openly due. ¶328. However, allegations of verbal harassment are insufficient to support a § 1983 claim if no specific

injury is alleged. *Oltarzewski v. Ruggiero*, 830 F.2d 139 (9th Cir. 1987), *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). Here, plaintiff does not allege that Whitfield prevented him from wearing his kippa. Rather, he claims that the speech of third parties protesting on campus caused him to cover up. Because there is no causal connection between Whitfield's action and a violation of a plaintiff's rights, the claim should be dismissed.

## XIV.    Plaintiff's Seventh Claim Should be Dismissed

Plaintiff fails to state a claim against Whitfield for retaliation based on his speech under § 1983. A First Amendment retaliation claim requires that he show that: (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). Here, plaintiff fails to allege that he was engaged in a constitutionally protected activity that Whitfield's action chilled. The claim should be dismissed.

## XV.    Plaintiff's Eighth Claim Should be Dismissed

Plaintiff fails to state a claim under § 1983 for violation of his First Amendment right against compelled speech. Plaintiff claims he is being forced to support or otherwise agree with UNLV's policies as a condition of employment and enrollment. ¶ 353. Yet he does not identify the specific policy he claims is at issue. Nor does he allege any facts specific to Whitfield. This claim should be dismissed.

## XVI.    Plaintiff's Ninth Claim Should be Dismissed

Plaintiff fails to allege facts against Whitfield to make out a prima facie claim of Intentional Infliction of Emotional Distress. The claim requires: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012), see also *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 91-92 (Nev. 1981) (stating identical elements for this claim under Nevada state law). Plaintiff alleges no facts against Whitfield to state a claim. It should be dismissed

## XVII.    Plaintiff's Tenth and Eleventh Claims Should be Dismissed

To state a claim for negligent hiring, retention or supervision, a plaintiff must show that the defendant owed plaintiff a duty of care, that defendant breached the duty by the hiring, retaining, and/or supervising an employee even though the defendant knew, or should have known, of the employee's dangerous propensities, and that this breach caused plaintiff's injuries that resulted in damages. *Hall v. SSF, Inc.*, 112 Nev. 1384, 1391-92, 930 P.2d 94, 98-99 (Nev. 1996). An employer has a duty to use reasonable care in the training, supervision, and retention of their employees to make sure that the employees are fit for their positions. *Id*. These claims may only be brough against an employer. *Id*. Again, Whifield is not an employer and plaintiff does not allege any facts to the contrary. This claim should be dismissed.

If the Court dismisses all federal claims against Whitfield, then the Court should also decline to exercise supplemental jurisdiction over plaintiff's state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); 28 U.S.C. § 1367(c)(3).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## XVIII.    Conclusion

Plaintiff failed to timely serve Whitfield with process. Even if he had, this case should be dismissed because (1) Whitfield is entitled to Eleventh Amendment Immunity; (2) Whitfield is entitled to qualified immunity; (3) plaintiff lacks standing to bring his claims against Whitfield; and (4) plaintiff failed to allege sufficient facts against Whitfield to state a claim. As such, Whitfield requests that the Court enter an order dismissing this case against him.

Dated September 18, 2024.

/s/  Andrew D. Smith
Elda M. Sidhu (NV Bar No. 7799)
Andrew D. Smith (NV Bar No. 8890)
UNIVERSITY OF NEVADA, LAS VEGAS
4505 S. Maryland Parkway, Box 451085
Las Vegas, Nevada  89154-1085
*Attorneys for Keith Whitfield*

1

## **Certificate of Service**

2      I certify that, on the date and time of the electronic service, a copy of the

3  foregoing *Defendant Keith Whitfield's Motion to Dismiss* was sent via electronic means

4  through CM/ECF to the following at their last known email addresses:

5
- **Sigal Chattah**
6     Chattahlaw@gmail.com
   - **Joseph S. Gilbert**
7     joey@joeygilbertlaw.com,carla@joeygilbertlaw.com,alisha@joeygilbertlaw.com,
8   - nancy@joeygilbertlaw.com

9
   Dated September 18, 2024.
10

11                         /s/   Sheena M. Imes
                        An employee of the Office of General Counsel
12                        University of Nevada, Las Vegas

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28