1  SIGAL CHATTAH, ESQ.
   Nevada Bar No.: 8264
2  CHATTAH LAW GROUP
   5875 S. Rainbow Blvd., #203
3  Las Vegas, Nevada 89118
   Tel: (702) 360-6200
4  Fax: (702) 643-6292
   Chattahlaw@gmail.com
5
6  JOSEPH S. GILBERT, ESQ.
   Nevada State Bar No.: 9033
7  JOEY GILBERT LAW
   405 Marsh Avenue
8  Reno, Nevada 89509
   Tel: (775) 284-7700
9  Fax: (775) 284-3809
   Joey@joeygilbertlaw.com
10 *Co-Counsel for Plaintiffs*
11
12                    **UNITED STATES DISTRICT COURT**
13
                          **DISTRICT OF NEVADA**
14

15  COREY GERWASKI,
16                          Plaintiffs,          Case No.: 2:24-cv-00985
17  vs.
18  STATE OF NEVADA ex rel.
    BOARD OF REGENTS OF THE          **OPPOSITION TO MOTION TO**
19  NEVADA SYSTEYM OF HIGHER         **DISMISS**
    EDUCATION, on behalf of the
20  UNIVERSITY OF NEVADA, LAS
    VEGAS;  KEITH  WHITFIELD,        **[ORAL ARGUMENT REQUESTED]**
21  individually, AJP EDUCATIONAL
    FOUNDATION INC., A California
22  Non-Profit Corporation, STUDENTS
    FOR  JUSTICE  OF  PALESTINE-
23  UNLV;  NATIONAL  STUDENTS
    FOR  JUSTICE  OF  PALESTINE;
24  NEVADANS  FOR  PALESTINIAN
    LIBERATION DOES I-XX and ROE
25  entities I-XX.
26
27                          Defendants.
28

                                  1

1    COMES NOW, Plaintiff, COREY GERWASKI, by and through his attorneys of record,

2    SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP and JOSEPH S. GILBERT, ESQ., of

3    JOEY GILBERT LAW, and file the foregoing Response to Motion to Dismiss Complaint [ECF

4    12] filed by Defendant Keith Whitfield in the above-entitled action.

## INTRODUCTION

6    The following action involves religious discrimination against Plaintiff as a student at the

7    University of Nevada Las Vegas, in addition to as an employee of University of Nevada Las

8    Vegas under both Title VII and Title IX.

9    By accepting federal funds, Defendants obligate themselves under Title VI of the Civil

10   Rights Act of 1964 to protect their Jewish students from discrimination and harassment.

11   Mr. Gerwaski filed his initial Complaint in this matter on or about May 26, 2024 and

12   subsequently filed his First Amended Complaint on August 9, 2024 [ECF NO. 6], herein after

13   "FAC". On August 28, 2024, Defendant Keith Whitfield, President of UNLV, was served with a

14   Summons and Amended Complaint at his home. Defendant Whitfield, being sued in his capacity

15   as President of UNLV moves for dismissal of this action as delineated *infra.*[1]

## STATEMENT OF FACTS

17   After October 7, 2023, students at UNLV and faculty rallied to support Hamas, whose

18   terrorists had invaded Israel to murder, torture, and rape 1,200 people and abduct hundreds of

19   others. As Plaintiff alleges, by tolerating and enabling such antisemitic discrimination and

20   harassment, Defendant Whitfield's complicity with remaining UNLV Defendants, are violating

21   their obligations under Title VI, state and local civil rights laws, and their contracts with their

22   students. Defendant Whitfield, as President of the University allowed these acts to occur despite

23   continued pleas to curb such racist rhetoric and harassment against Mr. Gerwaski. It was his

24   obligation as President of the University to ensure that such harassment against all students at

---

[1] It is significant to note that Defendant Whitfield attempts to negate facts alleged in Gerwaski's
Complaint which are wholly irrelevant in this Court's adjudication of this Motion.

