Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira S. Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center for Muslims in America*
100 N. Central Expy, STE 1010
Richardson, Texas 75080
Telephone: 972-915-2507
*Attorneys for Defendant AJP Educational Foundation, Inc.*

*The Constitutional Law Center for Muslims in America
is the legal division of the Muslim Legal Fund of America.*

Margaret A. McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COREY GERWASKI, | Case No. 2:24-cv-00985- APG-MDC |
| Plaintiff, | |
| v. | |
| STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX, | **DEFENDANT AJP EDUCATIONAL FOUNDATION, INC'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |
| Defendants. | |

Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") moves to dismiss this case under Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6). Plaintiff failed to timely serve AMP within 90 days of the filing of his complaint. Further, Plaintiff fails to plead facts sufficient to establish this Court's personal jurisdiction over AMP. Finally, Plaintiff fails to state a claim against AMP.

Respectfully submitted,

Dated: October 8, 2024

*/s/ Christina A. Jump*
Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational Foundation, Inc.*

*\*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*

Maggie McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **DISTRICT OF NEVADA**

9 COREY GERWASKI,                                          Case No. 2:24-cv-00985- APG-MDC

10                    Plaintiff,

11                    v.

12 STATE OF NEVADA, ex rel. BOARD
   OF REGENTS of the NEVADA
13 SYSTEM OF HIGHER EDUCATION,
   on behalf of the UNIVERSITY OF        **MEMORANDUM OF POINTS AND**
14 NEVADA, LAS VEGAS; KEITH              **AUTHORITIES IN SUPPORT OF**
   WHITFIELD, individually; AJP          **DEFENDANT AMP's MOTION TO DISMISS**
15 EDUCATIONAL FOUNDATION INC.,
   a California Non-Profit Corporation;
16 STUDENTS FOR JUSTICE OF
   PALESTINE-UNLV; NATIONAL
17 STUDENTS FOR JUSTICE OF
   PALESTINE; NEVADANS FOR
18 PALESTINIAN LIBERATION;
   DOES I-XX and ROE entities I-XX,
19
20                    Defendants.

21

22

23

24

25

26

27

28

ii

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... iii

TABLE OF AUTHORITIES ............................................................................................ iv

I.      INTRODUCTION ................................................................................................ 1

II.     FACTS AND PROCEDURAL HISTORY ......................................................... 1

III.    STANDARDS OF REVIEW ............................................................................... 5

        A.    Federal Rule of Civil Procedure 12(b)(2) .............................................. 5

        B.    Federal Rule of Civil Procedure 12(b)(5) .............................................. 6

        C.    Federal Rule of Civil Procedure 12(b)(6) .............................................. 6

        D.    The Anti-Terrorism Act, 18 U.S.C. § 2333(d) ....................................... 7

        E.    Intentional Infliction of Emotional Distress .......................................... 8

IV.     ARGUMENT ........................................................................................................ 9

        A.    Plaintiff Fails to Establish This Court's Jurisdiction Over AMP ........... 9

              1.    Plaintiff failed to serve AMP within the 90 days required by Rule 4 ................. 9

              2.    Plaintiff fails to establish this Court's personal jurisdiction over AMP ............. 9

        B.    Plaintiff Fails to State a Claim Under the ATA ..................................... 12

              1.    Plaintiff fails to allege personal harm by an act of international terrorism ........ 12

              2.    Plaintiff alleges no knowing and substantial assistance to Hamas by AMP ....... 13

        C.    Plaintiff Fails to Properly State an IIED Claim Against AMP .............. 15

              1.    Plaintiff does not allege AMP engaged in extreme and outrageous conduct with the intention of or reckless disregard for causing emotional distress .............................................................................. 15

              2.    Plaintiff does not allege he suffered severe or extreme emotional distress ........ 16

              3.    Plaintiff does not allege any act by AMP that led to Plaintiff's emotional distress .................................................................................. 17

        D.    The First Amendment Bars Plaintiff's Claims ...................................... 17

V.      CONCLUSION ................................................................................................... 17

CERTIFICATE OF SERVICE ........................................................................................ 19

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ................................................................................................................ 7

4

*Ausloos v. Binkele*
   No. 2:22-cv-00372-APG-DJA, 2022 U.S. Dist. LEXIS 206960 (D. Nev. Nov. 15, 2022) .......... 6

5

*Banerjee v. Cont'l, Inc.*
   No. 2:16-cv-669-JCM-VCF, 2016 U.S. Dist. LEXIS 141891 (D. Nev. Oct. 11, 2016) ............... 8

6

7

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................................................... 7, 12

8

*Boschetto v. Hansing*
   539 F.3d 1011 (9th Cir. 2008) ............................................................................................. 10

9

*Burger King, Corp. v. Rudzewicz*
   471 U.S. 462 (1985) ............................................................................................................ 11

10

11

*Carr v. Int'l Game Tech.*
   770 F. Supp. 2d 1080 (D. Nev. 2011) ................................................................................... 9

12

13

*Copeland v. Twitter, Inc.*
   No. 18-17327, 2024 U.S. App. LEXIS 7806 (9th Cir. Apr. 1, 2024) ........................................ 14

14

*Denson v. Lucas*
   No. 2:10-cv-525-APG-VCF, 2013 U.S. Dist. LEXIS 99437 (D. Nev. July 8, 2013) .................... 6

15

16

*Direct Mail Specialists Inc. v. Eclat Computerized Techs., Inc.*
   840 F.2d 685 (9th Cir. 1988) ................................................................................................ 9

17

*Doe v. Billups*
   No. 2:23-cv-00334-APG-DJA, 2023 U.S. Dist. LEXIS 236047 (D. Nev. Sept. 26, 2023) ....... 17

