SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd., #205
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com

JOSEPH S. GILBERT, ESQ.
Nevada State Bar No.: 9033
JOEY GILBERT LAW
405 Marsh Avenue
Reno, Nevada 89509
Tel: (775) 284-7700
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
*Co-Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COREY GERWASKI, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEYM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually, AJP EDUCATIONAL FOUNDATION INC., A California Non-Profit Corporation, STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION DOES I-XX and ROE entities I-XX. <br><br> Defendants. | Case No.: 2:24-cv-00985 <br><br><br> **OPPOSITION TO MOTION TO DISMISS** <br><br><br> **[ORAL ARGUMENT REQUESTED]** |

1

COMES NOW, Plaintiff, COREY GERWASKI, (hereinafter "Gerwaski" *inter alia*) by and through his attorneys of record, SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP and JOSEPH S. GILBERT, ESQ., of JOEY GILBERT LAW, and file the foregoing Response to Motion to Dismiss Complaint [ECF 24] filed by Defendant AJP Educational Foundation, Inc. in the above-entitled action.

## **INTRODUCTION**

The following action involves religious discrimination, harassment and obstruction against Plaintiff as a student at the University of Nevada Las Vegas, in addition to as an employee of University of Nevada Las Vegas under both Title VII and Title IX.

Defendants AJP Educational Foundation Inc. a/k/a American Muslims for Palestine (hereinafter "AMP") are included as a party to this action, for their actions in soliciting, inciting and encouraging students at UNLV, along with faculty to engage in harassment of Jewish students at the University, and successfully coordinating the harassment and plight of Mr. Gerwaski herein. It is no coincidence that AMP, specifically engaged in activities at UNLV for the purposes of deliberately tormenting and harassing Jewish students and wreaking havoc on Jewish student life on campus. AMP's actions not only encouraged and solicited harassment against Jewish students on UNLV's campus, it also legitimized blatant antisemitic acts that Mr. Gerwaski was subjected to by students and faculty.

AMP's acts of dehumanizing Jewish students on campus, by "checking" the Zionist presence there effected Mr. Gerwaski, as a member of the Student Government wherein he was subjected to overwhelming antisemitic acts as a result of the legitimization of harassment and obstruction that AMP successfully encouraged on campus.

Notwithstanding the coordination, with NSJP and SJP-UNLV and other organizations obstruct, harass and intimidate Jewish students such as Gerwaski, and specifically Gerwaski,

AMP knowingly used or permitted the use of funds raised by a solicitation of contributions and manpower to provide support to terrorists, terrorist organizations and terrorist activities as delineated in the First Amended Complaint (hereinafter "FAC").

Therefore, AMP's acts were two-fold; first, to target Jewish students at UNLV and subject them and Gerwaski to harassment by encouraging and soliciting said harassment; and second, coordinating with overseas Foreign Terrorist Organizations (FTOs) to continue their terrorist actions against Israeli citizens and American interests in violation of US laws as delineated herein.

## STATEMENT OF FACTS

After October 7, 2023, students at UNLV and faculty rallied to support Hamas, whose terrorists had invaded Israel to murder, torture, and rape 1,200 people and abduct hundreds of civilians. As Plaintiff alleges in his FAC, AMP encouraged antisemitic discrimination and harassment of Jewish students at UNLV directly resulting on unimaginable harassment against Jewish students across campus and overwhelming harassment and discrimination against Mr. Gerwaski.

Defendant AMP's roll and acts in this case are particularly egregious because their roll was two-fold. First, on-campus acting to sow chaos at the University, inciting, encouraging and soliciting harassment of Jewish students and delegitimizing their presence on campus, encouraging students and faculty to follow their lead. Off campus, because of the coordinated activities that AMP engaged in on university campuses facilitated support to FTOs as recognized by Hamas itself. As Hamas terrorists targeted Israel, AMP (through its campus brand) declared it is "PART of" Hamas and under its "unified command" and began pumping a pro-Hamas narrative and propaganda around America and specifically at UNLV.

AMP is Hamas' propaganda arm in the United States creating a platform of pro-terrorist activities. AMP continuously supplied Hamas with invaluable support through recruitment, fundraising, human mobilization and volunteers to further their terrorist agenda.

