Elda M. Sidhu (NV Bar No. 7799)
General Counsel
Email: elda.sidhu@unlv.edu
Andrew D. Smith (NV Bar No. 8890)
Email: andrew.d.smith@unlv.edu
**UNIVERSITY OF NEVADA, LAS VEGAS**
4505 S. Maryland Parkway, Box 451085
Las Vegas, Nevada 89154-1085
Telephone: (702) 895-5185
Facsimile: (702) 895-5299
*Attorneys for University of Nevada, Las Vegas*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

COREY GERWASKI,

        Plaintiff,

v.

STATE OF NEVADA, ex rel. BOARD
OF REGENTS of the NEVADA
SYSTEM OF HIGHER EDUCATION,
on behalf of the UNIVERSITY OF
NEVADA, LAS VEGAS; KEITH
WHITFIELD, individually; AJP
EDUCATIONAL FOUNDATION INC.,
a California Non-Profit Corporation;
STUDENTS FOR JUSTICE OF
PALESTINE-UNLV; NATIONAL
STUDENTS FOR JUSTICE OF
PALESTINE; NEVADANS FOR
PALESTINIAN LIBERATION;
DOES I-XX and ROE entities I-XX,

        Defendants.

Case No.: 2:24-cv-00985-APG-MDC

**DEFENDANT UNLV'S MOTION TO DISMISS**

        The Board of Regents of the Nevada System of Higher Education on behalf of the University of Nevada, Las Vegas ("UNLV") moves to dismiss this case under Rule 12(b)(5)[1] because plaintiff failed to timely effect service of process within 90 days

---

[1] All references to "Rule" are to the Federal Rules of Civil Procedure.

of the filing of his complaint. The case should also be dismissed, at least in part, based on Rule 12(b)(1) because UNLV is entitled to immunity under the Eleventh Amendment. Further, certain of plaintiff's claims I through XI should be dismissed as he lacks standing to assert them. Even if he had standing, those claims should be dismissed under Rule 12(b)(6) because plaintiff fails to state a claim against UNLV.

Dated November 12, 2024.

/s/  Andrew D. Smith

Elda M. Sidhu (NV Bar No. 7799)
Andrew D. Smith (NV Bar No. 8890)
UNIVERSITY OF NEVADA, LAS VEGAS
4505 S. Maryland Parkway, Box 451085
Las Vegas, Nevada  89154-1085
*Attorneys for University of Nevada, Las Vegas*

## Points and Authorities

## I.  Introduction

The Nevada System of Higher Education ("NSHE") and UNLV are committed to the free speech and free exercise rights of all members of the university community. Shortly after the horrific events of October 7, 2023, NSHE condemned the senseless acts of violence in Israel. In a statement, NSHE's Chancellor wrote:

> Across NSHE, **we will continue to provide support to our students and colleagues, respecting the widely different views of the Israeli-Palestinian conflict, but letting it be known that incidents of targeted harassment, direct threats, or the creation of pervasively hostile environments for vulnerable populations will not be tolerated.** Our institutions will remain steadfast in our commitment to providing safe and inclusive learning environments during these particularly challenging times when our commitment to mutual respect and support are tested.

[ECF 14, Ex. A].

Echoing those sentiments at UNLV, President Whitfield wrote to the campus community:

The atrocities committed against civilians, including Americans, by Hamas in Israel over the weekend were reprehensible and has resulted in growing heartbreak, shock, and outrage. **There is simply no justification for the abhorrent acts from those that will kill vulnerable civilian men, women, and children.** . . .

**I know and fully appreciate that emotions are running high, but our university community must remain respectful, kind, and considerate of each other. Civility and thoughtful expression are key parts of peaceful discourse in higher education.**

[ECF 14, Ex. B].

Plaintiff brings this action against UNLV under various theories under § 1983, Title VI of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1964, and state law claims related to the free speech and expression activities of third parties.

On procedural grounds, plaintiff's complaint should be dismissed. That is because, without any excuse or justification, Plaintiff failed to timely serve his complaint on any of the defendants in this action. Additionally, plaintiff lacks standing because he has not alleged a concrete harm for the Court to redress.

Even if the Court did not dismiss plaintiff's complaint on procedural grounds, the Court should dismiss all of his federal claims except for those under Title VI and Title VII as barred by Eleventh Amendment immunity.

