Christina A. Jump (admitted *pro hac vice*)
Email: cjump@clcma.org
Samira S. Elhosary (admitted *pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center for Muslims in America*
100 N. Central Expy, STE 1010
Richardson, Texas 75080
Telephone: 972-915-2507
*Attorneys for Defendant AJP Educational Foundation, Inc.*

*The Constitutional Law Center for Muslims in America
is the legal division of the Muslim Legal Fund of America.

Margaret A. McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COREY GERWASKI,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION, INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>　　　　　Defendants. | Case No. 2:24-cv-00985- APG-MDC<br><br>**DEFENDANT AJP EDUCATIONAL FOUNDATION, INC.'S SPECIAL MOTION TO DISMISS PURSUANT TO NEV. REV. STAT. § 41.660.**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") moves to dismiss Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim against AMP pursuant to Nevada's anti-SLAPP statute. Nev. Rev. Stat. § 41.635 *et seq*. Plaintiff seeks to hold AMP civilly liable for a good faith communication in furtherance of the right to free speech in direct connection with an issue of public concern. *Id.* § 41.650. As Plaintiff's IIED claim is based entirely on good faith communications by AMP, it violates the anti-SLAPP statute. Therefore, AMP respectfully requests this Court dismiss the IIED claim against it with prejudice.

Respectfully submitted,

Dated: November 18, 2024

/s/ Christina A. Jump
Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational Foundation, Inc.*

*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America

Maggie McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COREY GERWASKI,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION, INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>Defendants. | Case No. 2:24-cv-00985- APG-MDC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AJP EDUCATIONAL FOUNDATION INC.'S SPECIAL MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. iii

TABLE OF AUTHORITIES .......................................................................................................... iv

I.    INTRODUCTION .............................................................................................................. 1

II.    RELEVANT FACTS, ALLEGATIONS, AND PROCEDURAL HISTORY .......................... 1

    A.    Background Facts .................................................................................................... 1

    B.    Plaintiff's Allegations .............................................................................................. 2

    C.    Procedural History .................................................................................................. 3

III.    STANDARDS OF REVIEW ............................................................................................... 3

    A.    Nevada's Anti-SLAPP Statute ................................................................................ 3

    B.    Intentional Infliction of Emotional Distress ........................................................... 4

IV.    ARGUMENT ....................................................................................................................... 5

    A.    Nevada's Anti-SLAPP Statute Protects AMP From Liability ............................... 5

        1.    AMP's communication was related to an issue of public interest ............. 5

        2.    AMP's communication was made in a place open to the public or a public forum ............................................................................................................ 7

        3.    AMP made truthful communications ........................................................... 7

    B.    Plaintiff Cannot Show a Probability of Success on His IIED Claim ..................... 8

V.    CONCLUSION .................................................................................................................... 9

CERTIFICATE OF SERVICE ...................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Sanson*
    458 P.3d 1062 (Nev. 2020)..................................................................................................7

*Banerjee v. Cont'l Inc., Inc.*
    No. 2:17-cv-00466-APG-GWF, 2018 U.S. Dist. LEXIS 17387 (D. Nev. Feb. 1, 2018) ............3

*Adelson v. Harris*
    876 F.3d 413 (2d Cir. 2017)..................................................................................................8

*Coker v. Sassone*
    135 Nev. 8, 11, 432 P.3d 746 (2019).....................................................................................7

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*
    139 S. Ct. 1446, 203 L. Ed. 2d 681 (2019)...........................................................................4

*Damon v. Ocean Hills Journalism Club*
    102 Cal. Rptr. 205 (Cal. Ct. App. 2000)................................................................................7

*Four Navy Seals v. Associated Press*
    413 F. Supp. 2d 1136 (S.D. Cal. 2005).................................................................................6

*Gallagher v. Philipps*
    563 F. Supp. 3d 1048 (S.D. Cal. 2021).................................................................................6

*Gigawatt Operations Inc. v. Williams*
    No.: 2:23-cv-02036-JAD-NJK, 2024 U.S. Dist. LEXIS 88073 (D. Nev. May 15, 2024) ...........8

