SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd., #205
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COREY GERWASKI,<br><br>                    Plaintiffs,<br><br>vs.<br><br>STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEYM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually, AJP EDUCATIONAL FOUNDATION INC., A California Non-Profit Corporation, STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION DOES I-XX and ROE entities I-XX.<br><br>                    Defendants. | Case No.: 2:24-cv-00985<br><br><br>**OPPOSITION TO MOTION TO DISMISS**<br><br><br>**[ORAL ARGUMENT REQUESTED]** |

COMES NOW, Plaintiff, COREY GERWASKI, (hereinafter "Gerwaski" *inter alia*) by and through his attorneys of record, SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP and JOSEPH S. GILBERT, ESQ., of JOEY GILBERT LAW, and file the foregoing Response to Motion to Dismiss Complaint [ECF 35] filed by Defendants STATE OF NEVADA ex rel.

1

BOARD OF REGENTS OF THE NEVADA SYSTEYM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS in the above-entitled action.

## INTRODUCTION

The following action involves religious discrimination, harassment and obstruction against Plaintiff as a student at the University of Nevada Las Vegas, (UNLV) in addition to as an employee of UNLV under both Title VII and Title IX.

UNLV's culpability along with WHITFIELD are delineated in the First Amended Complaint ("FAC") as to all charges of discrimination and collusion with other named Defendants allowed soliciting, inciting and encouraging students at UNLV, along with faculty to engage in harassment of Jewish students at the University, and successfully coordinating the harassment and plight of Gerwaski herein. It is no coincidence that Defendant organizations were emboldened by UNLV's inaction, specifically engaged in activities at UNLV for the purposes of deliberately tormenting and harassing Jewish students and wreaking havoc on Jewish student life on campus. UNLV's actions not only encouraged and solicited harassment against Jewish students on UNLV's campus, it also legitimized blatant antisemitic acts that Mr. Gerwaski was subjected to by students and faculty.[1]

## STATEMENT OF FACTS

After October 7, 2023, students at UNLV and faculty rallied to support Hamas, whose terrorists had invaded Israel to murder, torture, and rape 1,200 people and abducted hundreds of civilians. As Plaintiff alleges in his FAC, UNLV encouraged antisemitic discrimination and harassment of Jewish students at UNLV directly resulting on unimaginable harassment against

---

[1] It is significant to note that Defendants fail to provide any arguments in their Motion as to why Plaintiffs' Second, Fifth, Sixth, Seventh, Eighth and Twelfth Claim for Relief should be dismissed precluding Plaintiff from addressing such arguments on the merits.

Jewish students across campus resulting overwhelming harassment and discrimination against Mr. Gerwaski.

Defendant UNLV's roll and acts in this case are particularly egregious because their roll was two-fold. First, allowing the protests on-campus to sow chaos at the University, inciting, encouraging and soliciting harassment of Jewish students and delegitimizing their presence on campus, encouraging students and faculty to follow their lead. Second, to deliberately facilitate and oversee egregious discrimination, doing nothing regarding same, by faculty, staff and members of the UNLV Board to the extent that it not only permeated as to Gerwaski's employment but also to his position in the student body.

**PROCEDURAL POSTURE AND SERVICE OF PROCESS ON UNLV**

On May 26, 2024, Plaintiff filed his initial Complaint in this action [ECF 1]. In the Complaint, Plaintiff noted that he was pending receipt of a right to sue letter from the EEOC and that he was reserving the right to amend the Complaint upon receipt. [2] On August 8, 2024, Plaintiff received his right to sue letter and amended the Complaint as the operative pleading herein on August 9, 2024.

Due to the fact that the FAC including the Title VII allegations directly impacted allegations against UNLV, Plaintiff served the University on August 29, 2024 through the Attorney General and Defendant Keith Whitfield on August 28, 2024.

It is significant to note that UNLV does not consider the President of UNLV Whitfield the administrative head of UNLV nor an agent designated to receive service of process. Instead, the online UNLV manual designates an interim chancellor as the individual to accept service of process.

---

[2] See ECF 1;49 *fn* 24

**LEGAL ARGUMENT**

**A.    THIS COURT HAS JURISDICTION OVER UNLV**

Plaintiff submits herein, that good cause exists for Defendants to have been served on August 29, 2024, less than a week of the service period of the initial Complaint, and less than 30 days of filing the Amended Complaint. *Assuming arguendo* that this Court finds that Plaintiff's did not comply with Fed. R. Civ. P 4(m), Plaintiffs seeks an extension retroactively to qualify this Amended Complaint as properly served, since Defendant was aware of the Complaint as delineated herein.

As delineated herein, this Court should maintain jurisdiction over UNLV since UNLV knew about the Complaint, and there is no prejudicial effect to UNLV by this Court maintaining jurisdiction hereon. It is also significant to note that as early as June 25, 2024, the Parties attempted to engage in mediation following the filing of the action as indicated by the redacted emails attached hereto as Exhibit "1". Said EEOC mediation subsequently never took place and the filing of the Amended Complaint ensued.

More importantly though, because the nature of the FAC and claims against UNLV, it is Gerwaski who would be prejudiced with a dismissal of the foregoing action, since the 90 days from Gerwaski's receipt of the Right to Sue Letter was received expired on or about November 9, 2024.

Federal Rule of Civil Procedure 4(m) requires that defendants be served with process within 90 days after the complaint is filed. If the plaintiff fails to meet this deadline, "the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* However, Rule 4(m) instructs the court to extend the time to serve "for an appropriate period" if the plaintiff

shows good cause for the failure to timely serve process. *Nimble v Macomber,* 2:24-cv-1259-DJC-CSK (E.D. Cal. Aug. 21, 2024)

In determining whether or not to extend time for service, courts within the Ninth Circuit engage in a two-step analysis, pursuant to Fed.R.Civ.P. 4(m). First, where good cause is shown, the time for serving the complaint is extended for an appropriate period. *See* Fed.R.Civ.P. 4(m). "Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period." *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).  Where good cause is not found, the Court exercises its discretion to extend time to effectuate service ***when the extension is sought retroactively*** after the defendant was served or if the defendant is aware of the case. [*Emphasis added*] *See U.S. Bank Tr. v. Guevara,* Case No.: 2:18-cv-00004-JCM-NJK (D. Nev. Jul. 9, 2018).

Here while Plaintiff concedes that filing an Amended Complaint does not automatically restart the service period. However, federal courts have construed the service rules liberally to permit plaintiffs additional time for service. *Arroyo v. Wheat* , , 102 F.R.D. 516, 518 (D. Nev. 1984) (construing former Rule 4(j) and finding that "good cause" exists for extension of time where the plaintiff's service efforts have been bona fide, and there was no dilatory or willful delay) (emphasis added). The *Arroyo* court also noted that "[i]t was not intended that [former] Rule 4(j) would be enforced harshly; that is why liberal extensions of time are permitted under Rule 6(b)." *Id.* (emphasis added).

