1  SIGAL CHATTAH, ESQ.
   Nevada Bar No.: 8264
2  CHATTAH LAW GROUP
   5875 S. Rainbow Blvd., #205
3  Las Vegas, Nevada 89118
   Tel: (702) 360-6200
4  Fax: (702) 643-6292
5  Chattahlaw@gmail.com

6  JOSEPH S. GILBERT, ESQ.
   Nevada State Bar No.: 9033
7  JOEY GILBERT LAW
   405 Marsh Avenue
8  Reno, Nevada 89509
9  Tel: (775) 284-7700
   Fax: (775) 284-3809
10 Joey@joeygilbertlaw.com
   *Co-Counsel for Plaintiffs*
11

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COREY GERWASKI, | |
| Plaintiffs, | Case No.: 2:24-cv-00985 |
| vs. | |
| STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEYM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually, AJP EDUCATIONAL FOUNDATION INC., A California Non-Profit Corporation, STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION DOES I-XX and ROE entities I-XX. | **OPPOSITION TO AJP EDUCATIONAL FOUNDATION, INC'S SPECIAL MOTION TO DISMISS PURSUANT TO NEV. REV STAT. §41.660**<br><br>**[ORAL ARGUMENT REQUESTED]** |
| Defendants. | |

1

1  COMES NOW, Plaintiff, COREY GERWASKI, (hereinafter "Gerwaski" *inter alia*) by and through his attorneys of record, SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP and JOSEPH S. GILBERT, ESQ., of JOEY GILBERT LAW, and file the foregoing Response to AJP Educational Foundation Inc.'s Special Motion to Dismiss Pursuant to NRS § 41.660. [ECF 37] filed by Defendant AJP Educational Foundation, Inc. in the above-entitled action.

DATED this 1st day of January, 2025.

CHATTAH LAW GROUP

  */s/ Sigal Chattah*  
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
5875 S. Rainbow Blvd., #205
Las Vegas, Nevada 89118
(702) 360-6200

|   |   |
|---|---|
| 1 | **CASES AND AUTHORITIES** |
| 2 | **CASES** |
| 3 | *Area 51 Prods. v. City of Alameda*, 229 Cal. Rptr. 3d 165, 175 (Cal. Ct. App. 2018) |
| 4 | *Boim v American Muslims for Palestine* (7th Cir. 2021) |
| 5 | *Bulen v. Lauer*, Case No. 81854, 508 P.3d 417 (Nev. 2022) |
| 6 | *Coker v. Sassone*, 135 Nev. Adv. Rep. 2, 432 P.3d 746 (2019) |
| 7 | *City of Costa Mesa v. D'Alessio Invs., LLC*, 154 Cal. Rptr. 3d 698, (Cal. Ct. App. 2013) |
| 8 | |
| 9 | *Delucchi v. Songer*, 133 Nev. 290, 396 P.3d 826 (2017) |
| 10 | *John v. Douglas County Sch. Dist.*, 125 Nev. 746, 219 P.3d 1276 (2009) |
| 11 | *Miller v. Jones*, 970 P.2d 571 7 (Nev. 1998) |
| 12 | *Nelson v. City of Las Vegas*, 665 P.2d 1141 5 (Nev. 1983) |
| 13 | *Olivero v. Lowe*, 995 P.2d 1023 (Nev. 2000). |
| 14 | *Park v. Bd. of Tr. of Cal. State Univ.*, 2 Cal.5th 1057, 393 P.3d 905 (2017) |
| 15 | *Shapiro v. Welt*, 133 Nev. 35, 389 P.3d 262 (2017) |
| 16 | |
| 17 | *Smith v. Zilverberg*, 481 P.3d 1222 (Nev. 2021) |
| 18 | *Spirtos v. Yemenidjian*, 137 Nev. Adv. Rep. 73, 499 P.3d 611 (2021) |
| 19 | *Stark v. Lackey*, 136 Nev. 38, 458 P.3d 342 (2020) |
| 20 | **STATUTES** |
| 21 | 18 U.S.C. § 2333(a) |
| 22 | 18 U.S.C. § 2339B |
| 23 | 18 U.S.C. § 2333(d)(2). |
| 24 | Nev. Rev. Stat. Ann. § 41.650 |
| 25 | |
| 26 | Nev. Rev. Stat. Ann. § 41.660(1)(a). |
| 27 | **MISC.** |
| 28 | Pub. L. 104-132, Title III, § 301(a)(7) |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Terrorism is a crime in America—both at the federal level and in many States. So too is material support for terrorism. This case is not about free speech. This case is about an organization that has functioned as a domestic arm of foreign terrorist organizations in the United States, lending support to said terrorist organizations while dually wreaking havoc on university campuses nationwide. Defendant's Motion to Dismiss, seeks to dismiss solely the Ninth Claim for Relief, for Intentional Infliction of Emotional Distress.

