CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T.S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1902
Facsimile: (702) 718-3213
Emails: peterson@aclunv.org
      jsmith@aclunv.org

*Attorneys for Defendant Students for Justice in Palestine, UNLV*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COREY GERWASKI,<br><br>             Plaintiff,<br><br>   vs.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>             Defendants. | Case No.: 2:24-cv-00985-APG-MDC<br><br>**DEFENDANT STUDENTS FOR JUSTICE IN PALESTINE – UNLV'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660**<br><br>**[ORAL ARGUMENT REQUESTED]** |

Defendant Students for Justice in Palestine, University of Nevada, Las Vegas ("Students for Justice in Palestine – UNLV" or "SJP UNLV") moves to dismiss Plaintiff's Intentional Infliction of Emotion Distress ("IIED") claim against SJP UNLV pursuant to NRS 41.660, which is Nevada's Anti-SLAPP statute. SJP UNLV also moves for attorney fees, costs, and any monetary award it is entitled to under NRS 41.670(1)(b).

Dated: April 11, 2025

**ACLU OF NEVADA**

/s/  *Christopher Peterson*
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T. S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 718-3213
Emails: peterson@aclunv.org
        jsmith@aclunv.org

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 0

TABLE OF AUTHORITIES ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

   I.    INTRODUCTION ................................................................................................ 3

   II.   FACTS AND PROCEDURAL HISTORY ...................................................... 4

      A.  October 7, 2023, attack by Hamas and the Israeli response ..................... 4

      B.  The war's impact on the American public, media, and elections ............... 4

      C.  SJP UNLV's advocacy and Plaintiff's related state law claim ................. 5

      D.  Procedural posture ..................................................................................... 8

   III.  LEGAL STANDARD .......................................................................................... 8

      A.  Defendant's initial burden ......................................................................... 8

      B.  Plaintiff's subsequent burden .................................................................... 9

   IV.  ARGUMENT ...................................................................................................... 10

      A.  SJP UNLV's communications at issue are entitled to protection. ........... 10

         1.  SJP UNLV's social media posts and protests satisfy NRS 41.637(4). ..................... 11

         2.  SJP UNLV's communications during its meeting with President Whitfield are protected under NRS 41.637(1) and NRS 41.637(2). ........................................................ 12

         3.  SJP UNLV's communications were all made in good faith. .................................... 13

      B.  Plaintiff cannot show a probability of success on his IIED claim. ........... 14

         1.  Failure to adequately plead an IIED claim ............................................. 15

         2.  First Amendment bar ............................................................................... 18

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Barrett v. Rosenthal*, 40 Cal. 4th 33, 51 Cal. Rptr. 3d 55, 146 P.3d 510 (Cal. 2006) ...................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ........................................... 10, 11

*Blige v. Terry*, 540 P.3d 421 (Nev. 2023) ................................................................. 16

*Carey v. Brown*, 447 U.S. 455, 100 S. Ct. 2286 (1980) ..................................................... 19

*Coleman v. Telles*, No. 2:24-cv-00930-APG-MDC, 2025 U.S. Dist. LEXIS 21413 (D. Nev. Feb. 5, 2025) ................................................................................................ 11, 18

*Hale v. NV Prop. 1, LLC*, No. 22-16274, 2024 U.S. App. LEXIS 6389 (9th Cir. Mar. 18, 2024) .. 16, 17

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ................................................. 10, 11

*Miller v. Jones*, 114 Nev. 1291, 970 P.2d 571 (1998)..................................................... 16, 18

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .................................................... 19

*Ortberg v. Goldman Sachs Group*, 64 A.3d 158 (D.C. 2013)................................................. 17

*Smith v. Craig*, 2020 U.S. Dist. LEXIS 38774 (D. Nev. March 4, 2020) .................................. 10, 15

*Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011) ................................................ 19, 20

*Soto v. Infinity Hospice Care*, LLC, No. 2:22-cv-00632- BNW, 2023 U.S. Dist. LEXIS 225263 (D. Nev. Dec. 19, 2023)........................................................................................ 18

*Stark v. Lackey*, 136 Nev. 38, 458 P.3d 342 (2020)..................................................... 10, 12, 13, 14

*Westbrook v. DTG Operations, Inc*., No. 2:05-CV-00789-KJD-PAL, 2007 U.S. Dist. LEXIS 14653 (D. Nev. Feb. 28, 2007)........................................................................................ 17

*Williams v. Lazer*, 137 Nev. 437, 495 P.3d 93 (2021) .................................................... 14, 15

*Wynn v. AP*, 555 P.3d 272 (Nev. 2024)..................................................................... 10, 15

**Statutes**

NRS 41.467(4)............................................................................................... 12

NRS 41.637 ................................................................................................ 10, 12, 14, 15

NRS 41.637(1)............................................................................................... 10, 13

NRS 41.637(2)............................................................................................... 10, 13, 14

NRS 41.637(4)............................................................................................... 10, 12, 13

NRS 41.650 ................................................................................................ 9

NRS 41.660 ................................................................................................ 11, 15, 21

NRS 41.660(3)(a) .......................................................................................... 9

NRS 41.660(3)(b) ........................................................................................ 10

NRS 41.670 .................................................................................................. 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 10, 15

