DAVID Z. CHESNOFF, ESQ.
*Nevada Bar No. 2292*
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
ROBERT Z. DEMARCO
*Nevada Bar No. 12359*
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
rdemarco@sclawoffice.net
Attorneys for Plaintiff, *COREY GERWASKI*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| COREY GERWASKI, | ) |
| Plaintiff, | ) CASE NO. 2:24-cv-00985 |
| vs. | ) |
| STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA LAS VEGAS; KEITH WHITFIELD individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE IN PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX, DEFENDANT(S), an Individual/LLC/Corp; DOE Nevada corporation; DOE Individuals I–XX; ROE Entities, I–XX, | ) **OPPOSITION TO STUDENTS FOR JUSTICE IN PALESTINE-UNLV'S SPECIAL MOTION TO DISMISS PURSUANT TO NEV. REV. STAT § 41.660 (ECF 61)** <br><br> **[ORAL ARGUMENT REQUESTED]** |
| Defendants. | ) |

- 1 -

COMES NOW, Plaintiff, COREY GERWASKI ("Mr. Gerwaski"), by and through his attorneys of record, DAVID Z. CHESNOFF, ESQ., RICHARD. A. SCHONFELD, ESQ., and ROBERT Z. DEMARCO, ESQ., of CHENSNOFF & SCHONFELD, and files this Opposition to Students for Justice in Palestine-UNLV's Special Motion to Dismiss Pursuant to NRS § 41.660 [ECF 61] filed by Defendant Students for Justice in Palestine-UNLV (hereafter "SJP-UNLV") in the above-entitled action.

This Opposition is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any oral argument that may be heard.

DATED this 25th day of April 2025.

Respectfully Submitted:

CHESNOFF & SCHONFELD

By: <u>Robert Z. DeMarco</u>
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
ROBERT Z. DEMARCO, ESQ.
Nevada Bar No. 12359
520 South Fourth Street
Las Vegas, Nevada  89101
Phone: (702) 384-5563
Fax: (702) 598-1425
Attorneys for Plaintiff

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

SJP-UNLV's attempt to dismiss the Ninth Claim for Relief (which asserts a claim based on Intentional Infliction of Emotional Distress, or "IIED") is legally baseless and deliberately deceptive. This case is not about free speech. Rather, it is about the Defendants' intentional discrimination against Plaintiff as well as Defendants' material support of Hamas—a registered terrorist organization within the direct purview of 18 U.S.C. § 2339B.

Mr. Gerwaski did not file an action against SJP-UNLV for defamation, negligent misrepresentation, or any common law claim based on that entity's statements or speech. To the contrary, all of Mr. Gerwaski's claims (including the IIED claim at issue here) rest upon the Defendants' egregious and shocking conduct, including, but not limited to, SJP-UNLV's violation of 18 U.S.C. § 2339B and the compensable damages flowing directly from that violation, namely, the damages suffered as a UNLV student and as an employee of UNLV, under Title VII and Title IX.[1] It is a federal crime to "knowingly provid[e] material support or resources to a foreign terrorist organization." 18 U.S.C. § 2339B. That statute defines material support to include "any property, tangible or intangible, or service, including currency or monetary instruments . . . expert advice or assistance . . . communications equipment, facilities . . . and transportation, except medicine or religious materials." *Id*.

Here, SJP-UNLV is alleged to have provided material support for Hamas, a designated Foreign Terrorist Organization ("FTO") in the United States.[2] SJP-UNLV assisted and served Hamas in soliciting, inciting, and encouraging students and faculty at UNLV to engage in harassment of Jewish students at the university, and successfully coordinating the harassment and plight of Mr. Gerwaksi is a violation of 18 U.S.C. § 2339B.

---

[1] *See* 18 U.S.C. § 2333(a) ("Any national of the United States injured in his or her person, property or business by reason of an act of international terrorism… may sue therefore in any appropriate district court of the United States."); *see also*, 18 U.S.C. § 2333(d)(2) ("[L]iability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.").

[2] *See generally* 8 U.S.C. § 1189; *Compare with* U.S. Department of State Bureau of Counterterrorism Designated Foreign Terrorist Organizations available at https://www.state.gov/foreign-terrorist-organizations/.

