Margaret A. McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira S. Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center for Muslims in America*
100 N. Central Expy, STE 1010
Richardson, Texas 75080
Telephone: 972-915-2507
*Attorneys for Defendant AJP Educational Foundation, Inc.*

*The Constitutional Law Center for Muslims in America
is the legal division of the Muslim Legal Fund of America.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COREY GERWASKI,<br><br>          Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>          Defendants. | Case No. 2:24-cv-00985-APG-MDC<br><br>**DEFENDANT AJP EDUCATIONAL FOUNDATION, INC'S MOTION FOR ATTORNEY'S FEES, COSTS, AND STATUTORY AWARD** |

Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") moves for attorney's fees, costs, and a statutory award under FRCP 54(d), LR 54-1, LR 54-14, and NRS 41.670(1), Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6). Plaintiff is entitled to fees pursuant to ECF No. 71, the order granting AMP's anti-SLAPP Motion. Doc. 71; FRCP 54(d)(2)(B)(ii).

This Motion is supported by the attached memorandum of points and authorities, all exhibits and declarations thereto, and any other argument that may be offered at hearing on this Motion.

Respectfully submitted,

Dated: May 19, 2025

/s/ *Margaret A. McLetchie*
Margaret A. McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational Foundation, Inc.*

*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*

i

## I. INTRODUCTION

In its May 5, 2025, Order, this Court correctly granted Defendant AMP's Special anti-SLAPP Motion to Dismiss Plaintiff's Cause of Action for Intentional Infliction of Emotional Distress ("IIED"). ECF No. 71, pp. 17:16 – 20:5.

This Order entitles AMP to fees and costs. Nevada's anti-SLAPP statute exists to put a quick end to such speech-chilling litigation. Importantly, it provides that "a person who engages in a good faith communication in furtherance of … the right to free speech in direct connection with an issue of public concern *is immune from any civil action* for claims based on the communication." NRS 41.650 (emphasis added). To effectuate this immunity, NRS 41.660 provides for an entitlement to fees and costs. NRS 41.670(1)(a) (the court "***shall*** award reasonable costs and attorney's fees to the person against whom the action was brought") (emphasis added).

The total fees requested are $34,680.00, which as demonstrated below is reasonable under this Court's Local Rules. The costs requested are $548.05.

Moreover, pursuant to NRS 41.670(1)(b), AMP respectfully requests this Court award it an additional $10,000.00 in statutory penalties against Mr. Gerwaski for launching a hopeless IIED claim that was designed to chill AMP's protected political speech. The penalty is particularly appropriate here, as Mr. Gerwaski could not even be bothered to "provide any evidence to meet his prima facie case" (ECF No. 71, p. 20:1-2), thus revealing his claim as a baseless pretext to punish AMP for engaging in speech that he disagrees with.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Corey Gerwaski ("Plaintiff") brought this lawsuit against AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP"), and it is a paradigmatic example of an individual attempting to misuse the legal system to suppress speech. Nevada's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute exists to protect against such groundless suits that only serve to drain the judiciary's and litigants' resources. NRS 41.635 *et seq.* Though Plaintiff's Amended Complaint lacked allegations of communications AMP purportedly made, he generally asserted—without any supporting allegations—that AMP bore responsibility for communications from other individuals or entities. Based on those communications, he asserted

1

an Intentional Infliction of Emotional Distress ("IIED") claim against AMP. However, the communications that Plaintiff alleged AMP made have protection under Nevada's anti-SLAPP statute, as they constitute "good faith communications" made "in direct connection with an issue of public interest in a place open to the public or in a public forum" which are truthful or "made without knowledge of its falsehood." NRS 41.637(4). Further, Plaintiff cannot demonstrate, with prima facie evidence, any probability of success on his claim. AMP therefore has immunity from civil liability based on those communications. Nev. Rev. Stat. § 41.650.

This Court agreed and granted AMP's Motion to Dismiss pursuant to the Nevada anti-SLAPP statute, among other reasons. ECF No. 71. AMP now asserts its right to attorneys' fees, in the amounts and for the reasons set forth below.

