CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB SMITH, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1902
Facsimile: (702) 718-3213
Emails: peterson@aclunv.org
        jsmith@aclunv.org

*Attorneys for Defendant Students for Justice in Palestine, UNLV*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COREY GERWASKI,<br><br>                Plaintiff,<br>   vs.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>                Defendants. | Case No.: 2:24-cv-00985-APG-MDC<br><br>**DEFENDANT STUDENTS FOR JUSTICE IN PALESTINE – UNLV'S MOTION FOR ATTORNEY FEES, COSTS AND STATUTORY AWARD PURSUANT TO NRS 41.670** |

Defendant Students for Justice in Palestine, University of Nevada, Las Vegas ("SJP UNLV") moves for reasonable attorney fees, costs, and a statutory award pursuant to FRCP 54(d), LR 54-1, LR 54-14, and NRS 41.670. Plaintiff is entitled to attorney fees pursuant to ECF No. 71, which granted SJP UNLV Special Motion to Dismiss pursuant to NRS 41.660 (ECF No. 61).

Dated: May 19, 2025

**ACLU OF NEVADA**

*/s/ Christopher Peterson*
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB SMITH, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 366-1331
Emails: peterson@aclunv.org
　　　　jsmith@aclunv.org

1

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ 1

**TABLE OF AUTHORITIES** ......................................................................................... 2

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................. 4

   I.    INTRODUCTION .......................................................................................... 4

   II.   RELEVANT FACTS AND PROCEDURAL HISTORY ............................. 4

   III.   STANDARD OF REVIEW ........................................................................... 5

     A.   Attorney fees pursuant to NRS 41.670(1)(a) ......................................... 6

       1.   Calculating fees and costs ............................................................ 6

       2.   Procedural requirements ............................................................... 7

   IV.   ARGUMENT .................................................................................................. 8

     A.   SJP UNLV's request for attorney fees ................................................... 8

       1.   Description of work performed ..................................................... 8

       2.   Reasonableness of rate ................................................................ 10

       3.   LR 54-14(a)(3) factors ............................................................... 11

           i.    The result obtained and the amount involved ............................ 11

           ii.   The time and labor required. ..................................................... 11

           iii.   The novelty and difficulty of the questions involved. ............... 12

           iv.   The skill requisite to perform the legal service properly ........... 12

           v.   The preclusion of other employment by the attorney due to acceptance of the case. 13

           vi.   The customary fee. .................................................................... 14

           vii.   Whether the fee is fixed or contingent. ..................................... 14

           viii.   The time limitations imposed by the client or the circumstances. ....... 14

           ix.   The experience, reputation, and ability of the attorneys. ........... 15

           x.   The undesirability of the case, if any. ....................................... 15

           xi.   The nature and length of the professional relationship with the client. ........ 16

           xii.   Awards in similar cases. ........................................................... 17

     B.   SJP UNLV's request for statutory award pursuant to NRS 41.670(1)(b). ............. 17

**CONCLUSION** ............................................................................................................ 19

CERTIFICATE OF SERVICE ........................................................................................ 20

1

1

## TABLE OF AUTHORITIES

**Cases**

*Banerjee v. Cont'l Inc.*, No. 2:17-cv-00466-APG-GWF, 2018 U.S. Dist. LEXIS 158687 (D. Nev. Sep. 17, 2018)............................................................................................................... 7, 16

*Fore Stars Ltd.*, 559 P.3d 356 (Nev. 2024) .................................................................. 11, 13

*Fore Stars, Ltd. v. Omerza,* 2023 Nev. Dist. LEXIS 623 (NV Eighth Jud. Dist. Ct. September 18, 2023) (unpublished).................................................................................................... 11

*Garmong v. Tahoe Reg'l Planning Agency*, No. 3:17-cv-00444-RCJ, 2022 U.S. Dist. LEXIS 105452 (D. Nev. May 19, 2022).................................................................................... 5

*Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013).............................................. 5

*Green v. Miss USA, LLC*, 52 F.4th 773 (9th Cir. 2022) ...................................................... 13

*Gunn v. Drage*, No. 2:19-CV-2102 JCM (EJY), 2021 U.S. Dist. LEXIS 41577 (D. Nev. Mar. 5, 2021).................................................................................................................... 5, 11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).......................................................................... 5

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ........................................... 6

*LHF Prods. v. Kabala*, 2019 U.S. Dist. LEXIS 223643 (D. Nev. Dec. 31, 2019)............... 16

*MRO Communs., Inc. v. AT&T Co.*, 197 F.3d 1276 (9th Cir. 1999)..................................... 5

*Nat'l Socialist Party v. Skokie*, 432 U.S. 43 (1977)........................................................... 15

