CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T. S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1902
Facsimile: (702) 718-3213
Emails: peterson@aclunv.org
          jsmith@aclunv.org

*Attorneys for Defendant Students for Justice in Palestine, UNLV*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COREY GERWASKI,<br><br>            Plaintiff,<br><br>    vs.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>            Defendants. | Case No.: 2:24-cv-00985-APG-MDC<br><br>**DEFENDANT STUDENTS FOR JUSTICE IN PALESTINE UNLV'S MOTION TO DISMISS**<br><br>**[ORAL ARGUMENT REQUESTED]** |

[intentionally blank]

I

Defendant Students for Justice in Palestine, University of Nevada, Las Vegas ("Students for Justice in Palestine UNLV" or "SJP UNLV") moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). In his Second Amended Complaint, Plaintiff has failed to plead a valid legal theory and sufficient facts to state his claims against SJP UNLV and Plaintiff's claims against SJP UNLV are barred by the First Amendment.

Dated: August 1, 2025

**ACLU OF NEVADA**

/s/ *Jacob T. S. Valentine*
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T. S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 718-3213
Emails: peterson@aclunv.org
        jvalentine@aclunv.org

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ III

**TABLE OF AUTHORITIES** ........................................................................................ IV

**MEMORANDUM OF POINTS AND AUTHORITIES** .............................................. 1

I.    INTRODUCTION ................................................................................................ 1

II.    FACTS AND PROCEDURAL HISTORY ......................................................... 2

    A.    Factual allegations related to SJP UNLV's conduct in Plaintiff's Second Amended Complaint that identical to the allegations in his First Amended Complaint. ........................... 3

    B.    Factual allegation new to Gerwaski's Second Amended Complaint. ................................. 5

    C.    Factual allegations related to Gerwaski's injuries. .............................................................. 5

    D.    Procedural posture ................................................................................................................ 6

III.    LEGAL STANDARD ........................................................................................ 6

IV.    ARGUMENT .................................................................................................... 7

    A.    Gerwaski's claims against SJP UNLV are barred by the First Amendment. ..................... 7

    B.    Gerwaski failed to adequately plead that he was injured by an act of international terrorism. ............................................................................................................................. 10

    C.    Gerwaski fails to adequately allege that SJP UNLV knowingly aided and abetted any act of international terrorism. ........................................................................................................ 11

    D.    Gerwaski fails to adequately state any viable claim of civil conspiracy against SJP UNLV. ................................................................................................................................... 13

**CONCLUSION** ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ........................................................ 13, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). ...................................... 6, 13

*Carey v. Brown*, 447 U.S. 455, 100 S. Ct. 2286 (1980) ................................................................ 9

*Coleman v. Telles*, No. 2:24-cv-00930-APG-MDC, 2025 U.S. Dist. LEXIS 21413 (D. Nev. Feb. 5, 2025) ........................................................................................................................................ 7

*Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251 (Nev. 1998). ................. 13

*Flowers v. Carville*, 266 F. Supp. 2d 1245 (D. Nev. 2003) .......................................................... 13

*Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801 (2014) ........................................ 14

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ......................................................... 6, 7

Leisrael v. Educ. for A Just Peace in the Middle E., 460 U.S. App. D.C. 490, 66 F.4th 1007 (2023) ...................................................................................................................................... 12

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ............................................................. 9

*Roberts v. United States Jaycees,* 468 U.S. 609, 104 S. Ct. 3244 (1984) ..................................... 9

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 115 S. Ct. 2510 (1995) ........... 1

*Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 984 P.2d 164 (Nev. 1999) ...................................................................................................................................... 14

*Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011) ...................................................... 8, 10

*Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector*, 836 F.3d 1146 (9th Cir. 2016) ............... 6

*Vested Hous. Grp., Ltd. Liab. Co. v. Principal Real Estate Inv'rs, Ltd. Liab. Co.*, 648 F. App'x 646, 649 (9th Cir. 2016) ................................................................................................................ 13

*Warren v. Dollar Tree*, No. 2:23-cv-01377-APG-EJY, 2024 U.S. Dist. LEXIS 6692, (D. Nev. Jan. 11, 2024) ................................................................................................................................ 13

**Statutes**

18 USC § 2331(1) ................................................................................................................ 10, 11

