Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira S. Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center for Muslims in America*
100 N. Central Expy, STE 1010
Richardson, Texas 75080
Telephone: 972-915-2507
*Attorneys for Defendant AJP Educational Foundation, Inc.*

*The Constitutional Law Center for Muslims in America
is the legal division of the Muslim Legal Fund of America.*

Margaret A. McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational Foundation, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COREY GERWASKI,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>Defendants. | Case No. 2:24-cv-00985- APG-MDC<br><br><br><br>**DEFENDANT AJP EDUCATIONAL FOUNDATION, INC'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

1

Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP")

2

moves to dismiss this case under Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6). Plaintiff fails to plead

3

facts sufficient to establish this Court's personal jurisdiction over AMP. Finally, Plaintiff fails to state a

4

claim against AMP.

5

Respectfully submitted,

6

Dated: August 1, 2025

7

8

/s/ *Margaret A. McLetchie*
Christina A. Jump (*admitted pro hac vice*)

9

Email: cjump@clcma.org
Samira Elhosary (*admitted pro hac vice*)

10

Email: selhosary@clcma.org
Constitutional Law Center

11

for Muslims in America*
100 N. Central Expy, Suite 1010

12

Richardson, Texas 75080
Telephone: 972-915-2507

13

14

*Counsel for Defendant AJP Educational
Foundation, Inc.*

15

*The Constitutional Law Center for Muslims in

16

America is the legal division of the Muslim Legal
Fund of America*

17

18

Margaret A. McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com

19

Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com

20

McLetchie Law
602 S. 10th St.

21

Las Vegas, NV 89101

22

Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational*

23

*Foundation, Inc.*

24

25

26

27

28

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF NEVADA**

9

COREY GERWASKI,

10

Plaintiff,

11

v.

12

STATE OF NEVADA, ex rel. BOARD
OF REGENTS of the NEVADA

13

SYSTEM OF HIGHER EDUCATION,
on behalf of the UNIVERSITY OF

14

NEVADA, LAS VEGAS; KEITH
WHITFIELD, individually; AJP

15

EDUCATIONAL FOUNDATION INC.,
a California Non-Profit Corporation;

16

STUDENTS FOR JUSTICE OF
PALESTINE-UNLV; NATIONAL

17

STUDENTS FOR JUSTICE OF
PALESTINE; NEVADANS FOR

18

PALESTINIAN LIBERATION;
 DOES I-XX and ROE entities I-XX,

19

20

Defendants.

21

Case No. 2:24-cv-00985- APG-MDC

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANT AMP's MOTION TO DISMISS**

22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTS AND PROCEDURAL HISTORY ........................................................ 2

III.  STANDARDS OF REVIEW ............................................................................. 5

      A.    Federal Rule of Civil Procedure 12(b)(2) .............................................. 5

      B.    Federal Rule of Civil Procedure 12(b)(6) .............................................. 6

      C.    The Anti-Terrorism Act, 18 U.S.C. § 2333(d) ...................................... 6

IV.   ARGUMENT ..................................................................................................... 7

      A.    Plaintiff Fails to Establish This Court's Jurisdiction Over AMP .......... 7

      B.    Plaintiff Fails to State a Claim Under the ATA ..................................... 9

            1.    Plaintiff fails to allege personal harm by an act of international terrorism ........ 10

            2.    Plaintiff alleges no knowing and substantial assistance to Hamas by AMP ....... 11

      C.    Plaintiff Fails to State a Claim for Conspiracy (Ninth Cause of Action), ..................... 13

      D.    This Court Should Dismiss the Second Amended Complaint With Prejudice. .............. 14

V.    CONCLUSION .................................................................................................. 14

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Arroyo v. Wheat*, 591 F. Supp. 141 (D.Nev. 1984)....................................................................... 13

4

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)......................................................................................... 6, 13, 14

5

6

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)........................................................................................................ 6

7

*Boschetto v. Hansing*
    539 F.3d 1011 (9th Cir. 2008) ....................................................................................... 8

8

9

*Burger King v. Rudzewicz*
    471 U.S. 462 (1985)..................................................................................................... 8, 9

10

*Chocolate Magic Las Vegas LLC v. Ford*, 337 F. Supp. 3d 950 (D. Nev. 2018).................................. 13

11

*Copeland v. Twitter, Inc.*
    No. 18-17327, 2024 U.S. App. LEXIS 7806 (9th Cir. Apr. 1, 2024)................................. 11, 14

12

*Fields v. Twitter*
    881 F.3d 739 (9th Cir. 2018) ................................................................................... 10, 11

13

*Friedman v. Canteen Vending*, No. 3:09-CV-0403-LRH-VPC, 2011 U.S. Dist. LEXIS 38733
    (D. Nev. Apr. 7, 2011) ................................................................................................. 14

14

15

*GES, Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001) ................................................................................ 13

16

*Int'l Shoe Co. v. Washington*
    326 U.S. 310 (1945)................................................................................................... 5, 8, 9

17

*Issac v. Circle K*
    No. 2:13-cv-00283-APG-CWH, 2014 U.S. Dist. LEXIS 134356 (D. Nev. Jan. 24, 2014)  5, 6, 8

18

19

*Jan v. People Media Project*, No. 3:24-CV-05553-TMC, 2025 WL 359009 (W.D. Wash. Jan.
    31, 2025) ................................................................................................................. 10, 12