UNLV wasn't facilitated and encouraged. Defendant Whitfield is so complicit in the actions of UNLV and other Defendants, that Parties on both sides of this action, called for his involvement.[2]

Cases such as the matter sub judice have been filed across the Nation following similar activities on other campuses and have all found a favorable result in favor of Plaintiffs following the egregious nature of what Jewish students across the Country experienced.

In *Kestenbaum v. President & Fellows of Harvard College, - F. Supp. 3d - , 2024 WL 3658793, at \*6-7 (D. Mass. Aug. 6, 2024),* Judge Stearns, in denying Harvard's motion to dismiss Title VI antisemitic hostile environment and breach of contract claims asserted by SAA and an individual student, held that plaintiffs' allegations showed that Harvard "failed its Jewish students" and that its response to campus harassment was "so lax, so misdirected, or so poorly executed as to be clearly unreasonable under the known circumstances." Judge Stearns declined to "reward Harvard for virtuous public declarations" where those declarations "for the most part, according to the allegations . . ., proved hollow when it came to taking disciplinary measures against offending students and faculty." *Id.* at \*6.

In *Frankel v. Regents of the University of California*, 2024 WL 3811250 (C.D. Cal. Aug. 13, 2024), Judge Scarsi, in issuing a preliminary injunction barring UCLA from allowing pro Hamas demonstrators to exclude Jewish students from its campus—much as UNLV's demonstrators did here, rejected the argument Defendants advanced there that they cannot be held responsible for the actions of third-party demonstrators on their campus. Judge Scarsci opined "In the year 2024, in the United States of America, in the State of California, in the City of Los Angeles, Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith. This fact is so unimaginable and so abhorrent to our

---

[2] ECF 6, 47-49

constitutional guarantee of religious freedom that it bears repeating, Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith. UCLA does not dispute this. Instead, UCLA claims that it has no responsibility to protect the religious freedom of its Jewish students because the exclusion was engineered by third-party protestors. But under constitutional principles, UCLA may not allow services to some students when UCLA knows that other students are excluded on religious grounds, regardless of who engineered the exclusion. UCLA, 2024 WL 3811250, at *1 (emphasis in original).

Defendant Whitfield, like the above-noted Universities, seeks to avoid responsibility after allowing vitriolic harassment and abuse against Jewish students for months on UNLV's campus. As President of UNLV, his attempt to shirk responsibility when it was his own failures as President of the University that facilitated these discriminatory acts against Gerwaski and Jewish students alike.

## LEGAL ARGUMENT

A.    **THE AMENDED COMPLAINT DATED AUGUST 9, 2024 SUPERSEDES ECF NO. 1  AND SERVICE OF PROCESS THEREON COMPLIES WITH THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendant Whitfield spends four pages discussing Service of Process in his Motion to Dismiss, including timing and location of service of process. His arguments are fatally flawed on both.

It is common knowledge that an Amended Complaint supersedes the previous Complaint and renders it of no legal effect, allowing Plaintiff 90 days from the date of that filing to serve his Amended Complaint. *Power Probe Grp. v. Innova Elecs. Corp. 670 F. Supp. 3d 1143 (D. Nev. 2023). See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).* Once an amended complaint is filed, the original complaint no longer serves any function in the case. Defendant Whitfield was

served within 20 days of the filing of the Amended Complaint. Therefore, Defendant's argument as to the timeliness of service of process is meritless and should be disregarded.

Next Defendant seeks to have this matter dismissed under Rule 4(j)(2) as to the location of service on Whitfield.

Fed R. Civ Pro 4(j) entitled SERVING A FOREIGN, STATE, OR LOCAL GOVERNMENT

(1) *Foreign State.* A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. §1608.

(2) *State or Local Government.* A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:

(A) delivering a copy of the summons and of the complaint to its chief executive officer; or

(B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Defendant cites to NRS 41.031(2) and Nev. R. Civ. P. 4.2(d). First and foremost, this action is dictated by the Federal Rules of Civil Procedure and the Federal rules and FRCP 4(j) delineates service of a state or local government. FRCP 4(j) does not make mention of serving individual employees of a state in a federal matter. Additionally, FRCP 4(i), deals with Service of the United States, its Agencies, Corporations or employees. This matter is not an action against the United States and therefore FRCP 4(i) does not apply.