18

19

*Fields v. Twitter, Inc.*
   881 F.3d 739 (9th Cir. 2018) ......................................................................................... 13, 14

20

*Hale v. NV Prop. 1, LLC*
   No. 22-16274, 2024 U.S. App. LEXIS 6389 (9th Cir. Mar. 18, 2024) ................................. 9, 16

21

22

*Int'l Shoe Co. v. Wash.*
   326 U.S. 310 (1945) ................................................................................................... 5, 10, 11

23

*Issac v. Circle K*
   No. 2:13-cv-00283-APG-CWH, 2014 U.S. Dist. LEXIS 134356 (D. Nev. Jan. 24, 2014) .. 5, 10

24

25

*Kennedy v. Carriage Cemetery Servs., Inc.*
   727 F. Supp. 2d 925 (D. Nev. 2010) .................................................................................... 16

26

*Leisrael v. Educ. for A Just Peace in the Middle E.*
   530 F. Supp. 3d 8 (D.D.C. 2021) ......................................................................................... 15

27

28

iv

*Leisrael v. Educ. For a Just Peace in the Middle E.*
  66 F.4th 1007 (D.C. Cir. 2023) ................................................................... 8, 14

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*
  526 U.S. 344 (1999) ...................................................................................... 9

*My Daily Choice v. Hunter*
  No. 2:20-cv-00809-APG-DJA, 2020 U.S. Dist. LEXIS 134946 (D. Nev. July 30, 2020) ..... 5, 10

*NAACP v. Claiborne Hardware Co.*
  458 U.S. 886 (1982) ....................................................................................... 17

*Neitzke v. Williams*
  490 U.S. 319 (1989) ......................................................................................... 7

*Never Too Hungover, LLC v. Drinkaid LLP*
  No. 2:23-cv-01347-APG-EJY, 2023 U.S. Dist. LEXIS 199425 (D. Nev. Nov. 6, 2023) ...... 5, 10

*Posadas v. City of Reno*
  851 P.2d 438 (Nev. 1993) ................................................................................. 8

*Rosemond v. United States*
  572 U.S. 65 (2014) .......................................................................................... 8

*Schwarzenegger v. Fred Martin Motor Co.*
  374 F.3d 797 (9th Cir. 2004) ..................................................................... 10, 11

*S.J. v. Issaquah Sch. Dist. No. 411*
  470 F.3d 1288 (9th Cir. 2006) ......................................................................... 9

*Snyder v. Phelps*
  562 U.S. 443 (2011) ....................................................................................... 17

*Thomas v. Harroun*
  2024 U.S. Dist. LEXIS 172163 (D. Nev. Sept. 24, 2024) ..................................... 7

*Twitter, Inc. v. Taamneh*
  598 U.S. 471 (2023) ............................................................................. 8, 14, 15

*Warren v. Dollar Tree*
  No. 2:23-cv-1377-APG-EJY, 2024 U.S. Dist. LEXIS 6692 (D. Nev. Jan. 11, 2024) .............. 16

**Statutes**

18 U.S.C. § 2331(1) ............................................................................................. 12

18 U.S.C. § 2333(a) ............................................................................................ 12

18 U.S.C. § 2333(d) ............................................................................................ 13

**Rules**

Fed. R. Civ. P. 4 ................................................................................................. 9

Fed. R. Civ. P. 12(b) ....................................................................................... 5, 6

1

## I.  INTRODUCTION

The law does not equate free speech and the exercise of the right to freely associate with others with terrorism, even when not universally liked. AMP's allegedly tortious conduct consists of no more than free speech and advocacy in the United States, and Plaintiff's claims therefore fail as a matter of law. Plaintiff asks this Court to hold AMP liable to him under the ATA, based at least in part on Hamas' October 7, 2023 terrorist attack in Israel. But Plaintiff fails to allege any facts sufficient to show AMP knowingly and substantially assisted Hamas in that attack. Further, while that attack was undoubtedly a tragedy that caused loss of life and harm to many, Plaintiff alleges no harm <u>he</u> suffered as a result of that attack. As to Plaintiff's IIED claim, those allegations fail as a matter of law as well.

Plaintiff's First Amended Complaint consists of 393 paragraphs, 196 of which are designated as a "Preliminary Statement." After sorting through all the distracting, inflammatory language, Plaintiff fails to state a claim against AMP under either cause of action he alleges against it. Therefore, Defendant AMP respectfully requests this Court dismiss Plaintiff's claims against AMP in their entirety and with prejudice.

## II.  FACTS AND PROCEDURAL HISTORY[1]

AMP operates wholly within the United States as a 501(c)(3) non-profit organization that works to advance Palestinian rights and awareness of Palestine's rich history and culture.[2] First Amended Complaint, at ¶ 20, ECF No. 6 (Aug. 9, 2024) ("Amend. Compl."). Today, and at all times relevant to the allegations in this lawsuit, AJP Educational Foundation, Inc. is the name of the single legal entity

---

[1] The following reflect the facts presented in Plaintiff's First Amended Complaint. At the Rule 12 stage, this Court must accept as true any non-conclusory allegations. At the appropriate time, AMP will dispute Plaintiff's recitation of the facts, which are in multiple places pulled verbatim from unrelated lawsuits pending against AMP outside of this district.

[2] Plaintiff alleges AMP purposefully obfuscates its corporate structure by using a designated "doing business as" name, as businesses of all types commonly do. *See* Amend. Compl. ¶¶ 20-26, 29. In reality, AMP's corporate structure is transparent and available in its publicly filed corporate documents, and legally compliant.