On university campuses world-wide, National Students for Justice for Palestine ("NSJP") and locally, SJP-UNLV, AMP declared that it is "PART of" Hamas and operating under its "unified command," and it unleashed a concerted propaganda and disruption campaign on America's University campuses. Plaintiff seeks to hold AMP liable for its role in furthering the chaos and mayhem caused on UNLV's campus against Gerwaski: supplying pro-Hamas propaganda services—before, during, and after October 7—to maximize Hamas' terrorist activities, and radicalize and legitimize support for Hamas' terrorist activities.

## **LEGAL ARGUMENT**

### A.    **THIS COURT HAS JURISDICTION OVER AMP**

Plaintiff submits herein, that good cause exists for Defendants to have been served on September 3, 2024, approximately ten (10) days of the service period of the initial Complaint, and less than 30 days of filing the Amended Complaint. *Assuming arguendo* that this Court finds that Plaintiff's did not comply with Fed. R. Civ. P 4(m), Plaintiffs seeks an extension retroactively to qualify this Amended Complaint as properly served, since Defendant was aware of the Complaint[1] as delineated herein.

As delineated herein, this Court should maintain jurisdiction over AMP since AMP knew about the Amended Complaint, attempts were made to serve them with the Complaint and there is no prejudicial effect to AMP by this Court maintaining jurisdiction hereon.

---

[1] It is significant to note that this lawsuit has been covered by various national new outlets as a result of the subject matter alleged. *See* Lawsuit filed against MIT accuses the university of allowing antisemitism on campus | AP News

Federal Rule of Civil Procedure 4(m) requires that defendants be served with process within 90 days after the complaint is filed. If the plaintiff fails to meet this deadline, "the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* However, Rule 4(m) instructs the court to extend the time to serve "for an appropriate period" if the plaintiff shows good cause for the failure to timely serve process. *Nimble v Macomber,* 2:24-cv-1259-DJC-CSK (E.D. Cal. Aug. 21, 2024)

Relevant herein, courts have found that the filing of an amended complaint does not restart the time for service under Rule 4(m) "except as to those defendants newly added in the amended complaint." *Carr v. Int'l Game Tech.*, 770 F.Supp.2d 1080, 1100 (D. Nev. 2011) (*citing Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006)).

In determining whether or not to extend time for service, courts within the Ninth Circuit engage in a two-step analysis, pursuant to Fed.R.Civ.P. 4(m). First, where good cause is shown, the time for serving the complaint is extended for an appropriate period. *See* Fed.R.Civ.P. 4(m). "Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period." *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).  Where good cause is not found, the Court exercises its discretion to extend time to effectuate service ***when the extension is sought retroactively*** after the defendant was served or if the defendant is aware of the case. [*Emphasis added*] *See U.S. Bank Tr. v. Guevara,* Case No.: 2:18-cv-00004-JCM-NJK (D. Nev. Jul. 9, 2018).

Here while Plaintiff concedes that filing an Amended Complaint does not automatically restart the service period. However, federal courts have construed the service rules liberally to permit plaintiffs additional time for service where reasonable but unsuccessful efforts have been made.

5

As the District Court of Nevada has noted, "Congress intended that a plaintiff who had made reasonable efforts to effect service would be permitted additional time . . .." *Arroyo v. Wheat* , , 102 F.R.D. 516, 518 (D. Nev. 1984) (construing former Rule 4(j) and finding that "good cause" exists for extension of time where the plaintiff's service efforts have been bona fide, and there was no dilatory or willful delay) (emphasis added). The *Arroyo* court also noted that "[i]t was not intended that [former] Rule 4(j) would be enforced harshly; that is why liberal extensions of time are permitted under Rule 6(b)." *Id.* (emphasis added).

Nevada's federal court has also determined that the Court "has broad discretion to extend time for service under Rule 4(m)." In considering whether to grant an extension, "a district court may consider factors 'like statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" *Woodbury Law, Ltd. v. Bank of Am*, Case No. 2:15-cv-02247 (D. Nev. Apr. 11, 2016).