As to his claim under Title VI, plaintiff fails to state a claim because he does not allege intentional discrimination that UNLV was so deliberately indifferent to that caused plaintiff to suffer a concrete, negative effect to his education. It should be dismissed.

Finally, plaintiff's state law claims should be dismissed because he fails to allege facts supporting his claim for intentional infliction of emotional distress. Nor can he succeed as a matter of law on his claims for negligent hiring, training and supervision because Nevada law bars those.

As such, the only remaining claim the Court should consider allowing to proceed if plaintiff can get past all of his procedural errors is his claim under Title VII related

to his employment at UNLV's library.

## II.    Statement of Facts as to Service of Process

On May 26, 2024, plaintiff filed his *Complaint* against UNLV. [ECF 1].

On August 9, 2024, plaintiff filed his *First Amended Complaint* to add an employment claim under Title VII. [ECF 6].

Under Rule 4, plaintiff was required to effect service of process 90 days from the filing of his initial pleading, which was no later than August 24, 2024.

Plaintiff did not effect timely service on any defendant.

On August 29, 2024, plaintiff served the Nevada Attorney General with process. [ECF 11]. At the time of service, the Attorney General gave plaintiff's process server a receipt. Ex. A. The receipt, in part, states:

> **Service of process is a two (2) step procedure when a complaint names a State entity, or officer or employee.** The summons and complaint must be served on:
>
> (1) the Attorney General at the Office of the Attorney General (OAG) in Carson City, Nevada (or an OAG staff member designated to receive service of process), *and*
>
> (2) the administrative head of a State entity, or the current or former public officer or employee (or an agent designated to receive service of process).
>
> *See* NRS 41.031(2) and Rule 4.2(d) of the Nevada Rules of Civil Procedure. Service is not fully accomplished until both steps are complete.

Ex. A.

Not until October 22, 2024 does plaintiff complete service of process by serving the Chancellor.

In the meantime, plaintiff filed a motion to extend time to serve certain parties, but that motion does not seek an extension to serve UNLV. [ECF 27].

### III.    Statement of Facts[2]

Plaintiff is a student at UNLV. [ECF 6, ¶217]. Plaintiff is a devout Jew and wears a kippah at all times. [ECF 6, ¶219]. He is a member of the Consolidated Students of the University of Nevada, Las Vegas (CSUN), UNLV's undergraduate student government. [ECF 6, ¶225].

Plaintiff alleges discrimination and hostility in his role in CSUN. [ECF 6, ¶227]. An advisor for CSUN was visibly upset learning he was a conservative candidate running for office. [ECF 6, ¶227]. The advisor spoke to a CSUN officer to dissuade people from supporting him for office, telling people she did not want him to win. [ECF 6, ¶227]. A resolution he collaborated on did not move forward due to the advisor's intervention without a valid reason. [ECF 6, ¶227]. The advisor said that plaintiff makes women feel defensive because he is a "white male of large size." [ECF 6, ¶227]. The advisor encouraged the student body president to file impeachment charges against nine Senators, including plaintiff, for discussing a candidate via G-Chat in violation of Nevada Open Meeting Law. [ECF 6, ¶227; ECF 14, Ex. C]. The advisor disclosed FERPA-protected credit information about plaintiff to another student. [ECF 6, ¶227]. The advisor encouraged another student to spread false accusations of racism and homophobia about him across campus. [ECF 6, ¶227]. Other students have told plaintiff that the advisor dislikes him because he is "a conservative Jew." [ECF 6, ¶229]. "Many members of [CSUN] are pro-Palestine and have verbally attacked plaintiff and treated him poorly due to his identity a kippa-waring Jew." [ECF 6, ¶230].

Plaintiff struggled academically, failing two classes due to stress. [ECF 6, ¶231]. Plaintiff "has been effectively exiled from the Senate chambers because of his Jewish identity." [ECF 6, ¶231].

---

[2] The facts are taken from plaintiff's amended complaint, which must be treated as true for the purposes of this motion. UNLV disputes plaintiff's version of the facts.

In June 2023, plaintiff was asked questions about his Jewish heritage and sexual orientation when he began working at the campus library. [ECF 6, ¶218].

In August 2023, plaintiff was terminated from his position at the library. [ECF 6, ¶222].

Plaintiff does not allege any facts of the disparate treatment by his supervisors.