*Hale v. NV Prop. 1, LLC*
    No. 22-16274, 2024 U.S. App. LEXIS 6389 (9th Cir. Mar. 18, 2024) ..................................4, 9

*Hustler Magazine v. Falwell*
    485 U.S. 46 (1988)................................................................................................................4

*Kosor v. Olympia Cos., LLC*
    478 P.3d 390 (Nev. 2020).....................................................................................................7

*Lee v. Qiong Liu*
    542 P.3d 429 n.2 (Nev. 2024)...............................................................................................7

*Maduike v. Agency Rent-A-Car*
    953 P.2d 24 (Nev. 1998).......................................................................................................4

*Nevada Indep. Broad. Corp. v. Allen*
    99 Nev. 404, 410, 664 P.2d 337 (1983)................................................................................8

*Ojjeh v. Brown*
    257 Cal. Rptr. 3d 146 (Cal. Ct. App. 2019)...........................................................................7

*Pegasus v. Reno Newspapers, Inc.*
    118 Nev. 706, 714, 57 P.3d 82 (2002)..................................................................................8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*
   890 F.3d 828 (9th Cir.) .................................................................................................... 4

*Posadas v. City of Reno*
   851 P.2d 438 (Nev. 1993) ............................................................................................... 4

*ProCare Hospice of Nev., LLC v. OneCare Hospice, LLC*
   340 F.R.D. 174 (D. Nev. 2021) ....................................................................................... 1

*Sarver v. Chartier*
   813 F.3d 891 (9th Cir. 2016) ........................................................................................... 6

*Shapiro v. Welt*
   389 P.3d 262 (Nev. 2017) ........................................................................................... 5, 6

*Smith v. Craig*
   No.: 2:19-cv-00824-GMN-EJY, 2020 U.S. Dist. LEXIS 38774 (D. Nev. Mar. 4, 2020) ........... 4

*Snyder v. Phelps*
   562 U.S. 443, 458, 131 S. Ct. 1207, 1219 (2011) ........................................................... 4

*Spirtos v. Yemenidjian*
   499 P.3d 611 (Nev. 2021) ............................................................................................... 5

*Stark v. Lackey*
   458 P.3d 342 (Nev. 2020) ........................................................................................... 6, 8

*Warren v. Dollar Tree*
   No. 2:23-cv-1377-APG-EJY, 2024 U.S. Dist. LEXIS 6692 (D. Nev. Jan. 11, 2024) ............. 9

*Williams v. Lazer*
   495 P.3d 93 (Nev. 2021) .................................................................................................. 8

**<u>Statutes</u>**

Nev. Rev. Stat. § 41.635 *et seq* ................................................................................................ 1, 3

Nev. Rev. Stat. § 41.637(4) .............................................................................................. 1, 3, 5, 7

Nev. Rev. Stat. § 41.650 .......................................................................................................... 1, 3, 9

Nev. Rev. Stat. § 41.660 .......................................................................................................... 3, 5, 8

Nev. Rev. Stat. § 41.665(2) ............................................................................................................ 7

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................... 4

## I. INTRODUCTION

Plaintiff Corey Gerwaski ("Plaintiff") brings this lawsuit against AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") as a classic example of an individual attempting to misuse the legal system to suppress speech. Nevada's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute exists to protect against such groundless suits that only serve to drain the judiciary's and litigants' resources. Nev. Rev. Stat. § 41.635 *et seq*. Though Plaintiff's Amended Complaint is nearly devoid of communications he alleges AMP actually made, he generally asserts without any supporting factual allegations that AMP bears responsibility for communications from other individuals or entities expressing support for Palestinian causes and/or criticism of Israel's regime. *See, e.g.*, ECF No. 6, ¶¶ 27-28 (characterizing as a "threat" a speech that compared Zionism to white supremacy). Based on those communications, he asserts an Intentional Infliction of Emotional Distress ("IIED") claim against AMP.[1] However, the communications that Plaintiff alleges AMP made have protection under Nevada's anti-SLAPP statute, as they constitute "good faith communications" made "in direct connection with an issue of public interest in a place open to the public or in a public forum" which are truthful or "made without knowledge of its falsehood." Nev. Rev. Stat. § 41.637(4). Further, Plaintiff cannot demonstrate, with *prima facie* evidence, any probability of success on his claim. AMP therefore has immunity from civil liability based on those communications. Nev. Rev. Stat. § 41.650. Accordingly, AMP respectfully requests this Court dismiss Plaintiff's IIED claim and award AMP fees, costs, and other relief as appropriate.