Nevada's federal court has also determined that the Court "has broad discretion to extend time for service under Rule 4(m)." In considering whether to grant an extension, "a district court may consider factors 'like statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" *Woodbury Law, Ltd. v. Bank of Am*, Case No. 2:15-cv-02247 (D. Nev. Apr. 11, 2016).

It is significant to note that while Defendant Keith Whitfield filed a Motion to Dismiss with this Court, never was it asserted that he was not the proper person to be served on behalf of UNLV. Furthermore, despite being placed of the lawsuit after service of the Attorney General,[3] never did Defendants notify that the property person to be served was the Interim Chancellor at UNLV.

Plaintiff only found out about the faulty service of process, after contact was made with UNLV's counsel providing them with a courtesy of notice that an Answer had not been filed in the case.[4] Specifically, Counsel for UNLV provided the following:

Ms. Chattah,

Thank you for contacting me before attempting to take a default. UNLV's time to respond to the complaint has not started to run, though. FRCP 4(j) governs service on a state government entity. Rule 4(j)(2) states,

*(2) State or Local Government. A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:*
    *(A) delivering a copy of the summons and of the complaint to its chief executive officer; or*
    *(B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.*

UNLV is not a legal entity. The entity is the Nevada System of Higher Education. See NRS 396.020(6). The chief executive officer of the Nevada System of Higher Education is its Chancellor, not UNLV President Keith Whitfield. See the NSHE Board of Regents Handbook, Title 1, Article VII (Officers of the University), Section 3 ("The Chancellor is the chief executive officer and ex-official treasurer of the Nevada System of Higher Education..."). The Board of Regents Handbook is available here: https://nshe.nevada.edu/regents/policies/

Unlike President Whitfield, the Chancellor has not authorized UNLV's Office of General Counsel to accept service on her behalf. I am not permitted to waive service of process on the Nevada System of Higher Education.

I am aware that the Nevada Attorney General was served on August 29. If you were to rely on FRCP 4(j)(2)((B), which permits service of an entity under applicable state law, you would still need to complete service on the

---

[3] It is significant to note that Defendants allege that that Attorney General placed Plaintiff on notice of the service under Nevada law. Plaintiff never received any communication or notice regarding service of process from the Attorney General's office.
[4] *See* Email dated October 18, 2024 attached herein as Exhibit "2"

Chancellor.[5]  NRCP 4.2(d)(1) requires service on both the Attorney General and the "administrative head of the named public entity," which is the Chancellor.

It is significant to note, that UNLV does not currently have a Chancellor nor did they at the time the lawsuit was filed; UNLV had an interim chancellor. After notifying Counsel for UNLV regarding same on October 18, 2024, Plaintiff was notified that service can be effectuated at NSHE offices in Las Vegas, wherein service of process was effectuated on October 22, 2024.

Defendants cite to *Ambulatory Surgery Ct., LLC v UnitedHealth Grp., Inc.* 99 F. Supp. 3d 1110, 1186 (C.D.C al 2015) in support of their allegations that Plaintiff does not show this court good cause sufficient to sustain jurisdiction in this action.

It is indisputable that Defendants knew of the lawsuit as early as June, 2024 since they sought to engage in an EEOC mediation with Plaintiff as demonstrated by the EEOC emails attached hereto[6] (notwithstanding the extensive media coverage of the matter). Second, Defendants have not articulated any prejudice if this lawsuit were allowed to proceed. Most importantly though is that it is Plaintiff who would be substantially prejudiced with the dismissal of the Complaint, since the 90 days to file his action after receipt of the letter for the EEOC claim was November 9, 2024.

**B.    ELEVENTH AMENDMENT IMMUNITY DOES NOT APPLY SINCE PLAINTIFF SEEKS PROSPECTIVE RELIEF FOR VIOLATION OF DUE PROCESS RIGHTS UNDER 42 USC §1983.**

Defendants seek to dismiss the action against UNLV claiming Eleventh Amendment immunity applies hereto. Plaintiff concedes that Eleventh Amendment immunity applies to UNLV only to a certain extent.

---

[5] It is significant to note that Defendant also misstates that Plaintiff knew that he had to serve the Chancellor as early as August 29, 2024, as evidenced by the October 18, 2022 email attached hereto which is the first time that any mention of serving the Chancellor is made.

[6] See Plaintiff's Exhibit "1" attached hereto.

In the Ninth Circuit, Eleventh Amendment immunity extends to NSHE and its constituent entities as agencies of the State of Nevada. *See Johnson v. Univ. of Nevada*, 596 F.Supp. 175, 178 (D. Nev. 1984) (concluding that Nevada's university system operates as a branch of state government so that its entities are captured within the meaning of the Eleventh Amendment); *see also Krainski*, 616 F.3d at 968 (holding that the plaintiff may not bring an action against the University of Nevada, Las Vegas under the Eleventh Amendment); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc*., 375 F.3d 861, 883 n. 17 (9th Cir. 2004) (noting NSHE's immunity from suit under the Eleventh Amendment). Here, there is no question that UNLV is an NSHE entity for purposes of Eleventh Amendment immunity.

However, there is a narrow exception to Eleventh Amendment immunity "where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's *federal* constitutional or statutory rights." *Krainski v Nevada ex rel Bd. Of Regents*, 616 F.3d 963 (9th Cir. 2010).

Whether relief sought is prospective or retrospective is based on *Ex parte Young*, 209 U.S. 123 (1908), and a litany of cases that followed. *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence. *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).

In deciding whether relief is prospective and based on an ongoing violation of federal rights, courts "look to the substance rather than to the form of the relief sought[.]" *Id*. at 279. An example of prospective relief that triggered the immunity exception was observed in *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836 (9th Cir. 1997). In that case, the Ninth Circuit

reversed the district court's dismissal of a plaintiff's § 1983 claim aimed at an official capacity defendant because plaintiff sought reinstatement as a laboratory employee which constituted proper prospective injunctive relief. *Id*. at 837. The Ninth Circuit reasoned that the plaintiff in *Doe* was "not attempting to recover lost wages or other accrued benefits by arguing that their continued withholding is an ongoing violation" but simply sought job reinstatement without any compensation. *Id*. at 840.

Conversely, relief that is not prospective for purposes of the immunity exception includes relief "expressly denominated as damages" because it "serves to compensate a party injured in the past by an action of a state official in his official capacity[.]" *Papasan*, 478 U.S. at 278 (citation omitted). Relief that is referred to or styled as "prospective" but equates to "an award of damages for a past violation of federal law" does not trigger the exception to Eleventh Amendment immunity. *Id*.

Further, the Ninth Circuit has been clear as noted in *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) stating that the Eleventh Amendment "does not bar actions for declaratory . . . relief." (citation omitted)); *see also Jackson v. Hayakawa*, 682 F.2d 1344, 1351 (9th Cir. 1982) ("[t]he Eleventh Amendment does not bar actions for injunctive or declaratory relief against state officials sued under 42 U.S.C. § 1983.").