Federal law has also long made the knowing provision of material support to designated foreign terrorist organizations like Hamas illegal. See, e.g., 18 U.S.C. § 2339B. The federal statute defines material support to include "any property, tangible or intangible, or service, including currency or monetary instruments . . . expert advice or assistance . . . communications equipment, facilities . . . and transportation, except medicine or religious materials." *Id*. § 2339A.

Material-support statutes recognize that organizations like Hamas "are so tainted by their criminal conduct that any contribution to such an organization facilitates that [criminal] conduct." Pub. L. 104-132, Title III, § 301(a)(7). Federal law has long made the knowing provision of material support to designated foreign terrorist organizations like Hamas illegal. See, e.g., 18 U.S.C. § 2339B. Defendants here are alleged to have provided material support for Hamas, the brutal terrorist regime that not only oppresses millions in Gaza but that also murdered more than a thousand innocents and kidnapped hundreds more.

Defendants are alleged to be the propaganda and recruiting wing of a Foreign Terrorist Organization (FTO) in the United States. AMP and NSJP have galvanized anti-Israel and anti-Semitic activists across the country in the wake of Oct. 7, calling for a "Unity Intifada" against the Jewish state and vowing to "contribute to the fight for Palestinian liberation."

4

The following action involves religious discrimination, harassment and obstruction against Plaintiff as a student at the University of Nevada Las Vegas, in addition to as an employee of University of Nevada Las Vegas under both Title VII and Title IX. The action also includes Defendant AJP Educational Foundation, Inc's violation of 18 U.S.C. § 2333(a) which provides in pertinent part: ""[L]iability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2).

Defendants AJP Educational Foundation Inc. a/k/a American Muslims for Palestine (hereinafter "AMP") are included as a party to this action, for their actions in soliciting, inciting and encouraging students at UNLV, along with faculty to engage in harassment of Jewish students at the University, and successfully coordinating the harassment and plight of Mr. Gerwaski.

It is no coincidence that AMP, specifically engaged in activities at UNLV for the purposes of deliberately tormenting and harassing Jewish students and wreaking havoc on Jewish student life on campus. AMP's actions not only encouraged and solicited harassment against Jewish students on UNLV's campus, it also legitimized blatant antisemitic acts that Mr. Gerwaski was subjected to by students and faculty.

AMP's acts of dehumanizing Jewish students on campus, by "checking" the Zionist presence there effected Mr. Gerwaski, as a member of the Student Government wherein he was subjected to overwhelming antisemitic acts as a result of the legitimization of harassment and obstruction that AMP successfully encouraged on campus.

Notwithstanding the coordination, with NSJP and SJP-UNLV and other organizations obstruct, harass and intimidate Jewish students such as Gerwaski, and specifically Gerwaski, AMP knowingly used or permitted the use of funds raised by a solicitation of contributions and

**manpower to provide support to terrorists, terrorist organizations and terrorist activities as delineated in the First Amended Complaint (hereinafter "FAC").**

Therefore, AMP's acts were two-fold; first, to target Jewish students at UNLV and subject them and Gerwaski to harassment by encouraging and soliciting said harassment; and second, coordinating with overseas Foreign Terrorist Organizations (FTOs) to continue their terrorist actions against Israeli citizens and American interests in violation of US laws as delineated herein.