**Other Authorities**

*Biden administration notifies Congress of planned $8 billion in weapons sale to Israel*, PBS News (January 4, 2025) ................................................................. 6

Erica Chenoweth, et al., *Protests in the United States on Palestine and Israel*, *2023-2024*, Social Movement Studies, 1–14 (2024) ........................................ 6

*Israel-Gaza war: A timeline of key events*, Reuters (March 18, 2025) ............................................... 5

*Israel-Hamas War*, AP News ................................................................. 6

Laura Silver, et al. *Majority in U.S. say Israel has valid reason for filing; fewer say the same about Hamas*, Pew Research Center (March 21, 2024) ....................... 5

*Military Assistance to Israel*, United States Department of State (March 1, 2025) .......................... 6

Students for Justice In Palestine, Organizations, UNLV Involvement Center ................................ 6

*Top Headlines on Israel and Hamas at war*, Reuters ................................ 5

*Statement by Secretary of Defense Lloyd J. Austin III Marking One Year Since Hamas's October 7th Terrorist Assault on the State of Israel*, United States Department of Defense (October 7, 2024), .......... 5

*UN Commission finds war crimes and crimes against humanity in Israeli attacks on Gaza health facilities and treatment of detainees, hostages*, United Nations Human Rights Council (October 10, 2024) ...... 5

*UNRWA situation report #168 on the humanitarian crisis in the Gaza strip and the West Bank, including East Jerusalem*, United Nations Relief and Works Agency for Palestine Refugees in the Near East (March 15, 2025) .......... 5

Zeke Miller & Joey Cappelletti, *Mideast conflict looms over US presidential election as Harris and Trump jostle for an edge*, AP News (October 21, 2024 .......... 6

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.    INTRODUCTION

Plaintiff Gerwaski sued SJP UNLV to silence SJP UNLV's political speech. His motivation is obvious from the allegations in his complaint. He does not accuse SJP UNLV of engaging in violence or vandalism. He does not accuse SJP UNLV of threatening him or doing anything else directly to him. Rather, he is angry that SJP UNLV criticizes and advocates against Israel's military campaign against the Palestinians and wants to stop its social media activity, protests, and petitions to UNLV's leadership.

Gerwaski has the right to disagree with SJP UNLV. He has the right to argue that the organization's statements are antisemitic. He has the right to protest that the organization's advocacy and claim that SJP UNLV's efforts benefit bad actors. He does not have the right to sue SJP UNLV for engaging in nonviolent political advocacy he is offended by.

Gerwaski's suit violates Nevada's anti-Strategic Lawsuits Against Public Participation ('anti-SLAPP") laws. The communications Gerwaski puts at issue, SJP UNLV's social media posts, protests, and petitions to UNLV, are precisely to type of communications entitled to anti-SLAPP protections, and he never alleges that these communications were false and made with knowledge of falsity. As previously discussed in SJP UNLV's motion to dismiss filed on March 5, 2025, this suit has no probability of success because Gerwaski has failed to adequately plead any claim against SJP UNLV, including his IIED claim, and his claims are generally barred by the First Amendment.

Nevada's anti-SLAPP provisions require this Court to dismiss Gerwaski's anti-SLAPP claim. They also entitle SJP UNLV to fees, costs, and other relief as appropriate.

---

[1] The extent relevant, Defendant SJP UNLV incorporates its points and authorities offered in support of its Motion to Dismiss filed March 5, 2025, in support of this motion as well. Defendant Students for Justice in Palestine UNLV's Motion to Dismiss (March 5, 2025), ECF No. 51 ("SJP UNLV Mot. to Dismiss").

1

2

## II.    FACTS AND PROCEDURAL HISTORY

### A.  October 7, 2023, attack by Hamas and the Israeli response

3

4

On October 7, 2023, Hamas attacked the nation of Israel, killing approximately 1,200 people

and taking 251 hostages.[2] The Israeli government responded by invading Gaza.[3]  According to the

5

United Nations, 48,503 Palestinians have been killed, 111,927 injured, and 1.9 million displaced due

6

to the conflict as of March 15, 2025.[4] The U.N. has also described the situation in Gaza as a

7

humanitarian crisis and has accused both Hamas and Israel of war crimes related to the conflict.[5]

8

### B.  The war's impact on the American public, media, and elections

9

The American public immediately had a strong, visceral reaction to the conflict, and while

10

Americans were unified in their condemnation of Hamas's October 7th attack, Israel's subsequent

11

military actions polarized the nation.[6] Since the conflict's instigation, American news media has

12

provided daily coverage.[7] Protests have erupted across the country both on and off university

13

14

[2] *Statement by Secretary of Defense Lloyd J. Austin III Marking One Year Since Hamas's October 7th Terrorist Assault on the State of Israel*, United States Department of Defense (October 7, 2024), available at https://www.defense.gov/News/Releases/Release/Article/3927710/statement-by-secretary-of-defense-lloyd-j-austin-iii-marking-one-year-since-ham/ (last visited March 18, 2025).

15

16

[3] *Israel-Gaza war: A timeline of key events*, Reuters (March 18, 2025), available at https://www.reuters.com/world/middle-east/major-moments-israel-gaza-war-2025-01-15/ (last visited March 18, 2025).