Notwithstanding the coordination with Defendants NSJP, AMP, and other organizations to obstruct, harass and intimidate Jewish students such as Mr. Gerwaksi, and specifically Mr. Gerwaksi, SJP-UNLV *knowingly* used or permitted the use of funds raised by a solicitation of contributions and manpower to provide support to terrorists, terrorist organizations and terrorist activities as delineated in the First Amended Complaint [ECF 6].[3]

SJP-UNLV's Motion is futile because Plaintiff's claims against SJP-UNLV's are in violation of 18 U.S.C. § 2339B and is not subject to Nevada's anti-SLAPP analysis in front of this Court.

Significantly, SJP-UNLV concedes that a "motion to dismiss pursuant to NRS 41.660 is typically restricted to Nevada state law claims, and Plaintiff's IIED claim is the only claim asserted against SJP UNLV pursuant to state law." *See* ECF 61 at p. 15, n. 14. As such, said Defendant's attempt to portray the Motion as one that can sweepingly dismiss the entire case is misplaced and must be rejected.

## II.    STATEMENT OF FACTS

Mr. Gerwaksi was and at all times relevant herein a student at UNLV. Mr. Gerwaksi is Jewish and wears the Jewish skullcap (a kippah) at all times in observance of his faith and ideology.

Defendant SJP-UNLV is a student organization at UNLV. It is an unincorporated association without a formal principal place of business or publicly identified leadership structure.[4] SJP-UNLV—in essence, a proxy platform for Hamas— utilizes students and faculty to perpetuate

---

[3] *See also Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2710–2711 ("[D]esignated foreign terrorist organizations do not maintain organizational firewalls between social, political, and terrorist operations, or financial firewalls between funds raised for humanitarian activities and those used to carry out terrorist attacks.").

[4] Defendant American Muslims for Palestine ("AMP") is not registered as an IRS-designated 501(c)(3) charity. AMP knowingly uses or permits the use of funds raised by a solicitation of contributions to provide support to terrorists, terrorist organizations, terrorist activities, or family members of terrorists. AMP's Chairman, Dr. Hatem Bazian, is a Co-founder of NSJP, which is the student advocacy arm of AMP that provides on-campus management and control of hundreds of university chapters of Students for Justice in Palestine, including SJP-UNLV.

antisemitic and anti-American propaganda by sowing chaos and destabilization of American College campuses.[5]

Following the October 7, 2023 attack on Israel, the longstanding, unchecked spread of antisemitism at UNLV erupted in on-campus displays of hatred, harassment, and physical violence against Jewish students, and more specifically Mr. Gerwaksi. Like many universities across the nation after October 7, 2023, UNLV allowed various student and non-student groups to hold protests on campus in complete disregard to its Jewish student population.

Starting in June, 2023, Mr. Gerwaksi was being asked inappropriate questions about his Jewish heritage and sexual orientation as part of an "onboarding program" when he began working as UNLV Lied Library.

All the events noted herein commenced on or after August, 2023, including unjust termination, harassment, antisemitism, and retaliation, primarily involving members of the University's Administration and student government.

In August 2023, Mr. Gerwaksi was unjustly terminated from his position at the UNLV library as a result of the deliberate disparate treatment and antisemitism that was exhibited by supervisors.

In December 2023, Mr. Gerwaksi returned to the library for personal study, only to have the police called on him by the same individual who had fired him. This person, whose antisemitic views are well-known, claimed Mr. Gerwaksi posed a threat simply by entering the building. This incident was both humiliating and distressing, further exacerbating the hostile environment he has been subjected to before and after October 7, 2023.

As a member of the student government Senate, Mr. Gerwaksi faced numerous acts of discrimination and hostility by UNLV advisors and students. The hostility he experienced is part of

---

[5] NSJP, through its leadership and recruited grassroots supporters, regularly (1) identifies itself as a supporter of, and sometimes even part of, Hamas and its affiliates' movement; (2) disseminates instructions from Hamas and other FTO; (3) hosts speakers that are Specially Designated Global Terrorists or affiliated with them; and (4) provides direct aid to the same.

a broader pattern of attacks by SJP-UNLV against Jewish students based on his (and their) race and Jewish faith.