### III.   LEGAL ARGUMENT

**A. Legal Standards**

1. Fees and Costs

   a) *Entitlement to Fees and Costs and the Scope of that Entitlement.*

As noted, Nevada's anti-SLAPP statute provides that "a person who engages in a good faith communication in furtherance of … the right to free speech in direct connection with an issue of public concern ***is immune from any civil action*** for claims based on the communication." NRS 41.650 (emphasis added). To make speakers like AMP immune in practice—*i.e.*, so that they are spared not merely a judgment against them but spared the financial and practical burdens of litigation as well—Nevada's anti-SLAPP statute mandates that if the court grants a special motion to dismiss pursuant to NRS 41.660, the court "***shall*** award reasonable costs and attorney's fees to the person against whom the action was brought." NRS 41.670(1)(a) (emphasis added).

The Ninth Circuit has made plain that federal courts can and should not only consider anti-SLAPP motions, they should also award fees and costs. *See Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011); *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972–73 (9th Cir.1999) (California's anti-SLAPP's provision of fees and costs protects substantive rights and thus applies in federal court).

The question of the scope of fees that a prevailing anti-SLAPP defendant is entitled to is a

2

question of state law. *See Wolfson v. Watts (In re Watts),* 298 F.3d 1077, 1083 (9th Cir. 2002). Here, Nevada's highest court has made plain that all fees expended in defending against a claim or claims that are dismissed pursuant to the anti-SLAPP statute are recoverable. Specifically, the Nevada Supreme Court recognized that "consistent with the Legislature's goals of preventing the chilling effect of SLAPP suits and protecting free speech … it intended to permit a prevailing defendant to recover all reasonable fees and costs incurred from the inception of the litigation under NRS 41.670(1)(a)." *Smith v. Zilverberg*, 481 P.3d 1222, 1231, 137 Nev. 65, 73 (2021) (emphasis added). AMP is also entitled to fees and costs incurred in litigating the instant attorney's fees motion (*i.e.*, "fees on fees."). *Id; see also Walker v. Intelli-heart Servs., Inc.*, No. 318CV00132MMDCLB, 2020 WL 1694771, at *3 (D. Nev. Apr. 7, 2020) (concluding that NRS 41.670 "allows for recovery of fees on fees.") The only limitation Nevada's anti-SLAPP statute places on a prevailing defendant's entitlement to an award of fees and costs is that those fees and costs must be "reasonable."

    b) *Calculating Fees and Costs.*

Under the approach to evaluating fees and costs in federal court, the lodestar, which "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate" is "presumptively reasonable." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). While this Court may exclude hours arising from overstaffing, duplication, excessiveness or that are otherwise unnecessary[1], because the anti-SLAPP fees and costs entitlement to reasonable fees and costs is a substantive right, this Court cannot make adjustments that are not consistent with that right, for the same reason that the fees and costs provision applies in federal court.

    c) *Procedural Requitements*

Counsel for AMP meets all procedural requirements for making this request. AMP files this Motion with fourteen days of the entry of this Court's judgment on May 5, 2025, specifying the judgement and grounds entitling AMP to relief and the amount sought. Fed. R. Civ. P. 54(d)(2)(B). This Motion and the attached Declarations also meet the requirements of this Court's Local Rules

---

[1] *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

for motions for attorney's fees. *Compare* LR 54-14(a) (setting out the required content of a motion for attorney's fees) *with infra* Part III (B) *and* **Exhibits B-D** (setting out an itemization of fees and)

    2. <u>Statutory Award</u>

In addition to awarding reasonable attorney's fees and costs, Nevada's anti-SLAPP statute provides that this Court may award an amount of up to $10,000 to the person against whom the action was brought. NRS 41.670(1)(b). In *Banerjee v. Cont'l Inc., Inc.,* No. 217CV00466APGGWF, 2018 WL 4469006, at *6 (D. Nev. Sept. 17, 2018), the court considered whether to provide an award pursuant to NRS 41.670(1)(b) in addition to awarding fees and costs. It discussed the applicable standard as follows:

> The Nevada statute does not outline the parameters of when a court should award statutory damages under § 41.670(1)(b), other than committing it to the court's discretion. Nev. Rev. Stat. § 41.670(1)(b) (stating the court "may" award up to $10,000); *see also Butler v. State*, 102 P.3d 71, 81 (Nev. 2004) (en banc) (interpreting the word "may" in a statute as conferring discretion). However, the remainder of § 41.670 offers clues to when such an award is warranted. A defendant whose anti-SLAPP motion is successful may bring a separate action against the plaintiff for compensatory damages, punitive damages, and attorney's fees and costs for the separate action. Nev. Rev. Stat. § 41.670(1)(c). That suggests that the statutory damage award in the original action may be the analog to compensatory and punitive damages recoverable in a separate action. Further, when a defendant's anti-SLAPP motion is unsuccessful, the court may award reasonable fees and costs to the plaintiff if it finds the motion was "frivolous or vexatious." Nev. Rev. Stat. § 41.670(2). It may also award up to $10,000 along with "such additional relief as the court deems proper to punish and deter the filing of frivolous or vexatious motions." Nev. Rev. Stat. § 41.670(3).

*Id.* The court concluded that "it appears the $10,000 statutory award is aimed at frivolous or vexatious conduct that warrants a type of punitive (and perhaps in the right case, compensatory) award." *Id.*

**B. AMP's Fees and Costs and the Applicable Factors.**

The rates claimed are reasonable, as are the hours expended in prevailing on AMP's special anti-SLAPP motion to dismiss. Thus, AMP is entitled to the amount requested herein.

The factors set forth in LR 54-14(b) support the award.

/ / /

/ / /

4

1. Amount of Fees Claimed (LR 54-14(a)(1))

a) *The work performed*

AMP attaches the required "reasonable itemization" (LR 54-14(a)(1)) reflecting the work performed. This work includes work to date and a reasonable estimate of future work. The itemized time does not include any time on the federal claim. To summarize:

**Christina Jump**

Ms. Jump's work defending against the IIED claim totaled 13 hours, was billed at her customary rate of $500.00 per hour resulting in a total of $6,500 after reductions. **Exhibit B**.

**Samira Elhosary**

Ms. Elhosary's work on this matter, a total of 29.5 hours, was billed at her customary rate of $400.00 per hour resulting in a total of $11,800 after reductions. **Exhibit B**.

**Margaret A. McLetchie**

Ms. McLetchie's work on this matter, a total of 14.7 hours, was billed at the customary rate of $700.00 per hour resulting in a total of $8,190.00 after reductions. (McLetchie Decl., ¶ 16.)

**Leo S. Wolpert**

Mr. Wolpert's work on this matter, a total of 20.6 hours, was billed at the customary rate of $450 per hour resulting in a total of $8,190.00 after reductions. (McLetchie Decl., ¶ 18.)

As demonstrated by the billing statement attached as **Exhibits B-C** and the attached declarations of Ms. Jump and Ms. McLetchie, a substantial portion of the work in this case was done by attorneys with lower billing rates. McLetchie Decl., ¶ 7. The briefs in this matter underwent repeated edits and revisions to maximize the probability of successfully achieving dismissal of Plaintiff's IIED claim against AMP. **Exhibits B-C**; McLetchie Decl., ¶ 10. Thus, AMP is entitled to all compensation for all hours expended, minus reductions made in the spirit of cooperation.

b) *The rates are reasonable.*

The rates requested are the customary rates for the billers; they are also consistent with the prevailing rates and the experience of counsel. *Gunn v. Drage*, No. 20-16046, 2023 WL 3043651, at *2 (9th Cir. Apr. 21, 2023). They are also supported by the factors set forth below (B(3)) and the attached declarations. Thus, there is "no reason to depart from the requested amounts." *Id.* (holding

5

that the hourly rate was reasonable and comported with the prevailing rate for the type of work).