*Sanson v. Lawra Kassee Bulen*, 508 P.3d 416 (Nev. 2022) (unpublished)........................... 6

*Smith v. Zilverberg*, 137 Nev. 65,  481 P.3d 1222 (2021) ............................................. 5, 16

**Statutes**

LR 54-14 ............................................................................................................................. 6

NRS 41.660 ......................................................................................................................... 4

NRS 41.670(1)(a) ...................................................................................................... 4, 5, 6

NRS 41.670(1)(b) .......................................................................................................... 5, 6

**Other Authorities**

*A look at the people ensnared in Trump's campaign against pro-Palestinian activism at US colleges*, AP News (April 1, 2025)...................................................................................... 15

David Rohde & Ken Dilanian, *Federal judge calls Trump's order targeting prominent law firm a 'shocking abuse of power'*, NBC News (April 16, 2025) ...................................................... 15

Makiya Seminera, *A look at the universities with federal funding targeted by the Trump Administration*, AP News (April 15, 2025)...................................................................... 15

Students for Justice In Palestine, Organizations, UNLV Involvement Center,............................. 3

**Rules**

FRCP 54(d)(2) ..................................................................................................................... 6

LR 54-14(a) ......................................................................................................................... 6

LR 54-16(c) ......................................................................................................................... 6

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Court granted Defendant SJP UNLV's Special Motion to Dismiss Pursuant to NRS 41.660 on May 5, 2025. That order entitles SJP UNLV to fees and costs pursuant to NRS 41.670(1)(a). The total fees requested are **$18,689.00**. SJP UNLV does not request any costs.

In addition to fees and costs, SJP UNLV respectfully requests an additional statutory award pursuant to NRS 41.670(1)(b). SJP UNLV is a registered student organization in good standing that has complied with state law, federal law, and UNLV's rules while carrying out its activities. Plaintiff Gerwaski clearly intended to chill SJP UNLV's lawful activities in violation of the First Amendment when he filed his suit asserting frivolous claims against the organization. Furthermore, Plaintiff's repeated, baseless accusations that SJP UNLV conspires with Hamas, a designated terrorist organization, are galling and should be sanctioned. In light of these considerations, SJP UNLV respectfully requests this Court grant a $10,000 statutory award.

### II.    RELEVANT FACTS AND PROCEDURAL HISTORY

As stated in previous filings, SJP UNLV is is a Registered Student Organization (RSO) on the UNLV campus.[1] Its constitution, contact information, faculty advisor, and student point of contact can be found on UNLV's website.[2] As reflected in the organization's constitution, it is comprised entirely of actively-enrolled students at UNLV.[3]

---

[1] *See, e.g.* Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited May 17, 2025); Defendant Students for Justice in Palestine UNLV's Special Motion to Dismiss Pursuant to NRS 41.660 ("Def. SJP UNLV's Special Mot. to Dismiss"), Sworn Declaration of Alexa M. Hayden ("Hayden Decl."), ECF No. 61–1 ¶¶ 5; Def. SJP UNLV's Special Mot. to Dismiss, Sworn Declaration of Matthew Mondschein ("Mondschein Decl."), ECF No. 61–2 at ¶¶ 5.

[2] *See, e.g.* Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited May 17, 2025) (the student point of contact information is available under "Full Roster"); Hayden Decl., ECF No. 61–1 at ¶¶ 9.

[3] Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited May 17, 2025) (providing copy of organization's consitution); Hayden Decl., ECF No. 61–1 at ¶¶ 9.

On February 12, 2025, Plaintiff Gerwaski served his complaint on SJP UNLV.[4] Gerwaski raised two claims against SJP UNLV under the federal Anti-Terrorism Act ("ATA") and Nevada's Intentional Infliction of Emotional Distress ("IIED") doctrine.[5] In his filings, Plaintiff repeatedly accused SJP UNLV of conspiring with Hamas to carry out acts of terrorism.[6] SJP UNLV filed a motion to dismiss both claims pursuant to FRCP 12(b)(6), on March 5, 2025.[7] SJP UNLV then filed a special motion to dismiss Plaintiff Gerwaski's IIED claim pursuant to NRS 41.660 on April 11, 2025.[8] Plaintiff Gerwaski opposed both motions, and SJP UNLV filed a reply in response to each opposition. Throughout his responses, Plaintiff Gerwaski continued to level conspiracy allegations against SJP UNLV while failing to provide even *prima facie* evidence to support his contentions.[9]

On May 5, 2025, the Court issued an order granting both of SJP UNLV's motions to dismiss.[10] SJP UNLV now brings this motion for an award of attorney fees, costs, and other statutory award pursuant to NRS 41.670(1).