18 USC § 2333 ........................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 6

**Other Authorities**

Nathan J. Brown, *The Polarization of U.S. Campus Protests*, Carnegie Endowment for Internation Peace (May 6, 2024) ............................................................................................................... 9

Shibley Telhami, *Is the Israel-Gaza war changing US public attitudes*, Brookings Institute (November 2, 2023) ................................................................................................................. 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The "chilling of individual thought and expression," is a danger "especially real in the University setting, where the State acts against a background and tradition of thought and experiment that is at the center of our intellectual and philosophic tradition." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 835, 115 S. Ct. 2510, 2520 (1995). If viewpoint suppression is allowed on American campuses, this restriction "risks the suppression of free speech and creative inquiry in one of the vital centers for the Nation's intellectual life, its college and university campuses." *Id.* Yet that is precisely Plaintiff Gerwaski's objective, weaponizing the legal system to have either this Court or his university silence a viewpoint he disagrees with.

Students for Justice in Palestine at the University of Nevada Las Vegas ("SJP UNLV") is a student group at UNLV that advocates against Israel's military activities in Palestine. It organizes protests on and off campus and posts social media messages criticizing Israeli's campaigns against the Palestinians. It also petitions UNLV to divest from companies supporting the Israeli military operations in Gaza. In carrying out this advocacy, SJP UNLV has never engaged in violence or vandalism. To its knowledge, SJP UNLV has complied with all university rules and applicable laws while advocating for their beliefs.

Gerwaski, a fellow student at UNLV, clearly disagrees with SJP UNLV's views on the war in Palestine. However, instead of countering SJP UNLV's non-violent, lawful advocacy with his own, Gerwaski sued SJP UNLV under the federal Anti-Terrorism Act ("ATA") and Nevada tort law for civil conspiracy. He bases his claims against SJP UNLV entirely upon the content of the organization's message, and for relief, he seeks to punish SJP UNLV for holding a viewpoint he disagrees with by demanding that this Court ban SJP UNLV from the UNLV campus and order the organization to pay both compensatory and punitive damages. He has also sued UNLV for not

engaging in viewpoint discrimination on a matter of public importance, which would violate the First Amendment.

This Court previously dismissed Gerwaski's First Amended Complaint, and his Second Amended Complaint deserves the same treatment as it raises effectively identical allegations. As with his First Amended Complaint, Gerwaski fails to explain how he was injured by an act of international terrorism or how SJP UNLV's advocacy aided and abetted such an act as required by the ATA. He now fails to state a claim alleging that SJP UNLV committed civil conspiracy in that he fails to describe a cognizable legal theory to support this claim or factual allegations to support any its elements. Perhaps most important, Plaintiff's action against SJP UNLV violates the First Amendment as it premises liability entirely upon SJP UNLVs protected First Amendment activities.

SJP UNLV respectfully requests that this Court dismiss Plaintiff's claims against the organization in their entirety, this time with prejudice.

## II.    FACTS AND PROCEDURAL HISTORY

SJP UNLV is a Registered Student Organization (RSO) on the UNLV campus. *See* Students for Justice in Palestine, Organizations, UNLV Involvement Center (last visited March 5, 2025), *available at* https://involvementcenter.unlv.edu/organization/sjp. The organization is "a diverse group of activists and organizers dedicated to advancing the cause for Palestinian justice and liberation by organizing community activities, educational events, and advocacy actions to build awareness, solidarity, and a network of community organizers." *Id.* Its constitution, contact information, faculty advisor, and student point of contact can be found on UNLV's website. *Id.* (the student point of contact information is available under "Full Roster").

In his Second Amended Complaint, Plaintiff Gerwaski brings two claims, one old, one new, against SJP UNLV under  18 USC § 2333 of the ATA and Nevada's common law tort of civil conspiracy. Second Amended Complaint, ¶¶ 237–258, 362–368. ECF No. 79 (June 3, 2025) ("SAC").

In his Second Amended Complaint Plaintiff once again makes wide-ranging accusations against multiple parties. *See generally* SAC. Parsing through those accusations, Plaintiff offers the following factual allegations against SJP UNLV.

### A. Factual allegations related to SJP UNLV's conduct in Plaintiff's Second Amended Complaint that identical to the allegations in his First Amended Complaint.

The allegations against SJP UNLV in Gerwaski's Second Amended Complaint are practically identical to the allegations in his dismissed First Amended Complaint. *Compare* SAC *with* First Amended Complaint, ECF No. 6 (August 9, 2024).