20

*Leisrael v. Educ. for A Just Peace in the Middle E.* 530 F. Supp. 3d 8 (D.D.C. 2021)....................... 12

21

*Leisrael v. Educ. For a Just Peace in the Middle E.*
    66 F.4th 1007 (D.C. Cir. 2023)..................................................................................... 7, 11

22

23

*My Daily Choice v. Hunter*
    No. 2:20-cv-00809-APG-DJA, 2020 U.S. Dist. LEXIS 134946 (D. Nev. July 30, 2020)....... 5, 8

24

*Neitzke v. Williams*
    490 U.S. 319 (1989)........................................................................................................ 6

25

26

*Never Too Hungover, LLC v. Drinkaid LLP*
    No. 2:23-cv-01347-APG-EJY, 2023 U.S. Dist. LEXIS 199425 (D. Nev. Nov. 6, 2023) ........ 5, 8

27

28

iv

*Rosemond v. United States*
    572 U.S. 65 (2014) ............................................................................................................. 7

*Rostami v. BAC Home Loans Servicing, L.P.*, No. 2:11-CV-02121-KJD, 2013 WL 100946 (D.
    Nev. Jan. 7, 2013) ............................................................................................................. 13

*Schwarzenegger v. Fred Martin Motor Co.*
    374 F.3d 797 (9th Cir. 2004) .......................................................................................... 8, 9

*Thomas v. Harroun*
    2:24-cv-00345-APG-MDC, 2024 U.S. Dist. LEXIS 172163 (D. Nev. Sept. 24, 2024) .............. 6

*Twitter, Inc. v. Taamneh*
    598 U.S. 471 (2023) ................................................................................................. 7, 11, 12

*Warren v. Dollar Tree*, No. 2:23-cv-01377-APG-EJY, 2024 U.S. Dist. LEXIS 6692 (D. Nev.
    Jan. 11, 2024) ................................................................................................................... 13

**STATUTES**

18 U.S.C. § 2331(1) ............................................................................................................... 10

18 U.S.C. § 2333(a) ................................................................................................................. 9

18 U.S.C. § 2333(d) ............................................................................................................... 11

18 U.S.C. § 2333(d)(2) ............................................................................................................ 6

**RULES**

FRCP 9(b) ............................................................................................................................. 13

1

## I.    <u>INTRODUCTION</u>

2       The law does not equate free speech and the exercise of the right to freely associate with others

3   with terrorism, even when the speech at issue does not bring universal consensus. AMP's allegedly

4   tortious conduct consists of no more than free speech and advocacy in the United States and bears no

5   connection with UNLV; Plaintiff's claims therefore fail as a matter of law because this Court lacks

6   jurisdiction. For that reason and others, this Court dismissed all of Plaintiff's claims against AMP once

7   already. Doc. 79.  Plaintiff's Second Amended Complaint makes no meaningful improvements to the

8   First Amended Complaint's fatal flaws and thus presents no reason justifying a different result this time.

9       Plaintiff's most recent Amended Complaint consists of 368 paragraphs, 186 of which are

10  designated as a retitled section "Additional Factual Background." Doc. 79, ¶¶ 51 – 236. This Court

11  previously admonished Plaintiff for his earlier "51 pages of background material" that did not comply

12  with the requirements of the Federal Rules of Civil Procedure to plead "only 'a short and plain statement

13  of the claim' showing he is entitled to relief[.]"  Doc. 71, 15-16. After sorting through all the distracting,

14  inflammatory and wholly unnecessary language, Plaintiff again fails to establish the threshold

15  requirement that this Court has any jurisdiction over AMP.

16      Plaintiff also fails yet again to state a claim against AMP under either of the causes of action he

17  alleges against it.

18      Plaintiff asks this Court to hold AMP liable to him under the ATA, based in significant part on

19  Hamas' October 7, 2023, terrorist attack in Israel. But Plaintiff still fails to allege any facts sufficient to

20  show AMP knowingly and substantially assisted Hamas in that attack. While that attack was undoubtedly

21  a tragedy that caused loss of life and harm to many, Plaintiff still fails to allege any harm <u>he</u> suffered as

22  a result of that attack, just as the Court found he failed to do in the First Amended Complaint.[1]

23      Plaintiff also asks this Court to hold AMP liable under a nebulous, derivative state law conspiracy

24  claim. That claim fails because the ATA claim fails and because it is entirely conclusory.

25      For all these reasons, Defendant AMP respectfully requests this Court dismiss Plaintiff's claims

26

27  [1] The Court previously cautioned: "Although it is difficult to imagine what facts might show that he
    suffered injuries from an act of international terrorism that the defendants substantially assisted, I grant
28  Gerwaski leave to amend his complaint if he is able to plausibly allege additional facts to support." Doc.
    71 p.11:5-8.

against AMP in their entirety a second time. Additionally, because Plaintiff has already amended twice and still fails to plead sufficient facts to even establish jurisdiction, let alone any cognizable claim, AMP requests dismissal with prejudice to prevent any further futile amendments.

## II.    FACTS AND PROCEDURAL HISTORY[2]

Plaintiff filed this action on May 26, 2024. Doc. 1. This Court dismissed Plaintiff's later-filed First Amended Complaint on May 5, 2025. Doc. 71.  Plaintiff filed his new complaint on June 3, 2025, and AMP now moves for this Court to dismiss this regurgitation in full as well. Though Plaintiff shuffles the order and sequence of his allegations against AMP, he does not assert any new basis for liability against AMP under the ATA—his sole non-derivative claim against AMP.