Since, the Federal Rules of Civil Procedure specifically omits instructions on service of an individual employed by the State, there is nothing precluding service of process on Defendant at his home.

**B.     ELEVENTH AMENDMENT IMMUNITY DOES NOT APPLY TO WHITFIELD**

The Eleventh Amendment bars federal courts from hearing certain "suit[s]" filed by individual citizens against a state without the consent of the state. *U.S. Const. amend. XI; see generally Hans v. Louisiana, 134 U.S. 1 (1890).* But that Amendment does not bar actions when citizens seek only injunctive or prospective relief against state officials who would have to

implement a state law that is allegedly inconsistent with federal law. *See generally Ex parte Young, 209 U.S. 123 (1908).* "The *Ex parte Young* doctrine is founded on the legal fiction that acting in violation of the Constitution or federal law brings a state officer into conflict with the superior authority of the Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." C*ardenas v. Anzai, 311 F.3d 929, 935 (9th Cir. 2002).*

The allegations in the FAC clearly delineate that this matter is brought under 42 U.S.C. §1983, brought under *Ex Parte Young* and therefore the Defendant Whitfield is not precluded from this action.

First and foremost, Defendant Whitfield is included as a Defendant in the First Claim for Relief which specifically provides that "[L]iability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2).

A defendant may be liable under the Antiterrorism Act even without a "strict nexus" between the substantial assistance and the act of international terrorism so long as there is "a foreseeable risk" of such act. Indeed, in some cases, "defendant's role in an illicit enterprise can be so systemic that the secondary defendant is aiding and abetting every wrongful act committed by that enterprise." See *Twitter v. Taamneh*, 598 U.S. 471, 495-96 (2023).

Defendant Whitfield knowingly provided substantial assistance to Hamas through their services. Indeed, in the NSJP Toolkit, Defendants confirm not only that they are aware that their propaganda and incitement activities support Hamas but also that they perceive themselves as "PART of" Hamas's "Unity Intifada"—the terror regime that has damaged Plaintiff.

By allowing the vitriolic harassment and protests and abuse to continue, Whitfield knowingly provided substantial assistance to Hamas and thus aided and abetted Hamas in

committing, planning, or authorizing acts of international terrorism, including the acts of

international terrorism that injured Plaintiff.

Whitfield also provided substantial assistance to these radical pro-terrorist organizations

by allowing them to terrorize and demonize students on UNLV's campus. Whitfield provided

substantial assistance under the Antiterrorism Act by allowing them to use the student campus to

distribute their literature, paraphernalia, and hosting meetings by providing substantial resources

to disseminate their antisemitic and anti-American rhetoric and propaganda. *See* ECF 6; 56, 22-

28; 57; 1-5; *See also* 58; 5-25.

**C.     PLAINTIFF HAS CLEARLY DEMONSTRATED STANDING TO BRING THIS ACTION**

To survive a challenge to a plaintiff's Article III standing under Federal Rule of Civil

Procedure 12(b)(1), Plaintiffs bear the burden of showing that their injury-in-fact is "concrete,

particularized, and actual or imminent, " rather than "conjectural or hypothetical"; that it is

"fairly traceable to the challenged action"; and that it is "redressable by a favorable

ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Davidson v.

Kimberly-Clark Corp.*, *889 F.3d 956, 967 (9th Cir. 2018).*

In conducting a standing inquiry, the court must accept the plaintiff's factual allegations

as true and draw all reasonable inferences in their favor without reaching the merits of their

claim. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011);

Here, not only has Mr. Gerwaski received a right to sue notice as part of his unlawful

termination under Title VII, but Mr. Gerwaski specifically alleged violations of his First

Amendment Rights against all UNLV Defendants, specifically reaching out to Defendant

Whitfield in person and in writing through emails. Mr. Gerwaski's FAC alleges. See ECF 6, 67;

1-18.