1   designated as a 501(c)(3) non-profit corporation, incorporated in California, with its principal place of

2   business in Virginia, with American Muslims for Palestine ("AMP") as its designated d/b/a.[3] AMP is not

3   a separately incorporated legal entity. *Cf. id.* ¶ 29. Where this Motion uses "AMP," that name refers to

4   the sole legal entity named in Plaintiff's First Amended Complaint, and no other entity. Since its founding

5   in 2006, AMP has continuously worked toward its stated mission to educate the U.S. public.[4] AMP does

6   not accept donations from outside of the United States, nor does it send money to any party outside of

7   the United States.[5] AMP is affiliated with the separately incorporated 501(c)(4) organization AJP Action,

8   which engages in lobbying efforts AMP cannot as a legally compliant 501(c)(3) organization. *Id.* ¶ 21.

9

10  AJP Action is not a defendant in this lawsuit and not relevant to the consideration of the claims Plaintiff

11  asserts.

12          Plaintiff alleges that Defendant National Students for Justice in Palestine ("NSJP") is the "student

13  advocacy arm of AMP," though no corporate or other relationship exists between the two.[6] *Id.* ¶ 24.

14  Plaintiff alleges AMP "continues to threat [sic] American Universities and college students" through use

15  of social media. *Id.* ¶ 27. Plaintiff alleges AMP "controls NSJP and uses it to operate a propaganda

16  machine for Hamas." *Id.* ¶ 34. Plaintiff also alleges that AMP "sponsored the first SJP National

17  Convention to unite the various SJP chapters." *Id.* ¶ 38. Plaintiff recites that "AMP's message to college

18

19  campuses through NSJP is unambiguous: violent attacks are a justified response to Zionism as an idea,

20  to Israel as an entity, and to Zionists as people." *Compare id.* ¶ 40 *with* Complaint for Damages and Jury

21

22

---

23  [3] This Court may take judicial notice of AMP's publicly available incorporation documents and fictitious name certificate, available through the Virginia Secretary of State's website (entity ID F2044636). *See Barron v. Bank of N.Y. Mellon*, 2:15-cv-00242-APG-GWF, 2015 U.S. Dist. LEXIS 62809, at *3 n.2 (D. Nev. May 13, 2015) (taking judicial notice of publicly-filed documents pursuant to Fed. R. Evid. 201).

24

25  [4] *About AMP*, AMERICAN MUSLIMS FOR PALESTINE, https://www.ampalestine.org/about-amp (last visited October 1, 2024).

26

27  [5] *See id.*

28  [6] AMP is a stand-alone organization with no corporate affiliation to any other defendant in this case, including NSJP. AMP takes no position in this Motion on the veracity or Plaintiff's claims against NSJP or any other defendant and responds on its own behalf solely as to the allegations made against AMP.

Trial Demand, at ¶ 39, *Parizer et al. v. AJP Educational Foundation, Inc. et al.*, 1:24-cv-00724 (E.D. Va. May 1, 2024), ECF No. 1 ("Parizer Compl."). Plaintiff continues by asserting that "after October 7"[7] "days of rage and directives called on by Ismail Haniyah, Khaled Mishal, and Iran's Ayatollah Ali Khameni,[8] were now being acted out on U.S. college campuses through the leadership and organization of AMP and NSJP." Amend. Compl. ¶¶ 43, 45. Plaintiff concludes that "[i]t has become clear that foreign terrorist organizations were directly influencing American University [sic] policies through the chaotic infrastructure of dissent and upheaval created by AMP and NSJP." *Id*. ¶ 47.

Though Plaintiff fails to plead how the events harmed him directly, he alleges that on May 29, 2024 the United States Congressional House Oversight Committee "sent an initial letter requesting AMP turn over documents relating to the funding of and communications with NSJP, as well as anything regarding Hamas' brutal Oct. 7 terrorist attack against Israel." *Id.* ¶ 50. Plaintiff continues that on June 24, 2024, the committee chairman, James Comer, "threatened to subpoena AMP over its connections to protests at college campuses across the U.S." *Id.* ¶ 51. Plaintiff does not allege that any subpoena issued – and none did – yet Plaintiff alleges that "Rep. Comer has been stonewalled." *Id.* Plaintiff opines several more paragraphs about the Committee's letters to AMP, with conclusory and irrelevant allegations. *Id.* ¶¶ 52-55.[9]

Working backwards in time from the House Committee's letters in May and June 2024, Plaintiff again references events occurring on other college campuses subsequent to Hamas' October 7, 2023 terrorist attack. Plaintiff alleges that "[e]xactly as AMP intended, NSJP acted as Hamas' loyal foot

---

[7] AMP presumes this refers to Hamas' terrorist attack in Israel on that date in 2023, though at this point in his Complaint Plaintiff has yet to allege any facts about that event. Plaintiff likely relies on this Court's general familiarity with world events, though the pleadings do not make clear what specifically Plaintiff refers to.

[8] Plaintiff fails to identify these individuals or their roles. AMP presumes based on Google searches of the names that they are believed to be leaders of Hamas and Iran.

[9] Though not relevant to Plaintiff's claims against AMP, for completeness AMP directs this Court to its response to the House Committee's letter, available publicly here: https://www.ampalestine.org/media/media-room/statements/amp-responds-chairman-james-comers-misinformation-baseless-accusations.

soldiers for Hamas's propaganda battle on university campuses across the United States." *Compare id.* ¶ 70 *with* Parizer Compl. ¶ 53 ("Exactly as AMP intended, NSJP acted as Hamas's loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States."). Plaintiff recites allegations about a "Toolkit" he attributes to NSJP, without alleging that AMP knew about the Toolkit, contributed to its contents, or circulated it in any way. Amend. Compl. ¶¶ 70-72, 76-78, 80-84. Plaintiff alleges that "Defendants act as Hamas' public relations division and recruit students as domestic foot soldiers not only to disseminate Hamas's propaganda but also to foment violence, chaos, and fear across the United States and at UNLV to intimidate students and faculty and coerce change in American policy." *Id.* ¶ 93. Despite this general allegation and inflammatory conclusion about "Defendants," Plaintiff alleges no facts to support his conclusion that AMP engages in any of the actions described.