Defendant AJP Educational Fund, is particularly cumbersome to serve, as the organization is a California Non-Profit, but no corporate filings are available in the State of California. Defendant AJP is actually incorporated in Virginia and has a bizarre corporate structure that is particularly difficult to decipher. It is significant to note that pending before this Court is Plaintiffs' Motion to Extend Service against NSJP, SJP and other collateral organizations that are part and parcel of AMP with no known headquarters across the nation[2] [*See* ECF 27].

Plaintiff attempted to serve Defendant AJP before August 26, 2024 at their address in Virginia and was notified by the process servers that their offices were locked with no-one there

---

[2] Defendant National Students for Justice in Palestine ("NSJP") is an unincorporated association without a formal principal place of business or publicly identified leadership structure. NSJP was founded by AMP to provide it on-campus management and control of hundreds of university chapters of Students for Justice in Palestine ("SJP"). AMP controls NSJP and uses it to operate a propaganda machine for Hamas and its affiliates across American college campuses.

numerous times.[3] After four times, Service of Process was finally effectuated thereon. Therefore, good cause exists to retroactively extend the service of process date to the date Defendants were served with the Amended Complaint.

      **1. Plaintiff Alleges Sufficient Minimum Contacts to Satisfy Both Specific and General Jurisdiction over AMP.**

Personal jurisdiction comes in two varieties: general and specific. General jurisdiction "extends to 'any and all claims' brought against a defendant," but it is appropriate only "when a defendant is 'essentially at home' in the State." *Ford Motor Co. v Mont. Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

For specific jurisdiction to exist over a non-resident defendant, three conditions must be met. First, "the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail himself of the privileges of conducting activities in the forum'"; second, "the claim must be one which arises out[4] of or relates to the defendant's forum related activities"; and third, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1068 (9th Cir. 2017). The plaintiff bears the burden on the first two prongs. *Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 979 (9th Cir. 2021)*. If they are met, then the defendant "must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)).

Here as Plaintiff's Complaint alleges, one of AMP's purposes is to wreak havoc on college campuses through the funding of student organizations, like NSJP Chapters on U.S.

---

[3] See Email attached hereto as Exhibit "A"

[4] The "arising out of" portion of the specific jurisdiction formula "asks about causation." *Ford Motor Co.,* 141 S. Ct. at 1026. In other words, an injury arising "out of a defendant's forum contacts require[s] 'but for' causation, in which 'a direct nexus exists between a defendant's contacts with the forum state and the cause of action.'" *Yamashita v. LG Chem, Ltd.,* 62 F.4th 496, 504 (9th Cir. 2023) (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013)) (brackets omitted)

College campuses, as "boots on the ground" to perpetuate the narrative of FTOs like Hamas, Hezbollah and IRGC. NSJP was co-founded by Bazian to provide it on-campus management and control of hundreds of university chapters of Students for Justice in Palestine, including Students for Justice of Palestine- UNLV chapter. ("SJP-UNLV").

AMP controls NSJP and uses it to operate a propaganda machine for Hamas and its affiliates across American college campuses to influence, wreak havoc and intimidate Jewish students on university campuses across the Nation. [See ECF 6, 8; -24; see also FN 5 describing social media postings mobilizing UNLV activity].

Within hours of the [October 7] attack, the language of the Hamas-authored disinformation campaign appeared in NSJP propaganda across social media and on college campuses. Exactly as AMP intended, NSJP acted as Hamas' loyal foot soldiers for Hamas propaganda battle on university campuses across the United States. The next day, NSJP released its Day of Resistance Toolkit ("NSJP Toolkit") across more than 300 American college campuses and on the internet. The Toolkit, literally, was an instruction manual including the following pictures as guidelines for online media distribution whereby student organizations would simply use Canva to modify the prototype provided by NSJP, and subsequently blast it out on social media networks, such as Facebook, Instagram, Twitter, Snapchat, Tik Tok.

The NSJP Toolkit uses the euphemism "the resistance" and similar phrases to refer to as Operation Towfan Al-Aqsa (Al-Aqsa Flood). Immediately thereafter, SJP-UNLV and NPL had coordinated their "day of rage" hosting a variety of off campus protests initially in downtown, Las Vegas in accordance with directives issued by Hamas.  Subsequently SJP-UNLV coordinated with non-student groups to facilitate antisemitic protests on UNLV's campus with other non-student organizations such as NLP, the Fifth Sun Project, and Red Desert Collective,

among others, in clear advancement of carrying out NSJP's and Hamas' instructions in Las Vegas.  [*See* ECF-6; 18-20].