"On October 7, 2023, Hamas had killed 1,200 people and abducted over 200 more including American citizens, still being held by Hamas as hostages." [ECF 6, ¶154]. Hamas is a terrorist organization. [ECF 6, ¶150].

"Shockingly, numerous students and faculty members at UNLV celebrate, justify, and excuse Hamas's mass rape, murder, and kidnapping. Many have resorted to harassment and even violence against Jewish students in support of Hamas's attack and in condemnation of Israel's defensive response. UNLV faculty members and Administration publicly support these students and oppose even the smallest measures to combat UNLV's antisemitism." [ECF 6, ¶156].

"UNLV has allowed non-student organizations like Nevadans for Palestinian Liberation, Red Desert Collective and Fifth sun Project to attend student rallies and harass UNLV's students." [ECF 6, ¶159].

On November 17, 2023, UNLV leadership met with Jewish students and community members from local Jewish groups to hear their concerns. [ECF 6, ¶¶ 169–75].

Plaintiff did not attend the meeting.

On December 1, 2023, plaintiff spoke during public comment at the meeting of the Board of Regents to express his concerns about antisemitism. [ECF 6, ¶176].

In December 2023, plaintiff returned to the library to study when the individual who fired saw him as a threat and called the police. [ECF 6, ¶223].

On January 22, 2024, the CSUN Senate held a meeting at which Whitfield attended to discuss the December 6, 2023 shooting at UNLV. [ECF 6, ¶234]. Plaintiff

told Whitfield at the meeting "that students needed faculty help in fighting antisemtism and writing a resolution." [ECF 6, ¶234]. "Whitfield said that was not something faculty should do to fix the tension between Jewish and Muslim students." [ECF 6, ¶235]. Plaintiff then requested Whitfield bring together the two groups to facilitate a peaceful resolution, to which Whitfield replied that such action should come from the students and not UNLV. [ECF 6, ¶236].

In February 2024, plaintiff reached out to Whitfield and another employee "to explain that he felt targeted for being Jewish" without a response. [ECF 6, ¶237].

On February 27, 2024, a visiting Israeli physics professor delivered an open lecture about black holes, as part of a public physics symposium when he was interrupted by protestors voicing their views about the ongoing conflict in Gaza. [ECF 6, ¶177]. The lecture ended due to the interruption by the protesters. [ECF 6, ¶178].

Plaintiff was not in attendance.

"In March 2024, plaintiff made formal complaints to the Board of Regents about the antisemitism he was experiencing, but never heard back from anyone regarding same." [ECF 6, ¶238].

In a March 5, 2024 email to Whitfield, plaintiff, in part, wrote:

> I am reaching out to bring to your attention a concern that has arisen within the student-governed senate. As both the chair of the scholarship and grants committee and a senator for the School of Engineering, your insight and guidance would be invaluable in this matter.
>
> It has come to my attention that there may be instances where our advisors are potentially exceeding the boundaries of their roles by self-nominating faculty members to act as attorney generals.
>
> among many other things I'm currently being targeted and attacked for my religious affiliation by an csun advisor. I have gone through all the proper procedures however it is getting worse. Csun advisors are openly spreading misinformation about my faith credits and background to students. Violating my confidentiality as a student and a student Body senator.
>
> This situation raises concerns regarding the proper conduct

and the intended student governance structure.

I would greatly appreciate your advice on how we should proceed to address this issue, ensuring the integrity of our student senate's operations. As well as maintaining the security and protection of students on campus

[ECF 6, ¶239; ECF 14, Ex. C].

In May 2024, organized protests demanded UNLV divest in any companies that deal with Israel. [ECF 6, ¶189]. The protesters chanted various slogans. [ECF 6, ¶191].

Whitfield met with Students for the Justice of Palestine to hear their concerns as he had like meetings with UNLV Jewish faculty group and the Hillel student group. [ECF 6, ¶¶195–96].

On May 11, 2024, UNLV held commencement at which a student gave a speech that was not approved. [ECF 6, ¶201]. On June 2, 2024, Whitfield sent an email to the university community that, in part, states:

Commencement is the absolute best part of my job and a truly unique and uplifting experience at UNLV. It's a chance to highlight the enormous success of our students alongside their families, friends, and the entire Rebel community.