## II. RELEVANT FACTS, ALLEGATIONS, AND PROCEDURAL HISTORY

### A. Background Facts

As AMP provided a substantive outline of the facts in its Rule 12 Motion to Dismiss (ECF No. 24), which it incorporates herein by reference, it will only reiterate here a limited number of relevant

---

[1] AMP believes both Plaintiff's IIED and Anti-Terrorism Act claims against it derive from protected free speech, as outlined in AMP's Rule 12 Motion to Dismiss. ECF No. 24. However, as the state anti-SLAPP statute can only be applied to state law claims, AMP only files this Special Motion to Dismiss as to Plaintiff's IIED claim against it. *See ProCare Hospice of Nev., LLC v. OneCare Hospice, LLC*, 340 F.R.D. 174, 178 (D. Nev. 2021) ("The Ninth Circuit has made clear that a state's anti-SLAPP law does not apply to the federal causes of action in cases involving both state and federal claims.").

1  facts. AMP is a 501(c)(3) non-profit organization that works entirely and only in the United States to
2  advance Palestinian rights and awareness of Palestine's rich history and culture. First Amended
3  Complaint, at ¶ 20, ECF No. 6 (Aug. 9, 2024) ("Amend. Compl."). Since its founding in 2006, AMP has
4  continuously worked toward its stated mission to educate the public in the United States on the rich
5  history and culture of Palestine.[2] AMP does not accept donations from outside the United States or send
6  money to any party outside the United States.[3] AMP has affiliation with the separately incorporated
7  501(c)(4) organization AJP Action, which engages in lobbying efforts that AMP cannot, and does not, as
8  a legally compliant 501(c)(3) organization. *Id.* ¶ 21. AJP Action is neither a defendant in this lawsuit nor
9  relevant to the consideration of the claims Plaintiff asserts.

**B.    Plaintiff's Allegations**

Plaintiff alleges that Defendant National Students for Justice in Palestine ("NSJP") is the "student advocacy arm of AMP," though no corporate or other relationship exists between the two.[4] *Id.* ¶ 24.

Plaintiff alleges AMP "continues to threat [sic] American Universities [sic] and college students" through the use of social media. *Id.* ¶ 27. Plaintiff alleges AMP "controls NSJP and uses it to operate a propaganda machine for Hamas." *Id.* ¶ 34. Plaintiff also alleges that AMP "sponsored the first SJP National Convention to unite the various SJP chapters" and "wreak[s] havoc on college campuses through the funding of student organizations." *Id.* ¶¶ 30, 38. Plaintiff further alleges that "these organizations" (presumably including AMP, but not clear from the pleadings) engage in "[r]hetoric against law enforcement in the United States." *Id.* ¶ 42.

Plaintiff provides descriptions of events occurring on other college campuses subsequent to Hamas' October 7, 2023, terrorist attack. Plaintiff alleges that "[e]xactly as AMP intended, NSJP acted as Hamas' loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States." *Id.* ¶ 70. Plaintiff also recites allegations about a "Toolkit" he attributes to NSJP. *Id.* ¶¶ 70-72,

---

[2] *About AMP*, AMERICAN MUSLIMS FOR PALESTINE, https://www.ampalestine.org/about-amp (last visited November 4, 2024).

[3] *See id.*

[4] AMP is a stand-alone organization with no corporate affiliation to any other defendant in this case, including NSJP. (Ahmad Decl., ¶ 5.) AMP takes no position in this Motion on the veracity of Plaintiff's claims against NSJP or any other defendant and responds on its own behalf solely as to the allegations made against AMP.