While Defendants concede that the Eleventh Amendment does not apply to Plaintiff's Title VI and Title VII claims (i.e., Third and Eighth[7] Claims for Relief), Defendants seek dismissal of all other claims as delineated *infra*.

It is significant to note the four paragraphs requesting prospective relief in Plaintiff's FAC[8]; specifically:

---

[7] Defendants mislabel Plaintiffs Eighth Claim for Relief as the Employment law claim, which is the Plaintiff's Twelfth Claim for Relief in the FAC.
[8] See ECF-6; 76, 1-15.

9

1. Plaintiff seeks a Declaration from the Court that Defendants have violated Plaintiff's constitutional right to equal protection.

2. Plaintiff seeks an immediate hearing on Plaintiff's Motion for Temporary Restraining Order, and, upon hearing, enter an Order restraining Defendants from allowing non-student groups interfere and continue to torment Jewish students on campus by engaging in unprotected speech.

3. Plaintiff seeks to permanently enjoin Defendants SJP-UNLV and NSJP from engaging in any campus activities, banning them from UNLV's campus.

4. Plaintiff seeks to permanently enjoin all non-student organizations that violate NSHE student conduct and policies from engaging in any campus activities, banning them from UNLV's campus.

## C. PLAINTIFF'S ALLEGATIONS UNDER THE ARE SUFFICIENTLY PLED UNDER *TWOMBLY* TO PRECLUDE DEFENDANT FROM PREVAILING ON ITS MOTION TO DISMISS.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).* Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal*, *556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (citing Twombly, 550 U.S. at 555).* In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, *550 U.S. at 556*. However, at the pleading stage, the plausibility requirements of *Iqbal* and *Twombly* do not require "some general and formal level of evidentiary proof." *Whittney v. Guys, Inc.*, *700 F.3d 1118, 1128 (8th Cir. 2012).*

1
2
3
4
5
6
7

"Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the claimed violations. *Twombly*, 550 U.S. at 556. "There is no requirement for direct evidence; the factual allegations may be circumstantial and 'need only be enough to nudge the claim 'across the line from conceivable to plausible.'" *McDonough v. Anoka County, 799 F.3d 931, 945 (8th Cir. 2015)*

8

### 1. Plaintiff Has Standing to Bring the Foregoing Claims

9
10
11
12
13
14
15

Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife* , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Article III's "case or controversy" requirement "limits federal courts' subject matter jurisdiction by requiring, *inter alia*, that plaintiffs have standing.*" Chandler v. State Farm Mut. Auto. Ins.,* 598 F.3d 1115, 1121 (9th Cir. 2010).

16
17
18
19
20
21
22
23

A plaintiff must demonstrate standing by establishing the "irreducible constitutional minimum" of (1) an injury in fact (2) fairly traceable to the defendant's challenged conduct (3) that is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation and quotation omitted). A plaintiff shows injury in fact if he has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

24
25
26
27
28

To establish standing, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *Food and*

1  *Drug Administration v. Alliance for Hippocratic Medicine,* No. 23-10362 (5th Cir. 2023)

2  citing to *Summers v. Earth Island Institute,* 555 U. S. 488, 493.

3       An injury in fact must be "concrete," meaning that it must be real and not abstract. *See*

4  *Transunion LLC v. Ramirez,* 121 S. Ct. 2190, 951 F. 3d 1008 (2021). The injury also must be

5  particularized; the injury must affect "the plaintiff in a personal and individual way" and not be a

6

7  generalized grievance. *Lujan,* 504 U. S., at 560, n. 1.

8       Defendants claim that other than his termination under Title VII, Plaintiff fails to allege

9  any concrete injuries. However, starting on page 52 of the FAC and continuing for four pages

10 thereafter, Plaintiff delineates the discrimination that he suffered, as an employee and a member

11 of Student Government, specifically alleging disparate treatment. Thereafter, Plaintiff

12 specifically alleges "[P]laintiff suffered injuries in the denial of access to and enjoyment of his

13 educational benefits, and the cumulative trauma now and into the future that will require medical

14

15 and educational analyses, evaluations, and treatments, the cost of which entitles Plaintiff to

16 special damages in an amount to be proven at time of trial. Plaintiff suffered injuries in his

17 emotional and psychological harm, humiliation, degradation, damaged relationships, and general

18 emotional distress. [ECF 6, 61;1-5].

19

20       **2.  Plaintiff Alleged Sufficient Facts to Withstand Dismissal of Plaintiffs First Claim for Relief.**

21       At the outset whether UNLV provided substantial assistance to the Foreign Terrorist

22

23 Organizations is a question of fact to be determined at trial. UNLV allowed SJP and other non-

24 student organizations to wreak havoc on campus spewing vile racial epithets against Gerwaski

25 and other Jewish students. UNLV not only provided them a platform over the course of two

26 semesters, but also provided them with locations on campus to engage in their behavior. UNLV

27

28

provided substantial assistance[9] to SJP, and their affiliates to continue terrorizing Jewish students on campus. The mutual reliance and relationship that exists between Hamas, AMP, NSJP, SJP-UNLV ***and their faculty*** has resulted in injuries to Mr. Gerwaski, insofar as the acts of terrorism against Jews in Israel, refusing to release hostages and collectively and collaterally justifying these acts as resistance to harm students at UNLV and specifically Gerwaski. Abhorrently, UNLV faculty allowed this vile antisemitic behavior to persist over the course of two semesters, despite Gerwaski and other Jewish students begging them to address the issue, placing them on notice that they did not feel safe on campus. Further, UNLV and faculty allowed these acts to persist despite the fact that the acts were overtly violating campus policies.

Further, Plaintiff's FAC provides 27 pages of extensive facts creating a direct nexus between Hamas, Defendants AMP, SJP and UNLV's substantially assisting and complicitly allowing SJP-UNLV to engage in these egregious acts which directly caused damages to Mr. Gerwaski.

The only three requirements Mr. Gerwaski, needs to meet to prevail under the ATA are that he suffered an act that arose from international terrorism. UNLV's involvement in assisting FTO's is adequately alleged in the FAC.  As alleged in Plaintiff's Complaint UNLV and Defendants AMP collectively and collaterally engaged in actions in violation of JASTA [See ECF-6; 57-58].

Plaintiffs FAC specifically alleges that "[O]n January 21, 2024, Hamas issued a document in English, *Our Narrative—Operation Al-Aqsa Flood,* explaining how the protests and slogans of the American students in the wake of October 7, have renewed and reinvigorated the

---

[9] See ECF 6, 54-55.

goals of Hamas to completely destroy Israel.[10] [See ECF-6; 26-27]. There could not be a clearer, bolder demonstration of substantial assistance of UNLV to Hamas. The link of UNLV to the Hamas leader Khaled Mashal could not be made any clearer, then Mashal's own words, claiming actions allowed by UNLV have "***renewed and reinvigorated the goals of Hamas to completely destroy Israel***".