## STATEMENT OF FACTS

After October 7, 2023, students at UNLV and faculty rallied to support Hamas, whose terrorists had invaded Israel to murder, torture, and rape 1,200 people and abduct hundreds of civilians. Defendant AJP Educational Foundation, Inc. a/k/a American Muslims for Palestine ("AMP") is a 501(c)(3) non-profit corporation incorporated in California with its principal place of business in Falls Church, Virginia.

As Plaintiff alleges in his FAC, AMP encouraged antisemitic discrimination and harassment of Jewish students at UNLV directly resulting on unimaginable harassment against Jewish students across campus and overwhelming harassment and discrimination against Mr. Gerwaski.

Defendant AMP's roll and acts in this case are particularly egregious because their roll was two-fold. First, on-campus acting to sow chaos at the University, inciting, encouraging and soliciting harassment of Jewish students and delegitimizing their presence on campus, encouraging students and faculty to follow their lead.

Off campus, because of the coordinated activities that AMP engaged in on university campuses facilitated support to FTOs as recognized by Hamas itself. As Hamas terrorists targeted Israel, AMP (through its campus brand) declared it is "PART of" Hamas and under its

"unified command" and began pumping a pro-Hamas narrative and propaganda around America and specifically at UNLV.

AMP is Hamas' propaganda arm in the United States creating a platform of pro-terrorist activities. AMP continuously supplied Hamas with invaluable support through recruitment, fundraising, human mobilization and volunteers to further their terrorist agenda.

On university campuses world-wide, National Students for Justice for Palestine ("NSJP") and locally, SJP-UNLV, AMP declared that it is "PART of" Hamas and operating under its "unified command," and it unleashed a concerted propaganda and disruption campaign on America's University campuses.

Plaintiff seeks to hold AMP[1] liable for its role in furthering the chaos and mayhem caused on UNLV's campus against Gerwaski: supplying pro-Hamas propaganda services—before, during, and after October 7—to maximize Hamas' terrorist activities, and radicalize and legitimize support for Hamas' terrorist activities.

On May 29, 2024, the United States Congressional House Oversight Committee sent an initial letter requesting AMP turn over documents related to the funding of and communications with NSJP, as well as anything regarding Hamas' brutal Oct. 7 terrorist attack against Israel, as well as "all documents and communications, regardless of topic, created on or sent between Oct. 6 (and) Oct. 8, 2023." On June 24, 2024 United States Rep. James Comer, threatened to subpoena AMP over its connections to protests at college campuses across the U.S. providing that the House Oversight Committee has "substantial evidence" connecting AMP to Students for Justice in Palestine (SJP), a group which contributed to many of the protests. Despite requests to gain

---

[1] It is significant to note that Courts have previously found that American Muslims for Palestine, as an alter ego of the Islamic Association and Holy Land Foundation, is liable under § 2333(a) *Boim v American Muslims for Palestine* (7th Cir. 2021), *See also Boim* Case: 1:17-cv-03591 Document #: 250 Filed: 05/17/22

more insight into the Group's operations, Rep. Comer has been stonewalled. The request specifically demanded AMP Executive Director Osama Abuirshaid to provide all "documents and communications" with and related to an associated organization, National Students for Justice in Palestine (SJP), which Comer said claims to 'support over 200 Palestine solidarity organizations on college campuses across North America.

Representative Comer stated: "Instead of working to accommodate my requests or producing any responsive documents to the Committee, your counsel has indicated that AMP will not accept my May 29, 2024, letter," the message reads. "Perhaps you believe this is a necessary course of action because such an admission could negatively impact AMP's legal strategy in responding to a lawsuit filed in the Eastern District of Virginia."

"This oversight is critical to inform legislation to ensure that federal agencies are able to adequately prevent money laundering and terrorist financing, as well as to determine whether statutory reporting requirements on financial institutions related to money laundering and terrorist financing need to be updated by Congress," he added. Rep. Comer followed up by including requests for funding documents and communications to Hamas and SJP. He outlined a deadline of July 8. That deadline has passed and no documents have been disclosed.

On July 16, 2024, a Virginia Court[2] ordered American Muslims for Palestine (AMP) to hand over records related to the group allegedly funding Hamas and other international terrorist organizations. The Court found that AMP is the parent organization of National Students for Justice in Palestine (SJP). Dozens of SJP chapters across the US participated in anti-Israel protests that roiled US college campuses this spring.