17

18

[4] *UNRWA situation report #168 on the humanitarian crisis in the Gaza strip and the West Bank, including East Jerusalem*, United Nations Relief and Works Agency for Palestine Refugees in the Near East (March 15, 2025), available at https://www.unrwa.org/resources/reports/unrwa-situation-report-163-situation-gaza-strip-and-west-bank-including-east-jerusalem (last visited March 18, 2025).

19

20

[5] *Id.*; *UN Commission finds war crimes and crimes against humanity in Israeli attacks on Gaza health facilities and treatment of detainees, hostages*, United Nations Human Rights Council (October 10, 2024), available at https://www.ohchr.org/en/press-releases/2024/10/un-commission-finds-war-crimes-and-crimes-against-humanity-israeli-attacks (last visited March 18, 2025).

21

22

[6] Laura Silver, et al. *Majority in U.S. say Israel has valid reason for filing; fewer say the same about Hamas*, Pew Research Center (March 21, 2024), available at https://www.pewresearch.org/2024/03/21/majority-in-u-s-say-israel-has-valid-reasons-for-fighting-fewer-say-the-same-about-hamas/ (discussing polling related to conflict, including the American public's reaction to Hamas's attack, perspective on Israel's military response, and emotional response to Gaza conflict) (last visited March 18, 2025).

23

24

[7] *See*, *e.g.*, *Top Headlines on Israel and Hamas at war*, Reuters (daily news stories provided by

25

4

campuses criticizing Israel's conduct in Gaza, spurring widespread backlash including counterprotests in favor of Israel.[8] Both Presidents Biden and Trump repeatedly asserted their respective positions on the conflict, and both presidencies provided material aid to Israel's forces fighting in Palestine.[9] The war in Gaza and the Biden administration's response may have even determined the outcome of the 2024 American presidential election.[10]

### C.  SJP UNLV's advocacy and Plaintiff's related state law claim

SJP UNLV is a Registered Student Organization (RSO) on the UNLV campus.[11] The organization is "a diverse group of activists and organizers dedicated to advancing the cause for Palestinian justice and liberation by organizing community activities, educational events, and advocacy actions to build awareness, solidarity, and a network of community organizers."[12] Its constitution, contact information, faculty advisor, and student point of contact can be found on

Reuters related to the Gaza conflict), available at https://www.reuters.com/world/israel-hamas/ (last visited March 15, 2025); *Israel-Hamas War*, AP News (daily news stories provided by AP News related to the Gaza conflict), available at https://apnews.com/hub/israel-hamas-war (last visited March 15, 2025).

[8] *See, e.g.* Erica Chenoweth, et al., *Protests in the United States on Palestine and Israel*, *2023-2024*, Social Movement Studies, 1–14 (2024). (reporting that Harvard Kennedy School's Crowd Counting Consortium recorded approximately 12,400 pro-Palestine protests and 2,000 pro-Israel protests between October 7, 2023, and June 7, 2024).

[9] *Biden administration notifies Congress of planned $8 billion in weapons sale to Israel*, PBS News (January 4, 2025), available at https://www.pbs.org/newshour/world/biden-administration-notifies-congress-of-planned-8-billion-weapons-sale-to-israel (last visited March 15, 2025); *Military Assistance to Israel*, United States Department of State (March 1, 2025) (expediting delivery of $4 billion in military assistance to Israel by the Trump administration), available at https://www.state.gov/military-assistance-to-israel/ (last visited March 15, 2025).

[10] Zeke Miller & Joey Cappelletti, *Mideast conflict looms over US presidential election as Harris and Trump jostle for an edge*, AP News (October 21, 2024); Sahil Kapur & Yamiche Alcindor, *'Uncommitted' leaders stand by 2024 strategy after Trump floats Gaza takeover*, NBC News (February 5, 2025), available at https://www.nbcnews.com/politics/donald-trump/uncommitted-leaders-stand-2024-strategy-trump-floats-gaza-takeover-rcna190782 (last visited March 15, 2024).

[11] *See, e.g.* Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited March 5, 2025); Exhibit A, Sworn Declaration of Alexa M. Hayden ("Hayden Decl."), ¶¶ 5; Exhibit B, Sworn Declaration of Matthew Mondschein ("Mondschein Decl."), ¶¶ 5.

[12] *See, e.g.* Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited March 5, 2025); *See* Hayden Decl., ¶¶ 7.

UNLV's website.[13]

Among his claims against SJP UNLV, Plaintiff seeks to hold SJP UNLV liable under Nevada's common law doctrine of intentional infliction of emotional distress. First Amended Complaint, at ¶¶ 363–368, ECF No. 6 (August 9, 2024) ("Amend. Compl."). Plaintiff relies on SJP UNLV's communications, specifically social media posts, nonviolent protests, and petitions to UNLV's president as the basis for this claim. *See* Amend. Compl. at ¶¶ 42, 59, 97, 101, 102, 114, 186, 192, 198 (social media posts); Amend. Compl. at ¶¶ 73–75, 191 (protests); Amend. Compl. ¶¶ 194–96 (in person petition to President Whitfield); Ex. A, Sworn Declaration of Alexa M. Hayden ("Hayden Decl."), ¶¶ 24, 26, 31-33, 35, 37-38; Ex. B, Sworn Declaration of Matthew Mondschein ("Mondschein Decl."), ¶¶ 10-13. Every SJP UNLV communication cited by Plaintiff in his complaint relate to SJP UNLV's beliefs and political activity related to the Israel-Palestine conflict, including SJP UNLV criticism Israel's military action in Gaza, advocacy for the Palestinian people impact for the war, petitioning UNLV to financially divest from companies supporting Israel's war effort, or publicly organizing boycotts to place political pressure on Israel to end the war. Hayden Decl., ¶¶ 13-14, 26, 31-33, 35; Mondschein Decl., ¶¶ 10, 11.