The blatant antisemitism created an environment where Mr. Gerwaksi has struggled academically, failing two classes due to the stress caused by SJP-UNLV, and has been effectively exiled from the student government chambers because of his Jewish identity. The situation was overtly exacerbated in November 2023 when Mr. Gerwaksi gave a two-minute speech to the Board of Regents about antisemitism on campus.

On multiple occasions, Mr. Gerwaksi told UNLV President Whitfield and other UNLV Administration that students were subjected to violent assaults and needed faculty help, but received little to no response or resolution from UNLV.

Mr. Gerwaksi was personally verbally assaulted by Pro-Palestinian groups on camps because he wears a kippah. These groups told Mr. Gerwaksi to "go back to Israel" and to "go back to the oven, you fucking Jew."

On May 26, 2024, Mr. Gerwaksi filed his initial Complaint [ECF 1]. In it, he noted that he was pending receipt of a right to sue letter from the EEOC and that he was reserving the right to amend the Complaint upon receipt. On August 8, 2024, Mr. Gerwaksi received his right to sue letter and amended the Complaint as the operative pleading herein on August 9, 2024 [ECF 6].

On April 11, 2025, Defendant SJP-UNLV filed a Special Motion to Dismiss Pursuant to DRS 41.660 [ECF 61].

### III.    LEGAL ARGUMENT

This Court should deny SJP-UNLV's Motion to Dismiss pursuant to NRS 41.660 against Plaintiff's Ninth Claim for relief for intentional infliction of emotional distress.  In analyzing the merits of Defendant's anti-SLAPP Motion, the Court must turn to the Complaint's allegations since Defendant challenges solely the "legal sufficiency" of Mr. Gerwaksi 's claims. (*See* Anti-SLAPP Mot. 3:13–17, ECF No. 61); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply

the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.").

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

Defendant's anti-SLAPP Motion fails in this regard because the Complaint specifically alleges that Defendant made these statements "with actual knowledge of their falsity" (Amend. Compl. ¶¶ 259–260 [EFC No. 6]). Since Defendant brings their anti-SLAPP Motion strictly on the legal sufficiency of Mr. Gerwaski's Complaint, it is beyond the Court's current role to weigh the veracity of evidence not referenced in the Complaint to determine whether Defendant's statements were—in fact—truthful or made without knowledge of falsity. *See, e.g., Las Vegas Metro. Police Dep't v. Harris Corp., M/A Com,* No. 2:13-cv-01780-GMN, 2015 WL 895054, at *3 (D. Nev. Mar.

3, 2015) (noting that, for purposes of a motion under Federal Rule of Civil Procedure 12(b)(6) a court may take judicial notice of documents in a public record, but only for "notice of the existence of these documents" rather than "the truth of any disputed facts therein").

Furthermore, Mr. Gerwaksi's Ninth Claim for Relief for Intentional Infliction of Emotional Distress alleges that SJP-UNLV's acts were extreme and outrageous and intentionally conducted to cause emotional distress to Mr. Gerwaksi.

The elements of IIED in Nevada are: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000); *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983); *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).

"[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001). "[T]he question of whether the actions of the [defendant] constituted "extreme or outrageous" conduct is best left to a jury. *See Posadas v. City of Reno,* 851 P.2d 438, 444, 109 Nev. 448, 456 (1993).

Mr. Gerwaksi sufficiently plead all his psychosomatic disorders that resulted from SJP-UNLV's acts in his Complaint. Mr. Gerwaksi sufficiently plead and demonstrated that SJP-UNLV's acts are both the actual and proximate cause of his distress and as a direct and proximate result of SJP-UNLV's malicious and intentional conduct Mr. Gerwaski suffered, and will continue to suffer, damages, including but not limited to such severe and extreme emotional distress manifested as great humiliation, embarrassment, shame, and other pain and suffering. Mr. Gerwaksi meets the causation element of his tort claim and demonstrates a probability of prevailing on his claims. *See, e.g., Bulen v. Lauer*, Case No. 81854, 508 P.3d 417 (Nev. 2022) (unpublished disposition) (failure to demonstrate an element of claim precludes carrying of burden at the second step of the anti-SLAPP analysis). SJP-UNLV's intentional conduct was made in conscious disregard as defendant's conduct was vile, oppressive, and malicious toward Mr. Gerwaski.