    2. <u>LR 54-14(a)(3) Factors.</u> [2]

    *a) LR 54-14(a)(3)(A): the result obtained and the amount involved.*

The result obtained on the anti-SLAPP motion was complete victory for AMP, which operates as a dismissal on the merits of Mr. Gerwaski's IIED claim with prejudice. *See* ECF No. 71, pp. 17:16 – 20:5.

The amount involved has not yet been established, but Mr. Gerwaski repeatedly claims damages in excess of $75,000. *See, e.g.*, ECF No. 6, ¶¶ 279, 288, p. 76.

    *b) LR 54-14(a)(3)(B): the time and labor required.*

As set forth above and in the attached Declarations, the anti-SLAPP briefs underwent rounds of drafting, review, and editing. Counsel also researched the applicable law, reviewed Plaintiff's response to effectively reply to it, and consulted with each other as necessary. The time and labor expended in support of AMP's anti-SLAPP Motion is reasonable for the circumstances.

    *c) LR 54-14(a)(3)(C): the novelty and difficulty of the questions involved.*

While Mr. Gerwaski's state claims were precisely the type of pretextual, unsupported, speech-chilling claim that Nevada's anti-SLAPP statute aims to deter, the application of IIED to the context of Plaintiff's case was novel. Moreover, where the attorneys are well-versed on a narrow legal issue as the attorneys here are, that fact supports an award. *Cf. Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir. 2008) (noting district court found time was reasonable because "attorneys were exceedingly well-versed on the narrow legal question presented.").

    *d) LR 54-14(a)(3)(D): The skill requisite to perform the legal service properly.*

Defendant had to research and brief the correct standards of law and issues and apply the correct federal procedural law to substantive Nevada anti-SLAPP law.

    *e) LR 54-14(a)(3)(E): the preclusion of other employment by the attorney due to acceptance of the case.*

The hours expended in this matter (and the need to expend then over a relatively short time

---

[2] AMP is happy to provide "[a]ny other information the court may request."

6

period) caused the undersigned to decline some assignments and devote less time to other matters which are billed on an hourly fixed fee basis. (McLetchie Decl., ¶ 11.)

   f) LR 54-14(a)(3)(F): <u>the customary fee</u>.

Ms. Jump's customary hourly fee is $500 per hour when billed out hourly. Jump Decl., ¶ 14.  Ms. Elhosary's customary hourly fee is $400 per hour, when billed out hourly. Jump Decl., ¶ 14.  Both rates fall within the standard hourly rates approved in Nevada for work of a similar nature.

Ms. McLetchie's customary hourly fee is $700 per hour. (McLetchie Decl., ¶ 16.)  Mr. Wolpert's customary hourly fee is $450 per hour. (McLetchie Decl., ¶ 18.)

   g) LR 54-14(a)(3)(G): *whether the fee is fixed or contingent.*

Nevada courts hold this factor to be less important in the context of deciding the reasonableness of fees, as long as substantial evidence supports the award. *Tico Constr. Co. v. Genseven Dev. Constr.*, Case No. CV08-01202, 2022 Nev. Dist. LEXIS 1180, at *12 (Nev. Dist. Ct., Washow Cty. Dec. 12, 2022). Here, Counsel provided their services *pro bono*, so this factor is less relevant to this Court's analysis. However, *pro bono* representation does not preclude an award of fees. *See Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009) (holding that a client represented by the ACLU *pro bono* could still receive an award of attorneys' fees).

   h) LR 54-14(a)(3)(H): *the time limitations imposed by the client or the circumstances.*

The anti-SLAPP statute has statutory time limitations intended to expeditiously end the matter.

   i) LR 54-14(a)(3)(I): *The experience, reputation, and ability of the attorneys.*

The attorneys have extensive experience, excellent reputations, and a high level of skill, as detailed below.

**Christina A. Jump/Legal Division of Muslim Legal Fund of America**

Christina Jump brings 29 years of litigation experience to this case. Jump Decl., ¶ 4.  Ms. Jump practices in federal trial and appellate courts, on civil constitutional cases. Jump Decl., ¶ 9. Before joining the Constitutional Law Center for Muslims in America in March 2016, Ms. Jump represented clients in litigation in bench and jury trials in both state and federal courts for over two decades. She handled hundreds of discrimination charges at the administrative agency level. Ms.