## III.    STANDARD OF REVIEW

"If a court grants a special motion to dismiss filed pursuant to NRS 41.660, [t]he court *shall* award reasonable costs and attorney's fees to the person against whom the action was brought [. . .]. NRS 41.670(1)(a) (emphasis added). "The court may award, in addition to reasonable costs and

---

[4] Proof of Service. ECF No. 48.

[5] First Amended Complaint, at ¶¶ 249–266, 363–368. ECF No. 6 (August 9, 2024) ("Amend. Compl.").

[6] *See, e.g.*, *id.* at ¶ 34 ("AMP controls NSJP and uses it to operate a propaganda machine for Hamas and its affiliates across American college campuses to influence, wreak havoc and intimidate Jewish students on university campuses across the Nation.")

[7] Defendant Students for Justice in Palestine UNLV's Motion to Dismiss, ECF No. 51 (March 5, 2025).

[8] Def. SJP UNLV's Special Mot. to Dismiss, ECF No. 61 (April 11, 2025).

[9] *See, e.g.*, Opposition to Students for Justice in Palestine-UNLV's Special Motion to Dismiss Pursuant to NRS 41.660 (ECF No. 61), (April 25, 2025), ECF No. 65 at 4:3–5 ("SJP-UNLV *knowingly* used or permitted the use of funds raised by a solicitation of contributions and manpower to provide support to terrorists, terrorist organizations and terrorist activities as delineated in the First Amended Complaint [ECF No. 6].").

[10] Order Granting Defendants AJP Educational Foundation and SJP-UNLV's Motions to Dismiss, ECF No. 71 (May 5, 2025).

attorney's fees awarded [. . .] an amount of up to $10,000 to the person against whom the action was brought." NRS 41.670(1)(b).

### A. Attorney fees pursuant to NRS 41.670(1)(a)

"In an action involving state law claims, [federal courts] apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule." *MRO Communs., Inc. v. AT&T Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999) (cited by *Gunn v. Drage*, No. 2:19-CV-2102 JCM (EJY), 2021 U.S. Dist. LEXIS 41577, at *4 (D. Nev. Mar. 5, 2021) (cited in the context of determining attorney fees for a prevailing anti-SLAPP motion).

Under Nevada law, a defendant whose anti-SLAPP motion prevails is entitled "to recover reasonable attorney fees and costs incurred from the inception of the litigation, rather than just those incurred in litigating the anti-SLAPP motion." *Smith v. Zilverberg*, 137 Nev. 65, 73, 481 P.3d 1222, 1230 (2021). The prevailing party is also entitled to fees and costs incurred in litigating the instant attorney's fees motion (*i.e.*, "fees on fees."). *Id.*

### 1. Calculating fees and costs

To assess the reasonableness of requested attorney fees, "a court calculates the 'lodestar' amount by multiplying 'the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'" *Garmong v. Tahoe Reg'l Planning Agency*, No. 3:17-cv-00444-RCJ, 2022 U.S. Dist. LEXIS 105452, at *7-8 (D. Nev. May 19, 2022) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "A reasonable hourly rate is determined by the 'prevailing market rates in the relevant community' for a practitioner with similar 'experience, skill, and reputation.' *Id.* (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013)). The court also may consider other factors that are not inherently considered in the lodestar calculation including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due

1

2

to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

3

4

5

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). LR 54-14 requires that a motion

6

for attorney fees in this district address these factors.

7

### 2. Procedural requirements

8

FRCP 54(d)(2) requires that a motion for attorney's fees (1) be filed within 14 days after

9

judgment is entered; (2) identify the legal basis for the award; and (3) indicate the amount requested

10

or an estimate thereof. LR 54-14(a) requires that a motion for attorney's fees also include (1) a

11

reasonable itemization and description of the work performed and (2) an itemization of all costs

12

sought to be charged as part of the fee award and not otherwise taxable under LR 54-1 through 54-

13

13. A motion for attorneys' fees and costs must be accompanied by an affidavit for the attorney

14

responsible for the billings in the case to authenticate the information contained in the motion, and

15

to provide that the fees and costs sought are reasonable. LR 54-16(c).

16

### B. NRS 41.670(1)(b) statutory award

17

If a defendant prevails in an anti-SLAPP motion, a court may grant an monetary award up to

18

$10,000 for that defendant in addition to any attorney fees and costs. NRS 41.670(1)(b). Unlike

19

attorney fees and costs granted pursuant to NRS 41.670(1)(a), which a defendant is entitled to, this

20

monetary award is discretionary. *Compare* NRS 41.670(1)(a) ("The court *shall* award [. .