Like his First Amended Complaint, Gerwaski alleges that SJP UNLV's constitution calls for a one state solution with that state being under Palestinian control. *Id.* ¶ 64. As he said in his First Amended Complaint, it is Gerwaski's opinion that this statement demonstrates SJP UNLV's "genocidal intent" but offers no allegation, citation, or evidence that SJP UNLV advocates for violence in its constitution. *Id.*

Yet again, Gerwaski alleges that SJP UNLV has posted on social media. As before, Gerwaski's complaint cites to advertisements for protests on UNLV's campus, descriptions of SJP UNLV's mission as an organization, statements related to that mission such as "UNLV you will see Palestine will be free," and an announcement about a National Students for Justice in Palestine ("NSJP") program "Popular University for Gaza Campaign". *Id.* ¶¶ 73, 79, 123, 206. Other posts from SJP UNLV in Gerwaski's complaint included a petition to UNLV to financially divest from Israel and a call for economic boycotts to support Palestine. *Id.* ¶¶ 118, 122, 134, 209, 212, 218. None of SJP UNLV's posts cited by Gerwaski advocate for violence or refer to Hamas. All of the posts cited in Gerwaski's Second Amended Complaint were cited in his First Amended Complaint. *Id.* ¶¶ 66, 73, 80, 91, 118, 122, 134.

Yet again, Gerwaski alleges that SJP UNLV coordinated off and on campus protests with other local advocacy groups including Nevadans for Palestinian Liberation, the Fifth Sun Project, and

Red Desert Collective. *Id.* ¶¶ 93–94. Parroting his First Amended Complaint, Gerwaski alleges that SJP UNLV has "incorporated" local advocacy groups to "join 'the resistance'" and insinuates that this "resistance" is violent, but he does not allege that SJP UNLV engaged in any violent activity. *Id.* ¶¶ 99–100.  Gerwaski only alleges, as he did in the First Amended Complaint, that SJP UNLV "takes instruction" from the National Students for Justice in Palestine ("NSJP") to engage in "antisemitic protests" on UNLV's campus and organized actions where protesters chanted the phrases "From the river to the sea, Palestine will be free" and "Long live the intifada", which Gerwaski considers to be rhetoric espousing violence against Israel. *Id.* ¶ 95, 211. Gerwaski does not allege that Hamas contacted SJP UNLV or vice versa, nor does he claim that any of SJP UNLV's protests were violent or caused property damage.

Finally, Gerwaski alleges, as he did before, that SJP UNLV met in person with UNLV's president to petition for the university to financially divest from Israel and discuss the safety of people participating in the protests. *Id.* ¶¶ 214–215. Gerwaski does not allege that SJP UNLV threatened, harassed, or otherwise acted inappropriately while meeting with the president. Instead, he expresses anger that the UNLV's president would meet with SJP UNLV at all or SJP UNLV should expect to protest safely considering their message. *Id.* ¶¶ 214, 217.

Though he was provided yet another opportunity to do so, Gerwaski still does not allege he ever personally encountered SJP UNLV, witnessed the organization's protests, viewed its social media, or otherwise interacted with SJP UNLV in any way. *See generally id.* According to his complaint, Gerwaski has only interacted with "groups" of protesters, but not SJP UNLV specifically. *Id.* ¶¶ 44–46.[1] Nowhere in his complaint does Gerwaski allege that SJP UNLV took any action, lawful or otherwise, prior to October 7, 2023, let alone that the organization aided Hamas in its attack on

---

[1] Note that Plaintiff's first amended complaint identifies this "group" as Nevada Palestine Liberation, but the Second Amended Complaint replaces the organizations name with "groups." Compare First Amended Complaint  ¶ 244 with Second Amended Complaint ¶ 44