For ease of reference in deciphering Plaintiff's somewhat reduced yet still voluminous Second Amended Complaint, AMP attaches as **Exhibit A** to this Motion a comparison chart for the prior locations of Plaintiff's allegations against AMP, and the locations and near-verbatim wording of the same allegations in the current Second Amended Complaint.  *See* **Ex. A**. As this table shows, just like the First Amended Complaint was, the Second Amended Complaint is replete with irrelevant facts and still fails to include the necessary plausible allegations,

AMP operates wholly within the United States as a 501(c)(3) non-profit organization that works to advance Palestinian rights and awareness of Palestine's rich history and culture.[3] Second Amended Complaint, ¶ 14, Doc. 71 ("Amend. Compl.").  Today, and at all times relevant to the allegations in this lawsuit, AJP Educational Foundation, Inc. is the name of the single legal entity designated as a 501(c)(3) non-profit corporation, incorporated in California, with its principal place of business in Virginia, with

---

[2] The following reflect the facts presented in Plaintiff's Second Amended Complaint. At the Rule 12 stage, this Court must accept as true any non-conclusory allegations. At the appropriate time, AMP will dispute Plaintiff's recitation of the facts, which are in multiple places pulled verbatim from unrelated lawsuits pending against AMP outside of this district.

[3] Plaintiff alleges AMP purposefully obfuscates its corporate structure by using a designated "doing business as" name, as businesses of all types commonly do. *See* Doc. 79 ¶¶ 51, 53, 57. In reality, AMP's corporate structure is transparent and available in its publicly filed corporate documents, and legally compliant.

American Muslims for Palestine ("AMP") as its designated d/b/a.[4] AMP is <u>not</u> a separately incorporated legal entity. *Cf. id.* ¶ 57. Where this Motion uses "AMP," that name refers to the sole legal entity named in Plaintiff's Second Amended Complaint, and no other entity. Since its founding in 2006, AMP has continuously worked toward its stated mission to educate the U.S. public.[5] AMP does not accept donations from outside of the United States, nor does it send money to any party outside of the United States.[6] AMP is affiliated with the separately incorporated 501(c)(4) organization AJP Action, which engages in lobbying efforts AMP cannot as a legally compliant 501(c)(3) organization. *Id.* ¶ 51-52. AJP Action is not a defendant in this lawsuit and not relevant to the consideration of the claims Plaintiff asserts.

Plaintiff alleges that Defendant National Students for Justice in Palestine ("NSJP") is the "student advocacy arm of AMP," though no corporate or other relationship exists between the two.[7] *Id.* ¶¶ 55, 59, 65. Plaintiff alleges AMP "continues to threat [sic] American Universities and college students" through use of social media. *Id.* ¶ 58. Plaintiff alleges AMP "controls NSJP and uses it to operate a propaganda machine for Hamas." *Id.* ¶ 65. Plaintiff also alleges that AMP "sponsored the first SJP National Convention to unite the various SJP chapters." *Id.* ¶ 69. Plaintiff recites that "AMP's message to college campuses through NSJP is unambiguous: violent attacks are a justified response to Zionism as an idea, to Israel as an entity, and to Zionists as people." *Compare id.* ¶ 71 *with* Complaint for Damages and Jury Trial Demand, ¶ 39, *Parizer et al. v. AJP Educational Foundation, Inc. et al.*, 1:24-cv-00724 (E.D. Va.

---

[4] This Court may take judicial notice of AMP's publicly available incorporation documents and fictitious name certificate, available through the Virginia Secretary of State's website (entity ID F2044636). *See Barron v. Bank of N.Y. Mellon*, 2:15-cv-00242-APG-GWF, 2015 U.S. Dist. LEXIS 62809, at *3 n.2 (D. Nev. May 13, 2015) (taking judicial notice of publicly-filed documents pursuant to Fed. R. Evid. 201).

[5] *About AMP*, AMERICAN MUSLIMS FOR PALESTINE, https://www.ampalestine.org/about-amp (last visited August 1, 2025).

[6] *See id.*

[7] AMP is a stand-alone organization with no corporate affiliation to any other defendant in this case, including NSJP. AMP takes no position in this Motion on the veracity or Plaintiff's claims against NSJP or any other defendant and responds on its own behalf solely as to the allegations made against AMP.

May 1, 2024), ECF No. 1 ("Parizer Compl."). Plaintiff continues by asserting that "after October 7"[8] "days of rage and directives called on by Ismail Haniyah, Khaled Mishal, and Iran's Ayatollah Ali Khameni,[9] were now being acted out on U.S. college campuses through the leadership and organization of AMP and NSJP." Doc. 79 ¶¶ 74, 76. Plaintiff concludes that "America's college campuses were being run and taken over by students and non-student organizations, taking direct instructions from foreign terrorist organizations overseas …." *Id*. ¶ 77.