Notwithstanding the litany of First Amendment violations that Defendants under the supervision and complicit acts that Whitfield engaged in, Mr. Gerwaski's standing also originates from being a Jewish student at UNLV, forced to hide his Jewish identity, but more specifically his repeated requests made for assistance were deliberately ignored by Whitfield.

As noted in Gerwaski's FAC, on December 1, 2023, a Board of Regents meeting was held wherein Plaintiff testified as to the continuous antisemitism on campus, demonization of Jewish students and again requested from the Regents a call to action. ECF 6, 42; 23-25.

Furthermore, this Board of Regents meeting followed after Plaintiff attended a meeting on November 17, 2023 with Defendant Whitfield and other University stake holders requesting assistance with the rhetoric, protest, vandalism and all other adverse actions taken against Jewish students. Defendant Whitfield ignored these preliminary requests for assistance.

Mr. Gerwaski specifically pled the following "Since October 7, 2023, like all Jewish students on UNLV, Plaintiff has been under severe emotional strain resulting from the distress of being accosted by antisemitic protestors, who have found refuge and comfort from UNLV and its administrators, instead of being admonished for such racist behaviors and actions." See ECF 6, 50; 23-27.

It is irrefutable that, Mr. Gerwaski, a Jewish Student at UNLV, has specifically pled sufficient allegation to satisfy the requirements of Article III standing to bring this action.

**D.     PLAINTIFF'S ALLEGATIONS ARE SUFFICIENTLY PLED UNDER *TWOMBLY* TO PRECLUDE DEFENDANT FROM PREVAILING ON ITS MOTION TO DISMISS.**

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the

speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal*, *556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (citing Twombly, 550 U.S. at 555).* In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, *550 U.S. at 556*. However, at the pleading stage, the plausibility requirements of *Iqbal* and *Twombly* do not require "some general and formal level of evidentiary proof." *Whittney v. Guys, Inc.*, *700 F.3d 1118, 1128 (8th Cir. 2012).*

"Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the claimed violations. *Twombly*, 550 U.S. at 556. "There is no requirement for direct evidence; the factual allegations may be circumstantial and 'need only be enough to nudge the claim 'across the line from conceivable to plausible.'" *McDonough v. Anoka County, 799 F.3d 931, 945 (8th Cir. 2015)* (quoting *Cardigan Mountain Sch. V. New Hampshire Ins. Co., 787 F.3d 82, 88 (1st Cir. 2015) (quoting Twombly, 550 U.S. at 556)).*

Where a court grants a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), leave to amend should be freely given if it is possible that further factual allegations will cure any defect. *See Somers v. Apple, Inc.*, *729 F.3d 953, 960 (9th Cir. 2013)* ("[A] district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factional allegations…."). Should this Court find that Plaintiff has insufficiently pleaded facts to sustain a finding in his favor, Plaintiff hereby requests leave to amend the foregoing FAC.

**1. Plaintiff Sufficiently Pled Allegations to Sustain a Claim Relief that is a Facially Plausible Violation of 18 U.S.C.§ 2333(d)**

18 U.S.C.§ 2333(d) provides that "[L]iability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who

1   committed such an act of international terrorism." Here, Defendant conflates that the

2   congressional intent of the statute somehow precludes Whitfield from being found liable for his

3   participation in acts as the President of UNLV.

4       As noted *supra,* Plaintiff specifically alleged claims against Whitfield, as President of

5   UNLV, acting on behalf of UNLV, allowing such mayhem and harassment to occur at the

6   University not only against Gerwaski but also against other Jewish students. See ECF 6; 42-50,

7   despite repeated meetings with students at UNLV and encounters with Mr. Gerwaski [ECF 6, 54-

8   55]. Mr. Gerwaski repeatedly reached out to Defendant Whitfield and was repeatedly ignored,

9   providing **substantial assistance[3]** to SJP, and their affiliates to continue terrorizing Jewish

10  students on campus.