As it relates to Plaintiff's personal experiences on the University of Nevada Las Vegas ("UNLV") campus, Plaintiff makes the conclusory statement that AMP "called" "days of resistance" to "UNLV's SJP Chapters." *Id.* ¶ 102. He further asserts that "Defendants and UNLV" "see themselves as part of" "the same movement that terrorizes Jewish students at UNLV and continues to attack and terrorize them to this day." *Id.* ¶ 116. Plaintiff next makes many more unsupported conclusions: "Defendants have openly created a racially hostile environment where Jewish students are and were subjected to repeated racial slurs and threats and being shamed and humiliated on the basis of their race; " "Defendants" provide assistance to Hamas "through their propaganda at UNLV" that is "material, critical, systematic, and of significant monetary value; " and "Jewish students on campus have been forced to disavow an integral component of their Jewish identity or be denied the same rights and opportunities enjoyed by other members of the campus community." *Id.* ¶¶ 117, 119, 123. The remainder of the allegations in Plaintiff's "Preliminary Statement" and "Statement of Facts" do not relate to AMP, so AMP will not describe them here.

Plaintiff filed this action on May 26, 2024. ECF No. 1. This Court issued Summonses in this

matter on May 28, 2024. ECF No. 4. Plaintiff then amended his Complaint on August 9, 2024. ECF No. 6. Plaintiff served the Summons and First Amended Complaint on AMP at its headquarters in Falls Church, Virginia, on September 3, 2024. ECF No. 10. Defendant AMP sought and received a short extension to respond to Plaintiff's Amended Complaint. ECF Nos. 17, 18. AMP now timely files this Motion to Dismiss.

## III.    STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(2)

Plaintiffs bear the burden of demonstrating that courts have jurisdiction over the defendant. *My Daily Choice v. Hunter*, No. 2:20-cv-00809-APG-DJA, 2020 U.S. Dist. LEXIS 134946, at *4 (D. Nev. July 30, 2020). Courts review plaintiffs' pleadings and affidavits to determine whether plaintiffs meet their *prima facie* showing of jurisdictional facts sufficient to survive a motion to dismiss. *Id.* at *4-5. When defendants offer evidence controverting allegations, courts may only take the uncontroverted allegations as true when evaluating jurisdiction. *Id.* at *5. Courts may consider defendants' controverting evidence about jurisdiction. *Id.* Courts violate due process if they issue judgment against parties over which they lack jurisdiction. *Never Too Hungover, LLC v. Drinkaid LLP*, No. 2:23-cv-01347-APG-EJY, 2023 U.S. Dist. LEXIS 199425, at *2 (D. Nev. Nov. 6, 2023).

Federal courts may exercise personal jurisdiction over a defendant to the extent authorized by the state's jurisdictional statute. *Issac v. Circle K*, No. 2:13-cv-02283-APG-CWH, 2014 U.S. Dist. LEXIS 134356, at *1 (D. Nev. Jan. 24, 2014). In Nevada, the state's long-arm statute reaches only as far as is consistent with the Constitution of Nevada and the U.S. Constitution. *Id*. at *2. Courts may only exert personal jurisdiction over a non-resident defendant where the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

The minimum contacts analysis further bifurcates into specific and general jurisdiction. Where an

asserted cause of action arises from the defendant's contacts with the forum state, courts review whether the defendant's contacts may support specific jurisdiction. *Id.* When a claim does not relate to the defendant's contacts with the forum state, courts must analyze whether they may exercise general jurisdiction. *Id*. Courts may exercise general jurisdiction when the defendant's contacts with a forum state are so "continuous and systematic" that the defendant is "essentially at home" in the state; for corporations, general jurisdiction is generally limited to two locations: the corporation's place of incorporation, and its principal place of business. *Id*. at *3. Plaintiff correctly acknowledges AMP is incorporated in California, with its principal place of business in Virginia. Amend. Compl. ¶ 14.

**B.    Federal Rule of Civil Procedure 12(b)(5)**

Courts further may not exercise personal jurisdiction over defendants until plaintiffs properly serve the defendants with a summons compliant with Federal Rule of Civil Procedure 4. *Denson v. Lucas*, No. 2:10-cv-525-APG-VCF, 2013 U.S. Dist. LEXIS 99437, at *4 (D. Nev. July 8, 2013). Where defendants challenge service under Rule 12(b)(5), "the burden is on the party claiming proper service to establish its validity." *Id*. If courts find service to be deficient, courts possess discretion to dismiss the action or quash service. *Id*. at *5. Rule 4(m) provides that plaintiffs bear responsibility for serving the summons and complaint on the defendant within 90 days of filing the complaint. The serving party must substantially comply with Rule 4 for service to be effective. *Ausloos v. Binkele*, No. 2:22-cv-00372-APG-DJA, 2022 U.S. Dist. LEXIS 206960, at *2 (D. Nev. Nov. 15, 2022).