Plaintiff's Complaint sufficiently alleges that AMP, has purposefully availed itself through their activities on social media, through NSJP and SJP-UNLV, mobilizing hundreds of disrupters, at UNLV. It is indisputable that AMP's publication of its toolkit through NSJP and SJP-UNLV is a direct activity towards UNLV students and organizations to support and mobilize using the Hamas toolkit. There are simply too many allegations and sufficient proof of detailed social media posts directed at UNLV or Defendants to deny that they did not direct activities at UNLV and intend on influencing UNLV students. Secondary to that is that Defendants using UNLV as a forum to mobilize purported First Amendment activities, so that they purposely invoked student policies and protections from UNLV. Therefore, Gerwaski sufficiently meets the first prong required for specific jurisdiction.

It is also indisputable that Gerwaski's claims directly arise out of Defendants' activities on UNLV's campus. Here AMP through their organizations NSJP and SJP-UNLV, as specifically delineated in Plaintiff's Complaint, specifically arranged and mobilized hundreds if not thousands of students and non-students alike to wreak havoc on UNLV campus life and Jewish students, specifically effecting Gerwaski. The toxic and dangerous environment that AMP and NSJP facilitated at the University was undoubtably the cause of Plaintiffs claims to satisfy the "arises-out" of AMP's activities with Nevada, specifically UNLV.

Here, it is AMP and NSJP's specific contacts that they made with UNLV students by deliberately targeting UNLV students and the Nevada public with their calls to action on social media, mobilizing hundreds if not thousands of people to wreak havoc at UNLV and use their tool kits to do so.

Once it is determined that AMP and NSJP's actions were very deliberate in its targeted audience and mobilization at UNLV, it is not unreasonable that their actions here in Nevada and at UNLV, result in them being hauled into Court in this jurisdiction to answer for said activities. It is disingenuous for AMP to engage in deliberate activities at UNLV through their organizations, NSJP and SJP-UNLV and then claim that they would not have been reasonably foreseen for them to be subject to jurisdiction of Nevada Courts. *Ergo*, if a tourist commits a crime in Nevada, that crime gets prosecuted in Nevada, regardless of where the tourist lives. Therefore, this Court's exercise of jurisdiction over AMP comports with the notions of fair play and substantial justice.

**B.      PLAINTIFF'S ALLEGATIONS UNDER THE ARE SUFFICIENTLY PLED UNDER *TWOMBLY* TO PRECLUDE DEFENDANT FROM PREVAILING ON ITS MOTION TO DISMISS.**

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).* Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal*, *556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (citing Twombly, 550 U.S. at 555).* In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, *550 U.S. at 556*. However, at the pleading stage, the plausibility requirements of *Iqbal* and *Twombly* do not require "some general and formal level of evidentiary proof." *Whittney v. Guys, Inc.*, *700 F.3d 1118, 1128 (8th Cir. 2012).*

"Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of" the claimed violations. *Twombly*, 550 U.S. at 556. "There is no requirement for direct evidence; the factual allegations may be circumstantial and 'need only be enough to nudge the claim 'across the line from conceivable to plausible.'" *McDonough v. Anoka County, 799 F.3d 931, 945 (8th Cir. 2015)*

1. **Plaintiff Sufficiently Pled Allegations to Sustain a Claim Relief that is a Facially Plausible Violation of 18 U.S.C.§ 2333(d)**

Plaintiff asserts his claim under the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d), which extends liability under the Antiterrorism Act to aiders and abettors. Congress intended JASTA to "provide civil litigants with the broadest possible basis . . . to seek relief against persons, entities, and foreign countries, . . . that have provided material support, directly or indirectly," to terrorist organization that have attacked the United States or its citizens. JASTA, Pub. L. No. 114-222, 130 Stat. 852, § 2(b) (2016).