Unfortunately, what should have been a celebration for all in attendance has become the focus of scrutiny because of remarks shared during one of the speeches. A student speaker at UNLV's morning commencement changed their speech from what was originally submitted in advance of the ceremony. I am disappointed by what I believe was an intent of deception and to mislead. That is not the Rebel way, nor do such actions represent the values we embrace as a university. The vast majority of UNLV graduates will be joining professions that have codes of conduct which they will be mandated to follow or face reprimands and discipline that will dictate their ultimate success or failure.

Protecting free speech and academic freedom is something that I am very serious about upholding. However, we are all responsible for what we say, when we say it, what venue we choose to say it in, and how it may impact others. The guidelines and policies we have in place are important standards to ensure every individual is afforded the dignity and respect this milestone celebration demands.

I understand that the words spoken during the commencement ceremony were hurtful to some graduates and others in attendance, and I want to make it clear that this

speech does not represent the views of this university.

I hope this is a lesson not lost on our students, faculty, or staff, as it is one that I have taken to heart too. It reminds me that I must do better in making clear my intentions and the expectations we have for the members of our campus community. Not in an effort to silence anyone – but to ensure everyone feels welcome and can be heard in the proper forums. I believe this is a teaching moment we all can learn from.

I will be reviewing our process to select our student speakers as well as other university policies to ensure that we maintain the celebratory spirit of commencement for our graduates and their families and friends.

Additionally, I will look for and be open to educational opportunities for our campus community. That is what we do and who we are – it is central to our mission to provide an academic forum for discourse on matters of importance to our students and our campuses.

In that same spirit, I met with several groups near the end of the spring semester regarding the ongoing conflict in Israel and Gaza to hear their concerns and perspectives. Some have criticized me for my open-door policy. And some have made assumptions and misrepresentations in the media or elsewhere.

This includes an (incorrect) assertion that UNLV will disclose our investments with any ties to Israel or that we would consider divesting from those investments. We will not. I will not.

As a life-long educator, I do feel that dialogue often provides an opportunity for better understanding and learning. That doesn't mean I agree with everything shared or said in these meetings, but I do take very seriously the concerns of any student who feels unsafe or marginalized. There is absolutely no room on our campuses for that.

UNLV is an academic institution that represents the diversity in the State of Nevada. We have policies in place regarding the use of venues and the opportunities to exercise First Amendment rights on our campus, and I expect everyone to adhere to these rules. We will not tolerate any form of prejudice, discrimination, threatening behavior, harassment, bullying, or intimidation of members of our university community that disrupt education on our campus. Any student, faculty, or staff member that experiences such behavior is encouraged to report it so that it may be addressed. I will not hesitate to get our university police involved to ensure the safety and security of everyone on our campuses.

I encourage everyone to take some time this summer to reflect,

> as I will, on ways in which we can build on our core values as a university, find common ground, and begin the new academic year stronger and more focused on our shared mission.

[ECF 6, ¶¶202–205; ECF 14, Ex. E].

Plaintiff asserts he's been under severe emotional strain from the distress of being accosted by antisemitic protestors. [ECF 6, ¶209].

On July 8, 2024, Whitfield announced the launch of an expanded anti-bias and anti-discrimination education and training program for UNLV's employees. [ECF 14, Ex. F].

On August 8, 2024, plaintiff received a Right to Sue letter from the EEOC. [ECF 6, ¶221].

## IV.    Dismissal is Proper Due to Untimely Service

Plaintiff cannot dispute that he failed to timely effect service of process on UNLV. Plaintiff missed the August 24, 2024 deadline when he served the Attorney General on August 29, 2024 and the Chancellor on October 22, 2024. His failure to effect service comes without any justifiable excuse. The Attorney General placed plaintiff on notice that service under Nevada law required him to also serve the head of NSHE. He did not do so until October. Because plaintiff did not serve UNLV by the deadline, this case should be dismissed as to UNLV.

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule] 4." *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988); *see also Murphy Bros., Inc. v. Mitchell Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."). Where the validity of service is contested, the burden is on the party claiming proper service to establish its validity. *Cranford v. United States*, 359 F.Supp.2d 981, 984 (E.D.Cal. 2005) (citing *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993)). Assuming insufficiency of process

10

or insufficiency of service of process, the Court has discretion to dismiss an action or simply quash service. *See e.g., SHJ v. Issaquah School District No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)) ("the choice between dismissal and quashing service of process is in the district court's discretion.").