2

76-78, 80-84. Plaintiff alleges that "Defendants act as Hamas' public relations division and recruit students as domestic foot soldiers not only to disseminate Hamas's propaganda but also to foment violence, chaos, and fear across the United States and at UNLV to intimidate students and faculty and coerce change in American policy." *Id.* ¶ 93. He alleges that AMP "called" "days of resistance" to "UNLV's SJP Chapters." *Id.* ¶¶ 95, 102. He further asserts that "Defendants and UNLV" "see themselves as part of" "the same movement that terrorizes Jewish students at UNLV and continues to attack and terrorize them to this day." *Id.* ¶ 116.

**C.    Procedural History**

Plaintiff filed this action on May 26, 2024. ECF No. 1. This Court issued Summonses in this matter on May 28, 2024. ECF No. 4. Plaintiff then amended his Complaint on August 9, 2024. ECF No. 6. Plaintiff served the Summons and First Amended Complaint on AMP at its headquarters in Falls Church, Virginia, on September 3, 2024. ECF No. 10. Defendant AMP sought and received a short extension to file this Special Motion to Dismiss pursuant to Nev. Rev. Stat. § 41.660. ECF Nos. 32, 33. AMP now timely files this Motion to Dismiss pursuant to Nev. Rev. Stat. § 41.660.

### III.    STANDARDS OF REVIEW

**A.    Nevada's Anti-SLAPP Statute**

Nevada's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, codified at Nev. Rev. Stat. § 41.635 *et seq*, provides immunity from civil claims based on "good faith communication in furtherance of … the right to free speech in direct connection with an issue of public concern." Nev. Rev. Stat. § 41.650. Defendants bear the initial burden to show "by a preponderance of the evidence" that the claim against them is based on communication covered by the statute. *Banerjee v. Cont'l Inc., Inc.*, No. 2:17-cv-00466-APG-GWF, 2018 U.S. Dist. LEXIS 17387, at *4-5 (D. Nev. Feb. 1, 2018) (citing Nev. Rev. Stat. § 41.660(3)(a)). The burden then shifts to plaintiffs to make a *prima facie* showing that they have a probability of prevailing on their claim. *Id.* at *5 (citing Nev. Rev. Stat. § 41.660(3)(b)).

A defendant meets its initial burden, as relevant here, by demonstrating that the "communication" was "made in direct connection with an issue of public interest in a place open to the public or in a public forum." Nev. Rev. Stat. § 41.637(4). A court must also determine whether the communication is a "good faith communication," *i.e.*, "truthful or made without knowledge of its falsehood." *Smith v. Craig,* No.:

3

2:19-cv-00824-GMN-EJY, 2020 U.S. Dist. LEXIS 38774, at *7 (D. Nev. Mar. 4, 2020).

Where a defendant makes the requisite showing, courts move onto the second prong of the anti-SLAPP analysis – whether the plaintiff can demonstrate with *prima facie* evidence a probability of prevailing on the claim. Nev. Rev. Stat. § 41.660(3)(b). Where defendants challenge the legal sufficiency of a plaintiff's claim, as here, courts apply the standard from Federal Rule of Civil Procedure 12(b)(6) to determine whether the plaintiff stated a claim. *Smith*, 2020 U.S. Dist. LEXIS 38774 at *8, *19 (granting the defendant's anti-SLAPP motion to dismiss because the plaintiff's allegations did not support a plausible claim for relief) (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446, 203 L. Ed. 2d 681 (2019)) .

**B.     Intentional Infliction of Emotional Distress**

Plaintiff's only state law claim against AMP is his Ninth Claim for Relief alleges a claim of Intentional Infliction of Emotional Distress ("IIED"). To sufficiently allege that claim, a plaintiff must show (1) that a defendant engaged in extreme and outrageous conduct with either the intention of or reckless disregard for causing emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) actual or proximate causation exists between the identified conduct and the distress. *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993). Extreme and outrageous conduct requires far more than insulting and even threatening behavior. Instead, the plaintiff must allege actions "outside all possible bounds of decency and [] regarded as utterly intolerable in a civilized community." *Hale v. NV Prop. 1, LLC*, No. 22-16274, 2024 U.S. App. LEXIS 6389, at *3 (9th Cir. Mar. 18, 2024) (quoting *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998)). Plaintiffs cannot use "intentional infliction of emotional distress" to circumvent the First Amendment's protections, particularly where, as here, the Defendant's speech occurs in a public place on a matter of public concern. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 458, 131 S. Ct. 1207, 1219 (2011) (recognizing that speech made in a "public place on a matter of public  concern … is entitled to 'special protection' under the First Amendment [and] cannot be restricted simply because it is upsetting or arouses contempt"); *Hustler Magazine v. Falwell*, 485 U.S. 46, 56-57 (1988) (a plaintiff cannot make an end-run around the First Amendment by suing for emotional distress rather than defamation).