### 3.  Plaintiff's Third and Fourth Claims for Relief Withstand Dismissal

A plaintiff states a Title VI claim for hostile environment against a recipient of federal funds when: (1) the institution's environment is hostile to the protected class; (2) the institution had notice of the problem; and (3) it "failed to respond adequately to redress" the hostile environment. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998) (citation omitted). A school violates its Title VI duty when its response manifests "deliberate indifference." *Id.* at 1034. "Unlike claims under the Equal Protection Clause which must plead intentional discrimination, Title VI claims need only allege that the defendant is engaging in discrimination, although a showing of intent is necessary at trial." *Id.* at 1026.

Defendants seek this court address the severity of the discrimination against Plaintiff at this juncture, and assess whether the discrimination was so severe, pervasive and objectively offensive that it denied him equal access to education. They further claim that Plaintiff has not alleged that UNLV has acted with deliberate indifference as to the harassment suffered.

As classified by Defendants, Plaintiff's "rambling and incoherent" FAC specifically alleges over the course of four pages allegations intentional discrimination against him. See [ECF-6; 52-56]. Further, Defendant adequately pleads deliberate indifference in the FAC as well. See ECF-6; 29, 1-4; 32;60.

---

[10] Hamas Leader Abroad Khaled Mashal: 'We Reject the Two-State Solution; October 7 Proved That Liberating Palestine from The River to The Sea Is Realistic and Has Already Begun', MEMRI TV (Jan. 22, 2024), https://www.memri.org/reports/hamas-leader-abroad khaled-mashal-we-reject-two-state-solution-october-7-proved-liberating.

A "deliberately indifferent" response is one that is "clearly unreasonable in light of the known circumstances." *Brown v. Arizona*, 82 F.4th 863, 881 (9th Cir. 2023) (en banc). "'Clearly unreasonable' responses take many forms." *Id.* (citation omitted). When the risk of Title VI violations is "obvious," the "failure to remedy that risk constitute[s] an official policy of deliberate indifference . . ." *Karasek I*, 956 F.3d at 1113. A response that "could not have reasonably been expected to remedy the harassment … amounts to an 'official decision not to end discrimination.'" *M.M. v. San Juan Unified Sch. Dist.*, No. 219CV00398TLNEFB, 2020 WL 5702265, at *9 (E.D. Cal. Sept. 24, 2020) (quoting Karasek I, 956 F.3d. at 1105).

The question of whether a defendants' response to a particular hostile environment is unreasonable is inherently fact-bound. Courts regularly conclude that deliberate indifference is an issue that "should be resolved at the summary judgment stage on a fully-developed factual record*." Lilah R. ex rel. Elena A. v. Smith,* No. C 11-01860 MEJ, 2011 WL 2976805, at *6 (N.D. Cal. July 22, 2011); see also id. ("[W]hether [a defendant's] response amounted to deliberate indifference to the alleged discrimination is a fact-driven inquiry."); *Ramos v. Los Rios Cmty. Coll. Dist.,* No. CV 2:17-1458 WBS KJN, 2018 WL 623585, at *2 (E.D. Cal. Jan. 29, 2018) (deliberate indifference generally too fact-intensive for determination on pleadings). And even at the summary judgment stage after discovery, if the plaintiff offers evidence on deliberate indifference, the question is normally left to the jury, so long as a "reasonable factfinder" could conclude that the response to discrimination was "clearly unreasonable." *Brown,* 82 F.4th at 882-83; see also *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015) (allegations that "school officials failed to take concrete steps to address the issues … go to the ultimate strength of Plaintiffs' allegations rather than whether they support any plausible claim for harassment and deliberate indifference at all").

15

Even at this early stage, Plaintiffs' allegations of deliberate indifference go far beyond plausibility. For example, the FAC alleges that Defendants (i) know who the perpetrators are, (ii) have official policies requiring the University to take action, but (iii) have failed to act. See ECF-6; 29-32; 41-51; see also *Doe ex rel. Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415, 1426 (N.D. Cal. 1996) (school district's failure to "develop and implement policies" led to a hostile environment) (emphasis added).

Furthermore, Defendants' reliance on *Oden v Northern Marianas College*, 440 F.3d 1085, 1089 (9th Cir. 2006) and *M.L. ex rel D.L. v Concord Sch. Dist.*, 86 F.4th 501, 511 (1t Cir. 2023) is fatally flawed. A "failure to take any further steps once [a defendant] knew his remedial measures were inadequate supports a finding of deliberate indifference." *Flores*, 324 F.3d at 1135– 36. *See also Vance v. Spencer Cnty. Pub. Sch. Dist*., 231 F.3d 253, 262 (6th Cir. 2000) ("Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.").

It is significant to note that on July 8, 2024, as Defendants allege [ECF-35,16] UNLV launched an expanded and anti-discrimination education and training program for UNLV employees [ECF 14-Ex. F.]. The launch of this program occurred ***two months*** after Mr. Gerwaski filed this lawsuit is clearly a subsequent remedial measure that somehow Defendants think absolves them of liability for matters which occurred prior to the filing of the action of the launch of UNLV's subsequent remedial measure.

Defendants further allege that Mr. Gerwaski didn't make a complaint in accordance with UNLV policy that UNLV did not act upon and that he does not allege facts that he was subject to intentional discrimination. If fact, Mr. Gerwaski has four pages of allegations and specific examples of how he was discriminated against, that he personally made Defendant Whitfield

16

aware of said discrimination and that he was repeatedly ignored by UNLV administration.

Gerwaski's FAC specifies, instances where attempts to seek help from the top administrator on

campus were completely marginalized. Gerwaski and Jewish students held meetings with

Whitfield, attended hearings as alleged in the FAC and none of this mattered. This is hardly a

failure to allege intentional discrimination in the FAC.

### 4. Plaintiff Sufficiently Pled Allegations to Sustain a Claim Relief for IIED Against UNLV.

The elements of IIED in Nevada are: "(1) that the defendant's conduct was extreme and

outrageous; (2) that the defendant either intended or recklessly disregarded the causing of

emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress;

and (4) that the defendant's conduct actually or proximately caused the distress." *Olivero v.*

*Lowe*, 995 P.2d 1023, 1025 (Nev. 2000).*Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev.

1983); *see Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). ("[E]xtreme and outrageous conduct

is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in

a civilized community.'" *Rivera v. CCA*; 0:20-cv-15651(9th Cir.)

Here, UNLV's conduct was extreme and outrageous as a University that encouraged and

allowed antisemitic vitriol and the incitement of violence against Jewish students at UNLV by

"globalizing the intifada". Social media posts that say "Zionist presence on our campus can't go

unchecked" [See ECF 6, 24; 3-12] with encouraging and inciting harassment and abuse of

Jewish students is intolerable in a civilized community. Encouraging and facilitating the harm of

Jewish students and "Zionist presence" at UNLV goes outside all possible bounds of decency.