---

[2] July 16, 2024 - Virginia Court Orders American Muslims for Palestine to Produce Records Requested by Attorney General Miyares (state.va.us)

The Virginia Court required disclosure of AMP's finances, organizational structure and governance, its solicitation activities, and its potential ties to terrorist organizations.

In addition to failing to register as an IRS-designated 501c3 charity in Virginia, AMP is accused of having "knowingly used or permitted the use of funds raised by a solicitation of contributions to provide support to terrorists, terrorist organizations, terrorist activities, or family members of terrorists."

## **LEGAL ARGUMENT**

Under Nevada's anti-SLAPP statutes, a moving party may file a special motion to dismiss if an action is filed in retaliation to the exercise of free speech. *See Coker v. Sassone*, 135 Nev. Adv. Rep. 2, 432 P.3d 746, 748-749 (2019). "The merits of [the plaintiff's] claims. . . play no part in the first step of the anti-SLAPP analysis see also *City of Costa Mesa v. D'Alessio Invs., LLC*, 154 Cal. Rptr. 3d 698, 709 (Cal. Ct. App. 2013).

Similar to a summary judgment motion, the district court is not to weigh evidence on an anti-SLAPP motion; rather, the district court must "accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." *Coker,* 432 P.3d at 749 (2019) (quoting *Park,* 383 P.3d at 911).

### A. NEVADA'S ANTI-SLAPP STATUTE STANDARD[3]

Under the Nevada law, "[a] person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from civil liability for claims based on the communication." Nev. Rev. Stat. Ann. § 41.650 (2019). Such "good faith" communications must be true or made without knowledge of their falsity. § 41.637. They include four categories of communications: those

---

[3] Nevada Courts looks to California guidance when analyzing anti-SLAPP issues given the similarities "in purpose and language" of Nevada and California's anti-SLAPP statutes. *See Coker*, 135 Nev. at 11, 432 P.3d at 749.

"aimed at procuring governmental or electoral action"; those informing or complaining to a federal, state, or local legislator or employee about "a matter reasonably of concern to the respective governmental entity"; statements made in direct connection with an issue under consideration by a governmental body; and communication made in direct connection with an issue of public interest in a forum open to the public. § 41.637.

To prevail on a Motion to Dismiss, Defendants must show by a preponderance of evidence that the claim is based on a good faith exercise of the right of petition or free speech in "direct connection with an issue of public concern." § 41.660(1)(a). The defendant does so by showing that the communications at issue "falls within one of the four categories enumerated in NRS 41.637 and 'is truthful or is made without knowledge of its falsehood.'" *Delucchi v. Songer*, 133 Nev. 290, 299, 396 P.3d 826, 833 (2017) (quoting NRS 41.637).

To survive an anti-SLAPP motion, the plaintiff must then show a probability of prevailing on the claim. § 41.665(2). Courts will consider evidence in connection with anti-SLAPP motions, such as witness testimony or affidavits. § 41.665(3)(d).

Under Nevada's anti-SLAPP statutes, a moving party may file a special motion to dismiss if an action is filed in retaliation to the exercise of free speech. *Coker v. Sassone*, 135 Nev. Adv. Rep. 2, 432 P.3d 746, 748-749 (2019). A district court considering a special motion to dismiss undertakes a two-step analysis. *Id*.

An anti-SLAPP Motion is not a summary judgment motion and is not governed by the N.R.C.P. 56 standard. The Nevada Supreme Court made clear that (unlike on a motion for summary judgment) in completing the first step of the anti-SLAPP analysis, the district court must disregard the evidence a moving party provides with their anti-SLAPP motion *Spirtos v. Yemenidjian*, 137 Nev. Adv. Rep. 73, 499 P.3d 611, 616 (2021). The district court must disregard the moving party's declaration at the first step of its analysis and instead, should

evaluate any alleged communications as it is alleged in plaintiff's complaint and in any of the plaintiff's clarifying declarations. *Id.* at 616-617.

Therefore, the question is really whether this Court, based on its own review of the record, believes the challenged claims arise from protected activity. *See Coker*, 135 Nev. at 11, *citing Park v. Bd. of Tr. of Cal. State Univ.*, 2 Cal.5th 1057, 217 Cal Rptr.3d 130, 393 P.3d 905, 911 (2017).