SJP UNLV's social media posts at issue were published on SJP UNLV's public social media account. Amend. Compl. at ¶¶ 42, 59, 97, 101, 102, 114, 186, 192, 198; Hayden Decl., ¶¶ 28-33. SJP UNLV's protests at issue were held in public spaces both on and off campus. Amend. Compl. at ¶¶ 73–74; Hayden Decl., ¶¶ 22-25.

SJP UNLV's in person communications with UNLV President Whitfield were all aimed at procuring action from UNLV, specifically increased transparency from UNLV regarding its investments, divestment from entities supporting violence against Palestinians, and a statement

---

[13] *See, e.g.* Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited March 5, 2025) (the student point of contact information is available under "Full Roster"); Hayden Decl., ¶¶ 9.

establishing that Palestinian and Arab students would receive the same protection as other students on campus. Amend Compl. ¶¶ 194–95; Hayden Decl., ¶¶ 26, 35, 36; Mondschein Decl., ¶¶ 10-12. As Plaintiff's own complaint acknowledges and UNLV Defendants' responses confirm, UNLV is a governmental entity, and President Whitfield is a government employee. Amend Compl., ¶¶ 9, 12; First Amended Complaint, at ¶¶ 363–368, ECF No. 6 (August 9, 2024) ("Amend. Compl."); Defendant Keith Whitfield's Motion to Dismiss at 3:25-26, 13:4-20, 14:5-6, ECF No. 12 (September 18, 2024) ("Def. Whitfield Mot. to Dismiss"); Defendant UNLV's Motion to Dismiss at 14:21, ECF No. 35 (November 12, 2024) ("Def. UNLV Mot. to Dismiss"); *see also* Mondschein Decl., ¶¶ 7–9. SJP UNLV made these requests to Whitfield because he was the head of UNLV at the time. Hayden Decl., ¶¶ 35; Mondschein Decl., ¶¶ 8, 13.

Plaintiff believes SJP UNLV's communications are antisemitic, create a hostile environment for Jewish students on UNLV's campus, and ultimately assist Hamas; the claims he brings against SJP UNLV, including his IIED claim, hinge on these beliefs. *See*, *e.g.*, Amend Compl., ¶¶ 74–75, 116–17, 194, 198, 209. However, Plaintiff does not allege that SJP UNLV itself has engaged in any violence, vandalism, or other noncommunicative activity. *See generally* Amend Compl.; Hayden Decl., ¶¶ 37-40. Plaintiff also does not allege that SJP UNLV has had any contact with him or vice versa. *See generally* Amend Compl. Plaintiff does not complain that SJP UNLV's methods of communication i.e. posting on social media, protesting in public spaces, or petitioning UNLV leadership in person, are inherently harmful or violate the law. *Id.*

In describing his claim for intentional infliction of emotional distress, Plaintiff claims to suffer "severe and extreme emotional distress manifested as great humiliation, embarrassment, shame, and other pain." *Id.* ¶ 365. He does not provide any other information to clarify why those emotions qualify as severe and extreme emotional distress such as physical symptoms, related medical treatment, or a psychiatric diagnosis.

### D.  Procedural posture

Plaintiff filed this action on May 26, 2024. ECF No. 1. This Court issued summonses on May 28, 2024. ECF No. 4. Plaintiff amended his complaint on August 9, 2024. ECF No. 6. Plaintiff served SJP UNLV the summons and First Amended Complaint on February 12, 2025. ECF No. 48. SJP UNLV responded with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on March 5, 2025. ECF No. 51. SJP UNLV now files this timely special motion to dismiss pursuant to NRS 41.660.

## III.    LEGAL STANDARD

Pursuant to NRS 41.650, "[a] person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." NRS 41.650. NRS 41.637 details what constitutes a communication that qualifies for protection. NRS 41.660 explains how an anti-SLAPP motion is adjudicated including timeline and evidentiary burdens.

### A.  Defendant's initial burden

In an anti-SLAPP proceeding, a defendant first bears the burden to establish by preponderance of the evidence that the Plaintiff's claim is based upon "a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." NRS 41.660(3)(a). NRS 41.637 defines what communications are protected, which include:

- "Communication that is aimed at procuring any governmental or electoral action, result or outcome";

- "Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity"; and

- "Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum."

NRS 41.637(1); NRS 41.637(2); NRS 41.637(4). A defendant must also show that the communication was made in good faith by establishing the statements were "truthful or [ ] made without knowledge of its falsehood." NRS 41.637. A signed, sworn declaration is sufficient to satisfy a defendant's initial burden of proof. *See Stark v. Lackey*, 136 Nev. 38, 43, 458 P.3d 342 (2020) ("[W]e have previously held that a sworn declaration like Stark's is sufficient evidence that the statements were truthful or made without knowledge of their falsehood.").