Thus, Mr. Gerwaski's IIED claim is not subject to dismissal under Nevada's anti-SLAPP statute at this pleadings stage. *See* Nev. Rev. Stat. § 41.660(3)(a)–(b). *See, e.g., Nano Found., Ltd. v. Silver*, No. 2:19-cv-04237-SVW-PJW, 2019 WL 6723428, at *2 (C.D. Cal. Aug. 20, 2019) (citing *Planned Parenthood*, and explaining that a defendant claiming its statements were truthful, and thus within the protection of California's anti-SLAPP statute, created a factual issue requiring consideration under Federal Rule of Civil Procedure 56).

Therefore, this Court should deny SJP-UNLV's Motion to Dismiss pursuant to NRS 41.660 because the Complaint's factual allegations, which must be taken as true under 12(b)(6), sufficiently establish SJP-UNLV's liability for Mr. Gerwaski's claim for Intentional Infliction of Emotional Distress. While not necessary to proceed further, Defendant's anti-SLAPP arguments fail, in any event.

### A. NEVADA'S ANTI-SLAPP STATUTE STANDARD[6]

Under Nevada's anti-SLAPP statutes, a moving party may file a special motion to dismiss if an action is filed in retaliation to the exercise of free speech. *See Coker v. Sassone*, 135 Nev. Adv. Rep. 2, 432 P.3d 746, 748-749 (2019). A district court analyzing a special motion to dismiss under Nevada's anti-SLAPP statute engages in a two-step analysis. Nev. Rev. Stat. § 41.660(3). First, the court "[d]etermine[s] whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern. *Id*. § 41.660(3)(a). If the moving party fails to carry its burden at this first step, the inquiry ends and the case advances to discovery. *Coker*, 432 P.3d 746, 748 (Nev. 2019). If the moving party succeeds, however, the court advances to the second step. There, the burden shifts to the non-moving party to show "with prima facie evidence a probability of prevailing on the claim[s]." Nev. Rev. Stat. § 41.660(3)(b); *Coker*, 432 P.3d at 748. If the non-moving party fails to satisfy its burden on the second step, the court dismisses the action. *See id*. § 41.660(5).

---

[6] Nevada Courts looks to California guidance when analyzing anti-SLAPP statutes. *See Coker*, 135 Nev. at 11, 432 P.3d at 749.

- 9 -

"The merits of [the plaintiff's] claims should play no part in the first step of the anti-SLAPP analysis." *City of Costa Mesa v. D'Alessio Invs., LLC*, 154 Cal. Rptr. 3d 698, 709 (Cal. Ct. App. 2013). Similar to a summary judgment motion, the district court is not to weigh evidence on an anti-SLAPP motion; rather, the district court must "accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." *Coker,* 432 P.3d at 749 (2019) (quoting *Park v. Bd. of Tr. of Cal. State Univ.,* 383 P.3d at 911).

### 1. SJP-UNLV failed to satisfy the first step under Nevada's anti-SLAPP analysis.

To prevail on a Motion to Dismiss under Nevada's anti-SLAPP statute, SJP-UNLV must show by a preponderance of evidence that the claim is based on a good faith exercise of the right of petition or free speech in "direct connection with an issue of public concern." Nev. Rev. Stat. Ann. § 41.660(1)(a). The defendant must show the communications at issue falls within one of the four categories: (1) those aimed at procuring governmental or electoral action; (2) those informing or complaining to a federal, state, or local legislator or employee about a matter reasonably of concern to the respective governmental entity; (3) statements made in direct connection with an issue under consideration by a governmental body; and (4) communication made in direct connection with an issue of public interest in a forum open to the public. NRS 41.637. Additionally, the defendant must satisfy the second component of "good faith," the communication must be "truthful or made without knowledge of its falsehood." *Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) ("[N]o communication falls within the purview of NRS 41.660 unless it is 'truthful or is made without knowledge of its falsehood.'") (quoting Nev. Rev. Stat. § 41.637).