7

Jump also served as an Associate Hearing Officer for the City of Dallas for over ten years. She is a Fellow of the American Bar Foundation, Texas Bar Foundation and Dallas Association of Young Lawyers Foundation, and admitted to the Texas Bar College. Jump Decl., ¶ 7. Ms. Jump is a Past President of the Dallas Women's Lawyers Association and served on the Board of Directors of the National Conference of Women's Bar Associations, the Boards of Directors for the Dallas Association of Young Lawyers and DAYL Foundation, and currently serves on the Board of Directors for the Dallas Women Lawyers Foundation. Jump Decl., ¶ 8. She served for two years as Co-Chair of the Women's Advocacy Awards for Legal Aid of Northwest Texas, and has been named a "Texas Super Lawyer" for six years, most recently in 2024 (selections not yet public for the current year).

Ms. Jump has presented multiple oral arguments on behalf of clients to the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth and D.C. Circuit Courts of Appeal, and represented clients with many written briefs to the United States Supreme Court, the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuit Courts of Appeal, and dozens of federal district courts across the country. Jump Decl., ¶ 9. Under Ms. Jump's direction the Civil Litigation department in MLFA secured remands back to the trial courts from the Ninth and D.C. Circuits, allowing their clients to continue their constitutional challenges at the trial court levels. Ms. Jump also led her team's successful trial at the administrative level, to obtain victory for a client who sought religious accommodations in the federal workplace. This led to his recovery of hundreds of hours of back time, removal of improper discipline for time observing prayers, monetary compensation for his emotional distress and attorneys' fees for the Center.

Ms. Jump challenges cases on behalf of her clients all the way to the Supreme Court, appearing as the lead Counsel of Record in six cases where she filed Petitions to the Supreme Court, and as lead Counsel of Record on amicus briefs to the Supreme Court in support of multiple others.

Working under the direction of Ms. Jump, Ms. Elhosary is a Staff Attorney in the Civil Litigation Department at CLCMA. She has been licensed to practice since December 2021, having graduated from American University Washington College of Law in May 2021. In addition to being admitted to the Maryland State Bar and D.C. Bar, she practices across multiple federal districts and

8

1  courts of appeal. She also represents clients in administrative proceedings with federal agencies,
2  protecting their rights at all stages of their legal cases. Jump Decl., ¶ 11. Ms. Elhosary's practice
3  focuses on federal constitutional litigation, specifically civil rights. Ms. Elhosary is a Board
4  Member At-Large for the National Association of Muslim Lawyers, voted into the position by a
5  nationwide group of lawyers.

***McLetchie Law***

Margaret A. McLetchie, is the lead attorney at, and owner of, McLetchie Law with over 20 years of experience, which includes extensive experience litigating in federal court. (McLetchie Decl., ¶ 13.) She is admitted to the bar in both California and Nevada and has been admitted to various federal courts. (*Id*.) After working on complex civil litigation matters at a large corporate law firm in California, in 2007, Ms. McLetchie became a Staff Attorney, then Legal Director of the American Civil Liberties Union of Nevada. (McLetchie Decl., ¶ 13.) After resuming private practice in 2011, Ms. McLetchie's practice has included numerous federal court matters, as well as multiple precedent-setting decisions in Nevada anti-SLAPP matters and other First Amendment work. (McLetchie Decl., ¶ 13.)

Ms. McLetchie has an excellent reputation in the community. In 2018, Ms. McLetchie was named a First Amendment Champion by the Nevada Press Association in recognition of her years of efforts to further public access to records and protect the freedom of the press. (McLetchie Decl., ¶ 13.) In 2021, with Adam Hosmer-Henner of McDonald Carano, Ms. McLetchie won the Vince Consul Memorial Pro Bono award for successfully litigating a federal civil rights class action lawsuit to obtain treatment for prisoners suffering from Hepatitis C. (*Id*.)