21

.]")(emphasis added) *with* NRS 41.670(1)(b) ("The court *may* award [. . .]"). Though NRS

22

41.670(1)(b) does not expressly describe what factors a court should consider when granting an

23

monetary award, courts have considered "whether imposing additional damages would further the

24

anti-SLAPP statutes' goal of deterring litigants from filing meritless SLAPP suits in the future,"

25

*Sanson v. Lawra Kassee Bulen*, 508 P.3d 416 (Nev. 2022)(unpublished), and whether an award

1  would be "aimed at frivolous or vexatious conduct that warrants a type of punitive (and perhaps in

2  the right case, compensatory) award." *Banerjee v. Cont'l Inc.*, No. 2:17-cv-00466-APG-GWF, 2018

3  U.S. Dist. LEXIS 158687, at *16 (D. Nev. Sep. 17, 2018).

4  **IV.    ARGUMENT**

5         **A.  SJP UNLV's request for attorney fees**

6         SJP UNLV requests a total of **$18,689.00** in attorney fees. This request is supported by the

7  factors set forth in LR 54-14(b), a reasonable itemization as required by LR 54-14(a)(1) attached as

8  Exhibit B, and Mr. Peterson's declaration attached as Exhibit A.

9         In calculating this total, SJP UNLV requests an award of **$9,621.50** for the time Mr. Peterson

10  spent investigating, researching and, preparing SJP UNLV's Special Motion to Dismiss Pursuant to

11  NRS 41.660(1)(a) and its supporting reply. As discussed below, SJP UNLV also requests an award

12  of **$4,144.50** for half the time Mr. Peterson spent researching and preparing SJP UNLV's Motion to

13  Dismiss filed on March 5, 2025.[11] Finally, SJP UNLV requests an award of **$4,923.00** for work

14  completed so far related to this instant motion seeking fees, costs, and other award pursuant to NRS

15  41.670(1). As SJP UNLV expects to perform more work in researching and drafting its reply to

16  Plaintiff Gerwaski's opposition to this motion, SJP UNLV will supplement the total award for fees

17  requested in the reply brief and at any oral argument that the Court may hear on this matter.

18         **1.  Description of work performed**

19         Mr. Peterson's work defending against Plaintiff Gerwaski's IIED claim totaled 41.42 hours,

20  which was billed at the customary rate of $450.00 per hour resulting in a total of **$18,689.00**.[12] This

21  calculation includes work to date. This calculation discounts time spent on the Motion to Dismiss that

22  addressed both claims brought by Plaintiff Gerwaski as discussed below.

23

24  [11] Mr. Peterson spent a total of 18.42 hours on this motion, which if granted in full would be
   $8,289.00 in fees.

25  [12] Declaration of Christopher Peterson ("Peterson Decl."), attached as Exhibit A, at  ¶¶ 17, 20, 24,
   25.

Mr. Peterson personally handled all legal work related to the motions dispositive to Plaintiff's IIED claim.[13] This work included consulting with the client, interviewing a witness, drafting declarations, analyzing relevant law, generating multiple drafts for each filing, reviewing Plaintiff's oppositions, and drafting replies to the oppositions.[14]

Mr. Peterson's work on SJP UNLV's Motion to Dismiss pursuant to FRCP 12(b)(6) in relation to Plaintiff Gerwaski's IIED claim directly informed his work on SJP UNLV's Special Motion to Dismiss.[15] To the extent possible, Mr. Peterson repurposed the relevant arguments from SJP UNLV's motion to dismiss filed on March 5, 2025, for its anti-SLAPP motion as the 12(b)(6) standard was applicable in determining Plaintiff Gerwaski's ability to satisfy his burden under NRS 41.660(1)(b).[16] Between the federal and state law claims, drafting the sections responding to Plaintiff Gerwaski's federal claim required less work as the arguments raised by other defendants, and in particular AJP, in their motions to dismiss applied much the same way to SJP UNLV.[17] By comparison, Mr. Peterson put in more work developing arguments for SJP UNLV's response to Plaintiff Gerwaski's IIED claim because, among other reasons, (1) SJP UNLV's actions at issue were different than AJP and the other defendant's and so protected by different First Amendment precedent, and (2) Plaintiff Gerwaski discussed more specific and greater variety of activity by SJP UNLV in his complaint compared to AJP, requiring additional work to explain how each action undertaken by SJP UNLV could not be considered extreme or outrageous and would be protected under the First Amendment.[18] That said, in calculating the hours applicable to this motion, SJP UNLV only requests an award for half the

---

[13] Peterson Decl. at ¶ 15.

[14] Peterson Decl., at ¶ 18, 22.

[15] Peterson Decl., at ¶ 23.