that day. *See generally id.*

### B. Factual allegation new to Gerwaski's Second Amended Complaint.

Although Gerwaski directly references SJP UNLV more frequently in his Second Amended Complaint than in his First Amended Complaint, Gerwaski only provides one new factual allegation regarding SJP UNLV, saying that SJP UNLV communicates with NSJP and that SJP UNLV "utilized a NSJP Toolkit in its activities." *Id.* ¶ 98. Gerwaski does not explain what exactly he is accusing SJP UNLV of communicating to NSJP or how SJP UNLV "utilized" NSJP's toolkit in a manner that violated Nevada or federal law. Instead Gerwaski only asserts that the NSJP Toolkit compels SJP UNLV to "provide 'real' support to Hamas through 'confrontation' that according to Gerwaski includes 'armed struggle' and violence." *Id.* ¶ 99. Of course, Gerwaski does not explain how SJP UNLV was compelled to do anything by a document posted publicly on the internet, and again, Gerwaski never alleges that SJP UNLV engaged in armed struggle or violence. In fact, according to Mr. Gerwaski's complaint SJP UNLV has only engaged non-violent, unarmed advocacy, i.e. protests, social media posts, and petitions. *Id.* ¶¶ 66, 73, 80, 91, 118, 122, 134.

Otherwise Gerwaski's Second Amended Complaint only refers to SJP UNLV in conclusory statements unsupported by any factual allegations. *See*, *e.g.*, *Id* ¶¶ 245, 257, 363.

### C. Factual allegations related to Gerwaski's injuries.

In pursuing his claim under 18 USC § 2333 of the ATA, Gerwaski states he is in a state of fear and anxiety, collapsed in his calculus class, was diagnosed with an extreme stress disorder, was diagnosed with Bell's Palsy, and had to drop two summer courses. *Id.* ¶ 246. He blames "the ever-present and real threats posed by said Defendants" for these injuries. *Id*. The October 7, 2023, terrorist attack is still the only act of international terrorism described in his complaint, *Id.* ¶¶ 173–174, and Gerwaski again fails to explain how that attack has caused his alleged injuries. *See generally id.*

In describing his claim for civil conspiracy, Gerwaski only claims that "Plaintiff suffered

damages", and does not explain what, if any, of his injuries were caused by the alleged conspiracy. *Id.* ¶ 363.

### D. Procedural posture

Gerwaski filed this action on May 26, 2024. ECF No. 1. This Court issued summonses on May 28, 2024. ECF No. 4. Gerwaski amended his complaint on August 9, 2024. ECF No. 6. Gerwaski served SJP UNLV the summons and First Amended Complaint on February 12, 2025. ECF No. 48. SJP UNLV filed a motion to dismiss on March 5, 2025, as well as a special motion to dismiss on April 11, 2025. ECF No. 51; ECF No. 61. The Court granted both SJP UNLV motions to dismiss on May 5, 2025, dismissing Gerwaski's IIED claim with prejudice and Gerwaski's Antiterrorism Act claim without prejudice. ECF No. 71. In granting the motions to dismiss, the Court determined that all of SJP UNLV's actions described in Gerwaski's First Amended Complaint were protected activities pursuant to the First Amendment. *Id.* pg. 21. Gerwaski filed a Second Amended Complaint on June 3, 2025. ECF No. 79. SJP UNLV now timely seeks to dismiss Gerwaski's Second Amended Complaint.

## III.    LEGAL STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), a plaintiff must make sufficient factual allegations to establish a plausible entitlement to belief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955 (2007). A plaintiff must also plead a cognizable legal theory for each of his claims. *Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector*, 836 F.3d 1146, 1151 (9th Cir. 2016). ("A dismissal under Rule 12(b)(6) may therefore be based on either the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory….") "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "[C]onclusory allegations of

law and unwarranted inferences, however, are insufficient to avoid dismissal." *Id*. As such "allegations must amount to 'more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action.'" *Coleman v. Telles*, No. 2:24-cv-00930-APG-MDC, 2025 U.S. Dist. LEXIS 21413, at *3 (D. Nev. Feb. 5, 2025) (quoting *Bell Atl. Corp.*, 550 U.S. at 556).

After separating out any well-plead factual allegations from plaintiff's legal conclusions and unwarranted inferences, the Court must then determine "whether [the factual allegations] plausibly give rise to an entitlement to relief." *Kwan*, 854 F.3d at 1096. "This plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully"; rather "[a] claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.    ARGUMENT

In his Second Amended Complaint Plaintiff Gerwaski raises two claims against SJP UNLV: one under the 18 USC § 2333 of the American Terrorist Act and the other for civil conspiracy. As it was true for the claims raised in his First Amended Complaint, both of Gerwaski's claims are barred by the First Amendment as they are premised on the content of SJP UNLV's speech.  As was the case for his ATA claim pled in his First Amended Complaint, Gerwaski's ATA claim must again be dismissed because he again fails to adequately allege an injury caused by an act of international terrorism or to adequately allege that SJP UNLV aided and abetted such an act. As for his new civil conspiracy claim, Gerwaski fails to offer a cognizable legal theory, sufficient factual allegations, or even a predicate offense to support his claim. As such, Gerwaski's claims against SJP UNLV must again be dismissed in their entirety.