Plaintiff again references events occurring on other college campuses subsequent to Hamas' October 7, 2023, terrorist attack. Plaintiff alleges that "[e]xactly as AMP intended, NSJP acted as Hamas' loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States." *Compare id*. ¶ 90 *with* Parizer Compl. ¶ 53 ("Exactly as AMP intended, NSJP acted as Hamas's loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States."). Plaintiff recites allegations about a "Toolkit" he attributes to NSJP, without alleging that AMP knew about the Toolkit, contributed to its contents, or circulated it in any way. Doc. 79 ¶¶ 90, 91, 92, 96, 97, 98, 99, 102, 103, 105, 109, 111, 249. Plaintiff alleges that "Defendants act as Hamas' public relations division and recruit students as domestic foot soldiers not only to disseminate Hamas's propaganda but also to foment violence, chaos, and fear across the United States and at UNLV to intimidate students and faculty and coerce change in American policy." *Id*. ¶ 114. Despite this general allegation and inflammatory conclusion about "Defendants," Plaintiff alleges no facts to support his conclusion that AMP engages in any of the actions described.

As it relates to Plaintiff's personal experiences on the University of Nevada Las Vegas ("UNLV") campus, Plaintiff makes the conclusory statement that AMP "called" "days of resistance" to "UNLV's SJP Chapters." *Id*. ¶ 123. He further asserts that "Defendants and UNLV" "see themselves as part of" "the same movement that terrorizes Jewish students at UNLV and continues to attack and terrorize them

---

[8] AMP presumes this refers to Hamas' terrorist attack in Israel on that date in 2023, though at this point in his Complaint Plaintiff has yet to allege any facts about that event. Plaintiff likely relies on this Court's general familiarity with world events, though the pleadings do not make clear what specifically Plaintiff refers to.

[9] Plaintiff fails to identify these individuals or their roles. AMP presumes based on Google searches of the names that they are believed to be leaders of Hamas and Iran.

to this day." *Id.* ¶ 136. Plaintiff next makes many more unsupported conclusions: "Defendants have openly created a racially hostile environment where Jewish students are and were subjected to repeated racial slurs and threats and being shamed and humiliated on the basis of their race; " "Defendants" provide assistance to Hamas "through their propaganda at UNLV" that is "material, critical, systematic, and of significant monetary value; " and "Jewish students on campus have been forced to disavow an integral component of their Jewish identity or be denied the same rights and opportunities enjoyed by other members of the campus community." *Id.* ¶¶ 139-143. The remainder of the allegations do not relate to AMP, and AMP therefore does not describe them here.

### III.    STANDARDS OF REVIEW

**A.    Federal Rule of Civil Procedure 12(b)(2)**

Plaintiffs bear the burden of demonstrating that courts have jurisdiction over the defendant. *My Daily Choice v. Hunter*, No. 2:20-cv-00809-APG-DJA, 2020 U.S. Dist. LEXIS 134946, at *4 (D. Nev. July 30, 2020). Courts review plaintiffs' pleadings and affidavits to determine whether plaintiffs meet their *prima facie* showing of jurisdictional facts sufficient to survive a motion to dismiss. *Id.* at *4-5. When defendants offer evidence controverting allegations, courts may only take the uncontroverted allegations as true when evaluating jurisdiction. *Id.* at *5. Courts may consider defendants' controverting evidence about jurisdiction. *Id.* Courts violate due process if they issue judgment against parties over which they lack jurisdiction. *Never Too Hungover, LLC v. Drinkaid LLP*, No. 2:23-cv-01347-APG-EJY, 2023 U.S. Dist. LEXIS 199425, at *2 (D. Nev. Nov. 6, 2023).

Federal courts may exercise personal jurisdiction over a defendant to the extent authorized by the state's jurisdictional statute. *Issac v. Circle K*, No. 2:13-cv-02283-APG-CWH, 2014 U.S. Dist. LEXIS 134356, at *1 (D. Nev. Jan. 24, 2014). In Nevada, the state's long-arm statute reaches only as far as is consistent with the Constitution of Nevada and the U.S. Constitution. *Id.* at *2. Courts may only exert personal jurisdiction over a non-resident defendant where the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

The minimum contacts analysis further bifurcates into specific and general jurisdiction. Where an asserted cause of action arises from the defendant's contacts with the forum state, courts review whether

1   the defendant's contacts may support specific jurisdiction. *Id.* When a claim does not relate to the

2   defendant's contacts with the forum state, courts must analyze whether they may exercise general

3   jurisdiction. *Id.* Courts may exercise general jurisdiction when the defendant's contacts with a forum state

4   are so "continuous and systematic" that the defendant is "essentially at home" in the state; for

5   corporations, general jurisdiction is generally limited to two locations: the corporation's place of

6   incorporation, and its principal place of business. *Id.* at *3. Plaintiff correctly acknowledges AMP is

7   incorporated in California, with its principal place of business in Virginia. Doc. 79 ¶ 14.

8   **B.    Federal Rule of Civil Procedure 12(b)(6)**

9       To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must contain

10  sufficient factual allegations that, if accepted as true, state a plausible claim for relief. Claims are facially

11  plausible when a plaintiff pleads factual content that allows the court to draw the reasonable inference

12  that the defendant could be liable for the misconduct alleged, if those allegations ultimately prove true.