11      Further, Plaintiff's FAC provides 27 pages of extensive facts creating a direct nexus

12  between Hamas, Defendants AMP, and UNLV's and President Whitfield substantially assisting

13  and complicitly allowing SJP-UNLV to engage in these egregious acts which directly caused

14  damages to Mr. Gerwaski.

### 2. Plaintiff Sufficiently Pled Allegations to Sustain a Claim Relief that is a Facially Plausible Violation of his Rights Under the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of

Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S.

202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal

Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted

with an intent or purpose to discriminate against the plaintiff based upon membership in a

---

[3] See ECF 6, 54-55.

10

protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Plaintiff's Complaint as noted *supra* has sufficient allegations to demonstrate that Whitfield himself violated his Equal Protection rights. The Complaint delineates, specific communications with Whitfield, that Corey was in a protected class, and that Whitfield himself, engaged in conduct, as President of UNLV that was discriminatory against Gerwaski and that Gerwaski suffered damages therefrom. Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for relief under Fed. R. Civ. Pro Rule 8.

### 3. Plaintiff Sufficiently Pled Allegations to Sustain Plaintiff's Third Fourth, Seventh and Twelfth Claims for Relief

Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin. *See* 42 U.S.C. § 2000d. The United States Department of Education's regulations regarding Title VI further state that a recipient of federal funds may not, "on ground of race, color, or national origin ... [r]estrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the program." 34 C.F.R. § 100.3(b)(1)(iv).

The Office for Civil Rights has made clear that "anti-Semitic harassment can trigger responsibilities under Title VI ... when the harassment is based on the group's actual or perceived shared ancestry or ethnic characteristics, rather than solely on its members' religious practices." *T.E. v. Pine Bush Cent. Sch. Dist.* 58 F. Supp. 3d 332 (S.D.N.Y. 2014).

Whitfield is the President of UNLV; he is the ultimate policy maker and enforcer of policies at the University. He is not being sued personally but in his capacity as President of UNLV. To state that he is not an employer for violation of Mr. Gerwaksi's rights under the First Amendment, after Mr. Gerwaski had specific communications with him is comedic.

11

Although Title VI does not provide for individual liability, *see Hickey v. Myers,* 852 F. Supp. 2d 257, 267 (N.D.N.Y. 2012), "[i]n certain circumstances, courts view actions of a third party as intentional violations by the funding recipient itself." *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 664-65 (2d Cir. 2012) (citations omitted). "For example, in the educational setting, a school district is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student." *Id.* at 665 (citations omitted).

The deliberate indifference standard outlined by the Supreme Court in *Davis v. Monroe County Board of Education* is a narrow one. *See Davis v. Monroe County Board of Education,* 526 U.S. 629, 644-45 (1999). "Liability only arises if a plaintiff establishes: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." *Zeno,* 702 F.3d at 665 (citations omitted).

"A school district will be subject to liability for third-party conduct only if it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'" *Id.* (quoting *Davis,* 526 U.S. at 644-45, 119 S. Ct. 1661). "A school district, the Supreme Court noted, exercises substantial control over the circumstances of the harassment when it occurs 'during school hours and on school grounds.'" *Id.* (quoting *Davis,* 526 U.S. at 646, 119 S. Ct. 1661). "Similarly, a school district's authority to take remedial action lies in its longstanding disciplinary oversight over its students." *Id.* (citations omitted).

Further, as delineated *infra*, Mr. Gerwaski specifically requested Defendant Whitfield's assistance with the hostility and discrimination he was experiencing both as a student at UNLV and as an employee for same. It is indisputable that President Whitfield exercised substantial control over the University and University policies and *vice-versa*. This is further exemplified by the direct and public demands on Whitfield by Defendants SJP, of divestment and boycott of Israeli companies by UNLV. The fact that even Defendants SJP called on Defendant Whitfield

to engage in actions on behalf of the University in their tweets and social media platforms is insurmountable evidence that Whitfield, as President of the University, has substantial control over these matters on behalf of the University.