**C.    Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must contain sufficient factual allegations that, if accepted as true, state a plausible claim for relief. Claims are facially plausible when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant could be liable for the misconduct alleged, if those allegations ultimately prove true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged in a complaint "must be enough to raise a

1    right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The

2    complaint "must provide more than mere labels and conclusions," or a "formulaic recitation of the

3    elements of a cause of action." *Thomas v. Harroun*, 2:24-cv-00345-APG-MDC, 2024 U.S. Dist. LEXIS

4    172163, at *3 (D. Nev. Sept. 24, 2024). Courts need not apply the presumption of truth to "mere

5    conclusions." *Id.* (citing *Iqbal*, 556 U.S. at 679). Plaintiffs must support legal conclusions with factual

6    allegations. *Id.* Courts apply "judicial experience and common sense" to the "context-specific task" of

7    determining whether a complaint states a plausible claim for relief. *Id.* Courts may dismiss claims based

8    on "fanciful factual allegations" as legally untenable. *Id.* at *4 (citing *Neitzke v. Williams*, 490 U.S. 319,

9    327 (1989)).

**D.    The Anti-Terrorism Act, 18 U.S.C. § 2333(d)**

12        The Anti-Terrorism Act ("ATA") pled in Plaintiff's First Claim for Relief, creates a cause of

13    action for U.S. nationals injured by an act of international terrorism against, in relevant part, "any person

14    who aids and abets, by knowingly providing substantial assistance" to a designated foreign terrorist

15    organization that committed the act of international terrorism. 18 U.S.C. § 2333(d)(2). U.S. national

16    plaintiffs must first establish they were "injured in his or her person, property, or business by reason of

17    an act of international terrorism." *Id.* § 2333(a). Congress defines an act of international terrorism as

18    "violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States

19    or of any State, or that would be a criminal violation if committed within the jurisdiction of the United

20    States or of any State." *Id.* § 2331(1)(A). The violent or dangerous act must "appear to be intended (i) to

21    intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or

22    coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping."

23    *Id.* § 2331(1)(B). Finally, the relevant act of international terrorism must "occur primarily outside the

24    territorial jurisdiction of the United States." *Id.* § 2331(1)(C).

27        To establishing aiding and abetting liability under the ATA, plaintiffs must allege their injury

"[arose] from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization," and that the alleged aider/abettor "knowingly provided substantial assistance" to that act. *Id*. § 2333(d). A plaintiff must establish that the party alleged to have aided or abetted took "some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). Plaintiffs also bear the burden to establish that defendants were "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Leisrael v. Educ. For a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023). The defendant must "knowingly and substantially assist the principal violation." *Id.* Finally, Plaintiffs must allege facts that show the relevant assistance was both substantial and significantly enhanced the terrorist organization's ability to carry out those activities. *Taamneh*, 598 U.S. at 495 (finding insufficient the claim that a defendant assisted a "transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it").

**E.    Intentional Infliction of Emotional Distress**

To establish a claim for Intentional Infliction of Emotional Distress ("IIED"), as pled in Plaintiff's Ninth Claim for Relief, plaintiffs must prove (1) that a defendant engaged in extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) actual or proximate causation exists between the identified conduct and the distress. *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993). "Nevada courts refer to the Restatement (Second) of Torts § 46 for guidance in interpreting IIED claims." *Banerjee v. Cont'l, Inc.*, Case No. 2:16-cv-669-JCM-VCF, 2016 U.S. Dist. LEXIS 141891, at *15 (D. Nev. Oct. 11, 2016). Extreme and outrageous conduct requires far more than insulting and even threatening behavior, and instead must involve actions "outside all possible bounds of decency and [] regarded as utterly intolerable in a civilized community." *Hale v. NV Prop. 1, LLC*, No. 22-16274, 2024 U.S. App.

LEXIS 6389, at *3 (9th Cir. Mar. 18, 2024) (quoting *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998)).

## IV.    ARGUMENT

**A.    Plaintiff Fails to Establish This Court's Jurisdiction Over AMP**

1.    Plaintiff failed to serve AMP within the 90 days required by Rule 4

Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve all defendants within 90 days of the filing of a complaint. This Court may not exercise jurisdiction over a defendant "unless the defendant has been properly served under [Rule] 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."). Plaintiff filed his complaint on May 26, 2024, and therefore was required to serve all defendants by August 24, 2024. Fed. R. Civ. P. 4.  As August 24 was a Saturday, Plaintiff's deadline rolled to August 26, 2024, the following Monday. Plaintiff did not serve AMP prior to August 26, 2024. *See* ECF No. 10 (listing the date Plaintiff served AMP as September 3, 2024). Though Plaintiff filed an amended complaint on August 9, 2024, "the filing of an amended complaint does not restart the [ninety] day period provided by [Rule] 4(m)." *Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1100 (D. Nev. 2011). This Court may therefore dismiss Plaintiff's claims against AMP, as Plaintiff failed to timely serve AMP. *See, e.g., S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (highlighting the district court's discretion to dismiss an action or quash service when service is insufficient).

2.    Plaintiff fails to establish this Court's personal jurisdiction over AMP

This Court possesses no basis to exercise personal jurisdiction over AMP. AMP is not subject to general jurisdiction in the state of Nevada, and Plaintiff fails to plead facts about AMP's contacts with Nevada that could establish this Court's specific jurisdiction over AMP. Therefore, exercise of jurisdiction by this court would violate due process requirements. *Never Too Hungover, LLC*, 2023 U.S.

9

Dist. LEXIS 199425, at *2.

Once a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden to establish how jurisdiction is proper. *My Daily Choice*, 2020 U.S. Dist. LEXIS 134946, at *4; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Courts review the pleadings and any affidavits to determine whether jurisdiction exists, taking only uncontroverted facts as true. *My Daily Choice*, 2020 U.S. Dist. LEXIS 134946, at *5. Nevada's long-arm jurisdictional statute allows jurisdiction to the extent consistent with Nevada's Constitution and the U.S. Constitution. *Issac*, 2014 U.S. Dist. LEXIS 134356, at *2. Constitutional due process requires that plaintiffs establish how each defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945).