A claim under 18 U.S.C.§ 2333(d) has three elements: (i) the plaintiff suffers an "injury arising from an act of international terrorism"; (ii) the attack is "committed, planned, or authorized" by an organization designated as a foreign terrorist organization at the time of the attack; and (iii) the defendant "aids and abets, by knowingly providing substantial assistance." 18 U.S.C. § 2333(d)(1); *Twitter v. Taamneh*, 598 U.S. 471, 483-484 (2023).

18 U.S.C.§ 2333(d) provides that "[L]iability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." Here, Defendant conflates that the congressional intent of the statute somehow precludes AMP from being found liable for their participation in acts that perpetuated terrorist acts both foreign and domestically.

The third JASTA element (aiding and abetting) has three components of its own: (i) the primary actor, *i.e.,* a foreign terrorist organization like Hamas, must commit a primary violation; (ii) "the defendant must be generally aware of his role as part of an overall illegal or tortious

activity at the time that he provides the assistance"; and (iii) "the defendant must knowingly and substantially assist the principal violation." Twitter, 598 U.S. at 486 (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)); see also 130 Stat. 852, § 2(a)(5) (stating that Halberstam "provides the proper legal framework" for analyzing JASTA claims).

Defendants focus on only October 7, 2023 (conceding that it was an act of terrorism), as the only date that Gerwaski must suffer damages from; *ergo*, since Gerwaski was not personally affected by October 7, he is precluded from asserting claims against AMP under JASTA. In fact, AMP's actions for which they are liable for only occurred after October 7, 2023. AMP's actions peaked across the US and overseas after October 7, 2024, with the continuous assistance they provided to Hamas and IRGC after October 7, 2023. AMP has done everything in its powers on and off college campuses and UNLV for over six months to enflame and encourage and provide substantial assistance to FTOs through their activities continuing far after October 7, 2023 stoking and inflaming antisemitism.

Plaintiff specifically delineates in his FAC, FTOs acts months after October 7, 2023, that are supported by Defendants here on UNLV's campus. Specifically, on December 5, 2023, in an interview on Al-Aqsa TV (Hamas-Gaza), a senior Hamas official, Sami Abu Zahri, called on Hamas's allies in the United States to engage in domestic terrorism to support Hamas's terrorist activities. Defendants' encouragement of its members, affiliates, and allies to join the "resistance"—again, a euphemism for Hamas itself—is not mere speech or advocacy. Rather, Defendants encouraged their members to exert political pressure on American institutions and politicians, in service of Hamas's goals. The chaotic images emerging from American campuses are the intended result of AMP's endeavors.  AMP acts as Hamas' public relations division and recruited students as domestic foot soldiers not only to disseminate Hamas's propaganda but also

to foment violence, chaos, and fear across the United States and at UNLV to intimidate students and faculty and coerce change in American policy.

This is all in support Hamas's, Hezbollah and IRGC's short and long-term goals for its international terrorist activities, using and recruiting American students on American University campuses to perpetuate a terrorist agenda to sow chaos domestically in the United States.

AMP organized a "Day of Resistance" riots and protests for many SJP chapters, including University of Nevada Las Vegas, to coincide with Hamas's proclaimed "Day of Rage" for its supporters in Gaza and the West Bank on October 13, 2023 (which would be late in the evening on October 12, 2023, in many parts of the United States).

As demonstrated in social media posts in the FAC, every call to action by Hamas, is equally mirrored and reciprocated with a call to action at UNLV, held by NSJP, and SJP-UNLV along with other student and non-student organizations they collaborate with to wreak havoc on UNLV's campus.

Accordingly, it is indisputable that that secondary liability is appropriate where AMP "consciously and culpably 'participate[d]' in wrongful acts in the United States so as to help make the continued Hamas and IRGC terrorism successful in the Middle East. Without the constant perpetuation of AMP's actions at UNLV legitimizing the acts of Hamas in Israel and against the hostages, Gerwaski and other Jewish students would've never been subjected to the abuse and harassment they had been to.

### (a) Plaintiff Sufficiently Alleges a Personal Harm by Acts of International Terrorism

Mr. Gerwaski does not need to allege in the Complaint the he is an American National.[5] Furthermore, Plaintiff's Amended Complaint specifically delineates acts that AMP, through

---

[5] Mr. Gerwaski is an American National, and assuming arguendo that this Court requires Mr. Gerwaski allege with specificity that he has standing to bring this action under 2333(a), Plaintiff seeks leave to amend same and assert said allegations therein.