To properly serve NSHE, Rule 4(j)(2) requires a plaintiff to either (a) deliver a copy of the summons and of the complaint to the state-created governmental organization's chief executive office, or (b) serve a copy of each as required by Nevada law for serving a summons on such a defendant. Under Nev. Rev. Stat. 41.031(2), a plaintiff must serve both the Nevada Attorney General *and* the administrative head of the state agency. In either scenario, the rule is clear that service upon a state government is not complete until service is made on the agency's administrative head.

If a plaintiff fails to serve a defendant within the 90-day period, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Rule 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*. A showing of good cause means "at minimum excusable neglect," and may also require a showing that "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." Almont *Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1186 (C.D. Cal. 2015) (cleaned up).

Here, plaintiff did not serve the Chancellor until October well after the deadline to effect service passed. Plaintiff did not seek an extension of time to serve UNLV. Plaintiff knew that he had to serve the Chancellor as early as August 29, but he continued to wait. UNLV suffered prejudiced due to plaintiff's failure to effect timely service because none of the other defendants in this action have been timely served, causing unnecessary delay and limiting UNLV's ability to defend against this action.

Plaintiff, on the other hand, would suffer no prejudice if the case was dismissed as the statute of limitation for his claims has not expired. As a result of his unexcused untimely service, this case should be dismissed.

## V. Eleventh Amendment Immunity Applies

The Eleventh Amendment bars suits against states and their agencies unless the state has waived its sovereign immunity or Congress has clearly abrogated it. *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010). As the court reasoned:

> "The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (citing *Pennhurst v. Halderman*, 465 U.S. 89, 100, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). The Eleventh Amendment jurisdictional bar applies regardless of the nature of relief sought and extends to state instrumentalities and agencies. *See Papasan v. Allain*, 478 U.S. 265, 276 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).
>
> Eleventh Amendment immunity also shields state officials from official capacity suits. *See Central Reserve Life of N. Am. Ins. Co. v. Struve* ("Central Reserve"), 852 F.2d 1158, 1160–61 (9th Cir. 1988). A narrow exception exists "where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's *federal* constitutional or statutory rights." *Id.* at 1161 (emphasis in original); *see also Papasan*, 478 U.S. at 277–78; *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 660 (9th Cir. 2009) ("[A] plaintiff may ... maintain a federal action to compel a state official's prospective compliance with the plaintiff's federal rights.") (citations omitted).

*Krainski*, 616 F.3d at 967–68. UNLV is covered by the Eleventh Amendment. *Id*. at 968.

UNLV is not a state officer and is therefore not subject to the exception. As such, under Rule 12(b)(1), the Court lacks subject matter jurisdiction over UNLV except for the Title VI of the Civil Rights Act of 1964 (Third Claim) and the employment law claim (Eighth Claim) as all of plaintiff's other federal claims are barred by sovereign immunity. Therefore, those other claims should be dismissed.

## VI.    Plaintiff Lacks Standing

Plaintiff lacks standing to prosecute claims that does not redress an injury to him. Plaintiff bears the burden to establish Article III standing for each of his claims and for the form of the relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021); *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021). First, he must show an injury in fact, which is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Weber*, 2 F.4th at 844. The threatened injury must be certainly impending to be an actual or imminent injury. *Id*. It is insufficient to allege a possibility of future injury. *Id*. Plaintiff must be personally affected by the injury that is beyond the psychological consequence presumably produced by observation of conduct with which one disagrees. *Id*. Second, there must be a causal connection between the injury and the conduct complained of that is fairly traceable to the defendant and not the result of the independent action of some third party. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Third, plaintiff must show redressability. *Id*. at 561.

Here, aside from alleging termination from his employment at the library, plaintiff has failed to allege any concrete injuries.

## VII.    Legal Standard for Failure to State a Claim

Under FRCP 12(b)(6), a complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. APT Sec. Services, Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action. . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal quotation and citation omitted). For a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

## VIII.    Plaintiff's First Claim Should be Dismissed

Plaintiff asserts a claim against UNLV under 18 U.S.C. § 2333, which permits United States nationals to sue a "person" for damages if they "have been . . . injured by reason of an act of international terrorism." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 478 (2023). Liability rests on "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. §2333(d)(2). A "person" for purposes of § 2333(d)(1) excludes the government under the Dictionary Act's (1 U.S.C. § 1) definition of person. The exclusion of the government from the list of persons implies that Congress did not intend to include the government absent some affirmative showing of statutory intent to the contrary. *Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618, 627 (2019).