## IV. ARGUMENT

### A. Nevada's Anti-SLAPP Statute Protects AMP From Liability

Communications Plaintiff attributes to AMP cannot form the basis of IIED liability because they were made on an issue of public interest, "in a place open to the public or in a public forum," and were truthful or made without knowledge of falsehood. *Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017); *see also* Nev. Rev. Stat. § 41.637(4). AMP's alleged communications concerned the ongoing war between Israel and Hamas and how the U.S. government and domestic institutions respond to that conflict, clearly an issue of great public interest in the last year. Further, these alleged communications appear on social media or on AMP's website, both of which constitute public forums. Finally, as supported by the attached Declaration of Munjed Ahmad, the communications were truthful or made without knowledge of falsehood. *See generally* Exhibit A, Declaration of Munjed Ahmad. AMP therefore meets its burden to properly show by a preponderance of the evidence that Plaintiff's IIED claim rests on protected communication. Nev. Rev. Stat. § 41.660(3)(a).

Plaintiff's First Amended Complaint does not include specific allegations of statements or actions by AMP or any representative of AMP. Instead, Plaintiff relies solely on: (1) statements it alleges "Defendants" generally made, or (2) statements other parties made that Plaintiff then alleges AMP somehow directed or controlled. Though the First Amended Complaint is rife with unverified screenshots purportedly showing social media posts, none of those posts come from AMP's social media pages. *See* Amend. Comp. at ¶¶ 11-13, 16, 19, 24-26, 29. Nonetheless, AMP presents the arguments set forth below under Nevada's anti-SLAPP statute as to comments attributed to it, as tenuous as the connections between AMP and those comments may be, as those communications fall under the protection of the law. *See Spirtos v. Yemenidjian*, 499 P.3d 611, 614 (Nev. 2021) (holding that a moving party's denial that they made an alleged statement is not relevant to the court's analysis, and courts may dismiss claims based on the plaintiff's version of a statement).

1. <u>AMP's communication was related to an issue of public interest</u>

All communications alleged in Plaintiff's First Amended Complaint that Plaintiff attributes to AMP concern matters of public interest – specifically, the ongoing war between Israel and Hamas and the role the U.S. government and institutions play in that conflict. Nevada adopts guiding principles from

5

California that inform whether an issue is in the public interest. *Stark v. Lackey*, 458 P.3d 342, 346 (Nev. 2020). Those principles ask courts to consider the following:

> (1) "public interest" does not equate with mere curiosity; (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest; (3) there should be some degree of closeness between the challenged statements and the asserted public interest – the assertion of a broad and amorphous public interest is not sufficient; (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Id.* (quoting *Shapiro*, 389 P.3d at 268). AMP's communications about the ongoing conflict in Gaza go far beyond "mere curiosity" and are of interest to a substantial number of people, as evidenced by news coverage about the issue over the last thirteen months. The communications are closely related to that issue, as they directly address AMP's informed positions on the conflict and how it hopes the U.S. government and institutions will respond. *See, e.g.,* Amend. Compl. ¶ 28 (purporting to be a screenshot of a video of a speech made by AMP Executive Director Dr. Osama Abuirshaid addressing college students protesting in support of Palestine). AMP's purported speech is focused on the public interest and not related to a private controversy, specifically, what Americans need to know about the conflict and how they could respond. *Id.* at 12-13 (purporting to be NSJP social media posts calling for protests and boycotts). Finally, AMP does not take private information and turn it into a matter of public interest by communicating it widely; this issue of the conflict in Gaza is one of concern for many, if not all Americans.