Plaintiff sufficiently plead all the damages that resulted from Defendant's acts in his FAC.

Plaintiff sufficiently plead and demonstrates that Defendants acts are both the actual and

proximate cause of Mr. Gerwaski's distress. Furthermore, Gerwaski specifically delineates that

he not only suffered emotional distress but also that he had suffered great humiliation,

embarrassment, shame, and other pain and suffering. Plaintiff alleged sufficient facts to satisfy

the requirements under Fed. R. Civ. Pro. 8. Accordingly, Mr. Gerwaski meets the threshold to

sustain a finding of a claim for relief under Fed. R. Civ. Pro Rule 8 for his Ninth Claim for

Relief.

### 5.  Plaintiff's 1983 Action is Sufficiently Pled to Survive Dismissal

Section 1983 provides a remedy to individuals whose constitutional rights have been

violated by a person acting under color of state law. *See Burke v. County of Alameda,* 586 F.3d

725 (9th Cir.2009). In order for an individual to bring a successful Title 42 U.S.C. § 1983 claim,

the plaintiff must show that the challenged conduct (1) was committed by a person acting under

color of state law, and (2) deprived the plaintiff of rights, privileges, or immunities secured by

the Constitution or laws of the United States. *Marshall v. Sawyer,* 301 F.2d 639, 646 (9th

Cir.1962).

Generally, to establish that a person was "acting under the color of law," a plaintiff must

show that: (1) defendant's conduct was performed while acting, purporting to act, or pretending

to act in the performance of official duties; (2) defendant's conduct must have had the

purpose and effect of influencing the behavior of others; and (3) the challenged conduct must

have been related in some meaningful way either to defendant's governmental status or to the

performance of his duties. *Anderson v. Warner,* 451 F.3d 1063, 1068–69 (9th Cir.2006) ; *see

also West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ("The traditional

definition of acting under color of state law requires that the defendant in a § 1983 action have

exercised power possessed by virtue of state law and made possible only because the wrongdoer

is clothed with the authority of state law.").

Here, Plaintiff's Complaint alleges clearly that UNLV's Administration was acting in

their official capacity when their actions facilitated all the claims for relief and allegations made

by Mr. Gerwaski. Notwithstanding same, Plaintiff sufficiently pled ratification against Whitfield as final policy making authority.[11]

## D.   DEFENDANTS ACTIONS ARE NOT BARRED BY SOVEREIGN IMMUNITY THEREFORE, PLAINTIFF'S TENTH AND ELEVENTH CLAIMS SHOULD NOT BE DISMISSED

Defendant's claims that sovereign immunity bars Plaintiff's Tenth and Eleventh Claims for Relief for Negligent hiring, retention and supervision, are wrong.

In *Clark Cty. Sch. Dist. v. Payo*, 403 P.3d 1270, 1277 (Nev. 2017), the Nevada Supreme Court held that "[D]ecisions that policy-based and discretionary are entitled to discretionary-function immunity. On the other hand, discretionary-function immunity does not apply to nonpolicy based decisions to allow (a) a nonregulation ball to be used, and (b) permit more students on the floor than indicated in the rules.

Here, UNLV violated their own school policies as delineated in the FAC. See ECF 6; 35;9-38 precluding them from any discretionary or sovereign immunity.

## E.   ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

For the reasons stated above, Plaintiff's FAC easily withstands Defendants' arguments, and the Court should deny the motions and allow the case to proceed into discovery. In the alternative, Plaintiff respectfully requests leave to amend the Complaint if this Court finds insufficiencies as alleged.

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728,

---

[11] In order to establish municipal liability under Section 1983, a plaintiff must show: (1) an employee violated the plaintiff's constitutional rights pursuant to an official policy or informal practice of the municipal entity; (2) that the violator had final policy-making authority, and thus the challenged action itself constituted an act of official governmental policy; or (3) a person with final policy-making authority ratified the unconstitutional behavior. *Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir.1992). The United States Supreme Court has expressly held that a municipality is not liable merely because it employs a tortfeasor. *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

There has been no delay or bad faith, Defendants cannot claim prejudice, and an amendment would not be futile because it is clearly "at least possible" to cure any perceived defect. *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

<u>**CONCLUSION**</u>

A careful review of Plaintiff's FAC will demonstrate that in the course of the 77-page Complaint, UNLV's complicity in the events that are the subject of this suit are irrefutable under a standard for stating a claim for which relief should be granted. For the reasons discussed herein-above, Plaintiff respectfully request that this Court deny the Defendants' Motion to Dismiss in its entirety.

**DATED** this 25th day of November, 2024.

CHATTAH LAW GROUP

_____*/s/ Sigal Chattah*_____
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
5875 S. Rainbow Blvd., #205
Las Vegas, Nevada 89118
(702) 360-6200

20

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3          I hereby certify that on the 25th day of November, 2024, I personally served a true copy

4   of the foregoing Plaintiff's RESPONSE TO DEFENDANTS' MOTION TO DISMISS [ECF-35]

5   by the Court's electronic service system to all registered parties:

6                                              */s/ Sigal Chattah*

7                      _____

8                                          An Agent of Chattah Law Group

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

# EXHIBIT "1"


**Gmail**

Sigal Chattah <sigal@thegoodlawyerlv.com>

---

## Mediation EEOC 487-2024-02082 Gerwaski v University Of Nevada, Las Vegas (Unlv)
14 messages

---

**JOSE MEDINA** <JOSE.MEDINA@eeoc.gov>                                                    Tue, Jun 25, 2024 at 2:21 PM
To: "Sigal@thegoodlawyerlv.com" <Sigal@thegoodlawyerlv.com>

Good afternoon,


It was a pleasure speaking with you. Below are some links regarding EEOC's mediation program.

Mediation is a free, voluntary, and confidential process. There are many benefits to participating in the EEOC's mediation program, see EEOC's Pivot to Virtual Mediation Highly Successful, New Studies Find | U.S. Equal Employment Opportunity Commission. Additional information regarding the mediation program can be found at www.eeoc.gov.

Please let me know if you have any questions regarding the mediation process.