Nevada law only requires the District Court to consider the second step of the anti-SLAPP analysis if the defendant makes its initial showing under the first step of the anti-SLAPP analysis. *See Shapiro v. Welt*, 133 Nev. 35, 38, 389 P.3d 262, 267 (2017); see also *Smith*, 481 P.3d at 1229.

To satisfy the second step of the Anti-SLAPP analysis, the plaintiff must only show, by prima facie evidence, that his claims have minimal merit. *Smith v. Zilverberg*, 481 P.3d 1222, 1229 (Nev. 2021) (citing NRS 41.660(3)(b); *Abrams v. Sanson*,136 Nev. Adv. Op. 91, 458 P.3d at 1069. If the plaintiff meets his burden, then the claim may proceed and is not subject to early dismissal. *See Douglas County Sch. Dist.*, 125 Nev. at 754.

The Court cannot find that Gerwaski's complaint relates to communications that fall within any of the four categories enumerated in NRS 41.637 because the Complaint focuses on AMP's conduct in violation of 18 U.S.C. § 2339B; not good faith communications made in furtherance of the right to free speech.

NRS 41.660(3)(a) requires application of a preponderance of the evidence standard in adjudication of this Motion.

///

///

///

11

**B.     PLAINTIFF'S NINTH CLAIM FOR RELIEF FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DOES NOT CIRCUMVENT FIRST AMENDMENT PROTECTIONS**

In his Ninth Claim for relief for Intentional Infliction of Emotional Distress, Gerwaski alleges that Defendants' acts and omissions described were extreme and outrageous and intentionally conducted to cause emotional distress to Plaintiff. As a direct and proximate result of the malicious and intentional conduct by Defendants, Plaintiff suffered, and will continue to suffer, damages, including but not limited to such severe and extreme emotional distress manifested as great humiliation, embarrassment, shame, and other pain and suffering.

The intentional conduct of the Defendants was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiff's rights.

### 1.     Gerwaski's Complaint focuses on Conduct Not Communications

The defendant's showing required to satisfy the first step has two components. The first component requires that "the comments at issue fall into one of the four categories of protected communications enumerated in NRS 41.637." *Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020) (*citing Delucchi*, 133 Nev. at 299, 396 P.3d at 833) (emphasis added).

Gerwaski did not file an action against AMP for defamation, negligent misrepresentation, or any claim for relief as to Defendant's statements about him. All of Gerwaski's claims were premised on actions that Defendants took in violation of 18 U.S.C. § 2339B and providing substantial assistance to terrorist organizations and wreaking havoc on UNLV's campus and direct consequences he suffered therefrom.

Gerwaski's complaint is not based on communications made by AMP, but on a course of conduct that violates federal law (18 U.S.C. § 2339B). Obviously, Nevada's anti-SLAPP statutes only apply to protect a defendant's exercise of his or her First amendment free speech rights.

Therefore, in a blatant effort to make this case something it is not, AMP's Motion is based on content of speech rather than conduct in violation of federal anti-terrorism laws.

The largest flaw in AMP's anti-SLAPP Motion is their refusal to accept that Gerwaski filed his Complaint based on AMP's conduct of providing substantial assistance to FTO's abroad and not on communications made by either AMP or SJP/NSJP. While AMP wants to focus on communications based on free speech, Gerwaski's Complaint focuses on AMP and SJP providing substantial assistance to foreign terrorist organizations across the Middle East, hiding under the auspices of "free speech".

### 2. AMP Has Not Demonstrated That They Made Good Faith Communications Protected by the Categories Enumerated in NRS 41.637.

"To determine whether a cause of action arises from protected activity, [courts] disregard its label and instead examine its gravamen by identifying [t]he allegedly wrongful and injury-producing conduct … that provides the foundation for the claim." *Area 51 Prods. v. City of Alameda*, 229 Cal. Rptr. 3d 165, 175 (Cal. Ct. App. 2018) (citations and quotation marks omitted).