### B.  Plaintiff's subsequent burden

Once a defendant satisfies their burden, the burden shifts to the plaintiff to offer *prima facie* evidence establishing a probability of prevailing on their claim. NRS 41.660(3)(b). To satisfy this burden, "the plaintiff must show that his claim has at least minimal merit," which "exists when the plaintiff makes a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wynn v. AP*, 555 P.3d 272, 278 (Nev. 2024) (quotation omitted).

In determining whether a plaintiff has made a *prima facie* showing regarding their claim, courts may apply the same standard as Federal Rule of Civil Procedure 12(b)(6) to determine whether plaintiff has stated a claim. *See Smith v. Craig*, 2020 U.S. Dist. LEXIS 38774, *19 (D. Nev. March 4, 2020) (finding that plaintiff did not satisfy burden to show probability of success because "the Complaint [did] not provide sufficient factual allegations to show how Defendant's disclosure of Plaintiff's settlement agreement and medical records could plausibly support her claims for relief."). To avoid dismissal pursuant to Rule 12(b)(6), a plaintiff must make sufficient factual allegations to establish a plausible entitlement to belief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955 (2007). "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

"[C]onclusory allegations of law and unwarranted inferences, however, are insufficient to avoid dismissal." *Id*. As such "allegations must amount to 'more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action.'" *Coleman v. Telles*, No. 2:24-cv-00930-APG-MDC, 2025 U.S. Dist. LEXIS 21413, at *3 (D. Nev. Feb. 5, 2025) (quoting *Bell Atl. Corp.*, 550 U.S. at 556). After separating out any well-plead factual allegations from plaintiff's legal conclusions and unwarranted inferences, the Court must then determine "whether [the factual allegations] plausibly give rise to an entitlement to relief." *Kwan*, 854 F.3d at 1096. "This plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully"; rather "[a] claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.    ARGUMENT

Plaintiff's claims against SJP UNLV rely entirely on communications by SJP UNLV protected under Nevada's anti-SLAPP laws including the organization's posts on public social media, protests in public spaces, and petition to UNLV President Whitfield. As Plaintiff brings his IIED claim in response to SJP UNLV's protected good faith communications, and Plaintiff cannot establish a probability of succeeding on his claim, SJP UNLV is entitled to dismissal pursuant to NRS 41.660, and attorney fees, costs, and a monetary award as defined by NRS 41.670. NRS 41.660; NRS 41.670.

### A.  SJP UNLV's communications at issue are entitled to protection.

Plaintiffs based his IIED claim upon SJP UNLV's social media posts, protests, and petition to UNLV President Whitfield. Plaintiff does not condemn social media posts, protests, or meeting with university officials in general; rather Plaintiff has sued SJP UNLV because the organization advocated for Palestine and against Israel's war effort in Gaza in each of these communications.

However, each communication placed at issue by Plaintiff satisfies the definition of a "good faith communication in furtherance of the right to petition or the right to free speech in direct

connection with an issue of public concern" as defined by NRS 41.637. NRS 41.637. SJP UNLV's social media posts and protests were communications directly connected to an issue of public concern in a place open to the public or in a public forum. SJP UNLV's communications to President Whitfield were aimed at procuring a governmental action, and these communications also provided both information and complaints regarding a matter of concern to the UNLV to an employee of the university (i.e. Whitfield). SJP UNLV made all these communications in good faith as defined by NRS 41.637. *Id.*

### 1. SJP UNLV's social media posts and protests satisfy NRS 41.637(4).

"Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum" is identified by NRS 41.637(4) as a protected communication.

All of SJP UNLV's protests and social media posts are directly connected to an issue of public interest as they are all related to the war in Gaza. For determining whether a communication is "an issue of public interest" under NRS 41.467(4), the Nevada Supreme Court provides the following guidance:

> (1) "public interest" does not equate with mere curiosity;
>
> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
>
> (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;
>
> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and
>
> (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Stark v. Lackey*, 136 Nev. 38, 41-42, 458 P.3d 342, 346 (2020). SJP UNLV's communications easily satisfy each of these factors.  As to the first and second factors, as seen by polling, news coverage,

nationwide protests, and nationwide backlash to those protests, it is clear that the war in Gaza is more than a "mere curiosity" to the public and has impacted every person in America in some fashion. In turn, SJP UNLV's communication are directly related to the war – they are responding to Israel's invasion of Gaza and the collateral impact on the Palestinians living there. Occurring on public social media pages and in public spaces, SJP UNLV's posts and protests are by their very nature public communications; in fact, Plaintiff's claims are premised on the idea that the communications were not directed at a few individuals but rather meant to reach the entire UNLV community.

In addition to direct connection to an issue of public concern, all of SJP UNLV's protests and posts took place in public spaces. SJP UNLV communications on social media were on the organization's public pages, and under Nevada's Anti-SLAPP law, posts made on public social media pages are considered made in a public forum. *See Stark v. Lackey*, 136 Nev. 38, 41 n.2, 458 P.3d 342, 345 (2020) ("We note that the parties do not dispute, and we agree, that [defendant's] Facebook page is a public forum.") (citing *Barrett v. Rosenthal*, 40 Cal. 4th 33, 51 Cal. Rptr. 3d 55, 146 P.3d 510, 514 n.4 (Cal. 2006) ("Web sites accessible to the public . . . are 'public forums' for the purposes of the anti-SLAPP statute.")). SJP UNLV's protests outside of cyberspace all took place on sidewalks, streets, and locations on UNLV's campus such as the university amphitheater where the public could attend. Hayden Decl., ¶¶ 22-25, 28-33**.**

As communications made in public about an issue of public interest, SJP UNLV's protests and posts are protected under Nevada's anti-SLAPP provisions.