Here, the Complaint focuses on SJP-UNLV's violation of 18 U.S.C. § 2339B in materially supporting foreign terrorist organizations; not good faith communications made in furtherance of the right to free speech. Furthermore, SJP-UNLV failed to demonstrate that the comments at issue fall into one of the four categories of protected communications enumerated in NRS 41.637. *See Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020). While SJP-UNLV wants to focus on communications based on free speech, Mr. Gerwaksi's Complaint focuses on SJP-UNLV's material

assistance to foreign terrorist organizations across the Middle East, hiding under the auspices of "free speech."

Additionally, Congress rejected SJP-UNLV's position when it enacted § 2339(b), finding that, "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that *any contribution* to such organization facilitates that conduct." See § 301(a)(7), 110 Stat. 1247, note following § 2339(b).[7] Hamas is a deadly group. It is not difficult to conclude, as Congress did, that the taint of their violent activities is so great that working in coordination with them or at their command legitimizes and furthers their terrorist means. Furthermore, the Supreme Court holds 18 U.S.C. § 2339B does not violate freedom of speech when a defendant materially supports international terrorist organizations. See *Holder*, 561 U.S. 1, 18 (2010).

SJP-UNLV's motion is based on erroneous arguments that mischaracterize Mr. Gerwaksi's allegations as presented in his Complaint. SJP-UNLV claims that their communications were related to an issue of public interest, were made in a place open to the public/public forum and SJP-UNLV made truthful comments. Though as alleged in the Complaint, SJP-UNLV's activities are in the furtherance of providing substantial assistance to an FTO.

**2. SJP-UNLV's conduct was not based on "good faith" communications.**

Communications under NRS 41.650 "good faith" communications must be true or made without knowledge of their falsity. Nev. Rev. Stat. Ann. § 41.650; Nev. Rev. Stat. Ann. § 41.637. "To determine whether a cause of action arises from protected activity, [courts] disregard its label and instead examine its gravamen by identifying [t]he allegedly wrongful and injury-producing conduct … that provides the foundation for the claim." *Area 51 Prods. v. City of Alameda*, 229 Cal. Rptr. 3d 165, 175 (Cal. Ct. App. 2018) (citations and quotation marks omitted).

SJP-UNLV asserts a flawed argument in their motion as the gravamen of SJP-UNLV acts substantially support FTO through the galvanized anti-Israel and anti-Semitic activists across

---

[7] *See Holder*, 130 S. Ct. 2705, 2710–2711("[M]aterial support meant to promote peaceable, lawful conduct can be diverted to advance terrorism in multiple ways… Providing material support in any form would also undermine cooperative international efforts to prevent terrorism and strain the United States' relationships with its allies, including those that are defending themselves against violent insurgencies waged by foreign terrorist groups).

UNLV. Furthermore, SJP-UNLV knowingly used or permitted the use of funds raised by a solicitation of contributions and manpower to provide support to terrorists, terrorist organizations and terrorist activities as explained Mr. Gerwaski's Complaint in violation of 18 U.S.C. § 2339B.

Section 2339B(a) prohibits "knowingly" providing material support to foreign terrorist organizations. The federal statute then specifically describes the type of knowledge that is required: "To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization…, that the organization has engaged or engages in terrorist activity…, or that the organization has engaged or engages in terrorism…" *Ibid*. The ordinary person standard is applicable to SJP-UNLV in this case. *See Holder*, 561 U.S. 1, 18 (2010).[8]

The Nevada Supreme Court holds that an affidavit stating that the defendant believed the communications to be truthful or made without knowledge of their falsehood is only sufficient to meet the defendant's burden *absent* contradictory evidence in the record. *Stark v. Lackey*, 136 Nev. Adv. Rep. 4, 458 P.3d 342, 347 (2020) (emphasis added).

Here, SJP-UNLV president Alexa Hayden's affidavit confirmed SJP-UNLV receives information of protests and messages related to the war in Gaza from NSJP and is aware of Hamas' "Toolkit" propaganda provided by NSJP [ECF 61-1]. As specified in the federal statute and the supreme court's holding in *Holder*, SJP-UNLV knowingly participated in materially supporting a known terrorist organization.