Leo S. Wolpert, is an attorney at McLetchie Law. Mr. Wolpert is 2011 graduate of the University of Virginia School of Law with ten years of legal experience, including substantial First Amendment and anti-SLAPP experience. (McLetchie Decl., ¶ 14.)

Ms. McLetchie's and Mr. Wolpert's work has led to multiple published decisions, including in anti-SLAPP and First Amendment cases in which they represented the prevailing parties and in other matters involving civil rights. *See, e.g., Smith v. Zilverberg*, 137 Nev. 65, 65, 481 P.3d 1222, 1225 (2021) (both) (anti-SLAPP); *Las Vegas Review-Journal v. Eighth Judicial Dist. Court of Nev*.,

134 Nev. 40, 40, 412 P.3d 23, 24 (2018) (McLetchie) (First Amendment); *Las Vegas Review-Journal, Inc. v. Las Vegas Metro. Police Dep't*, 526 P.3d 724, 728 (Nev. 2023) (McLetchie) (public records access); *Ballentine v. Tucker*, 28 F.4th 54, 59 (9th Cir. 2022) (McLetchie, with co-counsel) (civil rights case involving First Amendment) *Hundley v. Aranas*, No. 21-15757, 2023 WL 166421 (9th Cir. Jan. 12, 2023) (McLetchie) (obtained reversal of motion to dismiss civil rights case, including on First Amendment retaliation *claim); In re* Salazar, 518 P.3d 873, 873 (Nev. 2022) (both) (transgender prisoner name change case);

    j)   LR 54-14(a)(3)(J): the undesirability of the case, if any.

While this case vindicates the First Amendment rights of Palestinians and their supporters, anti-Muslim sentiment is extremely high in the USA, and Plaintiff's former counsel now serves as U.S. attorney for Nevada. (McLetchie Decl., ¶ 12.)

    k)   LR 54-14(a)(3)(K): the nature and length of the professional relationship with the client.

Ms. Jump has maintained a professional relationship with AMP since May 2017, and represents AMP as lead counsel in litigation in seven (7) litigation matters located in four states. Ms. Elhosary is also counsel of record in each of those matters, and has represented American Muslims for Palestine (AMP) as co-counsel for the past two years. Jump Decl. ¶ 10.

    l)   LR 54-14(a)(3)(L): awards in similar cases.

This Court has awarded higher rates than requested here in other civil matters. For example, in 2023, this district approved hourly rates of $850, $500, and $350 for the named partner and associates of Christiansen Trial Lawyers. *Mayorga v. Ronaldo*, 656 F. Supp. 3d 1218, 1232 (D. Nev. 2023), *appeal dismissed*, No. 23-15359, 2024 WL 4117282 (9th Cir. May 17, 2024).[3] In 2021, a court approved hourly rates of $675, $615, and $525 for attorneys (and $265 for a paralegal) who prevailed in anti-SLAPP litigation. *Gunn v. Drage*, No. 2:19-CV-2102 JCM (EJY), 2021 WL 848640, at *4 (D. Nev. Mar. 5, 2021), *aff'd in part, rev'd in part and remanded*, No. 20-16046,

---

[3] McLetchie Law has experience litigating against Christiansen Trial Lawyers, including successfully in the *Ronaldo* matter in which these rates were award (with regard to an intervention by the New York Times regarding a collateral matter) and in a related state court matter.

10

2023 WL 3043651 (9th Cir. Apr. 21, 2023)[4], and *vacated*, No. 2:19-CV-2102 JCM (EJY), 2023 WL 11964308 (D. Nev. July 17, 2023).

## C. Amount of Costs Claimed.

As detailed in **Exhibit D**, AMP incurred $548.05 in costs in litigating this matter, including filing fees, copying fees, and legal research fees. As these were all reasonably incurred in these proceedings (McLetchie Decl., ¶ 20; **Exhibit D**), AMP is entitled to these costs.