[16] *See* Def. SJP UNLV's Special Mot. to Dismiss, ECF No. 61 at 3:1 n. 1 (expressly incorporating Def. SJP UNLV's Motion to Dismiss by reference), 9:14–10:10 (explaining the relevance of the 12(b)(6) standard to SJP UNLV's anti-SLAPP motion); Peterson Decl., at ¶ 23.

[17] *Compare* Def. AJP Educational Foundation, Inc's Motion to Dismiss, ECF No. 24 (October 8, 2024) at 12:1–15:16 *with* Def. SJP UNLV Mot. to Dismiss, ECF No. 51 at 12:2–15:10; Peterson Decl., at ¶ 21.

[18] Peterson Decl., at ¶ 21.

1    hours spent working on the motion to dismiss pursuant to FRCP 12(b)(6), and the reply in support of

2    that motion to reflect that Plaintiff Gerwaski's IIED claim technically constituted half the claims

3    addressed in that Motion to Dismiss.[19]

4                                    **2.  Reasonableness of rate**

5             Mr. Peterson's rate of $450.00 per hour is reasonable considering Mr. Peterson's experience,

6    the complexity of the issues presented in this matter, and comparable rates recognized in other anti-

7    SLAPP cases.

8             $450 per hour is appropriate considering Mr. Peterson's expertise. Mr. Peterson extensive

9    experience litigating matters in state and federal courts.[20] As ACLU of Nevada's Legal Director, he

10   also has extensive experience litigating First Amendment issues, serving as lead counsel in cases

11   defending the right to access for the Nevada Press Association, the right to expressive conduct for

12   street performers, the right to engage in symbolic expression on behalf of graduating high school

13   students, and the right to expressive association for people wrongfully surveilled while attending

14   funerals, among others.[21] He is also familiar with Nevada's anti-SLAPP laws and their role in

15   protecting free speech under Nevada state law.[22]

16            $450 per hour is appropriate considering the complexity of the issues involved in this matter

17   in that it required both First Amendment and anti-SLAPP expertise. Both subjects are inherently

18   complicated, niche areas of law. First Amendment jurisprudence draws largely from centuries of

19   layered precedent. Nevada's anti-SLAPP law is based on a unique state statutory scheme. This matter

20   required counsel to consider the interplay between these related, but not identical, legal concepts, and

21   apply this analysis to a variety of actions undertaken by SJP UNLV including posting on social media,

22   calling for the economic boycott of a foreign country, protesting both on and off a public university

23   _____

     [19] Peterson Decl., at ¶ 20.

24   [20] Peterson Decl., at ¶ 32.

25   [21] Peterson Decl., at ¶ 33, 34.

     [22] Peterson Decl., at ¶ 35.

campus, and petitioning the head of that same university during an in-person meeting.

This Court has previously recognized this rate as appropriate for management level attorneys in the context of anti-SLAPP litigation. *Banerjee v. Cont'l Inc.*, No. 2:17-cv-00466-APG-GWF, 2018 U.S. Dist. LEXIS 158687, at *7 (D. Nev. Sep. 17, 2018) ("I will apply a rate of $450 for all of the partners."). This rate is also lower than the prevailing market rate for anti-SLAPP litigation recognized by other courts in this jurisdiction. *See Gunn v. Drage*, No. 2:19-CV-2102 JCM (EJY), 2021 U.S. Dist. LEXIS 41577, at *10 (D. Nev. Mar. 5, 2021)(determining hourly fees ranging from $525 to $675 reasonable for anti-SLAPP litigation)(affr'd in part by *Gunn v. Drage*, Nos. 20-16046, 21-15005, 21-15442, 21-15549, 2023 U.S. App. LEXIS 9588, at *2 (9th Cir. Apr. 21, 2023) ("The district court properly determined the appropriate hourly rates based on those prevailing in the Las Vegas community.").

### 3. LR 54-14(a)(3) factors

LR 54-14(a)(3) requires any motion for attorney fees to address the following factors.

#### i. The result obtained and the amount involved.

SJP UNLV obtained the best possible result on its anti-SLAPP motion, which resulted in dismissal of Plaintiff Gerwaski's IIED claim with prejudice.[23] As for the amount involved, Plaintiff Gerwaski repeatedly claimed damages in excess of $75,000.[24] This is a significant sum to SJP UNLV. If Plaintiff Gerwaski had successfully pursued this claim against SJP UNLV, which is a local, student-run organization, it is unclear how the organization could have survived.

#### ii. The time and labor required.

As set forth in the attached itemization and Mr. Peterson's declaration, the time and labor required included interviewing the relevant SJP UNLV members to collect the information necessary to draft the declarations in support of SJP UNLV's anti-SLAPP motion, drafting said declarations,

---

[23] *See* Order Granting Defendants AJP Educational Foundation and SJP – UNLV's Motions to Dismiss, ECF No. 71, 17:16 – 20:5.