### A.  Gerwaski's claims against SJP UNLV are barred by the First Amendment.

The First Amendment can serve as a defense in tort suits; whether the Free Speech Clause shields a defendant "turns largely on whether [the defendant's] speech is of public or private

1   concern." *Snyder v. Phelps*, 562 U.S. 443, 451, 131 S. Ct. 1207, 1215 (2011).

2       As the Supreme Court observed in *Snyder v. Phelps*, "[t]he First Amendment reflects a

3   profound national commitment to the principle that debate on public issues should be uninhibited,

4   robust, and wide-open." 562 U.S. at 452. Because "speech concerning public affairs [. . .] is the

5   essence of self-government," it "occupies the highest rung of the hierarchy of First Amendment

6   values, and is entitled to special protection." *Id.* (quotation omitted). "Speech deals with matters of

7   public concern," and so entitled to special protection, "when it can be fairly considered as relating to

8   any matter of political, social, or other concern to the community, or when it is a subject of legitimate

9   news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 453

10  (quotations omitted). Whether expressive conduct is "inappropriate or controversial [. . .] is irrelevant

11  to the question whether it deals with a matter of public concern." *Id.* If a plaintiff seeks to hold a

12  defendant liable for the content of speech related to a matter public concern rather than that "of purely

13  private significance," the plaintiff's claims are barred by the First Amendment. *Id.*, 56 U.S. at 460–

14  61 (barring the plaintiff's claims of intentional infliction of emotional distress and civil conspiracy as

15  they were based entirely upon content of the defendant's speech related to a matter of public concern).

16      This Court has already determined that SJP-UNLV's conduct at issue was protected by the

17  First Amendment. ECF No. 71 pg. 13-16. Gerwaski has not remedied this deficiency in his Second

18  Amended Complaint in that he premises SJP UNLV's liability on the same activities identified in his

19  First Amended Complaint and subject to this Court's May 5, 2025, order: (1) non-violent protests

20  organized by SJP UNLV on and off campus advocating a pro Palestine position related to that war,

21  (2) SJP UNLV's association with other advocacy groups to protest Israel's actions during the war,

22  (3) SJP UNLV's petitions to a state-run university to divest from Israel due to that country's actions

23  during the war, and (4) SJP UNLV's social media posts criticizing the war and calling for economic

24  boycotts.

25

SJP UNLV's activities at issue are entitled to the strongest protections under the First Amendment. *Carey v. Brown*, 447 U.S. 455, 466-67, 100 S. Ct. 2286, 2293 (1980) ("Public-issue picketing, an exercise of . . . basic constitutional rights in their most pristine and classic form, has always rested on the highest rung of the hierarchy of First Amendment values." (ellipsis in the original)); *Roberts v. United States Jaycees*, 468 U.S. 609, 622, 104 S. Ct. 3244, 3252 (1984) ("[W]e have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."); *NAACP v. Claiborne Hardward Co.*, 458 U.S. 886, 911 (1982) (finding "[t]he established elements of speech, assembly, association, and petition" inseparable from the right to organize a non-violent economic boycott to serve a political purpose). SJP UNLV engaged in all these activities in relation to a matter of public concern as all were about the war in Gaza. Plaintiff cannot meaningfully dispute that the war in Gaza is a matter of public concern, dividing the American public, impacting American politics, and filling American news coverage. *See, e.g.*, Shibley Telhami, *Is the Israel-Gaza war changing US public attitudes*, Brookings Institute (November 2, 2023) (discussing the American public's response to Israel's intervention in Gaza and the potential impact on the 2024 presidential election), available at https://www.brookings.edu/articles/is-the-israel-gaza-war-changing-us-public-attitudes/; Nathan J. Brown, *The Polarization of U.S. Campus Protests*, Carnegie Endowment for Internation Peace (May 6, 2024) (discussing the protests over Israeli's actions in Gaza and public response to those protests), available at https://carnegieendowment.org/emissary/2024/05/the-polarization-of-us-campus-protests?lang=en. In fact, his own claims depend on it, with his complaint emphasizing widespread protests across the country related to the conflict. *See* SAC ¶ 133 (alleging that protests related to the conflict "erupted across American cities").