13  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged in a complaint "must be enough to raise a

14  right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The

15  complaint "must provide more than mere labels and conclusions," or a "formulaic recitation of the

16  elements of a cause of action." *Thomas v. Harroun*, 2:24-cv-00345-APG-MDC, 2024 U.S. Dist. LEXIS

17  172163, at *3 (D. Nev. Sept. 24, 2024). Courts need not apply the presumption of truth to "mere

18  conclusions." *Id.* (citing *Iqbal*, 556 U.S. at 679). Plaintiffs must support legal conclusions with factual

19  allegations. *Id.* Courts apply "judicial experience and common sense" to the "context-specific task" of

20  determining whether a complaint states a plausible claim for relief. *Id.* Courts may dismiss claims based

21  on "fanciful factual allegations" as legally untenable. *Id.* at *4 (citing *Neitzke v. Williams*, 490 U.S. 319,

22  327 (1989)).

23  **C.    The Anti-Terrorism Act, 18 U.S.C. § 2333(d)**

24      The Anti-Terrorism Act ("ATA") pled in Plaintiff's First Claim for Relief, creates a cause of

25  action for U.S. nationals injured by an act of international terrorism against, in relevant part, "any person

26  who aids and abets, by knowingly providing substantial assistance" to a designated foreign terrorist

27  organization that committed the act of international terrorism. 18 U.S.C. § 2333(d)(2). U.S. national

28  plaintiffs must first establish they were "injured in his or her person, property, or business by reason of

an act of international terrorism." *Id*. § 2333(a). Congress defines an act of international terrorism as "violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State." *Id*. § 2331(1)(A). The violent or dangerous act must "appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping." *Id*. § 2331(1)(B). Finally, the relevant act of international terrorism must "occur primarily outside the territorial jurisdiction of the United States." *Id*. § 2331(1)(C).

To establish aiding and abetting liability under the ATA, plaintiffs must allege their injury "[arose] from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization," and that the alleged aider/abettor "knowingly provided substantial assistance" to that act. *Id*. § 2333(d). A plaintiff must establish that the party alleged to have aided or abetted took "some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). Plaintiffs also bear the burden to establish that defendants were "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Leisrael v. Educ. For a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023). The defendant must "knowingly and substantially assist the principal violation." *Id.* Finally, Plaintiffs must allege facts that show the relevant assistance was both substantial and significantly enhanced the terrorist organization's ability to carry out those activities. *Taamneh*, 598 U.S. at 495 (finding insufficient the claim that a defendant assisted a "transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it").

## IV.    ARGUMENT

### A.    Plaintiff Fails to Establish This Court's Jurisdiction Over AMP

This Court possesses no basis to exercise personal jurisdiction over AMP. AMP is not subject to general jurisdiction in the state of Nevada, and Plaintiff fails to plead facts about AMP's contacts with Nevada that could establish this Court's specific jurisdiction over AMP. Therefore, exercise of jurisdiction by this court would violate due process requirements. *Never Too Hungover, LLC*, 2023 U.S.

1  Dist. LEXIS 199425, at *2.

2       Once a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears

3  the burden to establish how jurisdiction is proper. *My Daily Choice*, 2020 U.S. Dist. LEXIS 134946, at

4  *4; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Courts review the pleadings and

5  any affidavits to determine whether jurisdiction exists, taking only uncontroverted facts as true. *My Daily*

6  *Choice*, 2020 U.S. Dist. LEXIS 134946, at *5. Nevada's long-arm jurisdictional statute allows

7  jurisdiction to the extent consistent with Nevada's Constitution and the U.S. Constitution. *Issac*, 2014

8  U.S. Dist. LEXIS 134356, at *2. Constitutional due process requires that plaintiffs establish how each

9  defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not

10  offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316

11  (1945).

12       Courts consider minimum contacts through the lens of general and specific jurisdiction. Where

13  defendants are "essentially at home" in a state through "continuous and systematic" contacts, courts may

14  exercise general jurisdiction over that defendant. *Issac*, 2014 U.S. Dist. LEXIS 134356, at *2. For

15  corporations, general jurisdiction usually only exists in the state where the entity is incorporated and the

16  state in which it has its principal place of business. *Id*., at *3.  To determine whether specific jurisdiction

17  exists, courts review whether the defendant has "sufficient minimum contacts with [the forum state]

18  arising from, or related to" the cause of action. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

19  801 (9th Cir. 2004). The Ninth Circuit applies a three-prong test to this analysis: "(1) the non-resident

20  defendant must purposefully direct his activities or consummate some transaction with the forum or

21  resident thereof; or perform some act by which he purposefully avails himself of the privilege of

22  conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim

23  must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise

24  of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id*. at 802.

25  Plaintiffs bear the burden to establish the first two prongs of the test; if they do so, the burden shifts to

26  the defendant to show how exercise of jurisdiction would be unreasonable. *Id*; *see also Burger King,*

27  *Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

28       AMP is incorporated in California and with its principal place of business in Virginia. Doc. 79 ¶

8

14. Plaintiff shows no basis by which this Court could properly exercise general jurisdiction over AMP. This Court's analysis therefore turns to whether it may properly exercise specific jurisdiction over AMP in this matter. It cannot. Plaintiff fails to plead any facts that show AMP "purposefully availed itself of the privilege of conducting activities in [Nevada], or purposefully directed its activities toward [Nevada]." *Schwarzenegger*, 374 F.3d at 802. Plaintiff pleads no facts about any activities of AMP in Nevada, like whether it enters into contracts in Nevada or distributes goods or services in Nevada, sufficient to show how AMP may have availed itself of the privilege and benefit of the laws of Nevada. Because Plaintiff does not plead any facts asserting AMP's contacts with Nevada, Plaintiff's claim necessarily cannot arise out of any AMP contacts with Nevada. Plaintiff fails to present even a *prima facie* showing of this Court's jurisdiction over AMP.