"Discrimination under Title VI is not limited to being excluded from, or denied the benefits of, a particular school program." *Id.* at 665-66 (citing 42 U.S.C. § 2000d; 34 C.F.R. § 100.3(a)). "Discriminatory actions '[r]estrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit' under the school system." *Id.* (quotation and other citations omitted). "Educational benefits include an academic environment free from racial hostility." *Zeno,* 702 F.3d at 666 (citation omitted); *see also Hayut,* 352 F.3d at 750 ("We also find that . . . [misconduct that] simply created a disparately hostile educational environment relative to her peers . . . could be construed as depriving [the victim] of the benefits and educational opportunities available at [the school]").

In *Edelman v. Source Healthcare Analytics, LLC*, the court determined that there is individual liability under the statute because it defines an "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 265 F. Supp. 3d 534 - Dist. Court, ED Pennsylvania, 2017.

Courts in the Third Circuit consider any relevant factor of a supervisory relationship. Including whether the individual "(1) had the power to fire and fire employee; (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Edelman v Source Healthcare Analytics, 265 F. Supp. 3d 534, 549 E.D. Pa. 2017). *See, e.g.*, *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012) (stating that the FMLA permits individual liability); *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153-54 (3d Cir. 2014).

1   Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for relief

2   for the Third, Fourth, Seventh and Twelfth claims for relief under Fed. R. Civ. Pro Rule 8.

3       **4.  Plaintiff's Fifth Claim for Relief -Ratification States a Claim for Which Relief
           Should be Granted.**

4

5   "…[A]lthough the touchstone of the § 1983 action against a government body is an allegation

6   that official policy is responsible for a deprivation of rights protected by the Constitution, local

7   governments, like every other § 1983 action 'person,' by the very terms of the statute, may be

8   sued for constitutional deprivations visited pursuant to governmental 'custom' even though such

9   a custom has not received formal approval through the body's official decision-making

10  channels." *Id*. at 690-691.  "'Congress included customs and usages [in § 1983] because of the

11  persistent and widespread discriminatory practices of state officials …. Although not authorized

12  by written law, such practices of state officials could well be so permanent and well settled as to

13  constitute a 'custom or usage' with the force of law." *Id.* at 691.

14

15  Here, the ratification of Whitfield's actions and failures to take action when Mr.

16  Gerwaski as an employee of the University and as a student, very concisely delineated his

17  grievances on multiple occasions as alleged in his FAC[4] is precisely the kind of ratification that

18  Whitfield is accused of; *ergo*, but for Whitfield's actions, Defendants would not have had the

19  opportunity ***or be encouraged to engage in the actions*** they did against Gerwaski and other

20  Jewish students on campus.

21

22  The Court in *Mercer Island School District v Office of Superintendent of Public*

23  *Instruction, 186 Wn. App. 939 (Wash. Ct. App. 2015)* observed, "a total bar or exclusion from

24  educational opportunities need not be demonstrated." *S.S.,* 143 Wash.App. at 114, 177 P.3d 724.

25  Instead, "It is the denial of 'equal access to an institution's resources and opportunities' that is the

26

27  _____

28  [4] See ECF 6, 53-57.

key." *S.S.,* 143 Wash.App. at 114, 177 P.3d 724 (quoting *Ray v. Antioch Unified Sch. Dist.,* 107 F.Supp.2d 1165, 1168 (N.D.Cal.2000) ). "Educational benefits include an academic environment free from racial hostility." *Zeno,* 702 F.3d at 666.

Defendant Whitfield's antisemitism manifests itself in a double standard invidious to Jews and Israelis. Defendant selectively enforced UNLV's policies to avoid protecting Jewish students from harassment, students such as Mr. Gerwaski. This was made clear in Plaintiff's FAC, when Whitfield, overtly sympathized with Defendant organizations while compromising UNLV policies that are instituted to protect all students attending UNLV.

Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for relief under Fed. R. Civ. Pro Rule 8 for his Fifth Claim for Relief.