Courts consider minimum contacts through the lens of general and specific jurisdiction. Where defendants are "essentially at home" in a state through "continuous and systematic" contacts, courts may exercise general jurisdiction over that defendant. *Issac*, 2014 U.S. Dist. LEXIS 134356, at *2. For corporations, general jurisdiction usually only exists in the state where the entity is incorporated and the state in which it has its principal place of business. *Id*., at *3.  To determine whether specific jurisdiction exists, courts review whether the defendant has "sufficient minimum contacts with [the forum state] arising from, or related to" the cause of action. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). The Ninth Circuit applies a three-prong test to this analysis: "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id*. at 802.

1    Plaintiffs bear the burden to establish the first two prongs of the test; if they do so, the burden shifts to

2    the defendant to show how exercise of jurisdiction would be unreasonable. *Id*; *see also Burger King,*

3    *Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

4           AMP is incorporated in California and with its principal place of business in Virginia. Amend.

5    Compl. ¶ 14. Plaintiff shows no basis by which this Court could properly exercise general jurisdiction

6    over AMP. This Court's analysis therefore turns to whether it may properly exercise specific jurisdiction

7    over AMP in this matter. It cannot. Plaintiff fails to plead any facts that show AMP "purposefully availed

8    itself of the privilege of conducting activities in [Nevada], or purposefully directed its activities toward

9    [Nevada]." *Schwarzenegger*, 374 F.3d at 802. Plaintiff pleads no facts about any activities of AMP in

10   Nevada, like whether it enters into contracts in Nevada or distributes goods or services in Nevada,

11   sufficient to show how AMP may have availed itself of the privilege and benefit of the laws of Nevada.

12   Because Plaintiff does not plead any facts asserting AMP's contacts with Nevada, Plaintiff's claim

13   necessarily cannot arise out of any AMP contacts with Nevada. Plaintiff fails to present even a *prima*

14   *facie* showing of this Court's jurisdiction over AMP.

15          Were this Court to find otherwise, any exercise of this Court's jurisdiction over AMP does not

16   "comport with fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. AMP has no contact with

17   Nevada sufficient that they would "reasonably anticipate being haled into court" in Nevada. *Burger King*,

18   471 U.S. at 474. Plaintiff's allegations, to the extent they relate to any location, address AMP's actions

19   at its principal place of business in Virginia. *See generally* Amend. Compl. ¶¶ 20, 22, 26. Plaintiff also

20   alleges actions by AMP related to the House Committee letter referenced in the Complaint, which by

21   definition took place in Washington, D.C. *Id*. ¶¶ 50-55. Based on Plaintiff's allegations, AMP cannot

22   reasonably have foreseen being subject to the jurisdiction of a Nevada court. AMP therefore requests this

23   Court decline to exercise jurisdiction against AMP, and dismiss Plaintiff's claims against it.

24   / / /

11

1

**B.      Plaintiff Fails to State a Claim Under the ATA**

2

Even if this Court determines a basis for jurisdiction over AMP, Plaintiff's ATA claim fails as a

3

matter of law because Plaintiff fails to state a claim against AMP upon which relief can be granted.

4

Plaintiff does not allege the prerequisite that he is a U.S. national; this alone is fatal. 18 U.S.C. § 2333(a)

5

("Any national of the United States…"). Even if he did, Plaintiff fails to allege harm to his "person,

6

property, or business" by any act of international terrorism. *Id.* Plaintiff further fails to allege AMP

7

substantially assisted Hamas in any way, least of all with Hamas' October 7 terrorist attack in Israel.

8

Plaintiff's ATA claim against AMP therefore fails because he fails in every respect to plead facts

9

supporting the required elements of this claim.

10

11

   1. <u>Plaintiff fails to allege personal harm by an act of international terrorism</u>

12

To state a claim under the ATA, a plaintiff must preliminarily allege "injur[ies] in his or her

13

person, property, or business by reason of an act of international terrorism." *Id.* Plaintiff fails to do that.

14

Plaintiff's First Amended Complaint never clearly states any harm he alleges he suffered, nor what act of

15

international terrorism he claims caused any direct injuries to him. *See generally* Amend. Compl. ¶¶ 249-

16

266. This Court well knows that complaints that merely recite the elements of a cause of action and legal

17

conclusions cannot withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. Plaintiff's ATA claim

18

against AMP therefore fails as a matter of law.

19

20

Three elements comprise an act of "international terrorism" as defined by the statute. 18 U.S.C. §

21

2331(1). First, the act must be a violent act or one dangerous to human life that violates the laws of the

22

United States, or would be a criminal violation if committed within the jurisdiction of the United States.

23

*Id*. § 2331(1)(A). Second, the action must "appear to be intended" to intimidate or coerce a civilian

24

25

population, or a policy or conduct of a government. *Id*. § 2331(1)(B). Finally, the act must "occur

26

primarily outside the territorial jurisdiction of the United States." *Id*. § 2331(1)(C). Plaintiff relies on

27

Hamas' October 7, 2023 terrorist attacks in Israel, as well as the ongoing conflict between Israel and

28

Hamas. Amend. Compl. ¶ 253. AMP does not challenge that Hamas' actions constitute acts of international terrorism under the definition of the statute. AMP does challenge, though, whether Plaintiff suffered any harm in his "person, property, or business" due to Hamas' actions, either on October 7 or thereafter. All direct harm Plaintiff alleges resulted from actions he claims other parties took within the United States, including being terminated from his job at the UNLV library, facing hostile and discriminatory conduct from UNLV officials and other students he characterizes as "pro-Palestine," and being "verbally assaulted" by individuals from the Nevada Palestine Liberation group. *Id*. ¶¶ 222, 227, 230, 245. Plaintiff's alleged harms did not arise "by reason of" international terrorism, and reach far beyond Congress' express intended use of the ATA. *Fields v. Twitter Inc.*, 881 F.3d 739, 749 (9th Cir. 2018) (characterizing recovery beyond direct causation as a troubling overreach). Plaintiff alleges no harm resulting from a violent or dangerous act that occurred outside of the United States as required by the definition in the ATA.