13

NSJP and SJP have engaged in since 2010 at UNLV, long before the October 7, 2023 attack ever occurred. [*See* ECF 6, 9; 5-23.] The only three requirements Mr. Gerwaski, needs to meet to prevail under the ATA are that he suffered an act that arose from international terrorism. AMP's involvement in assisting FTO's is adequately alleged in the FAC.  As alleged in Plaintiffs' Complaint UNLV and Defendants AMP collectively and collaterally engaged in actions in violation of JASTA [See ECF-6; 57-58].

Plaintiffs FAC specifically alleges that "[O]n January 21, 2024, Hamas issued a document in English, *Our Narrative—Operation Al-Aqsa Flood,* explaining how the protests and slogans of the American students in the wake of October 7, have renewed and reinvigorated the goals of Hamas to completely destroy Israel.[6] [See ECF-6; 26-27]. There could not be a clearer, bolder demonstration of substantial assistance of AMP to Hamas. The link of AMP to the Hamas leader Khaled Mashal could not be made any clearer, then Mashal's own words, claiming AMP's actions have "renewed and reinvigorated the goals of Hamas to completely destroy Israel".

By providing substantial assistance[7] to SJP, and their affiliates to continue terrorizing Jewish students on campus. The mutual reliance and relationship that exists between Hamas and AMP and NSJP and SJP-UNLV have resulted in injuries to Mr. Gerwaski, insofar as the acts of terrorism against Jews in Israel, refusing to release hostages and collectively and collaterally justifying these acts as resistance to harm students at UNLV and specifically Gerwaski. Further, Plaintiff's FAC provides 27 pages of extensive facts creating a direct nexus between Hamas, Defendants AMP, and UNLV's substantially assisting and complicitly allowing SJP-UNLV to engage in these egregious acts which directly caused damages to Mr. Gerwaski.

---

[6] Hamas Leader Abroad Khaled Mashal: 'We Reject the Two-State Solution; October 7 Proved That Liberating Palestine from The River to The Sea Is Realistic and Has Already Begun', MEMRI TV (Jan. 22, 2024), https://www.memri.org/reports/hamas-leader-abroad khaled-mashal-we-reject-two-state-solution-october-7-proved-liberating.
[7] See ECF 6, 54-55.

### (b) Plaintiff Sufficiently Alleges Proximate Causation to Satisfy the ATA's Requirement.

To satisfy the ATA's "by reason of" requirement, a plaintiff must show at least some direct relationship between the injuries that he or she suffered and the defendant's acts. Plaintiff's FAC delineates over 27 pages of allegations regarding AMP's acts in collaboration with the University Defendants and NSJP and SJP. It is indisputable that the rhetoric that AMP, UNLV, NSJP and SJP-UNLV coordinated, validated the University's legitimization and normalization of Jewish student harassment that Mr. Gerwaski experienced. The blatant violation of the University's campus student code of conduct to capitulate to AMP, SJP-UNLV, NSJP actions proximately caused damages to Gerwaski.

Importantly, whether faculty and student body felt their actions against Gerwaski were valid, because the University allowed them, are issues of fact to be determined by the jury at trial. *See Judgment of the Nuremberg International Military Tribunal 1946* (1947) 41 AJIL 172. Part of the proximate cause requirement under the JASTA is whether Gerwaksi's damages against the University, organizations were foreseeable consequences of the actions of AMP, by and through the activities of UNLV, NSJP and SHP-UNLV, acting in collaboration to intimidate and harass Jewish students, specifically Gerwaski, on UNLV's campus.

It is hard to dispute that a hostile environment would not exist at UNLV, or be reasonably foreseeable or anticipated as a natural consequence, by allowing AMP, NSJP and SJP-UNLV, to continuously harass and abuse Gerwaski and other Jewish students " *See Rothstein v. UBS AG* , 708 F.3d 82, 91 (2d Cir. 2013). Spewing hate on UNLV's campus for months against Jewish students legitimized every action taken against Gerwaski, whether in the employment context or in the student body. If AMP's virulent antisemitism is normalized on campus, but also legitimized in the name of "resistance", then of course, a reasonably anticipated consequence of that would be that Jewish students would be abused and harassed.