Here, plaintiff fails to allege any of the elements of the claim against UNLV. First, UNLV is an agency of a state government and cannot be a person who can be held liable under § 2333. Second, plaintiff does not allege a cognizable injury he suffered traceable to Hamas. Third, plaintiff does not allege any facts that UNLV aided and abetted a terrorist organization. The claim must be dismissed with prejudice.

## IX.    Plaintiff's Title VI Claims Should be Dismissed

UNLV cannot be held liable for a violation of plaintiff's Title VI of the Civil Rights Act of 1964 (Third Claim) unless plaintiff can show *intentional* discrimination.

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005); *Alexander v. Sandoval*, 532 U.S. 275, 284–85 (2001). He cannot get around Title VI's heightened requirements by repackaging the claim under § 1983 (Fourth Claim) because he cannot sue under § 1983 for a violation of Title VI. *See, e.g.*, *Save Our Valley v. Sound Transit*, 335 F.3d 932, 936–39 (9th Cir. 2003); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).

Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A program or activity for the purposes of the act means all of the operations of a university. 42 U.S.C. § 2000d-4a. To allege a violation, a plaintiff must allege conduct that is "so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that the statute is designed to protect, and that the University acted with 'deliberate indifference' towards that conduct." *Felber v. Yudof*, 851 F.Supp.2d 1182, 1187 (N.D. Cal. 2011) (internal quotations omitted). The alleged harassment must also have had a "concrete, negative effect on the student's education. *See, e.g., Fennell v. Marion Independent School Dist.*, 804 F.3d 398, 410 (5th Cir. 2015).

Deliberate indifference is a "stringent standard of fault." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). The test for deliberate indifference is "whether a reasonable fact-finder could conclude that the College's response was clearly unreasonable in light of the known circumstances. In other words, [the Court must decide whether] one could find that the College made an official decision not to remedy the violation." *Oden v. Northern Marianas College*, 440 F.3d 1085, 1089 (9th Cir. 2006) (cleaned up). "[A] claim that an institution could or should have done more does not establish deliberate indifference." *M.L. ex rel. D.L. v. Concord Sch. Dist.*, 86 F.4th 501, 511 (1st Cir. 2023).

UNLV maintains the Office of Equal Employment and Title IX for students and employees to lodge complaints if they believe their rights are being violated. https://www.unlv.edu/compliance (last visited November 12, 2024).

Plaintiff's complaint does not suffice to state a claim under Title VI.

## A. Plaintiff's Third Claim Should be Dismissed

Plaintiff alleges negligence on the part of UNLV, which is not actionable under Title VI. As part of his Third Claim, he avers that "Defendants were negligent and acted with deliberate indifference when they, under color of state law, condoned, ratified, and carried out the prohibited conduct, and denied Plaintiff of his rights under Title VI of the Civil Rights Act . . ." [ECF 6, ¶ 283]. He continues that defendants "condoned and ratified discriminatory acts and expressions, undermined and detracted from his educational and academic experience, and where Defendants created a disadvantage and dangerous school environment . . ." [ECF 6, ¶ 284]. He claims that UNLV failed to mitigate the harm and lessen the danger to him after having actual knowledge of the incidents and occurrences of discriminatory conduct. [ECF 6, ¶ 285]. Finally, he alleges "negligence and deliberate indifference caused [him] harm." [ECF 6, ¶¶ 286–87].

Because plaintiff does not allege *intentional* discrimination against him that is so severe, pervasive, and objectively offensive that it denied him the equal access to education, he cannot state a claim under Title VI. Even if parsing his rambling and incoherent complaint does reveal intentional discrimination, he does not allege facts showing UNLV acted with deliberate indifference as to the harassment that he suffered. As shown by the statements of the Chancellor and President, UNLV took action to reinforce university policies regarding free speech and expression. The President also announced the launch of an expanded anti-bias and anti-discrimination education and training program for UNLV's employees. The President met with students to hear them out and to provide spaces for civil discourse.

Plaintiff, on the other hand, does not allege he ever made a complaint in accordance with UNLV policy that UNLV did not act upon. At best, he alleges that in his capacity as a student government representative he brought concerns to the attention of the Board of Regents and the President.

In sum, plaintiff does not allege facts that demonstrate he was subject to intentional discrimination that UNLV's response to was clearly unreasonable in light of the known circumstances. The claim must be dismissed.