As they all pertain to the ongoing armed conflict in Israel and Palestine (and the U.S. government's involvement therein), the specific communications Plaintiff attempts to attribute to AMP address a clear issue of public interest. *See Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1078 (S.D. Cal. 2021) (articles and interviews about alleged war crimes committed by Navy SEAL clearly "in connection with a public issue"); *see also Sarver v. Chartier*, 813 F.3d 891, 902 (9th Cir. 2016) ("We conclude that this focus on the conduct of the Iraq War satisfies California's standards for determining whether an issue is one of public concern. That war, its dangers, and soldiers' experiences were subjects of longstanding public attention."); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005)

6

("In this case, the broader topic of treatment of Iraqi captives by members of the United States military on this matter of public interest qualifies as a public issue."); *Ojjeh v. Brown*, 43 Cal. App. 5th 1027, 1043, 257 Cal. Rptr. 3d 146, 158 (2019) (holding partial completion of "documentary feature film 'that would raise public awareness about the Syrian refugee crisis'" was speech in direct connection with issues of public interest).[5]

        2.    <u>AMP's communication was made in a place open to the public or a public forum</u>

The communications Plaintiff attributes to AMP were made in a place open to the public or a public forum. Nev. Rev. Stat. § 41.637(4). Nevada courts look to federal First Amendment precedent to inform the meaning of a "public forum." *Kosor v. Olympia Cos., LLC*, 478 P.3d 390, 395 (Nev. 2020) (citing *Abrams v. Sanson*, 458 P.3d 1062, 1066 (Nev. 2020)). Under that test, "a public forum is not limited to a physical setting, but it also includes other forms of public communication." *Id.* (adopting the analysis from *Damon v. Ocean Hills Journalism Club*, 102 Cal. Rptr. 205, 210 (Cal. Ct. App. 2000)). Newsletters, including email listservs, may constitute public forums. *Id.*; *see also Abrams*, 458 P.3d at 1067 (comparing a listserv with around 50,000 subscribers to a radio or television broadcast). Communications on the internet generally also constitute a public forum, where the communication is posted on a platform that allows and encourages interaction with the public. *Kosor*, 478 P.3d at 396-98 (looking to federal First Amendment precedent to determine that a public forum can encompass private websites that allow interactivity). Plaintiff here does not allege harm from any statements he claims AMP made privately or to a limited number of people. *Cf. Abrams*, 458 P.3d at 1068 (holding that "statements made in a private telephone conversation between two people" are not made in a public forum). Instead, Plaintiff's claims arise exclusively from social media posts and public statements, which he attributes to AMP. Therefore, the communication meets the anti-SLAPP statute's public forum requirement.

        3.    <u>AMP made truthful communications</u>

AMP attaches hereto the Declaration of its co-founder and Board of Directors member, Munjed Ahmad, attesting that AMP's communications are truthful, made without knowledge of their falsity, or

---

[5] Nevada courts "look to California cases for guidance because of the similarities between California's and Nevada's anti-SLAPP statutes." *Lee v. Qiong Liu*, 542 P.3d 429 n.2 (Nev. 2024) (citing *Coker v. Sassone*, 135 Nev. 8, 11, 432 P.3d 746, 749 (2019)); *see also* Nev. Rev. Stat. § 41.665(2).

7

are statements of opinion[6] incapable of being true or false. (*See generally* Ahmad Decl., ¶¶ 7-15.) Courts regularly recognize that a "declaration regarding the defendant's state of mind is entitled to be believed, absent contradictory evidence in the record." *Gigawatt Operations Inc. v. Williams,* No.: 2:23-cv-02036-JAD-NJK, 2024 U.S. Dist. LEXIS 88073, at *9 (D. Nev. May 15, 2024); *see also Stark*, 458 P.3d at 347 (holding that even under a preponderance of the evidence standard, an affidavit asserting that the speaker believes the communications to be truthful is sufficient). The analysis focuses on whether a defendant "genuinely believed" the information to be true, not whether the facts were actually correct or debatable. *Gigawatt Operations Inc.*, 2024 U.S. Dist. LEXIS 88073, at *9; *see also Williams v. Lazer*, 495 P.3d 93, 97 (Nev. 2021) (holding opinions and beliefs cannot, by definition, be knowingly false). Plaintiff's complaint provides no allegations that AMP made statements with knowledge of their falsity. *Cf. Adelson v. Harris*, 876 F.3d 413, 415 (2d Cir. 2017) (affirming the Nevada Supreme Court's application of the anti-SLAPP statute where the plaintiff did not allege knowledge of falsity). AMP's alleged communications occurred in good faith made in furtherance of the right to free speech, in direct connection with an issue of public concern, and warrant protection by Nevada's anti-SLAPP statute.