Respectfully,




**Jose Medina**| ADR Mediator

|**U.S. EEOC** | Las Vegas Local Office

|a. 333 Las Vegas Blvd. South, Suite 5560, Las Vegas, NV 89101

|t. 702.553.4458 |f.  702.388.5094

|e. jose.medina@eeoc.gov


**EEOC's Pivot to Virtual Mediation Highly Successful, New Studies Find | U.S. Equal Employment Opportunity Commission**


For questions about the Respondent Portal: https://www.eeoc.gov/employers/respondent_portal_users_guide.cfm


For questions about the Charging Party Portal: https://publicportal.eeoc.gov/Portal/Faq.aspx


**Due to the ongoing coronavirus pandemic, the U.S. Equal Employment Opportunity Commission has implemented agency-wide telework and all staff are working remotely.**

**Please be advised that there may be a delay in receiving and processing physical mail sent to the Las Vegas Local Office.  Please communicate with us by email and telephone.**

---

**2 attachments**



**image001.png**
48K



**Mediation Fact Sheet (002).pdf**
206K

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                                      Wed, Jun 26, 2024 at 1:19 PM
To: Corey Gerwaski <gerwaski@unlv.nevada.edu>

[Quoted text hidden]
--

Chattah Law Group
5875 S. Rainbow Blvd #205
Las Vegas, NV 89118
Tel: (702) 360-6200
Thegoodlawyerlv.com

This e-mail communication is a confidential attorney-client communication intended only for the person named above. If you are not the person named above, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please e-mail the sender that you have received the communication in error. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

**2 attachments**



**image001.png**
48K

**Mediation Fact Sheet (002).pdf**
206K

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                    Wed, Jun 26, 2024 at 1:20 PM
To: JOSE MEDINA <JOSE.MEDINA@eeoc.gov>
Bcc: Corey Gerwaski <gerwaski@unlv.nevada.edu>

Hello Jose,

I wanted to follow up with you regarding yesterdays conversation about Defendants and a global settlement on all claims. We are in the process of amending the Complaint, and so how soon could we have a mediation scheduled? Please advise

Thanks

Sigal Chattah, Esq.
[Quoted text hidden]
[Quoted text hidden]

---

**JOSE MEDINA** <JOSE.MEDINA@eeoc.gov>                    Thu, Jun 27, 2024 at 5:15 PM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>

Good afternoon, Sigal,

Depending on the availability of each party, mediations can typically be scheduled within 4-5 weeks.

Please let me know if have any other questions.

Respectfully,



**Jose Medina**| ADR Mediator

|**U.S. EEOC** | Las Vegas Local Office

|a. 333 Las Vegas Blvd. South, Suite 5560, Las Vegas, NV 89101

|t. 702.553.4458 |f.  702.388.5094

|e. jose.medina@eeoc.gov

**EEOC's Pivot to Virtual Mediation Highly Successful, New Studies Find | U.S. Equal Employment Opportunity Commission**

For questions about the Respondent Portal: https://www.eeoc.gov/employers/respondent_portal_users_guide.cfm

For questions about the Charging Party Portal: https://publicportal.eeoc.gov/Portal/Faq.aspx

**Due to the ongoing coronavirus pandemic, the U.S. Equal Employment Opportunity Commission has implemented agency-wide telework and all staff are working remotely.**

**Please be advised that there may be a delay in receiving and processing physical mail sent to the Las Vegas Local Office.  Please communicate with us by email and telephone.**

**You may also fax documents to (702) 388-5094 or email me at  jose.medina@eeoc.gov .  We sincerely appreciate your patience and cooperation during this time.**

**From:** Sigal Chattah <sigal@thegoodlawyerlv.com>
**Sent:** Wednesday, June 26, 2024 1:21 PM
**To:** JOSE MEDINA <JOSE.MEDINA@EEOC.GOV>
**Subject:** Re: Mediation EEOC 487-2024-02082 Gerwaski v University Of Nevada, Las Vegas (Unlv)

**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

[Quoted text hidden]

**2 attachments**



**image001.png**
48K



**image003.png**
37K

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                    Thu, Jun 27, 2024 at 5:21 PM
To: JOSE MEDINA <JOSE.MEDINA@eeoc.gov>

Hello Jose-

Can you get dates from Defendants with the understanding that this is a global settlement mediation and let me know. I can make it work.


Thanks

Sigal Chattah, Esq.
Sent from my iPhone

> On Jun 27, 2024, at 5:15 PM, JOSE MEDINA <JOSE.MEDINA@eeoc.gov> wrote:
>
>
> Good afternoon, Sigal,
>
>
> Depending on the availability of each party, mediations can typically be scheduled within 4-5 weeks.
>
>
> Please let me know if have any other questions.
>
>
> Respectfully,
>
>
>
> <image002.png>
> **Jose Medina**| ADR Mediator
>
> [Quoted text hidden]
> [Quoted text hidden]
> [Quoted text hidden]
>
>> [Quoted text hidden]
>>
>> <image004.png>
>> **Jose Medina**| ADR Mediator
>>
>> |**U.S. EEOC** | Las Vegas Local Office

|s. 3331 Las Vegas Blvd. South, Suite 5560 Las Vegas, NV 89101

|t. 702.553.4458 |f. 702.388.5094

|e. jose.medina@eeoc.gov


**EEOC's Pivot to Virtual Mediation Highly Successful, New Studies Find | U.S. Equal Employment Opportunity Commission**


For questions about the Respondent Portal: https://www.eeoc.gov/employers/respondent_portal_users_guide.cfm


For questions about the Charging Party Portal: https://publicportal.eeoc.gov/Portal/Faq.aspx


**Due to the ongoing coronavirus pandemic, the U.S. Equal Employment Opportunity Commission has implemented agency-wide telework and all staff are working remotely.**

**Please be advised that there may be a delay in receiving and processing physical mail sent to the Las Vegas Local Office.  Please communicate with us by email and telephone.**

**You may also fax documents to (702) 388-5094 or email me at  jose.medina@eeoc.gov .  We sincerely appreciate your patience and cooperation during this time.**


[Quoted text hidden]

---

**JOSE MEDINA** <JOSE.MEDINA@eeoc.gov>                                          Mon, Jul 1, 2024 at 5:12 PM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>

Good afternoon,


The Respondent agreed to mediation. If you agree to mediation, I will send each party a questionnaire and after I receive it back,

I forward the responses to the scheduler who does scheduling for all the mediations.


Please let me know by 3:00pm on 7/3 if you would like to proceed with mediation.


Respectfully,


**Jose Medina**| ADR Mediator





**image001.png**
48K

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                    Mon, Jul 1, 2024 at 6:45 PM
To: JOSE MEDINA <JOSE.MEDINA@eeoc.gov>

Jose-

I don't know what you mean by "Respondent agreed to mediation". We weren't pushing for mediation. You indicated that the respondents are seeking mediation on all claims for relief including the Title VI issues.

The only question I had was whether this can be done in the next 30 days so that we don't have to waive our amendment period.

It seems that we will be amending our complaint in the next month and not put that on hold in anticipation of resolution.

Thanks

Sigal Chattah, Esq.
Sent from my iPhone

> On Jul 1, 2024, at 5:12 PM, JOSE MEDINA <JOSE.MEDINA@eeoc.gov> wrote:

Good afternoon,

The Respondent agreed to mediation. If you agree to mediation, I will send each party a questionnaire and after I receive it back,

I forward the responses to the scheduler who does scheduling for all the mediations.