"[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech.'" *Id.* (*citing Park v. Board of Trustees of California State University*, 217 Cal.Rptr.3d 130, 393 P.3d 905 (2017); see also *Feldman v. 1100 Park Lane Assocs.,* 160 Cal. App. 4th 1467, 1478, 74 Cal. Rptr. 3d 1, 9 (2008) ("the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity") (emphasis in original).

Nevada's anti-SLAPP statutes only apply to protect a defendant's exercise of his or her First amendment free speech rights. Therefore, in a blatant effort to make this case something it

is not, AMP claims that the communications were related to an issue of public interest, was made in a place open to the public/public forum and AMP made truthful comments.

Defendant's act underlying the cause of action must "itself have been an act in furtherance of the right of petition or free speech; *See Area 51 Productions, Inc. v. City of Alameda*, 229 Cal. Rptr. 3d 165, 176 (Cal. Ct. App. 2018) *Park*, 383 P.3d at 907.

Defendants have asserted these failed arguments in Courts across the Country, wherein the gravamen of their acts is the substantial support of FTO's through the galvanized anti-Israel and anti-Semitic activists across the country in the wake of Oct. 7, calling for a "Unity Intifada" against the Jewish state and vowing to "contribute to the fight for Palestinian liberation.".

AMP knowingly used or permitted the use of funds raised by a solicitation of contributions and manpower to provide support to terrorists, terrorist organizations and terrorist activities as delineated in the First Amended Complaint (hereinafter "FAC"), in violation of 18 U.S.C. § 2339B.

As alleged in the Complaint, Defendants acts are in furtherance of providing substantial assistance to an FTO, have nothing to do with communications or speech; nor should they even subject to analysis under Nevada's Anti-SLAPP laws.

### 3. Any Communications made by AMP were not Truthful or Made Without Knowledge of their Falsehoods.

To satisfy the first step, the defendant must show that "(1) 'the comments at issue fall into one of four categories of protected communications enumerated in NRS 41.637' and (2) 'the communication is truthful or is made without knowledge of its falsehood.'" *Smith v. Zilberberg*, 137 Nev. Adv. Rep. 7, 481 P.3d 1222 (2021) (quoting *Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020); see also NRS 41.637; Coker, 432 P.3d at 750 ("We clarified in *Shapiro v. Welt* that 'no communication falls within the purview of NRS 41.660 unless it is 'truthful or is made without knowledge of its falsehood.'") (citing *Shapiro v. Welt*, 133 Nev. 35, 40, 389 P.3d

14

262, 268 (2017)). The defendant must make both showings. It is not enough that communications fall into one of the categories enumerated in NRS 41.637.

The Nevada Supreme Court has held that an affidavit stating that the defendant believed the communications to be truthful or made without knowledge of their falsehood is only sufficient to meet the defendant's burden absent contradictory evidence in the record. *Stark v. Lackey*, 136 Nev. Adv. Rep. 4, 458 P.3d 342, 347 (2020).

Here regardless of whether statements were truthful as to the content of the speech itself towards Israel, its political policies, or public interest, taking all of the FAC as truthful as alleged, Defendant's provided substantial assistance to FTO, and that is not protected under the First Amendment.

Notwithstanding same, whether NSJP and AMP are part of the same organization is irrelevant to the analysis that both have been accused of providing substantial assistance to FTO's in violation of 18 U.S.C. § 2339B.

### 4. Defendants Failed to Meet Their Burden of the First Step of the Anti-SLAPP Analysis

Nevada law only requires the District Court to consider the second step of the anti-SLAPP analysis if the defendant makes its initial showing under the first step of the anti-SLAPP analysis. *See Shapiro v. Welt,* 133 Nev. 35, 38, 389 P.3d 262, 267 (2017); see also *Smith*, 481 P.3d at 1229.

Here, Defendants failed to even meet that first step demonstrating that the comments made are protected communications, rather than providing substantial assistance to FTO. As stated *supra,* the gravamen of Defendants' conduct and the redress sought by Gerwaski in this matter is the violation of 18 U.S.C. § 2339B *et. seq.* Defendants present the same failed arguments in this case as they have in every case across the nation, that their acts are protected

15

by the First Amendment.[45] Again, AMP is not being sued for the content of their speech, but for their acts of providing substantial/material support to FTOs in violation of 18 U.S.C. § 2339B *et seq*.