### 2.  SJP UNLV's communications during its meeting with President Whitfield are protected under NRS 41.637(1) and NRS 41.637(2).

Communications "aimed at procuring any governmental or electoral action, result or outcome" and "of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity" are protected under NRS 41.637(1) and NRS 41.637(2)

respectively.

No party disputes that UNLV is a government entity. As such, SJP UNLV's meeting with UNLV's president and social media posts advocating for UNLV to financially divest were aimed at procuring government action, i.e. increased transparency, divestment from companies supporting the war in Gaza, and a statement assuring that Palestinian and Arab students will be protected. Hayden Decl., ¶¶ 35; Mondschein Decl., ¶¶ 10-12. Though Plaintiff may be staunchly against the requested actions, transparency, divestment and providing a statement were actions within UNLV's power.

Turning to NRS 41.637(2), Whitfield was an employee of a Nevadan political subdivision, i.e. UNLV, at the time SJP UNLV met with him. Amend Compl., ¶¶ 9, 12; Def. Whitfield Mot. To Dismiss at 13:4-20, 14:5-6. SJP UNLV met with Whitfield to discuss "matter[s] reasonably of concern to" UNLV, i.e. UNLV's financial investments in particular companies and the safety of UNLV's Palestinian and Arab students. Hayden Decl., ¶¶ 35; Mondschein Decl., ¶¶ 10-12. In communicating with a government employee about a matter of concern to the employee's political subdivision, SJP UNLV's communications are protected under NRS 41.637(2).

### 3.  SJP UNLV's communications were all made in good faith.

Pursuant to NRS 41.637, a communication is in good faith when it "is truthful or is made without knowledge of falsehood." An affidavit by a defendant affirming that the statements at issue are true, were made without knowledge of falsehood, or are statements of opinion is sufficient to show good faith. *Stark*, 136 Nev. at 43, 458 P.3d at 347 (cited by *Williams v. Lazer*, 137 Nev. 437, 440, 495 P.3d 93, 97 (2021)). Whether a defendant made a statement in good faith is dependent on the defendant's subjective beliefs rather than whether the statement was objectively true. *Williams*, 137 Nev. at 442, 495 P.3d at 98 (determining defendant's statements were made in good faith despite evidence her statements were inaccurate because plaintiff did not offer evidence disputing that defendant's statements accurately reflected defendant's "subjective belief"). "Opinion statements are

incapable of being false [under Nevada's Anti-SLAPP provision], as there is no such thing as a false idea." *Id.*, 137 Nev. at 440–41, 495 P.3d at 97–98 (determining that defendant's statements that plaintiff was racist, sexist, unprofessional, and unethical were opinions incapable of being false) (citation omitted).

SJP UNLV has not communicated anything that it knew to be false, and to its knowledge has only made truthful statements or offered opinions. Hayden Decl., ¶¶ 27, 34; Mondschein Decl., ¶¶ 14. Furthermore, the communications identified in Plaintiff's complaint clearly express SJP UNLV's opinions about the war in Gaza, Israeli's policies towards Palestinians living in Gaza, or how UNLV should respond to the Israel-Palestine conflict. Hayden Decl., ¶¶ 13, 14, 26 31-35; Mondschein Decl., ¶¶ 10-12. As opinions, these communications could not be knowingly false. To the extent the SJP UNLV's statements are deemed to offer facts, Plaintiff has not accused SJP UNLV of lying, only that Plaintiff believes SJP UNLV's statements are antisemitic and benefit Hamas.

As SJP UNLV made its communications in good faith, they satisfy NRS 41.637 and are entitled to protection under NRS 41.660. NRS 41.637; NRS 41.660.

**B. Plaintiff cannot show a probability of success on his IIED claim.**

A plaintiff who fails to offer an evidentiary basis to establish a *prima facie* claim or fails to state a claim pursuant to Rule 12(b)(6) cannot show a probability of success on their claim. *Wynn*, 555 P.3d at 278; *see Smith*, 2020 U.S. Dist. LEXIS 38774 at *19 ("[T]he Complaint [did] not provide sufficient factual allegations to show how Defendant's disclosure of Plaintiff's settlement agreement and medical records could plausibly support her claims for relief."). Likewise, a plaintiff whose claim is barred by law cannot show a probability of success. *See Williams*, 137 Nev. at 443, 495 P.3d at 99 ("[A] plaintiff cannot show a probability of prevailing on his claim if a privilege applies to preclude the defendant's liability."). Plaintiff Gerwaski cannot show a probability of success on his IIED claim because he has not adequately pled that SJP UNLV's behavior was extreme or outrageous, the

organization intended to harm him, or he suffered a cognizable injury under Nevada's IIED law. He also cannot show a probability of success because the First Amendment bars his IIED claim.