Therefore, UNLV-SJP failed to sufficiently satisfy their initial burden under Nevada's anti-SLAPP analysis. Nevada law only requires the court to consider the second step of the anti-SLAPP analysis if the defendant makes its initial showing under the first step of the anti-SLAPP analysis. *See Shapiro v. Welt*, 133 Nev. 35, 38, 389 P.3d 262, 267 (2017); *see also, Smith*, 481 P.3d at 1229.

---

[8] Section 2339(b) prohibits providing a service to a foreign terrorist organization. The use of the word "to" indicates a connection between the service and the foreign group. *See* Merriam-Webster's Dictionary (2025) (defining "service" to mean: "a helpful act"; or "useful labor that does not produce a tangible commodity"; or "an administrative division" A person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause.

### B. PLAINTIFF DEMONSTRATES THE PROBABILITY OF SUCCESS ON HIS CLAIM FOR IIED

Since SJP-UNLV challenges only the "legal sufficiency" of Mr. Gerwaski's Complaint, all Mr. Gerwaski must do to satisfy his burden at this second step is show that his Complaint's allegations support plausible claims. *See Planned Parenthood Fed'n of Am., Inc*, 890 F.3d at 834.

Where a defendant "makes [its] initial showing" on the first step of the anti-SLAPP analysis, the burden shifts to the plaintiff to show "with prima facie evidence a probability of prevailing on the claim." *Shapiro*, 133 Nev. at 38, 389 P.3d at 267 (2017) (quoting NRS 41.660(3)(b). If the plaintiff meets his burden, then the claim may proceed and is not subject to early dismissal. *See John v. Douglas County Sch. Dist.*, 125 Nev. 746, 754, 219 P.3d 1276 (2009).

As discussed *supra*, Mr. Gerwaski has the probability of prevailing in his IIED claim against SJP-UNLV. Mr. Gerwaski sufficiently plead in his Complaint SJP-UNLV's intentional conduct is a direct and proximate cause of his severe and extreme emotional distress manifested as great humiliation, embarrassment, shame, and other pain and suffering. Mr. Gerwaski's Complaint sufficiently plead SJP-UNLV's intentional conduct was made in conscious disregard as defendant's conduct was vile, oppressive, and malicious toward Plaintiff. Therefore, this Court should deny SJP-UNLV's motion to dismiss.

To the extent this Honorable Court deems the claim insufficient on any basis, Plaintiff would request leave to amend. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." There is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Rule 15(a) is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam). Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously amended the complaint. *See id.* at 1052. Not all of these factors carry equal weight and prejudice is the "touchstone." *Id.* Absent a showing of prejudice or a strong showing of any of the remaining factors, there is a presumption that leave to amend should be granted. *Id.* The party opposing the amendment bears the burden of showing why

leave should not be permitted. *Underwood v. O'Reilly Auto Enters., LLC*, 342 F.R.D. 338, 343 (D. Nev. 2022).

IV. **CONCLUSION**

A careful review of Mr. Gerwaksi's Complaint will demonstrate that the gravamen of the IIED claim against SJP-UNLV is not relating to their speech, but to SJP-UNLV's violation of 18 U.S.C. § 2339 et seq. Mr. Gerwaski sufficiently plead a plausible claim for IIED. SJP-UNLV's motion is insufficient as defendant erroneously misplaced this Court's procedural requirements. SJP-UNLV's complicity and providing substantial assistance to foreign terrorist organizations are in fact federal crimes, for which Mr. Gerwaski seeks civil liability thereon.

Mr. Gerwaski respectfully request that this Honorable Court deny SJP-UNLV's Special Motion to Dismiss pursuant to NRS 41.660 in its entirety.

DATED this 25th day of April 2025.

                                        Respectfully Submitted:

                                        CHESNOFF & SCHONFELD

                                        By: <u>Robert Z. DeMarco</u>
                                            DAVID Z. CHESNOFF, ESQ.
                                            Nevada Bar No. 2292
                                            RICHARD A. SCHONFELD, ESQ.
                                            Nevada Bar No. 6815
                                            ROBERT Z. DEMARCO, ESQ.
                                            Nevada Bar No. 12359
                                            Counsel for Plaintiff, *COREY GERWASKI*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court to be served by the Court's electronic filing system on all counsel of record.

**DATED** this 25th day of April, 2025.

/s/ Robert Z. DeMarco
Employee of Chesnoff & Schonfeld