## D. Request for Statutory Award.

Mr. Gerwaski's IIED claim was frivolous and thus, consistent with *Banerjee*, this Court should award AMP $10,000.00 pursuant to NRS 41.670(1)(b) for having been subjected to Mr. Gerwaski's frivolous IIED claim, and to deter future plaintiffs—including Mr. Gerwaski—from filing SLAPP suits to censor good faith communications directly connected to on matters of public concern.

In addition to *Banerjee*, the *Zilverberg* case is illustrative; there, the Supreme Court upheld an award of the maximum $10,000.00 to each prevailing anti-SLAPP defendant. *Zilverberg*, 481 P.3d at 1231-32. In that matter, the plaintiff at least made a cursory effort to prosecute his suit: he "provided a declaration stating that [defendants'] actions arose from 'animosity and personal spite.'" *Id.* at 1228. Here, Mr. Gerwaski did not even "plausibly allege that AMP engaged in extreme and outrageous conduct, that he suffered an injury with objectively verifiable indicia of that injury, or that his emotional distress was proximately caused by AMP's conduct." (ECF No. 71, p. 19:19-21.) Nor did he even attempt to demonstrate that AMP made any false communications; nor did he provide *any* evidence supporting *any* probability of success on his IIED claim. (*Id.*, p. 20:1-2.) Indeed, Mr. Gerwaski did not even sufficiently allege that this Court had personal jurisdiction over AMP. (*Id.*, p. 8:3-18.) In sum, this reveals that Mr. Gerwaski's IIED claim was nothing more than an attempt to punish AMP for advocating for Palestinian rights.

---

[4] Although the Ninth Circuit remanded for the district court to determine whether the hours expended were reasonable, it approved of the district court's rate determination. *See Gunn v. Drage*, No. 20-16046, 2023 WL 3043651, at *1 (9th Cir. Apr. 21, 2023) ("The district court properly determined the appropriate hourly rates based on those prevailing in the Las Vegas community.") Importantly, state court rates should thus apply.

11

To send the clearest possible message to Mr. Gerwaski and future plaintiffs that abusing the legal system to silence political speech cannot and will not be tolerated, including when cases are brought in federal court, an additional award of $10,000.00 to AMP is appropriate.

### IV.   CONCLUSION

While Mr. Gerwaski may not like it, AMP has every right under the First Amendment and Nevada's anti-SLAPP statute to advocate for Palestinians and he cannot drag AMP into a court that does not even have jurisdiction over it to silence speech he does not like. AMP's advocacy is neither "extreme" nor "outrageous" conduct that can be the basis for an IIED claim and is instead precisely the type of political speech that is fundamental to the American ideal of representative democracy. Even if one were to accept Mr. Gerwaski's wholly unsupported claims that this advocacy caused him emotional distress—the First Amendment and the anti-SLAPP statute do not provide redress.

Based on the foregoing, AMP respectfully requests that this Court award it all requested attorney's fees, costs, costs and statutory award related to the successful anti-SLAPP motion to dismiss, in the total amount of $45,228.05 ($34,680.00 in fees, $548.05 in costs, and $10,000.00 in statutory award).

AMP reserves the right to supplement its request for fees with any additional fees and costs incurred by counsel in preparing and defending the instant motion for fees and costs.

Dated: May 19, 2025

Respectfully submitted,

/s/ *Margaret A. McLetchie*
Margaret A. McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP*
*Educational Foundation, Inc.*

Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational*
*Foundation, Inc.*

*\*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*

| INDEX OF EXHIBITS TO MOTION FOR ATTORNEY'S FEES, COSTS AND STATUTORY AWARD ||
|---|---|
| **EX.** | **DESCRIPTION** |
| A | Christina A. Jump's Court Admissions |
| B | MLFA Billing Entries (Sorted by Biller) |
| C | McLetchie Law Billing Entries (Sorted by Biller) |
| D | Costs and Disbursements Claimed |
| n/a | Declaration of Christina A. Jump |
| n/a | Declaration of Margaret A. McLetchie |
|  |  |

13

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of May, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Leo S. Wolpert*
An Employee of McLetchie Law