[24] *See* Amend. Cmpl., ECF No. 6 at ¶¶ 279, 288.

and drafting SJP UNLV's two motions to dismiss.[25] SJP UNLV is not requesting any fees related to clerical work performed by ACLU of Nevada's staff such as formatting and filing the briefs.

### iii.    The novelty and difficulty of the questions involved.

As discussed above, the litigation in this matter involved complex issues requiring both First Amendment and anti-SLAPP expertise. Where the attorneys are well-versed on a narrow legal issue as the attorneys here are, that fact supports an award. *Cf. Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir. 2008) (noting district court found time was reasonable because "attorneys were exceedingly well-versed on the narrow legal question presented."). As Legal Director for the ACLU of Nevada, Mr. Peterson is "well-versed" in both First Amendment and anti-SLAPP litigation as part of his professional duties as the ACLU of Nevada is the only non-profit in Nevada that regularly litigates First Amendment and free speech issues.[26]

### iv.    The skill requisite to perform the legal service properly.

Anti-SLAPP and First Amendment litigation are complex areas of law. *See, e.g. Gunn v. Drage*, No. 2:19-CV-2102 JCM (EJY), 2025 U.S. Dist. LEXIS 24971, at *3 (D. Nev. Feb. 12, 2025)(recognizing that anti-SLAPP motion presents "complex legal issues"); *Fore Stars Ltd.*, 559 P.3d 356 (Nev. 2024) (unpublished) (recognizing that expertise in the First Amendment warrants higher attorney fees in the context of anti-SLAPP litigation); *see also Fore Stars, Ltd. v. Omerza,* 2023 Nev. Dist. LEXIS 623, *9 (NV Eighth Jud. Dist. Ct. September 18, 2023) (unpublished) (describing "First Amendment and anti-SLAPP litigation" as "complex or specialty litigation").

While Mr. Peterson was already familiar with the relevant legal authorities, correctly applying First Amendment and anti-SLAPP law to Plaintiff Gerwaski's IIED claim and SJP UNLV's conduct involved intensive analysis and drafting. As Gerwaski inferred in his own pleading, most anti-SLAPP motions are raised in the context of defamation cases rather than IIED claims.[27]

---

[25] Peterson Decl., at ¶ 18, 22.

[26] Peterson Decl., at ¶ 6.

[27] Opposition to Students for Justice in Palestine-UNLV's Special Motion to Dismiss Pursuant to

Considering that Plaintiff Gerwaski's complaint buried his specific factual allegations within broad conspiratorial allegations, it cost Mr. Peterson additional time to identify what exactly Plaintiff Gerwaski had accused SJP UNLV of doing, link those allegations to Plaintiff Gerwaski's IIED claim, and then explain how premising his IIED on those activities violated the First Amendment and Nevada's anti-SLAPP laws. Plaintiff Plaintiff Gerwaski's allegations covered many different activities undertaken by SJP UNLV, requiring Mr. Peterson to review activity independently and consider whether (and how) it was entitled to constitutional and anti-SLAPP protection.

### v.    The preclusion of other employment by the attorney due to acceptance of the case.

While it plays an important role in defending civil liberties in this state, the ACLU of Nevada has limited legal resources to expend as mid-sized non-profit, especially since no other organization offers *pro bono* representation specifically for civil rights violations. Due the First Amendment implications in this case, the federal government's recent campaign against pro-Palestinian activism on college campuses, and the tight deadline to get SJP UNLV's motions to dismiss on file, the ACLU of Nevada prioritized this case and so necessarily turned down the opportunity to represent other people with valid civil rights claims in taking on this matter.[28] The ACLU of Nevada has also delayed litigating cases related to inadequate medical treatment in Nevada's prisons, government transparency, police surveillance, and First Amendment activities in the resort corridor due to this matter.[29]

---

NRS 41.660 (ECF No. 61), ECF No. 65 at 3:8 – 9 ("Mr. Gerwaski did not file an action against SJP–UNLV for defamation, negligent misrepresentation, or any common law claim based on that entity's statements or speech.")

[28] Peterson Decl., at ¶ 11.

[29] Peterson Decl., at ¶ 12.

### vi.     The customary fee.

Mr. Peterson's customary hourly fee is $450.00 per hour.[30]

### vii.     Whether the fee is fixed or contingent.

The ACLU of Nevada represented SJP UNLV *pro bono*, charging the student group nothing for representation.[31] Under Nevada law, "a court may award attorney fees regardless of counsel's service in a pro bono capacity" including in anti-SLAPP cases. *Fore Stars, Ltd. v. Omerza*, 559 P.3d 356 (Nev. 2024) (unpublished).