Gerwaski cannot dispute that his claims against SJP UNLV are based entirely upon the

organization's views and the content of SJP UNLV's messages about the Gaza conflict. *See Snyder*, 562 U.S. at 457 (emphasizing that "that any distress occasioned by [the defendant]'s picketing turned on the content and viewpoint of the message conveyed" in determining that the First Amendment barred plaintiff's claims). Gerwaski's claims are based purely upon the content of SJP UNLV's message, specifically that the message's viewpoint is antisemitic and, by advocating against Israel's actions in Gaza, SJP UNLV's views assists Hamas. After all, if SJP UNLV engaged in the exact same conduct (i.e. organizing protests, petitioning UNLV, and calling for boycotts) in favor of Israel rather than Palestine, Gerwaski would not be asking this Court to ban SJP UNLV from campus or demanding damages. *See Snyder*, 562 U.S. at 457 (considering whether a different message conveyed by the defendant in the same manner would have resulted in liability in determining whether claims were content based).

As currently pled, Gerwaski seeks to hold SJP UNLV liable solely due to SJP UNLV's viewpoint. As the First Amendment bars such actions, Gerwaski's claims against SJP UNLV must be dismissed.

### B. Gerwaski failed to adequately plead that he was injured by an act of international terrorism.

Before asserting a claim under 18 USC § 2333(d)(2), a plaintiff must satisfy the prerequisites of 18 USC § 2333(a) by identifying an act of international terrorism and then pleading sufficient allegations to establishing that act injured his "person, property, or business." 18 USC § 2333(d)(2) (authorizing secondary liability "[i]n an action under [18 USC § 2333(a)] for an injury arising from an act of international terrorism."); *See Taamneh*, 598 U.S. at 483 ("those injured by an act of international terrorism can sue [. . .]").

Not every action undertaken by an entity designated as a terrorist organization is an "act of international terrorism"; rather such acts are defined by 18 USC § 2331(1). Such an act necessarily (1) involves violence, (2) violates "the criminal laws of the United States or any State", (3) is made

with the intent to intimidate or coerce a government or civilian population, and (4) "occurs primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished." 18 USC § 2331(1).

In his Second Amended Complaint, Gerwaski has provided more information about his alleged injuries than he did in his First Amended Complaint, but he not explained how a specific act of international terrorism caused those injuries. The October 7, 2023, attack by Hamas against Israel is the only act referenced in Gerwaski's complaint qualifying as an "act of international terrorism". See SAC ¶¶ 173–174 (discussing Hamas's attack on October 7, 2023). However, though he repeatedly references the October 7, 2023, attack in his complaint, Gerwaski never alleges the attack caused an injury his "person, property, or business." *See generally id*. Rather, Gerwaski only yet again alleges he was injured by the Defendant's actions on UNLV's campus, which were non-violent activities occurring exclusively within the United States such as political advocacy he disagrees with and adverse employment decisions. *See, e.g. id.* ¶ 246 (alleging that Gerwaski's emotional distress stemmed from the Defendants' actions, not terrorist activity by Hamas). These actions are, by definition, not acts of international terrorism. As Gerwaski has failed to satisfy the requirements set forth in 18 USC § 2333(a), he is barred from holding anyone liable under 18 USC § 2333(d)(2).

### C. Gerwaski fails to adequately allege that SJP UNLV knowingly aided and abetted any act of international terrorism.

Even if a plaintiff establishes that he was injured by an act of international terrorism as required by 18 USC §2333(a), 18 USC § 2333(d)(2) still requires the plaintiff to also show that the defendants "aided and abetted the act of international terrorism that injured [him]." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 497, 143 S. Ct. 1206, 1225 (2023). Furthermore, to satisfy the "aiding and abetting" requirement, a plaintiff must show that the defendant was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance" and "knowingly and substantially assist[ed] the principal violation." *Leisrael v. Educ. for A Just Peace in the Middle*

*E.*, 460 U.S. App. D.C. 490, 499, 66 F.4th 1007, 1016 (2023).