Were this Court to find otherwise, any exercise of this Court's jurisdiction over AMP does not "comport with fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. AMP has no contact with Nevada sufficient that they would "reasonably anticipate being haled into court" in Nevada. *Burger King*, 471 U.S. at 474. Plaintiff's allegations, to the extent they relate to any location, address AMP's actions at its principal place of business in Virginia. *See generally* Doc. 79 ¶¶ 14, 60. Based on Plaintiff's allegations, AMP cannot reasonably have foreseen being subject to the jurisdiction of a Nevada court. AMP therefore requests this Court decline to exercise jurisdiction against AMP, and dismiss Plaintiff's claims against it.

**B.    Plaintiff Fails to State a Claim Under the ATA**

Even if this Court determines a basis for jurisdiction over AMP, Plaintiff's ATA claim fails as a matter of law because Plaintiff fails to state a claim against AMP upon which relief can be granted. Plaintiff does not allege the prerequisite that he is a U.S. national; this alone is fatal. 18 U.S.C. § 2333(a) ("Any national of the United States…"). Even if he did, Plaintiff fails to allege harm to his "person, property, or business" by any act of international terrorism. *Id.* Plaintiff further fails to allege AMP substantially assisted Hamas in any way, least of all with Hamas' October 7 terrorist attack in Israel. Plaintiff's ATA claim against AMP therefore fails because he fails in every respect to plead facts supporting the required elements of this claim.

1.    <u>Plaintiff fails to allege personal harm by an act of international terrorism</u>

To state a claim under the ATA, a plaintiff must preliminarily allege "injur[ies] in his or her person, property, or business by reason of an act of international terrorism." *Id.* Plaintiff fails to do that. Plaintiff's Second Amended Complaint never clearly states any harm he alleges he suffered, nor what act of international terrorism he claims caused any direct injuries to him. *See generally* Doc. 79 ¶¶ 245-258. This Court well knows that complaints that merely recite the elements of a cause of action and legal conclusions cannot withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. Plaintiff's ATA claim against AMP therefore fails once again as a matter of law.

Three elements comprise an act of "international terrorism" as defined by the statute. 18 U.S.C. § 2331(1). First, the act must be a violent act or one dangerous to human life that violates the laws of the United States, or would be a criminal violation if committed within the jurisdiction of the United States. *Id*. § 2331(1)(A). Second, the action must "appear to be intended" to intimidate or coerce a civilian population, or a policy or conduct of a government. *Id*. § 2331(1)(B). Finally, the act must "occur primarily outside the territorial jurisdiction of the United States." *Id*. § 2331(1)(C). Plaintiff relies on Hamas' October 7, 2023, terrorist attacks in Israel, as well as the ongoing conflict between Israel and Hamas. Doc. 79 ¶ 246. AMP does not challenge that Hamas' actions constitute acts of international terrorism under the definition of the statute. AMP does challenge, though, whether Plaintiff suffered any harm in his "person, property, or business" due to Hamas' actions, either on October 7 or thereafter. All "direct harm" Plaintiff alleges resulted from actions he claims other parties took within the United States, including allegedly being terminated from his job at the UNLV library, facing hostile and discriminatory conduct from UNLV officials and other students he characterizes as "pro-Palestine," being "verbally assaulted" by individuals from the Nevada Palestine Liberation group. *Id*. ¶¶ 245, 246, 247, 255, 256. Plaintiff's alleged harms did not arise "by reason of" international terrorism, and reach far beyond Congress' express intended use of the ATA. *Fields v. Twitter Inc.*, 881 F.3d 739, 749 (9th Cir. 2018) (characterizing recovery beyond direct causation as a troubling overreach). Plaintiff alleges no underlying torts or crimes against AMP at all—much less that he was harmed by a violent or dangerous act that occurred outside of the United States as required by the definition in the ATA—and thus dismissal is warranted. *See Jan v. People Media Project*, No. 3:24-CV-05553-TMC, 2025 WL 359009, at *4 (W.D.

10

Wash. Jan. 31, 2025) (Dismissing aiding and abetting claim even though Defendants did "not contest that the underlying torts committed against [Plaintiff] by Aljamal and Hamas—the kidnapping and imprisonment of a civilian hostage—are … actionable[.]")

> 2.    Plaintiff alleges no knowing and substantial assistance to Hamas by AMP

Plaintiff's ATA claim against AMP also fails as a matter of law because he fails to plead facts that could show AMP knowingly provided substantial assistance to Hamas. Congress amended the ATA in 2016 to include secondary liability for any person who "aids and abets, by knowingly providing substantial assistance" to a designated foreign terrorist organization. 18 U.S.C. § 2333(d). Plaintiff brings his claim under this secondary liability theory. Doc. 79 ¶239 ("Violation of the Anti-Terrorism Act, 18 U.S.C. § 2333(d)"). Plaintiff fails to sufficiently state a claim for aiding and abetting liability against AMP because he fails to allege AMP had any advance knowledge of Hamas' October 7, 2023, attacks. Plaintiff also fails to allege AMP provided any assistance to Hamas, much less "substantial assistance," under the Supreme Court and Ninth Circuit's governing case law.