### 5. Plaintiff's Sixth Claim for Relief -Violation of Free Exercise States a Claim for Which Relief Should be Granted.

In *Jones v Williams*, 791 F.3d, 1031 (9th Cir. 2015), the Court stated "[I]t was well established in 2007, and remains so today, that government action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs. *Citing to, Sherbert v. Verner,* 374 U.S. 398, 404, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.,* 450 U.S. 707, 717–18, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Guru Nanak Sikh Soc'y,* 456 F.3d at 988. "[R]equiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for which alternatives are available." *Ashelman v. Wawrzaszek,* 111 F.3d 674, 677 (9th Cir.1997).

Here, Plaintiff need not allege that Whitfield prevented him from wearing a kippa, but it is sufficient to allege that Whitfield fomented and encouraged antisemitic behavior on campus to the point that Mr. Gerwaski specifically complained about to him as the highest authority at the

University, as President of the University, and that Whitfield completely ignored Gerwaski's cries for help, subjecting him to perpetual hostility academically and through his employment.

Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for relief under Fed. R. Civ. Pro Rule 8 for his Sixth Claim for Relief.

### 6. Plaintiff's Seventh Claim for Relief -Retaliation States a Claim for Which Relief Should be Granted.

To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. See *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).

It is clear that based on the allegations in the Complaint as delineated *supra,* that Gerwaski has alleged sufficient facts to support all three requirements at this early phase as required under FRCP 8. Furthermore, whether the adverse employment action was taken as a result of his religious beliefs or not is an issue of fact that does not get litigated at this initial pleading phase.

Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for relief under Fed. R. Civ. Pro Rule 8 for his Seventh Claim for Relief.

### 7. Plaintiff Has Alleged Sufficient Facts to Sustain his Eighth Claim for Relief of First Amendment Violation, Compelled Speech.

At the outset, Mr. Gerwaski is not claiming that he is being forced to support or otherwise agree with UNLV's policies as a condition of employment and enrollment.  Mr. Gerwaski is alleging that he is being forced to support UNLV's violations of university policies as a condition for employment and enrollment. *See* ECF 6, 41-42.

It is indisputable that UNLV allowed University protocol and policies to be violated.[5] These protocols and policies were done at the expense of Jewish students attending UNLV and specifically, Mr. Gerwaski. When Mr. Gerwaski, begged Whitfield and the rest of UNLV's administration to simply follow University policies and guidelines, they refused to do so. Instead, they engaged in hostility and retaliation against Gerwaski, which Whitfield was unequivocally notified of verbally and through email communications by Gerwaski.

Where, as here, a school "has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such [school] has failed to act reasonably in light of the known circumstances." Defendants' purported measures "could not have plausibly changed the culture of bias or stopped the harassment[.]" *Pine Bush*, 58 F. Supp. 3d at 365.

Being forced to acquiesce to UNLV's refusal to follow University policy is a type of compelled speech. The First Amendment usually prohibits the government from enacting laws that regulate protected speech, and it "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech. *Houston Cmty. Coll. Sys. v. Wilson, 142 S. Ct. 1253, 1259 (2022) (quoting Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019)).*

In *Frudden v Pilling*, 877 F. 3d 821 - 2017 (9th Cir. 2017), the Court found the "right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." (citing *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633–34 (1943)); see also *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) (stating that "freedom of speech prohibits the government from telling people what they must say").

---

[5] See ECF 6, 34-36, UNLV's Code of Conduct

In *Wooley v Maynard*, 430 U.S 705 (1977), Justice Rehnquist's dissent provides "[T]he test is whether the individual is forced 'to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable.'" *Id.* at 721 (Rehnquist, J., dissenting) (quoting *id.* at 715) (majority opinion)). This Court must apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994).

The fact that Defendants took retaliatory measures against Mr. Gerwaski, who simply wanted equal treatment as his colleagues and a safe academic environment regardless of his religious beliefs, is demonstrative of compelled speech, whether it has a religious context to it or not.

Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for relief under Fed. R. Civ. Pro Rule 8 for his Eighth Claim for Relief.