       2.   <u>Plaintiff alleges no knowing and substantial assistance to Hamas by AMP</u>

      Plaintiff's ATA claim against AMP also fails as a matter of law because he fails to plead facts that could show AMP knowingly provided substantial assistance to Hamas. Congress amended the ATA in 2016 to include secondary liability for any person who "aids and abets, by knowingly providing substantial assistance" to a designated foreign terrorist organization. 18 U.S.C. § 2333(d). Plaintiff brings his claim under this secondary liability theory. Amend. Compl. at 56 ("Violation of the Anti-Terrorism Act, 18 U.S.C. § 2333(d)"). Plaintiff fails to sufficiently state a claim for aiding and abetting liability against AMP because he fails to allege AMP had any advance knowledge of Hamas' October 7, 2023 attacks. Plaintiff also fails to allege AMP provided any assistance to Hamas, much less "substantial assistance," under the Supreme Court and Ninth Circuit's governing case law.

      The Supreme Court limits aiding and abetting liability under the ATA to "conscious, voluntary, and culpable participation in another's wrongdoing." *Taamneh*, 598 U.S. at 493; *see also Copeland v.*

13

1   *Twitter, Inc*, No. 18-17327, 2024 U.S. App. LEXIS 7806, at *4 (9th Cir. Apr. 1, 2024) (incorporating the

2   standard of knowing, substantial, and culpable assistance to affirm dismissal of an ATA claim). Similarly,

3   the Ninth Circuit requires plaintiffs to plead facts that show the defendant's assistance directly caused the

4   plaintiff's injury. *Fields*, 881 F.3d at 749. Overbroad liability beyond truly culpable conduct would allow

5   for "one person [to] be made a trespasser and even a felon against his or her consent" by the mere

6   "overheated zeal of another." *Taamneh*, 598 U.S. at 489. A plaintiff must therefore show three required

7   elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2)

8   the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the

9   time he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the

10  principal violation." *Leisrael v. Educ. for A Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir.

11  2023) (reciting the standard set by the ATA amendments and affirming dismissal of the claims asserted).

12          Plaintiff fails to allege facts sufficient to support any of these three elements. As explained above,

13  Plaintiff fails to allege facts to show he suffered any injury from Hamas' October 7 terrorist attack.

14  Plaintiff also fails to allege AMP was aware of any "role as part of an overall illegal or tortious activity."

15  *Leisrael*, 66 F.4th at 1016. Plaintiff merely provides the conclusory assertions that "Defendants have

16  provided substantial assistance to Hamas by acting as its propaganda wing in the United States" and

17  "Defendants knowingly provide substantial assistance to Hamas through their services." Amend. Compl.

18  ¶¶ 254, 259. Not only do these allegations fail to state a claim against AMP specifically, they also fail to

19  show that AMP had any awareness of any role it supposedly played in Hamas' tortious activities. Plaintiff

20  alleges that "Defendants confirm not only that they are aware that their propaganda and incitement

21  activities support Hamas but also that they perceive themselves as 'PART of' Hamas's 'Unity Intifada'

22  – the terror regime that has damaged Plaintiff." *Id.* ¶ 259. Plaintiff fails, however, to tie this conclusion

23  to any awareness by AMP. Even Plaintiff's allegations that AMP acted as Hamas' propaganda wing fails

24  to satisfy Plaintiff's burden to connect AMP directly with any specific act of terrorism that allegedly

injured Plaintiff. *Taamneh*, 598 U.S. at 497, 503. Plaintiff instead asks this Court to make irrational assumptions based on legally protected speech and actions by AMP, that occurred wholly in the United States, to fill Plaintiff's pleading deficiencies. The law does not permit that.

Plaintiff also fails to allege facts sufficient to show AMP provided assistance sufficient to meet the "substantial" standard of the test. A generalized role, that fails to allege the defendant was "one in spirit" with the terrorist organization, does not suffice. *See Leisrael v. Educ. for A Just Peace in the Middle E.*, 530 F. Supp. 3d 8, 15 (D.D.C. 2021) (collecting cases). Plaintiff in this case alleges no more than that AMP "is a grassroots organization dedicated to advancing the movement for justice in Palestine by educating the American public about Palestine and its rich cultural, historical, and religious heritage." Amend. Compl. ¶ 20. That violates no law in the United States. Plaintiff concludes that AMP "operate[s] a propaganda machine for Hamas" and vaguely that "Defendants do not just parrot Hamas's talking points." *Id.* ¶¶ 34, 106. These conclusory statements fail to sufficiently state a claim that AMP intended "to make [] succeed" any of Hamas' actions, either on October 7, 2023 or afterward, or show substantial assistance. Plaintiff's ATA claim against AMP fails on every element and therefore warrants dismissal.

**C.    Plaintiff Fails to Properly State an IIED Claim Against AMP**

Plaintiff fails to state a claim for intentional infliction of emotional distress against AMP, as pled in Plaintiff's Ninth Claim for Relief. Amend. Compl. at 72 ("Intentional Infliction of Emotion [sic] Distress").  Plaintiff does not allege that AMP engaged in any conduct that rises to the level of extreme and outrageous. Plaintiff also does not allege, beyond conclusory statements, that he suffered severe or extreme emotional distress. Finally, Plaintiff does not allege any direct or proximate link between any act by AMP and Plaintiff's purported emotional distress. Plaintiff's IIED claim against AMP fails in every respect under the law and AMP asks this Court to therefore dismiss it.