### 2. **Plaintiff Sufficiently Pled Allegations to Sustain a Claim Relief for IIED Against AMP.**

The elements of IIED in Nevada are: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000).*Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983); *see Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). ("[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Rivera v. CCA*; 0:20-cv-15651(9th Cir.)

Here, AMP's conduct was extreme and outrageous as an organization that solicits and encourages antisemitic vitriol and incites violence against Jewish students at UNLV by "globalizing the intifada". Social media posts that say "Zionist presence on our campus can't go unchecked" [See ECF 6, 24; 3-12] with encouraging and inciting harassment and abuse of Jewish students is intolerable in a civilized community. Encouraging and facilitating the harm of Jewish students and "Zionist presence" at UNLV goes outside all possible bounds of decency.

Plaintiff sufficiently plead all the damages that resulted from Defendant's acts in his FAC. Plaintiff sufficiently plead and demonstrates that Defendants acts are both the actual and proximate cause of Mr. Gerwaski's distress. Furthermore, Gerwaski specifically delineates that he not only suffered emotional distress but also that he had suffered great humiliation, embarrassment, shame, and other pain and suffering. Plaintiff alleged sufficient facts to satisfy the requirements under Fed. R. Civ. Pro. 8. Assuming *arguendo*, this Court finds that there are insufficient facts alleged to comply with Rule 8 requirements, Plaintiff seeks leave to incorporate additional facts regarding same. Accordingly, Mr. Gerwaski meets the threshold to sustain a finding of a claim for relief under Fed. R. Civ. Pro Rule 8 for his Ninth Claim for Relief.

16

**C.    DEFENDANTS ACTIONS ARE NOT PROTECTED UNDER THE FIRST AMENDMENT**

The First Amendment provides "Congress shall make no law ... abridging the freedom of speech." U.S. CONST. amend. I. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens* , 559 U.S. 460, 468, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (quoting *Ashcroft v. Am. Civil Liberties Union* , 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771, (2002) ). However, there are some "well-defined and narrowly limited classes of speech" that have been recognized as falling outside the protection of the First Amendment. *Stevens* , 559 U.S. at 468–72, 130 S.Ct. 1577. These include child pornography, obscenity, defamation, fighting words, incitement, true threats of violence, fraud, and speech integral to criminal conduct. *See id.*

True threats are "serious expression[s]" conveying that a speaker means to "commit an act of unlawful violence." *Virginia v. Black*, 538 U. S. 343, 359 (2003). The existence of a threat depends not on "the mental state of the author," but on "what the statement conveys" to the person on the receiving end. *Elonis v. United States*, 575 U. S. 723, 733.[8] Calls for the extermination of Jews resulting in adverse actions against Jewish students, such as Gerwaski are not protected by the First Amendment.

AMP's citation to *Snyder v Phelps* in support of their claim that the First Amendment bars Plaintiff's claims in this matter is fatally flawed. *Snyder v. Phelps*, 562 U.S. 443 (2011), was a landmark decision by the Supreme Court of the United States in which the Court held that

---

[8] Assuming this Court is persuaded that they are entitled to a First Amendment analysis, this Court should apply a recklessness standard—i.e., a showing that a person "consciously disregard[ed] a substantial [and unjustifiable] risk that [his] conduct will cause harm to another," *Voisine v. United States*, 579 U. S. 686 (2016).

speech made in a public place on a matter of public concern cannot be the basis of liability for a tort of emotional distress, even if the speech is viewed as offensive or outrageous.

AMP's reliance on *NAACP v Claiborne Hardware Co.* fails for the same reasons. *National Association for the Advancement of Colored People v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), was also a landmark decision of the United States Supreme Court that held that although states have broad power to regulate economic activities, they cannot prohibit peaceful advocacy of a politically motivated boycott. AMP's activities were not peaceful advocacy of a politically motivated boycott. AMP's activities had nothing to do with politically motivated boycott, they were the public relations arm and foot soldiers of FTO, soliciting support for continued terrorism and destabilization domestically against Jewish students at UNLV.