## B. Plaintiff's Repackaged Title VI Claim as a § 1983 Claim Should be Dismissed

As for his Fourth Claim, plaintiff claims that a violation of Title VI is also a violation of the Equal Protection Clause of the Fourteenth Amendment. [ECF 6, ¶ 291]. He alleges that UNLV had a duty to train faculty to enforce individual rights. [ECF 6, ¶¶ 304–06]. He is wrong. UNLV cannot be held liable for a Title VI violation under § 1983. The claim must be dismissed.

## X.    Plaintiff's Ninth Claim Should be Dismissed

Plaintiff fails to allege facts against UNLV to make out a prima facie claim of Intentional Infliction of Emotional Distress. The claim requires: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012); *see also Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 91-92 (Nev. 1981) (stating identical elements for this claim under Nevada state law). Instead, plaintiff complains, at best, of conduct by outside groups that UNLV does not control. Plaintiff alleges no specific facts against UNLV to state a claim. The claim should be dismissed

## XI.    Plaintiff's Tenth and Eleventh Claims Should be Dismissed

It is unclear that employee plaintiff says UNLV negligently hired, retained and supervised. He does not identify one. Regardless, the claim is barred by sovereign immunity under the doctrine of discretionary act immunity.

To state a claim for negligent hiring, retention or supervision, a plaintiff must show that the defendant owed plaintiff a duty of care, that defendant breached the duty by the hiring, retaining, and/or supervising an employee even though the defendant knew, or should have known, of the employee's dangerous propensities, and that this breach caused plaintiff's injuries that resulted in damages. *Hall v. SSF, Inc.*, 112 Nev. 1384, 1391–92, 930 P.2d 94, 98–99 (1996). An employer has a duty to use reasonable care in the training, supervision, and retention of their employees to make sure that the employees are fit for their positions. *Id.*

Nevada has not waived its sovereign immunity as to discretionary acts. The law provides:

> Except as provided in NRS 278.0233 no action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is: . . .
>
> 2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

NRS 41.032(2).

The Nevada Supreme Court has held that the hiring, supervision and retention of employees are discretionary acts entitled to immunity. *University of Nevada School of Medicine v. Dist. Ct.*, 128 Nev. 941, 381 P. 3d 671 (2012); *see also Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1280 (D. Nev. 2014).

In *Peterson*, the court initially granted Clark County School District's motion for summary judgment as to a plaintiff's negligent hiring claim pursuant to NRS 41.032(2),

but denied it as to negligent retention and supervision. On reconsideration, the court explained that Nevada law barred claims against the state for negligent supervision and retention as well as for negligent hiring:[3]

> In their prior motion for summary judgment, moving defendants argued that defendant CCSD was entitled to discretionary act immunity pursuant to NRS § 41.032(2). NRS § 41.032(2) provides complete immunity from claims based on a political subdivision's exercise or performance of a discretionary function or duty. However, in the January order, the court found that "discretionary immunity does not extend beyond the hiring of an employee to that employee's retention and supervision," relying on *Doe v. Estes*, 926 F. Supp. 979 (D. Nev. 1996).
>
> Moving defendants now argue that the court should reconsider its order because the Nevada Supreme Court has recently extended discretionary act immunity to cover both the supervision and retention of an employee. … The court agrees. In *University of Nevada School of Medicine v. The Eighth Judicial Dist. Ct.*, the Nevada Supreme Court held that "supervision of employees is a discretionary function entitled to immunity under NRS § 41.032(2). Therefore, the court shall grant moving defendants' motion to reconsider this claim.

*Peterson*, 57 F. Supp. 3d at 1280 (internal citations omitted).

Regardless of who plaintiff alleges UNLV negligently hired, retained or supervised, these claims are barred as a matter of law and should be dismissed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] The Nevada Supreme Court treats negligent training as part of the same cause of action as negligent hiring, retention and supervision. *See Freeman Expositions, LLC v. Eighth Judicial Dist. Ct.*, 138 Nev. Adv. Op. 77, 520 P.3d 803, 811 (2022), *citing Peterson*, 57 F.Supp.3d at 1280.

## XII.    Conclusion

Plaintiff failed to timely serve UNLV with process. Even if he had, this case should be dismissed because (1) UNLV is entitled to Eleventh Amendment Immunity; (2) plaintiff lacks standing to bring his claims against UNLV; and (3) plaintiff failed to allege sufficient facts against UNLV to state a claim. As such, UNLV requests that the Court enter an order dismissing all claims against it except for his Title VII claim.