**B.     Plaintiff Cannot Show a Probability of Success on His IIED Claim**

Plaintiff fails to properly state a claim for intentional infliction of emotional distress against AMP, as pled in Plaintiff's Ninth Claim for Relief. Amend. Compl. at 72 ("Intentional Infliction of Emotion [sic] Distress"). Therefore, Plaintiff cannot meet his burden to establish a *prima facie* showing of a probability that he will succeed on this claim. Nev. Rev. Stat. § 41.660(3)(b).  As explained more fully in AMP's Rule 12 Motion to Dismiss, incorporated herein by reference, Plaintiff does not allege that AMP engaged in extreme or outrageous conduct, nor does he allege suffering severe or extreme emotional distress. He therefore necessarily cannot – and does not – allege any direct or proximate link between AMP's actions and Plaintiff's purported emotional distress. Plaintiff cannot establish a probability of success in his IIED claim, and AMP therefore asks this Court to dismiss that claim in full.

Plaintiff does not allege communications he attributes to AMP that occurred "outside of all bounds

---

[6] *See Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 714, 57 P.3d 82, 87 (2002) ("Statements of opinion cannot be defamatory because there is no such thing as a false idea.") (internal quotation omitted); *see also Nevada Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 410, 664 P.2d 337, 341 (1983) ("[S]tatements of opinion as opposed to statements of fact are not actionable").

of decency" or that "no reasonable person could be expected to endure." *Hale*, 2024 U.S. App. LEXIS 6389, at *3. Further, Plaintiff does not allege any facts, beyond conclusory statements, that show AMP had an intention of causing Plaintiff emotional distress or acted with reckless disregard for causing emotional distress. *Id.* at *2. Even taking Plaintiff's few far-fetched factual allegations against AMP as true, he alleges only that AMP uses social media in a way he does not like. Amend. Compl. ¶ 27. Plaintiff also fails to allege any facts about his own emotional distress nor plead any physical impact or serious illness caused by the emotional distress. *Warren v. Dollar Tree*, No. 2:23-cv-01377-APG-EJY, 2024 U.S. Dist. LEXIS 6692, at *5 (D. Nev. Jan. 11, 2024) (holding the requirement to show a physical impact of the distress is not satisfied by "general physical or emotional discomfort"). Plaintiff pleads no more than "great humiliation, embarrassment, shame, and other pain and suffering." Amend. Compl. ¶ 365. These allegations do not suffice under the legal standard that Plaintiff must satisfy. Finally, Plaintiff does not plead that any action or statement by AMP was the actual or proximate cause of any distress he experienced. Instead, he alleges that other actors did or said things that Plaintiff found distressing. *See generally* Amend. Compl. ¶¶ 217-248. Even taking all of Plaintiff's allegations as true, as this Court must, Plaintiff fails to properly state a claim for IIED.

## V.   CONCLUSION

Plaintiff's IIED claim rests solely on communications he alleges AMP made that fall within the protection of Nevada's anti-SLAPP statute. AMP's alleged communications occurred in good faith, in furtherance of the right to free speech, and "in direct connection with an issue of public concern." Nev. Rev. Stat. § 41.650. AMP has immunity against civil actions based on those communications. Plaintiff also fails to demonstrate any probability of prevailing on his IIED claim. Therefore, AMP respectfully requests this Court dismiss Plaintiff's IIED claim against it in full, with prejudice, and award AMP reasonable costs, fees, and other monetary relief as appropriate and provided for by the statute.

/ / /

Dated: November 18, 2024

Respectfully submitted,

/s/ Christina A. Jump
Christina A. Jump (admitted *pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (admitted *pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational Foundation, Inc.*

*\*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*

Maggie McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of November, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Christina A. Jump
Christina A. Jump (admitted *pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (admitted *pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational Foundation, Inc.*

*\*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*