Please let me know by 3:00pm on 7/3 if you would like to proceed with mediation.

Respectfully,

**Jose Medina**| ADR Mediator

[Quoted text hidden]

---

**JOSE MEDINA** <JOSE.MEDINA@eeoc.gov>                    Tue, Jul 2, 2024 at 9:33 AM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>

Good morning,


Mediation is a voluntary process, and I was informing you that the Respondent agreed to mediation. The portal currently shows that you declined mediation.

If you do not wish to proceed with mediation, I can submit the request to release the charge to the Enforcement Unit for further processing.


Please let me know you decide by 3:00pm on 7/3/24.


Respectfully,






**Jose Medina**| ADR Mediator

[Quoted text hidden]

---



**image001.png**
48K

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                    Tue, Jul 2, 2024 at 10:08 AM
To: JOSE MEDINA <JOSE.MEDINA@eeoc.gov>

Jose,

When we discussed this you indicated that that they were interested in a global resolution of all claims including the Title VI. If this is the case than we are agreeable to the mediation. Otherwise there is no point.

Please confirm that this will be a mediation for a global resolution of both the EEOC claims and Title VI.

Thank You

Sigal Chattah, Esq.
[Quoted text hidden]

---

**JOSE MEDINA** <JOSE.MEDINA@eeoc.gov>                    Wed, Jul 3, 2024 at 11:28 AM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>

Good morning,


Yes, per the Respondent, they requested that this mediation will be for a global resolution of both the EEOC claims and the Title VI.

[Quoted text hidden]

---

**2 attachments**


**image001.png**
48K


**image003.png**
37K

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                    Wed, Jul 3, 2024 at 11:51 AM
To: JOSE MEDINA <JOSE.MEDINA@eeoc.gov>

Good Morning Jose,

What are the dates on this that we are doing it. Is it via Zoom?

Thanks

Sigal Chattah,Esq.
[Quoted text hidden]

---

**JOSE MEDINA** <JOSE.MEDINA@eeoc.gov>                    Wed, Jul 3, 2024 at 11:55 AM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>

You can participate via Zoom or in-person. Once you agree, I will send you an email with some questions and the information you provide is submitted to the scheduler.

The mediation date(s) are based on your availability and the availability of the Respondent.


Respectfully,






**Jose Medina**| ADR Mediator

|**U.S. EEOC** | Las Vegas Local Office

|a. 333 Las Vegas Blvd. South, Suite 5560, Las Vegas, NV 89101

|t. 702.553.4458 |f.  702.388.5094

|e. jose.medina@eeoc.gov




[Quoted text hidden]

---

**3 attachments**


**image001.png**
48K


**image003.png**
37K

# EXHIBIT "2"



## Gerwaski v State of Nevada 2:24-cv-00985

9 messages

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                    Fri, Oct 18, 2024 at 10:03 AM
To: andrew.d.smith@unlv.edu

Good Morning Mr. Smith,

UNLV was served with the Summons and Complaint on August 2, 2024 and we have still not received a responsive pleading. This email is a courtesy as we will submit a Default on Monday.

Thank You

Sigal Chattah Esq.

--

      Chattah Law Group
      5875 S. Rainbow Blvd #205
      Las Vegas, NV 89118
      Tel: (702) 360-6200
      Thegoodlawyerlv.com

      This e-mail communication is a confidential attorney-client communication intended only for the person named above.  If you are not the person named above, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error,  please e-mail the sender that you have received the communication in error. Thank you.

      IRS Circular 230 Notice:  To ensure compliance with requirements imposed by the IRS, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Andrew Smith** <andrew.d.smith@unlv.edu>                    Fri, Oct 18, 2024 at 11:51 AM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>
Cc: Sheena Imes <sheena.imes@unlv.edu>

Ms. Chattah,

Thank you for contacting me before attempting to take a default. UNLV's time to respond to the complaint has not started to run, though. FRCP 4(j) governs service on a state government entity. Rule 4(j)(2) states,

*(2) State or Local Government. A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:*
    *(A) delivering a copy of the summons and of the complaint to its chief executive officer; or*
    *(B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.*

UNLV is not a legal entity. The entity is the Nevada System of Higher Education. See NRS 396.020(6). The chief executive officer of the Nevada System of Higher Education is its Chancellor, not UNLV President Keith Whitfield. See the NSHE Board of Regents Handbook, Title 1, Article VII (Officers of the University), Section 3 ("The Chancellor is the chief executive officer and ex-official treasurer of the Nevada System of Higher Education...") . The Board of Regents Handbook is available here: https://nshe.nevada.edu/regents/policies/

Unlike President Whitfield, the Chancellor has not authorized UNLV's Office of General Counsel to accept service on her behalf. I am not permitted to waive service of process on the Nevada System of Higher Education.

I am aware that the Nevada Attorney General was served on August 29. If you were to rely on FRCP 4(j)(2)((B), which permits service of an entity under applicable state law, you would still need to complete service on the Chancellor. NRCP 4.2(d)(1) requires service on both the Attorney General and the "administrative head of the named public entity," which is the Chancellor.

Please let me know when service has been completed. We will file a responsive pleading at that time. Feel free to contact me if you have any questions.

**Andrew D. Smith**

Assistant General Counsel
Office of General Counsel
University of Nevada, Las Vegas

andrew.d.smith@unlv.edu

Office: 702-895-3921

unlv.edu • Twitter • Facebook • Instagram • YouTube

*Top 3 percent nationally in research activity.*

NOTICE:  THIS MAY BE A CONFIDENTIAL COMMUNICATION BETWEEN ATTORNEY AND CLIENT -- IF SO, UNAUTHORIZED FORWARDING OR REPRODUCTION IS PROHIBITED.  This electronic mail transmission ("EMT") and any attached documents may contain confidential and legally privileged information.  Such information is intended solely for the use of the individual(s) to whom this EMT was intended to be sent.  Any printing, disclosure, reproduction, distribution or taking of action based on the information herein by other than the intended recipient(s) is strictly prohibited. If you believe that you have received this EMT in error, please notify the sender by telephone, collect if necessary, at (702) 895-3921 and delete the EMT.  Thank you.

[Quoted text hidden]

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                                      Fri, Oct 18, 2024 at 12:07 PM
To: Andrew Smith <andrew.d.smith@unlv.edu>
Cc: Sheena Imes <sheena.imes@unlv.edu>

Mr. Smith,

Thank you for your quick response, can you confirm who the chancellor is at the University, I have only an interim chancellor per the link you provided.

Thank You

Sigal Chattah, Esq.
[Quoted text hidden]

---

**Andrew Smith** <andrew.d.smith@unlv.edu>                                      Fri, Oct 18, 2024 at 1:22 PM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>
Cc: Sheena Imes <sheena.imes@unlv.edu>

Ms. Chattah,

We do have an interim chancellor right now. That shouldn't be a problem, though. Just send a process server to the front desk of the NSHE offices in Las Vegas (4300 Maryland Pkwy) or in Reno (2601 Enterprise Rd.). They know how to handle it from there. You do not need to try to catch the interim Chancellor at home or anything like that. In fact, I think they would prefer that you just send someone to the NSHE office.