Therefore, this Court need not even proceed with the second step of the Anti-SLAPP analysis as to whether Plaintiff demonstrates with prima facie evidence, probability of success on his claim for intentional infliction of emotional distress.

**C.    PLAINTIFF DEMONSTRATES WITH PRIMA FACIE EVIDENCE PROBABILITY OF SUCCESS ON HIS CLAIM FOR IIED**

Where a defendant "makes [its] initial showing" on the first step of the anti-SLAPP analysis, the burden shifts to the plaintiff to show 'with prima facie evidence a probability of prevailing on the claim.'" *Shapiro*, 133 Nev. at 38, 389 P.3d at 267 (2017) (quoting NRS 41.660(3)(b)).

Even assuming arguendo, that this Court finds that Defendant's met their burden of proof of the anti-SLAPP analysis, which they don't, Gerwaski demonstrates with prima facie evidence probability of success on his claim for IIED.

To satisfy the second step of the anti-SLAPP analysis, the plaintiff must show, by prima facie evidence, that his claims have minimal merit. *Smith v. Zilverberg*, 137 Nev. Adv. Rep. 7, 481 P.3d 1222, 1229 (2021) (citing NRS 41.660(3)(b); see also *Abrams v. Sanson*, 136 Nev. 83, 91, 458 P.3d 1062, 1069 (2020). If the plaintiff meets his burden, then the claim may proceed and is not subject to early dismissal. *See John v. Douglas County Sch. Dist*., 125 Nev. 746, 754, 219 P.3d 1276 (2009).

---

[4] July 16, 2024 - Virginia Court Orders American Muslims for Palestine to Produce Records Requested by Attorney General Miyares (state.va.us)

[5] In Virginia, AMP presented the same failed First Amendment narrative, wherein the Richmond Court denied and instructed full compliance with the AG Miyares, Civil Investigative Demand (CID), finding that AMP is the parent organization of NSJP and accordingly, both organizations must comply with the CID.

16

The elements of IIED in Nevada are: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000).*Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983); *see Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).

"[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Rivera v. CCA*; 0:20-cv-15651 (9th Cir.)

Here, it is indisputable that Defendants conduct was extreme and outrageous, when they specifically provide substantial assistance to FTOs. It is outrageous that an American Non-Profit organization and its subsidiary organizations engage in activities that support organizations that are a threat to American national security. It is outrageous that these organizations dare to utilize IRS non-profit status to foment hatred on university campuses and provide America's enemies abroad substantial assistance in coordinating antisemitic activities against national security interests.

Plaintiff sufficiently plead all the psychosomatic disorders that resulted from Defendants acts in his Complaint. Plaintiff sufficiently pleads and demonstrates that Defendants acts is both the actual and proximate cause of his distress.

As Gerwaski meets the causation element of his tort claims and demonstrate a probability of prevailing on his claims. *See, e.g., Bulen v. Lauer*, Case No. 81854, 508 P.3d 417 (Nev. 2022) (unpublished disposition) (failure to demonstrate an element of claim precludes carrying of burden at the second step of the anti-SLAPP analysis).

17

# CONCLUSION

A careful review of Plaintiff's FAC will demonstrate that in the course of the 77-page Complaint, the gravamen of the IIED claim against AMP is not relating to their speech, but to their violation of 18 U.S.C. § 2339B et seq. Their complicity and providing substantial assistance to foreign terrorist organizations have nothing to do with free speech, but are in fact a criminal act, for which civil liability thereon is being sought against them in Courts across the Country., Plaintiff respectfully request that this Court deny the Defendants' Special Motion to Dismiss in its entirety.

**DATED** this 1st day of January, 2025.

**CHATTAH LAW GROUP**

*/s/ Sigal Chattah*
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
5875 S. Rainbow Blvd., #205
Las Vegas, Nevada 89118
(702) 360-6200

# CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of January, 2025, I personally served a true copy of the foregoing Plaintiff's RESPONSE TO DEFENDANTS' SPECIAL MOTION TO DISMISS by the Court's electronic service system to all registered parties:

*/s/ Sigal Chattah*

An Agent of Chattah Law Group