### 1.  Failure to adequately plead an IIED claim[14]

"In order to prevail in an IIED claim, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 114 Nev. 1291, 1299-300, 970 P.2d 571, 577 (1998) (quoted by *Blige v. Terry*, 540 P.3d 421, 432 (Nev. 2023)). Here Plaintiff has failed to plead sufficient factual allegations for an IIED claim. First, Plaintiff failed to plead sufficient facts establishing SJP UNLV engaged in "extreme or outrageous" behavior; all actions ascribed to SJP UNLV in the complaint are typical, legal First Amendment activities that occur in regularly in public across the country. Second, Plaintiff failed to plead any facts establishing that SJP UNLV intended to cause him emotional distress or recklessly disregarded the possibility that its actions would cause him distress, especially since Plaintiff offers no facts that he ever came into direct contact with SJP UNLV or its messaging. Finally, Plaintiff failed to plead facts establishing he suffered extreme or severe emotional distress because he has only alleged general emotional discomfort.

### i.  Inadequate allegation of "extreme and outrageous" conduct

An "IIED [claim] requires a showing of conduct that no reasonable person could be expected to endure." *Hale v. NV Prop. 1, LLC*, No. 22-16274, 2024 U.S. App. LEXIS 6389, at *3 (9th Cir. Mar. 18, 2024). "IIED liability does not extend to mere insults, indignities, threats, annoyances, petty

---

[14] Plaintiff also fails to adequately plead his federal law claim pursuant to the Anti-Terrorism Act. *See* SJP UNLV Mot. to Dismiss, 12:2–15:10. However, a motion to dismiss pursuant to NRS 41.660 is typically restricted to Nevada state law claims, and Plaintiff's IIED claim is the only claim asserted against SJP UNLV pursuant to state law. *ProCare Hospice of Nev. LLC v. OneCare Hospice, LLC*, 340 F.R.D. 174, 178 (D. Nev. 2021) ("The Ninth Circuit has made clear that a state's anti-SLAPP law does not apply to the federal causes of action in cases involving both state and federal claims.").

oppressions, or other trivialities." *Id.*

Plaintiff alleges that SJP UNLV called for economic boycotts via social media and nonviolent protests, petitioned a state-run university to financially divest from a foreign country due to that country's military action, and organized protests with other advocacy groups on and off campus where people chanted "From the River to the Sea" and "Long live the intifada." However, Plaintiff does not accuse SJP UNLV of violating any restrictions imposed by UNLV on SJP UNLV's expressive activities or engaging in vandalism or violence. Political advocacy, even on controversial topics, conducted in a peaceful manner in public spaces cannot be considered "extreme and outrageous" without banning this protected activity entirely from public view. *See Ortberg v. Goldman Sachs Group*, 64 A.3d 158, 163–64 (D.C. 2013) (in the context of an IIED claim, determining that protests consisting of "chanting slogans and vague threats" performed on public streets are "part and parcel of the frictions and irritations and clashing of temperaments incident to participation in a community life, especially life in a society that recognizes a right to public political protest."). Without more, Plaintiff has failed to plead any "extreme or outrageous" conduct on the part of SJP UNLV.

### ii.    Inadequate allegation of intent or reckless disregard

A plaintiff raising an IIED claim must establish that "the defendant either intended to cause the plaintiff emotional distress or demonstrated reckless disregard for the probability of causing emotional distress." *Westbrook v. DTG Operations, Inc*., No. 2:05-CV-00789-KJD-PAL, 2007 U.S. Dist. LEXIS 14653, at *20 (D. Nev. Feb. 28, 2007).

Plaintiff has not alleged he ever interacted with SJP UNLV, SJP UNLV directed any of its actions towards him, or even that he saw any of SJP UNLV's social media posts or witnessed any of its protests. Plaintiff has also not sufficiently alleged that SJP UNLV recklessly disregarded the probability of causing him distress as SJP UNLV could not have known that Plaintiff might be harmed

if they did not know he existed. Setting aside that Plaintiff has only accused SJP UNLV of nonviolent political advocacy, as SJP UNLV was unaware of Plaintiff during the relevant time period in the complaint, SJP UNLV could not have been aware that its actions would potentially, let alone probably, distress him.

### iii.    Inadequate allegation of severe or extreme emotional distress

To establish that he suffered severe or extreme emotional distress, a plaintiff must offer "objectively verifiable indicia of the severity of his emotional distress." *See Miller v. Jones*, 114 Nev. at 1300, 970 P.2d at 577. "Conclusory allegations of 'shock' and extreme anxiety, sleeplessness, depression, nausea, pain, illness, and discomfort are not enough to meet the standard of severe or extreme emotional distress." *Soto v. Infinity Hospice Care*, LLC, No. 2:22-cv-00632- BNW, 2023 U.S. Dist. LEXIS 225263, at *10 (D. Nev. Dec. 19, 2023). Rather, "[t]he stress must be so severe and of such intensity that no reasonable person could be expected to endure it." *Id.* Merely "citing a list of physical symptoms" without providing "facts that show these symptoms were of such intensity that no reasonable person could be expected to endure such stress" is insufficient. *Id.*

Additionally, "in cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of a physical impact, proof of serious emotional distress causing physical injury or illness must be presented." *Coleman*, No. 2:24-cv-00930-APG-MDC, 2025 U.S. Dist. LEXIS 21413, at *6-7. "The physical impact requirement may not be satisfied by pleading general physical or emotional discomfort." *Id.* (quotation omitted).