### viii.     The time limitations imposed by the client or the circumstances.

Both the client's circumstances and the case's posture imposed time limitations on counsel. First, Mr. Peterson needed to file SJP UNLV's initial motion to dismiss within 21 days from when Plaintiff Gerwaski served SJP UNLV, and that motion served as the foundation for the later anti-SLAPP motion. Second, Nevada statute required that Mr. Peterson file SJP UNLV's special motion pursuant to NRS 41.660 within 60 days from service on SJP UNLV. This required additional consultations with the client, conduct additional factual research, draft the declarations supporting the special motion and additional work analyzing the specific SJP UNLV conduct at issue under Nevada's anti-SLAPP framework.

While SJP UNLV has been nothing but gracious, their circumstances as an advocacy group as imposed further time pressures. As even "the mere *threat* of litigation can lead to self-censorship," *Green v. Miss USA, LLC*, 52 F.4th 773, 799 (9th Cir. 2022)(emphasis in original), SJP UNLV was uncertain what, if any, activism it could engage in while this case was pending, especially considering how careful the organization had been about following UNLV's guidance. A prompt resolution was necessary to minimize the impact Plaintiff Gerwaski's suit had on SJP UNLV's protected activities.

---

[30] Peterson Decl., at ¶ 9.

[31] Peterson Decl., at ¶ 10.

### ix.    The experience, reputation, and ability of the attorneys.

Mr. Peterson has extensive experience, an excellent reputation, and a high level of skill.  He is the current Legal Director for the ACLU of Nevada, the state affiliate of the renowned national organization. In that capacity, he manages ACLU of Nevada's case docket and legal team comprised of four lawyers.[32] He has received multiple awards as ACLU of Nevada's Legal Director, including recognition from Vegas Inc. as a "Top Lawyer" in the area of Civil Rights.[33]  He is admitted to practice in Nevada state and federal courts, the Ninth Circuit Court of Appeals, and the Supreme Court of the United States.[34] He has successfully litigated First Amendment and free speech cases in state and federal court, and he has filed briefs as lead counsel addressing constitutional matters before the Supreme Court of the United States, United States Ninth Circuit Court of Appeals, the Nevada Supreme Court, and multiple district courts.[35] He graduated *magna cum laude* from Georgetown University Law Center in 2015 and has practiced in Las Vegas, Nevada for the past ten years.[36]

### x.    The undesirability of the case, if any.

While this case was desirable to the ACLU of Nevada, a nonpartisan organization dedicated to protecting the civil liberties for all Nevadans, this matter would be undesirable to the average attorney.

First, the currently federal administration has waged an aggressive campaign against organizations opposing Israel's military campaign in Palestine, very publicly threatening multiple university's funding due to First Amendment activity by pro-Palestine protesters on college campuses and deporting students based solely on their political activities in favor of Palestine. *See, e.g.,* Makiya

---

[32] Peterson Decl., at ¶ 7.

[33] Peterson Decl., at ¶ 36.

[34] Peterson Decl., at ¶ 28.

[35] Peterson Decl., at ¶ 32, 33, 34.

[36] Peterson Decl., at ¶ 29.

15

Seminera, *A look at the universities with federal funding targeted by the Trump Administration*, AP News (April 15, 2025), available at https://apnews.com/article/harvard-trump-federal-cuts-universities-protests-8fa92331b2780394ea171b0b32d5d243; *A look at the people ensnared in Trump's campaign against pro-Palestinian activism at US colleges*, AP News (April 1, 2025), available at https://apnews.com/article/immigration-detainees-students-ozturk-khalil-78f544fb2c8b593c88a0c1f0e0ad9c5f. The current federal administration has also aggressively targeted attorneys that represent people that the administration politically opposes. *See, e.g.*, David Rohde & Ken Dilanian, *Federal judge calls Trump's order targeting prominent law firm a 'shocking abuse of power'*, NBC News (April 16, 2025), available at https://www.nbcnews.com/politics/justice-department/federal-judge-calls-trumps-order-targeting-prominent-law-firm-shocking-rcna200961. Under this current political environment, other attorneys would hesitate before representing SJP UNLV out of concern of federal backlash.

Second, setting aside the federal government's campaign against pro-Palestine activists, the war in Gaza is a controversial subject that has clearly divided the American public. While the ACLU has always stood up for people's rights to speak whether or not the ACLU took a position on their message,[37] other attorneys are less likely to wade into controversy.

Finally, as a student organization, SJP UNLV has limited resources. While not an issue for a legal non-profit like ACLU of Nevada who only provides *pro bono* representation, other attorneys would have be disinclined to take on SJP UNLV's representation without financial incentive.