As stated above, the only act identified in Gerwaski's Second Amended Complaint that might satisfy the definition of "an act of international terrorism" occurred on October 7, 2023, well before any of the alleged actions taken by SJP UNLV in Gerwaski's complaint. SJP UNLV's protests, petitions, and social media posts cited in Gerwaski's complaint are all responding to Israel's military actions in Gaza in response to the October 7, 2023, attack. As such, Gerwaski fails to identify any action SJP UNLV took to aid and abet the sole act of international terrorism identified in his complaint.

Gerwaski also fails to adequately plead SJP UNLV knowingly supported Hamas in doing anything, act of terrorism or otherwise. Setting aside his unsupported conclusions, Gerwaski has pled no facts establishing any communication between SJP UNLV and Hamas or vice versa. As laid out in Gerwaski's factual allegations, the only relevant organizations that SJP UNLV had contact with either in person or via social media during the relevant period were (1) NSJP, (2) UNLV administration, and (3) protest organizations located here in Nevada. While Gerwaski makes broad claims that all Defendants are "aware" that their actions support Hamas based upon statements Gerwaski attributes to NSJP, *see*, *e.g.* SAC ¶ 249, he offers no concrete allegations, in the form of communications, transactions, or even statements by SJP UNLV, to support the conclusion that SJP UNLV knowingly worked on Hamas's behalf. Instead, Gerwaski appears to suggest that SJP UNLV's political advocacy criticizing and challenging Israel's military action, the very content of SJP UNLV's protected speech, is unlawful because it somehow assists Hamas. This cannot be sufficient to establish a claim under the ATA against SJP UNLV; to find otherwise would place the ATA in direct conflict with the First Amendment.

Gerwaski fails to offer any facts that SJP UNLV undertook any action to aid and abet an act of international terrorism. He also fails to offer factual allegations that SJP UNLV knowingly had

1  any connection at all to Hamas. For these reasons, among others, his ATA claim against SJP UNLV

2  must be dismissed.

3  **D.  Gerwaski fails to adequately state any viable claim of civil conspiracy against SJP UNLV.**

4  "Mere recitals of the elements of a cause of action, supported only by conclusory statements,

5  are not sufficient" to establish a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

6  (2009); *Warren v. Dollar Tree*, No. 2:23-cv-01377-APG-EJY, 2024 U.S. Dist. LEXIS 6692, at *8

7  (D. Nev. Jan. 11, 2024). Gerwaski's ninth cause of action, titled "Civil Conspiracy", fails to

8  meaningfully provide a legal theory (i.e. what facts theoretically apply to this claim) let alone

9  sufficient facts to support the claim. *See* SAC ¶¶ 362-368.

10  Gerwaski relies on Nevada's common law tort of civil conspiracy for his ninth cause of

11  action, *see* SAC ¶¶ 362-368, and he fails to adequately plead such a claim. When pleading conspiracy

12  "enough facts to raise a reasonable expectation that discovery will reveal evidence" of a conspiracy

13  must be plead. *Twombly* 550 U.S. at 556. An actionable civil conspiracy claim under Nevada law

14  "consists of a combination of two or more persons who, by some concerted action, intend to

15  accomplish an unlawful objective for the purpose of harming another, and damage results from the

16  act or acts." *Compare Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256

17  (Nev. 1998) *with* SAC ¶¶ 363 (accusing SJP in "combination with two or more persons" of engaging

18  in "concerted action . . . intended to accomplish an unlawful objective" for "the purpose of harming"

19  another person, i.e. "Jewish students at UNLV"). The underlying harm or damages are the "essence

20  of civil conspiracy" claims. *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003).

21  Gerwaski offers no substance to support his civil conspiracy claim beyond restating the elements

22  above.  He fails to identify a valid underlying civil wrong to serve as predicate for his conspiracy, he

23  offers nothing but conclusory statements to claim the existence of an agreement to perpetuate a civil

24  wrong, and he fails to explain what, if any, damages he suffered as a direct result of his alleged

25

conspiracy.

Under Nevada law, civil conspiracy claims cannot standalone and require an underlying civil wrong. *Vested Hous. Grp., Ltd. Liab. Co. v. Principal Real Estate Inv'rs, Ltd. Liab. Co.*, 648 F. App'x 646, 649 (9th Cir. 2016); *see also Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 984 P.2d 164, 168 (Nev. 1999) (dismissing a civil conspiracy claim because the underlying defamation claim was dismissed). The underlying civil wrong Gerwaski alleges to have been perpetrated by the alleged conspiracy is, in his words, "furthering the terrorist organization of Hamas and antisemitic conduct at UNLV for the purpose of harming Jewish students at UNLV." SAC ¶ 363. This is simply inadequate to establish a civil conspiracy claim.