The Supreme Court limits aiding and abetting liability under the ATA to "conscious, voluntary, and culpable participation in another's wrongdoing." *Taamneh*, 598 U.S. at 493; *see also Copeland v. Twitter, Inc*, No. 18-17327, 2024 U.S. App. LEXIS 7806, at *4 (9th Cir. Apr. 1, 2024) (incorporating the standard of knowing, substantial, and culpable assistance to affirm dismissal of an ATA claim). Similarly, the Ninth Circuit requires plaintiffs to plead facts that show the defendant's assistance directly caused the plaintiff's injury. *Fields*, 881 F.3d at 749. Overbroad liability beyond truly culpable conduct would allow for "one person [to] be made a trespasser and even a felon against his or her consent" by the mere "overheated zeal of another." *Taamneh*, 598 U.S. at 489. A plaintiff must therefore show three required elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Leisrael v. Educ. for A Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023) (reciting the standard set by the ATA amendments and affirming dismissal of the claims asserted).

Plaintiff fails to allege facts sufficient to support any of these three elements. As explained above, Plaintiff fails to allege facts to show he suffered any injury from Hamas' October 7 terrorist attack.

Plaintiff also fails to allege AMP was aware of any "role as part of an overall illegal or tortious activity." *Leisrael*, 66 F.4th at 1016. Plaintiff merely provides the conclusory assertions that "Defendants have provided substantial assistance to Hamas by acting as its propaganda wing in the United States" and "Defendants knowingly provide substantial assistance to Hamas through their services." Doc. 79 ¶¶ 16, 65, 90, 110, 114, 127, 139, 168, 242, 249, 253. Not only do these allegations fail to state a claim against AMP specifically, they also fail to show that AMP had any awareness of any role it supposedly played in Hamas' tortious activities. Plaintiff alleges that "Defendants confirm not only that they are aware that their propaganda and incitement activities support Hamas but also that they perceive themselves as 'PART of' Hamas's 'Unity Intifada' – the terror regime that has damaged Plaintiff." *Id.* ¶¶ 101, 249. Plaintiff fails, however, to tie this conclusion to any awareness by AMP. Even Plaintiff's allegations that AMP acted as Hamas' propaganda wing fails to satisfy Plaintiff's burden to connect AMP directly with any specific act of terrorism that allegedly injured Plaintiff. *Taamneh*, 598 U.S. at 497, 503. Plaintiff instead asks this Court to make irrational assumptions based on legally protected speech and actions by AMP, that occurred wholly in the United States, to fill Plaintiff's pleading deficiencies. The law does not permit that. *See Jan*, 2025 WL 359009, at *6-*11 (Dismissing aiding and abetting claims based on allegations that U.S. organization paid alleged Hamas operative to write "propaganda" articles while he simultaneously held Plaintiff hostage in Gaza after October 7, 2023).

Plaintiff also fails to allege facts sufficient to show AMP provided assistance sufficient to meet the "substantial" standard of the test. A generalized role, that fails to allege the defendant was "one in spirit" with the terrorist organization, does not suffice. *See Leisrael v. Educ. for A Just Peace in the Middle E.*, 530 F. Supp. 3d 8, 15 (D.D.C. 2021) (collecting cases). Plaintiff in this case alleges no more than that AMP "is a grassroots organization dedicated to advancing the movement for justice in Palestine by educating the American public about Palestine and its rich cultural, historical, and religious heritage." Doc. 79 ¶ 51, 70. That violates no law in the United States. Plaintiff concludes that AMP "operate[s] a propaganda machine for Hamas" and vaguely that "Defendants do not just parrot Hamas's talking points." *Id.* ¶ 127. These conclusory statements fail to sufficiently state a claim that AMP intended "to make [] succeed" any of Hamas' actions, either on October 7, 2023, or afterward, or show substantial assistance. Plaintiff's ATA claim against AMP fails on every element and therefore warrants dismissal.

1    **C.    Plaintiff Fails to State a Claim for Conspiracy (Ninth Cause of Action),**

2         Plaintiff's state law conspiracy claim is far from clear, but it is clear that it fails.

3         To properly plead a claim for civil conspiracy, a plaintiff must set forth facts showing: (1) the

4    commission of an underlying tort; and (2) an agreement between the defendants to commit that tort.

5    *Rostami v. BAC Home Loans Servicing, L.P.*, No. 2:11-CV-02121-KJD, 2013 WL 100946, at *3 (D. Nev.

6    Jan. 7, 2013) (citing *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001)). "Mere recitals of the elements of

7    a cause of action, supported only by conclusory statements, are not sufficient" to establish a claim. *Iqbal*,

8    556 U.S. at 678; *Warren v. Dollar Tree*, No. 2:23-cv-01377-APG-EJY, 2024 U.S. Dist. LEXIS 6692, at

9    *8 (D. Nev. Jan. 11, 2024). Indeed, under some circumstances, "the [conspiracy] cause of action must be

10   pled with particularity pursuant to Federal Rule of Civil Procedure 9(b) including specificity as to 'the

11   manner in which a defendant joined in the conspiracy and how he participated in it.'" *Rostami*, 2013 WL

12   100946, at *3 (quoting *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D.Nev. 1984)). At the very least, the

13   Second Amended Complaint must "describe the defendants' actions adequately enough to put the

14   defendants on notice of the particular misconduct that constitute the civil conspiracy claim.

15   *Chocolate Magic Las Vegas LLC v. Ford*, 337 F. Supp. 3d 950, 960 (D. Nev. 2018).