### 9. Plaintiff Has Alleged Sufficient Facts to Sustain his Ninth Claim for Relief of Intentional Infliction of Emotional Distress

The elements of IIED in Nevada are: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000).*Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983); *see Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). ("[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" Rivera v. CCA; 0:20-cv-15651(9th Cir.)

Here, it is indisputable that Whitfield's conduct was extreme and outrageous, when he specifically ignored all of Mr. Gerwaski's calls for help dealing with the pervasive antisemitism he helped facilitate.

18

Plaintiff sufficiently plead all the damages that resulted from Defendant's acts in his Complaint. Plaintiff sufficiently plead and demonstrates that Defendants acts is both the actual and proximate cause of Mr. Gerwaski's distress.

Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for relief under Fed. R. Civ. Pro Rule 8 for his Ninth Claim for Relief.

### 10. Plaintiff Has Alleged Sufficient Facts to Sustain her Tenth and Eleventh Claims for Relief of Negligent Hiring Retention, and Supervision

The elements of negligent hiring are as follows:

1. Defendant owed a duty of care to plaintiff;

2. Defendant breached this duty by hiring an employee even though it knew, or should have known of employee's dangerous propensities;

3. The breach was the legal cause of plaintiff's injuries; and

4. Plaintiff suffered damages.

*See Hall v. SSF, Inc.*, 112 Nev. 1384, 1392, 930 P.2d 94, 98 (1996) ("An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities."). "As is the case in hiring an employee, the employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *SSF, Inc.*, 112 Nev. at 1393, 930 2.d at 99.

Despite Defendants' argument to the contrary, Plaintiff alleges that Defendant Whitfield owed the following duties to Gerwaski: the duty to ensure a non-hostile work environment; the duty to provide responsible teachers and administration; the duty to act reasonably under the circumstances; and the duty to take action to control the wrongful acts of its employees and associates when it had reason to anticipate such acts.

Plaintiff then asserted that Defendants breached these duties when Whitfield and UNLV "failed to appropriately hire, train, and supervise a superintendent, teachers, administration and

1  failed to ensure a work environment that was not hostile, that protected religious views and that

2  ensured the free expression of faculty."

3    Mr. Gerwaski, placed President Whitfield on actual notice specifically delineating his

4  grievances against various colleagues at the University, which were completely ignored by

5  Whitfield.[6] Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for

6

7  relief under Fed. R. Civ. Pro Rule 8 for his Tenth and Eleventh Claims for Relief.

8                                **CONCLUSION**

9    A careful review of Plaintiff's FAC will demonstrate that in the course of the 77-page

10  Complaint, President Whitfield's complicity in the events that are the subject of this suit are

11  irrefutable at this juncture under a standard for stating a claim for which relief should be granted.

12  For the reasons discussed herein-above, Plaintiff respectfully request that this Court deny the

13  Defendants' Motion to Dismiss in its entirety.

14

15    **DATED** this 2nd day of October, 2024.

16                                      **CHATTAH LAW GROUP**

17                                        _____*/s/ Sigal Chattah*_____

18                                      SIGAL CHATTAH, ESQ.
                                        Nevada Bar No.: 8264
19                                      5875 S. Rainbow Blvd., #203
                                        Las Vegas, Nevada 89118
20

21                                      **JOEY GILBERT LAW**

22                                        _____*/s/ Joseph S. Gilbert*_____

23                                      JOSEPH S. GILBERT, ESQ.
                                        Nevada State Bar No.: 9033
24                                      405 Marsh Avenue
                                        Reno, Nevada 89509
25                                      *Attorneys for Plaintiffs*

26

27  _____

28  [6] See ECF 6, 53-55

                                        20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 2nd day of October, 2024, I personally served a true copy of the foregoing Plaintiffs' RESPONSE TO DEFENDANTS' MOTION TO DISMISS by the Court's electronic service system to all registered parties:

*/s/ Sigal Chattah*
_____

An Agent of Chattah Law Group