1.    Plaintiff does not allege AMP engaged in extreme and outrageous conduct with the intention of or reckless disregard for causing emotional distress

Plaintiff fails to allege that AMP engaged in conduct "outside of all possible bounds of decency"

15

that "no reasonable person could be expected to endure." *Hale*, 2024 U.S. App. LEXIS 6389, at *3. Even conduct that rises to insults, indignities, and threats does not reach the standard of conduct a plaintiff must plead for an IIED claim. *Id*. at *4.  Plaintiff further fails to allege any facts that could show AMP had any intention of causing emotional distress, or acted with reckless disregard for causing emotional distress. Even taking Plaintiff's few far-fetched factual allegations against AMP as true, he alleges only that AMP uses social media in a way he does not like, and "stonewalled" a U.S. Congressman. Amend. Compl. ¶¶ 27, 51. He alleges that "Defendants" constitute Hamas' propaganda wing by doing no more than disseminating materials and engage in protected speech. *Id*. ¶ 111 (alleging AMP called for economic strikes and boycotts). Despite his conclusory statements to the contrary, Plaintiff pleads no act by AMP that was "extreme and outrageous and intentionally conducted to cause emotional distress to Plaintiff." *Id*. ¶ 364.

### 2.    Plaintiff does not allege he suffered severe or extreme emotional distress

Where emotional distress damages are not secondary to an accompanying physical injury, plaintiffs must plead either that physical impact resulted from emotional distress, or provide proof of serious illness. *Warren v. Dollar Tree*, No. 2:23-cv-1377-APG-EJY, 2024 U.S. Dist. LEXIS 6692, at *5 (D. Nev. Jan. 11, 2024). A "purely emotionally upsetting situation," insomnia, nightmares, and general nervousness do not suffice. *Id*. (citing *Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933 (D. Nev. 2010)). Instead, plaintiffs must plead "objectively verifiable evidence" of harm, such as a need for psychiatric assistance. *Id*.[10] Plaintiff here pleads no more than "great humiliation, embarrassment, shame, and other pain and suffering." Amend. Compl. ¶ 365. He pleads no resulting change in behavior, nor that he sought or received treatment for the emotional distress he asserts he suffered. *See Doe v. Billups*, No. 2:23-cv-00334-APG-DJA, 2023 U.S. Dist. LEXIS 236047, at *5 (D. Nev. Sept. 26, 2023) (finding sufficient allegations of behavioral change, including the plaintiff

---

[10] Plaintiff does assert the "necess[ity] for Plaintiff to retain the services of legal counsel." Amend. Compl. ¶ 368. That does not suffice.

distancing and isolating himself from his family). Plaintiff's allegations fail to state any indicia of emotional distress and fall far short of the legal requirements he must show. His claim therefore fails as a matter of law.

    3.    Plaintiff does not allege any act by AMP that led to Plaintiff's emotional distress

Finally, Plaintiff fails to plead that AMP's actions were the actual or proximate cause of any distress he experienced. Plaintiff does not allege he interacted with any representative of AMP in any way, and instead alleges other actors said or did things to him that he found distressing. *See generally* Amend. Compl. ¶¶ 217-248. Without even an attempt to plead facts supporting actual or proximate cause, Plaintiff fails on this element as well.

**D.    The First Amendment Bars Plaintiff's Claims**

Plaintiff in reality makes allegations that would have the effect of suppressing AMP's protected speech and association; the Constitution does not allow this. The Supreme Court determined that even offensive speech and conduct cannot give rise to tort claims where a claim cites speech alone. *Snyder v. Phelps*, 562 U.S. 443, 456 (2011). Even speech that includes intimidation, coercion, and threats of boycotts maintains First Amendment protections. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982). Plaintiff asserts speech by AMP that he disagrees with, and no more. Disagreeable speech does not lose the protection of the First Amendment; in fact, constitutional protections become even more important in that context. Plaintiff cannot hold AMP liable for mere speech, under any claim, without trampling the inherent meaning of the First Amendment.

**V.    CONCLUSION**

Plaintiff fails to plead facts that could establish liability for AMP under the ATA or his IIED claim. Plaintiff fails to plead that he suffered any injury from an act of international terrorism, or that AMP knowingly and substantially assisted in any act of international terrorism. AMP operates legally in the United States as a wholly domestic nonprofit in good standing with the U.S. government. It fulfills its mission to inform and educate Americans about Palestine and Palestinian culture and history. Plaintiff

17

alleges no more than that. Reliance on conclusory statements and irrational assumptions cannot compensate for Plaintiff's legal failures. Therefore, AMP respectfully asks this Court to dismiss Plaintiff's claims against AMP with prejudice.[11]

Dated: October 8, 2024

Respectfully submitted,

/s/ *Christina A. Jump*
Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational Foundation, Inc.*

*\*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*

Maggie McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

---

[11] *See Copeland*, 2024 U.S. App. LEXIS 7806, at *4 (denying leave to amend where plaintiffs fail to allege a required element of an ATA claim); *see also Friedman v. Canteen Vending*, No. 3:09-CV-00403-LRH-VPC, 2011 U.S. Dist. LEXIS 38733, at *7 (D. Nev. Apr. 7, 2011) (denying leave to amend where it was clear amendment could not cure jurisdictional deficiencies).

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 8th day of October 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Christina A. Jump*
Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational
Foundation, Inc.*

*\*The Constitutional Law Center for Muslims in
America is the legal division of the Muslim Legal
Fund of America*