At the outset, this is not a First Amendment case. This is not a case where free speech is challenged in a context that is even remotely allowable. The Constitution does not protect knowingly giving cash or material support to terrorists. *See, e.g., Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 700 (7th Cir. 2008) ("If the financier knew that the organization to which it was giving money engaged in terrorism, penalizing him would not violate the First Amendment."). Regardless of whether the Constitution protects wholly independent speech in favor of the most vitriolic statements, it does not protect providing terrorists with propaganda and recruiting services.

In *Holder v. Humanitarian Law Project*, the Supreme Court considered a challenge to a statute barring people from providing "material support" in the form of "training," "expert advice or assistance," "service," and "personnel" to terrorist groups. 561 U.S. 1, 14 (2010) (citing 18 U.S.C. § 2339B).[9]  In *Holder*, The Humanitarian Law Project sought to help Turkey's Kurdistan

---

[9] Section 2339A(b)(1) defines the term "material support or resources" as any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities,

Workers Party (PKK) and Sri Lanka's Liberation Tigers of Tamil Eelam (LTTE) with peaceful

conflict resolution. The Supreme Court upheld a federal law banning "material support" to

"foreign terrorist organizations" and refused to apply the strict scrutiny standard required in

content-based regulations. Petitioners claimed it would violate the First Amendment to apply the

statute to speech that would "advance only the legitimate activities of the designated terrorist

organizations, not the terrorism." *Id*. at 29.  The Supreme Court rejected the argument, as any

support to a terrorist organization can advance terrorism by "free[ing] up other resources within

the organization that may be put to violent ends." *Id.* at 30; see *id.* at 32 n.6 (explaining that

speech-related services "facilitate[] the group's ability to attract 'funds,' 'financing,' and 'goods'

that will further its terrorist acts").

Under *Holder*, the First Amendment does not protect "expressive activity that amounts to

the provision of material support to a foreign terrorist organization where the support is either

addressed to, directed by, or coordinated with that organization." *See also United States. v.

Osadzinski,* 97 F.4th 484, 492 (7th Cir. 2024).  In *Osadzinski,* the Seventh Circuit rejected a First

Amendment challenge to a conviction for sharing a propaganda-duplicating computer program

because the defendant believed he was giving it to ISIS affiliates. See *id.* at 486, 492.

**D.    ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED**

For the reasons stated, Plaintiff's FAC easily withstands Defendants' arguments, and the

Court should deny the motions and allow the case to proceed into discovery. In the alternative,

Plaintiff respectfully requests leave to amend the Complaint if this Court finds insufficiencies as

alleged.

---

weapons, lethal substances, explosives, ***personnel*** (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials [*Emphasis added*]. See *United States v Carpenter*; 3:21-CR-38-KAC-DCP (E.D. Tenn. Dec. 6, 2022).

1   A dismissal without leave to amend is improper unless it is beyond doubt that the

2   complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728,

3   737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a

4   district court should grant leave to amend even if no request to amend the pleading was made,

5   unless it determines that the pleading could not possibly be cured by the allegation of other

6   facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d

7   242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is

8   entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union,*

9   *Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

10  There has been no delay or bad faith, Defendants cannot claim prejudice, and an

11  amendment would not be futile because it is clearly "at least possible" to cure any perceived

12  defect. *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

### CONCLUSION

13  A careful review of Plaintiff's FAC will demonstrate that in the course of the 77-page

14  Complaint, AMP's complicity in the events that are the subject of this suit are irrefutable under a

15  standard for stating a claim for which relief should be granted. For the reasons discussed herein-

16  above, Plaintiff respectfully request that this Court deny the Defendants' Motion to Dismiss in

17  its entirety.

18  **DATED** this 3rd day of November, 2024.

**CHATTAH LAW GROUP**

_____*/s/ Sigal Chattah*_____
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
5875 S. Rainbow Blvd., #205
Las Vegas, Nevada 89118
(702) 360-6200

20

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 3rd day of November, 2024, I personally served a true copy of the foregoing Plaintiffs' RESPONSE TO DEFENDANTS' MOTION TO DISMISS by the Court's electronic service system to all registered parties:

*/s/ Sigal Chattah*

_____

An Agent of Chattah Law Group

21