Dated November 12, 2024.

/s/  Andrew D. Smith
Elda M. Sidhu (NV Bar No. 7799)
Andrew D. Smith (NV Bar No. 8890)
UNIVERSITY OF NEVADA, LAS VEGAS
4505 S. Maryland Parkway, Box 451085
Las Vegas, Nevada  89154-1085
*Attorneys for University of Nevada, Las Vegas*

## Certificate of Service

I certify that, on the date and time of the electronic service, a copy of the foregoing *Defendant UNLV's Motion to Dismiss* was sent via electronic means through CM/ECF to the following at their last known email addresses:

| | |
|---|---|
| Sigal Chattah | Chattahlaw@gmail.com |
| Margaret A McLetchie | maggie@nvlitigation.com, efile@nvlitigation.com |
| Joseph S.Gilbert | joey@joeygilbertlaw.com,alisha@joeygilbertlaw.com, carla@joeygilbertlaw.com, nancy@joeygilbertlaw.com |
| Christina A. Jump | cjump@clcma.org, rana.hakim@mlfa.org |
| Samira S. Elhosary | selhosary@clcma.org |

Dated November 12, 2024.


/s/  Sheena M. Imes
An employee of the Office of General Counsel
University of Nevada, Las Vegas

# EXHIBIT A

## Nevada Attorney General Service of Process Receipt dated

## August 29, 2024

# EXHIBIT A



AARON D. FORD
*Attorney General*

CRAIG A. NEWBY
*First Assistant Attorney General*

CHRISTINE JONES BRADY
*Second Assistant Attorney General*

TERESA BENITEZ-THOMPSON
*Chief of Staff*

LESLIE NINO PIRO
*General Counsel*

HEIDI PARRY STERN
*Solicitor General*

**STATE OF NEVADA**

OFFICE OF THE ATTORNEY GENERAL

100 North Carson Street
Carson City, Nevada 89701

## COMPLAINT – SERVICE OF PROCESS RECEIPT

DATE RECEIVED: 8/29/24 12:30p          RECEIVED BY: C. Pagni

CASE NAME: Corey Herwaski v. State of Nevada ex rel. Board of Regents of NV System of Higher Education and UNLV; Keith Whitfield, et al.

CASE NUMBER: 2:24-cv-00985    COURT: USDC (D. Nev.)

DOCUMENT(S) RECEIVED: Summons (State ex rel. BOR of NSHE); First Amended Complaint

☑ Service of Process (only OAG) as to State of NV ex rel. BOR of NSHE only    ☐ Courtesy Copy only

☐ **Full Service of Process (both OAG *and defendant(s)*)**
    * Service to defendant(s) *must* be completed and proof *must* be provided to OAG staff[1]

| NOTICE |
| --- |

A complaint must name the State of Nevada *on relation of* the department, commission, board, or other State agency whose actions are the basis for the lawsuit. *See* NRS 41.031(2). The "State of Nevada" alone is not a proper defendant on a complaint. NRS 41.031(3).

**Service of process is a two (2) step procedure when a complaint names a State entity, or officer or employee**. The summons and complaint must be served on:

  (1) the Attorney General at the Office of the Attorney General (OAG) in Carson City, Nevada (or an OAG staff member designated to receive service of process), *and*

  (2) the administrative head of a State entity, *or* the current or former public officer or employee (or an agent designated to receive service of process).

*See* NRS 41.031(2) and Rule 4.2(d) of the Nevada Rules of Civil Procedure. Service is not fully accomplished until both steps are complete.

Please read this notice carefully and sign below to acknowledge its receipt. This notice does not confirm that any specific State party, person, or agency has been properly served, nor does it waive any legal requirement for service of process.

Erik Kelliher _____    _____    8/29/24
PRINT NAME          SIGNATURE          DATE

SERVICE AGENCY (IF APPLICABLE): BBPS

[1] If OAG staff are unable to verify proof of service on *defendant(s)*, they are not required to check the box for "Full Service of Process."

Telephone: 775-684-1100 • Fax: 775-684-1108 • Web: ag.nv.gov • E-mail: aginfo@ag.nv.gov
Twitter: @NevadaAG • Facebook: /NVAttorneyGeneral • YouTube: /NevadaAG

(LNP rev. 4.6.23)