Thanks again for the communication, and let me know if you have any other questions.

Andrew D. Smith

Assistant General Counsel
Office of General Counsel
University of Nevada, Las Vegas

andrew.d.smith@unlv.edu

Office: 702-895-3921

unlv.edu • Twitter • Facebook • Instagram • YouTube

*Top 3 percent nationally in research activity.*

NOTICE:  THIS MAY BE A CONFIDENTIAL COMMUNICATION BETWEEN ATTORNEY AND CLIENT -- IF SO, UNAUTHORIZED FORWARDING OR REPRODUCTION IS PROHIBITED.  This electronic mail transmission ("EMT") and any attached documents may contain confidential and legally privileged information.  Such information is intended solely for the use of the individual(s) to whom this EMT was intended to be sent.  Any printing, disclosure, reproduction, distribution or taking of action based on the information herein by other than the intended recipient(s) is strictly prohibited. If you believe that you have received this EMT in error, please notify the sender by telephone, collect if necessary, at (702) 895-3921 and delete the EMT.  Thank you.

[Quoted text hidden]

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                                    Fri, Oct 25, 2024 at 10:18 AM
To: Andrew Smith <andrew.d.smith@unlv.edu>
Cc: Sheena Imes <sheena.imes@unlv.edu>

Good Morning Mr. Smith,

My Client was brutally drugged and sexually attacked in his dorm on or about September 29, 2024. He woke up 4 days later and was admitted into ICU at UMC on the 4th. This is after he notified campus for days he was receiving death threats. I need to make sure that all surveillance is preserved at UCC Dorm, specifically the 3rd floor. He is still going through the reconstructive surgery and still at UMC.

Please ensure that all surveillance from this incident is preserved.
[Quoted text hidden]
[Quoted text hidden]

---

**Andrew Smith** <andrew.d.smith@unlv.edu>                                        Tue, Oct 29, 2024 at 5:09 PM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>
Cc: Sheena Imes <sheena.imes@unlv.edu>

Ms. Chattah,

Thank you for sharing this information. We are taking steps to preserve evidence.

I understand that your client contacted University Police Services on October 5 to report the drugging and a possible sexual assault. He was transported to UMC where blood was taken for toxicology tests. Mr. Gerwaski had not decided whether to proceed with sexual assault testing when police left him in the care of the hospital.

If your client believes that he was the victim of a sexual assault, please have him contact University Police Services to update his report and to initiate further investigation. They can be reached at (702) 895-3668. He may reference Case No. 241487 with his updated information.

I'd also like to bring up one issue with case management: Per FRCP 26(f) and Local Rule 26-1, we're supposed to have a discovery planning conference within 30 days of the date the first defendant answers or otherwise appears. We are supposed to submit a discovery plan to the court within 14 days of that conference. There are a couple of motions to dismiss pending, UNLV's response is due November 12, and I believe there are still a couple of parties that you're trying to get served. I suggest we stipulate to postpone the Rule 26(f) conference until 30 days after the motions to dismiss are decided. If you are in agreement, I will reach out to AJP Educational Foundation's counsel to see if they also agree.

**Andrew D. Smith**
Assistant General Counsel
Office of General Counsel
University of Nevada, Las Vegas

andrew.d.smith@unlv.edu
Office: 702-895-3921

unlv.edu • Twitter • Facebook • Instagram • YouTube

*Top 3 percent nationally in research activity.*

NOTICE:  THIS MAY BE A CONFIDENTIAL COMMUNICATION BETWEEN ATTORNEY AND CLIENT -- IF SO, UNAUTHORIZED FORWARDING OR REPRODUCTION IS PROHIBITED.  This electronic mail transmission ("EMT") and any attached documents may contain confidential and legally privileged information.  Such information is intended solely for the use of the individual(s) to whom this EMT was intended to be sent.  Any printing, disclosure, reproduction, distribution or taking of action based on the information herein by other than the intended recipient(s) is strictly prohibited. If you believe that you have received this EMT in error, please notify the sender by telephone, collect if necessary, at (702) 895-3921 and delete the EMT.  Thank you.

[Quoted text hidden]

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                    Tue, Oct 29, 2024 at 8:03 PM
To: Andrew Smith <andrew.d.smith@unlv.edu>
Cc: Sheena Imes <sheena.imes@unlv.edu>

Hello Andrew,

Yes. That would be great.

Thanks

Sigal Chattah, Esq.
Sent from my iPhone
[Quoted text hidden]

---

**Sigal Chattah** <sigal@thegoodlawyerlv.com>                    Fri, Nov 1, 2024 at 10:46 AM
To: Andrew Smith <andrew.d.smith@unlv.edu>
Cc: Sheena Imes <sheena.imes@unlv.edu>

Hello Andrew,

Have you been able to contact AMP's Counsel? Let me know.

Thanks

Sigal Chattah, Esq.
[Quoted text hidden]

---

**Andrew Smith** <andrew.d.smith@unlv.edu>                    Fri, Nov 1, 2024 at 2:54 PM
To: Sigal Chattah <sigal@thegoodlawyerlv.com>
Cc: Sheena Imes <sheena.imes@unlv.edu>

Hi Sigal,

I emailed Maggie a couple of days ago but haven't heard back. I saw your email today. Hopefully she responds to one of us.

I was looking at FRCP 26(f) again, and I'm not completely sure that we actually have a discovery plan due. Rule 26(f) references FRCP 16(b), and the deadlines aren't quite as clear cut as I originally thought. I think a stipulation would be helpful to the judge, though, to avoid any confusion about whether a discovery scheduling order need to be issued.

Thanks, and have a good weekend,

**Andrew D. Smith**

Assistant General Counsel
Office of General Counsel
University of Nevada, Las Vegas

andrew.d.smith@unlv.edu

Office: 702-895-3921

univ.edu • Twitter • Facebook • Instagram • YouTube

*Top 3 percent nationally in research activity.*

NOTICE:  THIS MAY BE A CONFIDENTIAL COMMUNICATION BETWEEN ATTORNEY AND CLIENT -- IF SO, UNAUTHORIZED FORWARDING OR REPRODUCTION IS PROHIBITED.  This electronic mail transmission ("EMT") and any attached documents may contain confidential and legally privileged information.  Such information is intended solely for the use of the individual(s) to whom this EMT was intended to be sent.  Any printing, disclosure, reproduction, distribution or taking of action based on the information herein by other than the intended recipient(s) is strictly prohibited. If you believe that you have received this EMT in error, please notify the sender by telephone, collect if necessary, at (702) 895-3921 and delete the EMT.  Thank you.

[Quoted text hidden]