In describing his alleged harm, Plaintiff has only plead that he suffered "great humiliation, embarrassment, shame, and other pain and suffering." Amend. Cmpl. ¶ 365. These are only general statements of emotional discomfort and are insufficient to establish severe or extreme emotional distress. As Plaintiff pleads no facts alleging objective indicia of severe and extreme emotional

distress such as changes of behavior or medical treatment related to these feelings, he has inadequately pled an injury remediable by an IIED claim.

### 2. First Amendment bar

The First Amendment can serve as a defense in tort suits; whether the Free Speech Clause shields a defendant "turns largely on whether [the defendant's] speech is of public or private concern." *Snyder v. Phelps*, 562 U.S. 443, 451, 131 S. Ct. 1207, 1215 (2011).

"Speech deals with matters of public concern [. . .] when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 453 (quotations omitted). Whether expressive conduct is "inappropriate or controversial [. . .] is irrelevant to the question whether it deals with a matter of public concern." *Id.* If a plaintiff seeks to hold a defendant liable for the content of speech related to a matter public concern rather than that "of purely private significance," the plaintiff's claims are barred by the First Amendment. *Id.*, 56 U.S. at 460–61 (barring the plaintiff's claims of intentional infliction of emotional distress and civil conspiracy as they were based entirely upon content of the defendant's speech related to a matter of public concern).

Plaintiff's IIED claim against SJP UNLV is premised exclusively upon SJP UNLV's communications about the war in Gaza and SJP UNLV's opinions about that war. The Palestine-Israel conflict is clearly an issue of public concern, triggering protests and counterprotests across the country, polarizing the American public, and even impacting the outcome of the United States presidential election. This speech is entitled to the strongest protection under the First Amendment. *Carey v. Brown*, 447 U.S. 455, 466-67, 100 S. Ct. 2286, 2293 (1980); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982) (finding "[t]he established elements of speech, assembly, association, and petition" inseparable from the right to organize a non-violent economic boycott to serve a

political purpose).

Plaintiff cannot dispute that his claim against SJP UNLV is premised on the viewpoint expressed in the organization's messaging. *See Snyder*, 562 U.S. at 457 (emphasizing that "that any distress occasioned by [the defendant]'s picketing turned on the content and viewpoint of the message conveyed" in determining that the First Amendment barred plaintiff's claims). Plaintiff's claims are based on the Plaintiff's belief that SJP UNLV's messages are antisemitic and, by advocating against Israel's actions in Gaza, assist Hamas. This is necessarily viewpoint discrimination: if SJP UNLV engaged in the exact same conduct (i.e. organizing protests, petitioning UNLV, and calling for boycotts) in favor of Israel rather than Palestine, Plaintiff would likely promote SJP UNLV rather than sue them. *See Snyder*, 562 U.S. at 457 (considering whether an uncontroversial message conveyed by the defendant in the same manner would have resulted in liability in determining whether claims were content based).

As currently pled, Plaintiff seeks to hold SJP UNLV liable solely due to SJP UNLV's statements presenting a particular viewpoint on a matter of public concern, but such claims are barred by the First Amendment. As such, Plaintiff does not have a probability of success in his IIED claim.

## CONCLUSION

Plaintiff's IIED claim is based entirely on communications by SJP UNLV that are protected by Nevada's anti-SLAPP laws. All relevant communications by SJP UNLV were made in good faith. All social media posts and protests made by SJP UNLV were directly connected with an issue of public concern and occurred in public fora or spaces open to the public. The other relevant communication, i.e. the organization's petition to UNLV President Whitfield, was made in an effort to procure action by UNLV. In doing so, SJP UNLV also communicated information and a complaint to a government employee, i.e. Whitfield, about matters of reasonable concern to UNLV, i.e. the

1    university's financial investments and the safety of its students. As such, all communications at issue

2    were protected under NRS 41.660.

3         Plaintiff cannot demonstrate a probability of prevailing on his IIED claim because he has

4    failed to adequately allege his claim and his claim as alleged is barred by the First Amendment.

5         For these reasons, SJP UNLV respectfully requests that this Court dismiss Plaintiff's IIED

6    claim in full and award SJP UNLV reasonable costs, attorney fees, and other monetary relief as

7    provided by statute.

8    Dated: April 11, 2025

9                                              **ACLU OF NEVADA**

10                                           /s/  *Christopher Peterson*
     CHRISTOPHER M. PETERSON, ESQ.
     Nevada Bar No.: 13932

11   JACOB T. S. VALENTINE, ESQ
     Nevada Bar No.: 16324

12   AMERICAN CIVIL LIBERTIES
     UNION OF NEVADA

13   4362 W. Cheyenne Ave.
     North Las Vegas, NV 89032

14   Telephone: (702) 366-1226
     Facsimile: (702) 718-3213

15   Emails: peterson@aclunv.org
             jsmith@aclunv.org

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **Defendant Students for Justice in Palestine – UNLV's Special Motion to Dismiss Pursuant to NRS 41.660**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on all participants by:

☒    CM/ECF

☐    Electronic mail; or

☐    US Mail or Carrier Service


*/s/Suzanne Lara*
An employee of ACLU of Nevada