### xi.    The nature and length of the professional relationship with the client.

While the ACLU of Nevada has a long relationship with student activists on UNLV's campus,

---

[37] *See, e.g., Nat'l Socialist Party v. Skokie*, 432 U.S. 43 (1977).

the organization had not represented SJP UNLV before this matter. As such SJP UNLV does not believe this factor is significant to the court's fee determination.

### xii.    Awards in similar cases.

The fee award requested by SJP UNLV compares favorably to other awards granted to defendants who prevailed in anti-SLAPP motions in Nevada. *See Banerjee v. Cont'l Inc.*, No. 2:17-cv-00466-APG-GWF, 2018 U.S. Dist. LEXIS 158687, at *15 (D. Nev. Sep.17, 2018) (awarding $48,617.50 in fees for bringing anti-SLAPP motion and motion for fees); *LHF Prods. v. Kabala*, 2019 U.S. Dist. LEXIS 223643, at *25 (D. Nev. Dec. 31, 2019) (awarding $47,154 in fees for bringing anti-SLAPP motion and motion for fees); *Smith*, 137 Nev. at 73 (affirming an award of $66,615.00 in fees).

### B.  SJP UNLV's request for statutory award pursuant to NRS 41.670(1)(b).

In requesting an award of $10,000, SJP UNLV asks the Court to consider a few factors. First, that SJP UNLV is a student group that has diligently followed the law. Second, Plaintiff Gerwaski filed his suit with the clear intent to stop SJP UNLV from engaging in activity protected by the First Amendment. Third, Plaintiff Gerwaski had multiple opportunities to either amended or withdraw his claims against SJP UNLV before SJP UNLV filed its anti-SLAPP motion. Finally, Plaintiff Gerwaski has continually made inflammatory and false allegations that SJP UNLV conspires with Hamas without any evidence to support that claim.

SJP UNLV is a student group registered and in good standing with UNLV. In carrying out its advocacy, the organization worked within the confines of the First Amendment and applicable state and federal law. It has not held any occupied any buildings, pitched any encampments, vandalized property, or committed any violence.

Plaintiff Gerwaski disagrees with SJP UNLV's position on the war in Gaza, as is his right. It is also his right to counter SJP UNLV's protests and petitions with his own non-violent advocacy in favor of Israel's war efforts; many people on UNLV's campus have done precisely that. Instead Plaintiff Gerwaski targeted SJP UNLV with a frivolous lawsuit to silence a position he hated. His

lawsuit threatened to chill SJP UNLV's First Amendment activities until they could find counsel familiar with constitutional law. If SJP UNLV had not found pro bono counsel at the ACLU of Nevada, the organization would have been forced defend themselves *pro se* in a matter involving state and federal legal issues.

Plaintiff Gerwaski had over a year to either amend or withdraw his claims against SJP UNLV after multiple parties confronted him through multiple motions to dismiss with the clear legal and factual inadequacies in his complaint.[38] Instead of heeding these warnings and reassessing his circumstances, Plaintiff forged ahead, serving SJP UNLV well after the first motion to dismiss was filed against him, continuously spewing unsubstantiated and inflammatory conspiracies about SJP UNLV and Hamas, and ultimately forcing SJP UNLV to spend its limited resources defending itself from frivolous claims and conspiracy theories in federal court.

In light of Plaintiff Gerwaski's frivolous claims, the offensive, baseless allegations he has leveled against SJP UNLV, and SJP UNLV clean hands in this matter, SJP UNLV respectfully requests a $10,000 statutory award pursuant to NRS 41.670(1)(b).

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[38] *See* Motion to Dismiss [Whitfield], ECF No. 12 (September 18, 2024); Motion to Dismiss [AJP], ECF No. 24 (October 24, 2024); Motion to Dismiss [UNLV], ECF No. 35 (November 18, 2024); Def. SJP UNLV Motion to Dismiss, ECF No. 51.

**CONCLUSION**

For the aforementioned reasons, SJP UNLV requests **$18,689.00** in attorney fees pursuant to NRS 41.670(1)(a) and a $10,000 statutory award pursuant to NRS 41.670(1)(b).

Dated: May 19, 2025

**ACLU OF NEVADA**

/s/  *Christopher Peterson*
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T. S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 718-3213
Emails: peterson@aclunv.org
        jsmith@aclunv.org

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **DEFENDANT STUDENTS FOR JUSTICE IN PALESTINE – UNLV'S MOTION FOR ATTORNEY FEES, COSTS AND STATUTORY AWARD PURSUANT TO NRS 41.670** on May 19, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on all participants by:

☒    CM/ECF

☐    Electronic mail; or

☐    US Mail or Carrier Service

*/s/Christopher Peterson*
An employee of ACLU of Nevada