First, this claim is conclusory and unsupported by any actual factual allegation. Asserting that SJP UNLV is "furthering the terrorist organization Hamas and antisemitic conduct at UNLV" is a conclusion that does not satisfy the requirements imposed by Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. According to the facts actually alleged by Gerwaski, SJP UNLV is a student group that advocates for the Palestinians living in Gaza, not Hamas, and against Israel's military campaign against those people. Gerwaski does not identify a single time where SJP UNLV intended to help Hamas or encourage discrimination in any form. Furthermore, Gerwaski does not specify what, if any, law his vague accusation would violate. Perhaps Gerwaski is implicitly predicating his conspiracy claim on the ATA, but as his ATA claim is not viable therefore his conspiracy claim is not viable.

Second, in pursuing a claim of civil conspiracy, a plaintiff must show "an explicit or tacit agreement between the conspirators" and the intent was to "harm the plaintiff." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 813 (2014). He offered no facts establishing that SJP UNLV had any agreement whatsoever with NSJP or AMP. In describing his claim, Gerwaski only states that "AMP, SJP-UNLV, NSJP" engaged in "concerted action" to further "the terrorist organization of Hamas and antisemitic conduct at UNLV for the purpose of harming Jewish students

at UNLV", this is a conclusion rather than a factual allegation, and otherwise sends SJP UNLV to hunt through the rest of his complaint to guess at the factual basis for this allegation. *Id.* ¶ 362-363. As far as SJP UNLV can divine, Gerwaski's "agreement" allegation hinges on SJP UNLV "utilizing" a publicly available social media toolkit and "communicating" with NSJP. Neither of these are activities require that the parties reach an agreement of any sort, and certainly not one to harm Gerwaski or any other UNLV student.

Finally, a plaintiff must show he was actually damaged by the alleged conspiracy to raise a civil conspiracy claim. All Gerwaski offers for damages is that he "suffered damages." SAC ¶ 363. Self-fulling conclusions are not factual allegations.

Relying on insinuations rather than objective facts is inappropriate and legally insufficient for a complaint filed in a United States federal district court. Given a second opportunity to bring claims against SJP-UNLV, Gerwaski was obligated to explain what, if any, factual allegations supported each element of his civil conspiracy claim, and he has, once again, offered nothing but conclusory statements and innuendos in an effort to subject SJP UNLV to liability.

## CONCLUSION

Gerwaski has not pled sufficient factual allegations to support either of his claims against SJP UNLV. Gerwaski has not identified an act of international terrorism that has caused him harm, nor has he alleged that SJP UNLV aided and abetted such an act. Gerwaski has failed to plead a cognizable claim under "civil conspiracy" and fails to identify an actual civil wrong sought by the conspiracy, that there was an agreement between the alleged conspirators, or that he was harmed by his theoretical conspiracy.

While these reasons are by themselves enough to dismiss Gerwaski's claims, it is perhaps most important to recognize that Gerwaski's action against SJP UNLV must be dismissed because Gerwaski's claims violate the Constitution. Gerwaski asks this Court to punish SJP UNLV because

SJP UNLV has spoken out about a matter of public concern. The war in Gaza has killed thousands of people and has polarized the American public; Gerwaski and SJP UNLV clearly sit at opposing poles. Gerwaski now sues SJP UNLV not because SJP UNLV has advocated in a way that violates the law but because Gerwaski finds SJP UNLV's message itself repugnant. To ensure open and public dialogue and debate about issues that are important but controversial, the First Amendment necessarily bans such efforts. Defendant SJP UNLV respectfully requests that this Court dismiss all of Gerwaski's claims against it with prejudice.

Dated: August 1, 2025

ACLU OF NEVADA

/s/ *Jacob T. S. Valentine*
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T. S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 718-3213
Emails: peterson@aclunv.org
          jvalentine@aclunv.org

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **Defendant Students for Justice in Palestine UNLV's Motion to Dismiss** with the Clerk of the Court for the United States District Court of Nevada by using the court's CM/ECF system on August 1, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on all participants by:

☒    CM/ECF

☐    Electronic mail; or

☐    US Mail or Carrier Service

*/s/ Jacob T. S. Valentine*
An employee of ACLU of Nevada