16        All Plaintiff alleges is:

17        Defendants AMP, SJP-UNLV, NSJP were a combination of two or more persons who, by
          concerted action, in conjunction with their actions and conduct in following the directives
18        and instructions of Hamas, intended to accomplish an unlawful objective of furthering the
          terrorist organization of Hamas and antisemitic conduct at UNLV for the purpose of
19        harming Jewish students at UNLV, such as Plaintiff. As a result of said conduct, Plaintiff
          suffered damages.
20

21   (Doc. 79 ¶ 363.) Such allegations are not only fantastical and implausible, they are merely conclusory:

22   Plaintiff fails to allege the "particular misconduct" he claims is "concerted action." Thus, his claim fails.

23   *Compare Chocolate Magic*, 337 F. Supp. 3d 950, 960 (D. Nev. 2018) (plaintiff "provides an approximate

24   date when the conspiracy began, describes behavior that is plausibly synchronized and motivated by a

25   desire to harm [the plaintiff] and when appropriate provides descriptions of individualized behavior. ")

26        Plaintiff's ATA allegations do not save his conspiracy claim; instead, his claim that AMP (or

27   anyone else) committed a tort against him under the ATA cannot survive dismissal, and therefore his

28   derivative conspiracy claim cannot survive dismissal. Nor has Plaintiff alleged any agreement between

1    AMP and the other defendants, much less with the particularity required by FRCP 9(b).

2    **D.      This Court Should Dismiss the Second Amended Complaint With Prejudice.**

3         Plaintiff has had multiple bites at the apple, and still has not adequately pled facts that establish

4    jurisdiction or any cognizable claim as required by Rule 8(a). Plaintiff also did not heed this Court's

5    directives in its order on the prior motion to dismiss, which made clear that, *inter alia*, Plaintiff could

6    only amend his ATA claim "if he is able to plausibly allege additional facts to support it." Doc. 71 p.11:5-

7    8. The Court also specifically advised Plaintiff that the First Amended Complaint included extensive

8    irrelevant material. *Id.* p. 15:22-p.16:7. Instead of relevant, plausible allegations, Plaintiff fills his page

9    with irrelevancies; where he does assert "facts" about AMP he only makes fantastical allegations and

10   conclusory claims that are akin to "the-defendant-unlawfully-harmed-me accusation[s]" that necessarily

11   fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12        As this evidences, Plaintiff not only has not sufficiently alleged the basis for jurisdiction or any

13   claim, he cannot do so—and failed to comply with this Court's directives in amending. Thus, dismissal

14   with prejudice is warranted. *See Friedman v. Canteen Vending*, No. 3:09-CV-0403-LRH-VPC, 2011 U.S.

15   Dist. LEXIS 38733, at *7 (D. Nev. Apr. 7, 2011) (denying leave to amend where it was clear amendment

16   could not cure jurisdictional deficiencies); *see also Copeland*, 2024 U.S. App. LEXIS 7806, at *4

17   (denying leave to amend where plaintiffs fail to allege a required element of an ATA claim).

18                              **V.      <u>CONCLUSION</u>**

19        Exactly as he failed before, Plaintiff fails to plead facts that could establish jurisdiction over AMP,

20   or liability for AMP under the ATA. Plaintiff fails to plead that he suffered any injury from an act of

21   international terrorism, or that AMP knowingly and substantially assisted in any act of international

22   terrorism. AMP operates legally in the United States as a wholly domestic nonprofit in good standing

23   with the U.S. government. It fulfills its mission to inform and educate Americans about Palestine and

24   Palestinian culture and history. Plaintiff alleges no more than that. Reliance on conclusory statements and

25   irrational assumptions cannot compensate for Plaintiff's legal failures. This Court already warned

26   Plaintiff that "it is difficult to imagine what facts might show that he suffered injuries from an act of

27   international terrorism that the defendants substantially assisted"—Plaintiff's Second Amended

28   Complaint does not imagine any sufficient facts either. Instead, Plaintiff shuffles the sequence of but still

recites the exactly identical allegations he previously alleged against AMP under the ATA, and which this Court already ruled deficient. For the same reasons, the derivative and conclusory conspiracy claim also fails.

Therefore, AMP respectfully asks this Court to dismiss Plaintiff's claims against AMP in full, and with prejudice.

Dated: August 1, 2025

Respectfully submitted,

/s/ *Margaret A. McLetchie*
Christina A. Jump (*admitted pro hac vice*)
Email: cjump@clcma.org
Samira Elhosary (*admitted pro hac vice*)
Email: selhosary@clcma.org
Constitutional Law Center
for Muslims in America*
100 N. Central Expy, Suite 1010
Richardson, Texas 75080
Telephone: 972-915-2507

*Counsel for Defendant AJP Educational
Foundation, Inc.*

*\*The Constitutional Law Center for Muslims in
America is the legal division of the Muslim Legal
Fund of America*


Margaret A. McLetchie (NV Bar No. 10931)
Email: maggie@nvlitigation.com
Leo S. Wolpert (NV Bar No. 12658)
Email: leo@nvlitigation.com
McLetchie Law
602 S. 10th St.
Las Vegas, NV 89101
Telephone: 702-728-5300
*Local Counsel for Defendant AJP Educational
Foundation, Inc.*

**CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on this 1st day of August 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


            */s/ Leo S. Wolpert*
            An Employee of McLetchie Law