CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T. S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1902
Facsimile: (702) 718-3213
Emails: peterson@aclunv.org
        jsmith@aclunv.org

*Attorneys for Defendant Students for Justice in Palestine, UNLV*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COREY GERWASKI,<br><br>             Plaintiff,<br><br>   vs.<br><br>STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; KEITH WHITFIELD, individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE OF PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX,<br><br>                  Defendants. | Case No.: 2:20-cv-01875-JCM-EJY<br><br><br>**DEFENDANT STUDENTS FOR JUSTICE IN PALESTINE – UNLV'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660**<br><br>**[ORAL ARGUMENT REQUESTED]** |

Defendant Students for Justice in Palestine, University of Nevada, Las Vegas ("Students for Justice in Palestine – UNLV" or "SJP UNLV") moves to dismiss Plaintiff's civil conspiracy claim against SJP UNLV pursuant to NRS 41.660, which is Nevada's Anti-SLAPP statute. SJP UNLV also moves for attorney fees, costs, and any monetary award it is entitled to under NRS 41.670(1)(b).

Dated: August 4, 2025

ACLU OF NEVADA

/s/ *Jacob T. S. Valentine*
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T. S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 366-1331
Emails: peterson@aclunv.org
          jvalentine@aclunv.org

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................................I

TABLE OF AUTHORITIES ......................................................................................... II

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

I.     INTRODUCTION ................................................................................ 1

II.    FACTS AND PROCEDURAL HISTORY ...................................................... 2

    A.   October 7, 2023, attack by Hamas and the Israeli response............................ 2

    B.   The war's impact on the American public, media, and elections ................................. 3

    C.   SJP UNLV's advocacy and Plaintiff's related state law claim.................................... 4

    D.   Procedural posture ...................................................................... 6

III.   LEGAL STANDARD ........................................................................ 7

    A.   Defendant's initial burden ................................................................ 7

    B.   Plaintiff's subsequent burden ............................................................. 8

IV.   ARGUMENT ................................................................................... 9

    A.   SJP UNLV's communications at issue are entitled to protection. ............................. 10

       1.   SJP UNLV's social media posts and protests satisfy NRS 41.637(4). ..................... 10

       2.   SJP UNLV's communications during its meeting with President Whitfield are protected under NRS 41.637(1) and NRS 41.637(2). ........................................... 12

       3.   SJP UNLV's communications were all made in good faith. .................................. 13

    B.   Gerwaski cannot show a probability of success on his civil conspiracy claim........... 14

       1.   Gerwaski fails to adequately state any viable claim of civil conspiracy against SJP UNLV...................................................................................... 14

       2.   First Amendment bar ................................................................. 17

CONCLUSION ............................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................ 14, 15

*Barrett v. Rosenthal*, 40 Cal. 4th 33, 51 Cal. Rptr. 3d 55, 146 P.3d 510 (Cal. 2006) ....................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ........................................ 8

*Carey v. Brown*, 447 U.S. 455, 100 S. Ct. 2286 (1980) ................................................. 17

*Coleman v. Telles*, No. 2:24-cv-00930-APG-MDC, 2025 U.S. Dist. LEXIS 21413 (D. Nev. Feb. 5, 2025) .......................................................................................................... 8

*Compare Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) .......................................................................................................... 15

*Flowers v. Carville*, 266 F. Supp. 2d 1245 (D. Nev. 2003) ............................................. 15

*Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801 (2014) ............................ 9, 16

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ................................................ 8

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .............................................. 17

*Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 984 P.2d 164 (Nev. 1999) .......................................................................................................... 15

*Smith v. Craig*, 2020 U.S. Dist. LEXIS 38774 (D. Nev. March 4, 2020) ................................ 8, 13

*Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011) ............................................. 17, 18

*Stark v. Lackey*, 136 Nev. 38, 458 P.3d 342 (2020) ............................................. 7, 11, 13

*Vested Hous. Grp., Ltd. Liab. Co. v. Principal Real Estate Inv'rs, Ltd. Liab. Co.*, 648 F. App'x 646, (9th Cir. 2016) .................................................................................................. 15

*Warren v. Dollar Tree*, No. 2:23-cv-01377-APG-EJY, 2024 U.S. Dist. LEXIS 6692 (D. Nev. Jan. 11, 2024) ......................................................................................................... 14

*Watson v. City of Henderson*, Case No: 2:20-cv-01761-APG-BNW, 2021 U.S. Dist. LEXIS 182001 (D. Nev. Sept. 23, 2021) ........................................................................................ 9

*Williams v. Lazer*, 137 Nev. 437, 495 P.3d 93 (2021) ............................................... 13, 14

*Wynn v. AP*, 555 P.3d 272 (Nev. 2024) ................................................................ 8, 13

**Statutes**

NRS 41.467(4) ........................................................................................... 10

NRS 41.637 ................................................................................ 7, 10, 12, 13

NRS 41.637(1) ...................................................................................... 7, 12

NRS 41.637(2) ...................................................................................... 7, 12

NRS 41.637(4) .................................................................................. 7, 10, 12

NRS 41.650 ............................................................................................... 7

NRS 41.660 ................................................................................ 7, 10, 13, 18

NRS 41.660(3)(a) ....................................................................................... 7

NRS 41.660(3)(b) ................................................................................................................ 7

NRS 41.670 .................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 8, 13

**Other Authorities**

Ashley Wu, *The Changing Map of Palestinian Recognition* (July 30, 2025) .................................... 3

*Biden administration notifies Congress of planned $8 billion in weapons sale to Israel*, PBS News
(January 4, 2025) ........................................................................................................ 4

David Gritten and Graeme Baker, *Gaza experiencing 'real starvation', Trump says* (July 28, 2025) 3

Erica Chenoweth, et al., *Protests in the United States on Palestine and Israel, 2023-2024*, Social
Movement Studies, 1–14 (2024) ................................................................................... 3

*Israel-Gaza war: A timeline of key events*, Reuters (March 18, 2025) ..................................... 2

*Israel-Hamas War*, AP News ......................................................................................... 3

Laura Silver, et al. *Majority in U.S. say Israel has valid reason for filing; fewer say the same about
Hamas*, Pew Research Center (March 21, 2024) ............................................................ 3

*Military Assistance to Israel*, United States Department of State (March 1, 2025) ......................... 4

Patrick Kingsley, *What to Know about Famine, Hunger and Access to Food in Gaza* (August 1,
2025) ....................................................................................................................... 3

Sam Mednick and Cara Anna, *'Worst-case scenario of famine' is happening in Gaza, food crisis
experts warn* (July 29, 2025) ...................................................................................... 3

*Statement by Secretary of Defense Lloyd J. Austin III Marking One Year Since Hamas's October
7th Terrorist Assault on the State of Israel*, United States Department of Defense (October 7,
2024), ....................................................................................................................... 2

Students for Justice In Palestine, Organizations, UNLV Involvement Center, ................................ 4

*Top Headlines on Israel and Hamas at war*, Reuters ........................................................... 3

*UN Commission finds war crimes and crimes against humanity in Israeli attacks on Gaza health
facilities and treatment of detainees, hostages*, United Nations Human Rights Council (October
10, 2024) .................................................................................................................. 2

*UNRWA situation report #168 on the humanitarian crisis in the Gaza strip and the West Bank,
including East Jerusalem*, United Nations Relief and Works Agency for Palestine Refugees in
the Near East (March 15, 2025) ................................................................................... 2

Zeke Miller & Joey Cappelletti, *Mideast conflict looms over US presidential election as Harris and
Trump jostle for an edge*, AP News (October 21, 2024 ................................................... 4

III

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.    INTRODUCTION

Plaintiff Gerwaski sues SJP UNLV to punish SJP UNLV for its political speech. His motivation is obvious from the allegations in his complaint. He does not accuse SJP UNLV of engaging in violence or vandalism. He does not accuse SJP UNLV of threatening or doing anything else to him. Rather, Gerwaski is angry that SJP UNLV criticizes Israel and advocates to end Israel's military campaign harming the Palestinians living in Gaza, and he wants to stop the organization's social media activity, protests, and petitions to UNLV's leadership.

Gerwaski has the right to disagree with SJP UNLV. He has the right to argue that the organization's statements are antisemitic. He has the right to protest the organization's advocacy and claim that SJP UNLV's efforts benefit bad actors. He does not have the right to sue SJP UNLV for engaging in nonviolent political advocacy he is offended by.

The Court already determined that Gerwaski's IIED claim in his First Amended Complaint violated Nevada's anti-Strategic Lawsuits Against Public Participation ('anti-SLAPP") laws. Order Granting Defendants AJP Educational Foundation and SJP-UNLV's Motions to Dismiss, ECF No 71 (May 5, 2025), pg. 22. The Court also dismissed Gerwaski's claim under the Anti-Terrorism Act, but Gerwaski was provided with the opportunity to amend and refile that claim. *Id.* On June 3, 2025, Gerwaski filed a Second Amended Complaint not only bringing a claim under the ATA but also a new claim for civil conspiracy under Nevada common law. *See* Second Amended Complaint, ECF No. 79 (June 3, 2025) ("SAC").

Although the Court had pointed out numerous deficiencies in his claims and factual allegations in dismissing his First Amended Complaint, Gerwaski fails to remedy these deficiencies

---

[1] To the extent relevant, Defendant SJP UNLV incorporates its points and authorities offered in support of its Motion to Dismiss filed August 1, 2025, in support of this motion as well. Defendant Students for Justice in Palestine UNLV's Motion to Dismiss Second Amended Complaint (August 1, 2025), ECF No. 94.

in his Second Amended Complaint, leaving his new civil conspiracy claim unviable. His claim for civil conspiracy is premised upon the same allegations as his claim under IIED since Gerwaski must show he was actually harmed by the alleged conspiracy. The communications Gerwaski puts at issue, i.e. SJP UNLV's social media posts, protests, and petitions to UNLV, are still precisely the type of communications entitled to anti-SLAPP protections, and he never alleges that these communications were false and made with knowledge of falsity. *See* SAC. Gerwaski's Second Amended Complaint has no probability of success as Gerwaski has failed to adequately plead any claim against SJP UNLV including his civil conspiracy claim, and his claims are generally barred by the First Amendment.

Nevada's anti-SLAPP provisions require this Court to dismiss Gerwaski's civil conspiracy claim. They also entitle SJP UNLV to fees, costs, and other relief as appropriate.

## II.    FACTS AND PROCEDURAL HISTORY

### A.  October 7, 2023, attack by Hamas and the Israeli response

On October 7, 2023, Hamas attacked the nation of Israel, killing approximately 1,200 people and taking 251 hostages.[2] The Israeli government responded by invading Gaza.[3] According to the United Nations, 48,503 Palestinians have been killed, 111,927 injured, and 1.9 million displaced due to the conflict as of March 15, 2025.[4] The U.N. has also described the situation in Gaza as a humanitarian crisis and has accused both Hamas and Israel of war crimes related to the conflict.[5]

---

[2] *Statement by Secretary of Defense Lloyd J. Austin III Marking One Year Since Hamas's October 7th Terrorist Assault on the State of Israel*, United States Department of Defense (October 7, 2024), available at https://www.defense.gov/News/Releases/Release/Article/3927710/statement-by-secretary-of-defense-lloyd-j-austin-iii-marking-one-year-since-ham/ (last visited March 18, 2025).

[3] *Israel-Gaza war: A timeline of key events*, Reuters (March 18, 2025), available at https://www.reuters.com/world/middle-east/major-moments-israel-gaza-war-2025-01-15/ (last visited March 18, 2025).

[4] *UNRWA situation report #168 on the humanitarian crisis in the Gaza strip and the West Bank, including East Jerusalem*, United Nations Relief and Works Agency for Palestine Refugees in the Near East (March 15, 2025), available at https://www.unrwa.org/resources/reports/unrwa-situation-report-163-situation-gaza-strip-and-west-bank-including-east-jerusalem (last visited March 18, 2025).

[5] *Id.; UN Commission finds war crimes and crimes against humanity in Israeli attacks on Gaza health facilities and treatment of detainees, hostages*, United Nations Human Rights Council (October 10,

Reports from credible news sources recognize that the military campaign in Gaza has caused widespread starvation, and even President Donald Trump has acknowledged the famine in his own fashion.[6] In response to this growing humanitarian crisis, multiple European countries either recognized Palestine as an independent country for the first time or are considering doing so in the near future.[7]

### B. The war's impact on the American public, media, and elections

The American public immediately had a strong, visceral reaction to the conflict, and while Americans were unified in their condemnation of Hamas's October 7th attack, Israel's subsequent military actions polarized the nation.[8] Since the conflict's instigation, American news media has provided daily coverage.[9] Protests have erupted across the country both on and off university campuses criticizing Israel's conduct in Gaza, spurring widespread backlash including counterprotests in favor of Israel.[10] Both Presidents Biden and Trump repeatedly asserted their

---

2024), available at https://www.ohchr.org/en/press-releases/2024/10/un-commission-finds-war-crimes-and-crimes-against-humanity-israeli-attacks (last visited March 18, 2025).

[6] Sam Mednick and Cara Anna, *'Worst-case scenario of famine' is happening in Gaza, food crisis experts warn* (July 29, 2025), available at https://apnews.com/article/mideast-wars-gaza-famine-israel-warning-d14ca629a68f7bdefe9c2fcc67d62224 (last visited August 4, 2025); Patrick Kingsley, *What to Know about Famine, Hunger and Access to Food in Gaza* (August 1, 2025), available at https://www.nytimes.com/article/israel-gaza-aid.html (las visited August 4, 2025); *see e.g.* David Gritten and Graeme Baker, *Gaza experiencing 'real starvation', Trump says* (July 28, 2025), available at https://www.bbc.com/news/articles/c62nr9rglm9o (last visited August 4, 2025) (quoting Donald Trump)

[7] Ashley Wu, *The Changing Map of Palestinian Recognition* (July 30, 2025), available at https://www.nytimes.com/2025/07/30/world/middleeast/palestinian-state-recognition-maps.html (last visited August 4, 2025).

[8] Laura Silver, et al. *Majority in U.S. say Israel has valid reason for filing; fewer say the same about Hamas*, Pew Research Center (March 21, 2024), available at https://www.pewresearch.org/2024/03/21/majority-in-u-s-say-israel-has-valid-reasons-for-fighting-fewer-say-the-same-about-hamas/ (discussing polling related to conflict, including the American public's reaction to Hamas's attack, perspective on Israel's military response, and emotional response to Gaza conflict) (last visited March 18, 2025).

[9] *See, e.g.*, *Top Headlines on Israel and Hamas at war*, Reuters (daily news stories provided by Reuters related to the Gaza conflict), available at https://www.reuters.com/world/israel-hamas/ (last visited March 15, 2025); *Israel-Hamas War*, AP News (daily news stories provided by AP News related to the Gaza conflict), available at https://apnews.com/hub/israel-hamas-war (last visited March 15, 2025).

[10] *See, e.g.* Erica Chenoweth, et al., *Protests in the United States on Palestine and Israel, 2023-2024*,

respective positions on the conflict, and both presidencies provided material aid to Israel's forces fighting in Palestine.[11] The war in Gaza and the Biden administration's response may have even determined the outcome of the 2024 American presidential election.[12]

### C.  SJP UNLV's advocacy and Plaintiff's related state law claim

SJP UNLV is a Registered Student Organization (RSO) on the UNLV campus.[13] The organization is "a diverse group of activists and organizers dedicated to advancing the cause for Palestinian justice and liberation by organizing community activities, educational events, and advocacy actions to build awareness, solidarity, and a network of community organizers."[14] Its constitution, contact information, faculty advisor, and student point of contact can be found on UNLV's website.[15]

Among his claims against SJP UNLV, Plaintiff Gerwaski seeks to hold SJP UNLV liable under Nevada's common law doctrine of civil conspiracy. SAC ¶¶ 362–368. Plaintiff relies on SJP

---

Social Movement Studies, 1–14 (2024). (reporting that Harvard Kennedy School's Crowd Counting Consortium recorded approximately 12,400 pro-Palestine protests and 2,000 pro-Israel protests between October 7, 2023, and June 7, 2024).

[11] *Biden administration notifies Congress of planned $8 billion in weapons sale to Israel*, PBS News (January 4, 2025), available at https://www.pbs.org/newshour/world/biden-administration-notifies-congress-of-planned-8-billion-weapons-sale-to-israel (last visited March 15, 2025); *Military Assistance to Israel*, United States Department of State (March 1, 2025) (expediting delivery of $4 billion in military assistance to Israel by the Trump administration), available at https://www.state.gov/military-assistance-to-israel/ (last visited March 15, 2025).

[12] Zeke Miller & Joey Cappelletti, *Mideast conflict looms over US presidential election as Harris and Trump jostle for an edge*, AP News (October 21, 2024); Sahil Kapur & Yamiche Alcindor, *'Uncommitted' leaders stand by 2024 strategy after Trump floats Gaza takeover*, NBC News (February 5, 2025), available at https://www.nbcnews.com/politics/donald-trump/uncommitted-leaders-stand-2024-strategy-trump-floats-gaza-takeover-rcna190782 (last visited March 15, 2024).

[13] *See, e.g.* Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited March 5, 2025); Exhibit A, Declaration of Alexa Hayden ("Hayden Decl."), ¶¶ 5; Exhibit B, Declaration of Matthew Mondschein ("Mondschein Decl."), ¶¶ 5.

[14] *See, e.g.* Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited March 5, 2025); *See* Hayden Decl., ¶¶ 7.

[15] *See, e.g.* Students for Justice In Palestine, Organizations, UNLV Involvement Center, *available at* https://involvementcenter.unlv.edu/organization/sjp (last visited March 5, 2025) (the student point of contact information is available under "Full Roster"); Hayden Decl., ¶¶ 9.

UNLV's communications, specifically social media posts, nonviolent protests, and petitions to UNLV's president as the basis for his claims against SJP UNLV. *See* SAC at ¶¶ 73, 79, 118, 122, 123, 206, 218 (social media posts); SAC at ¶¶ 93–95 (protests); SAC ¶¶ 214–217 (in person petition to President Whitfield); ECF No. 61-1 Ex. A, Sworn Declaration of Alexa Hayden ("Hayden Decl."), ¶¶ 24, 26, 31-33, 35, 37-38; ECF No. 61-2 Ex. B, Sworn Declaration of Matthew Mondschein ("Mondschein Decl."), ¶¶ 10-13. Every SJP UNLV communication cited by Gerwaski in his complaint relates to SJP UNLV's beliefs and political activity related to the Israel-Palestine conflict, including SJP UNLV criticism Israel's military action in Gaza, advocacy for the Palestinian people impact for the war, petitioning UNLV to financially divest from companies supporting Israel's war effort, or publicly organizing boycotts to place political pressure on Israel to end the war. Hayden Decl., ¶¶ 13-14, 26, 31-33, 35; Mondschein Decl., ¶¶ 10, 11.

SJP UNLV's social media posts at issue were published on SJP UNLV's public social media account. SAC ¶¶ 73, 79, 118, 122, 123, 206, 218; Hayden Decl., ¶¶ 28-34**.** SJP UNLV's protests at issue were held in public spaces both on and off campus. SAC ¶¶ 93–95; Hayden Decl., ¶¶ 22-25.

SJP UNLV's in person communications with UNLV President Whitfield were all aimed at procuring action from UNLV, specifically increased transparency from UNLV regarding its investments, divestment from entities supporting violence against Palestinians, and a statement establishing that Palestinian and Arab students would receive the same protection as other students on campus. SAC ¶¶ 214–217; Hayden Decl., ¶¶ 26, 35, 36; Mondschein Decl., ¶¶ 10-12. As Plaintiff's own complaint acknowledges and UNLV Defendants' responses confirm, UNLV is a governmental entity, and President Whitfield is a government employee. SAC ¶¶ 9, 12; Defendant Keith Whitfield's Motion to Dismiss at 3:25-26, 13:4-20, 14:5, ECF No. 12 (September 18, 2024) ("Def. Whitfield Mot. to Dismiss"); Defendant UNLV's Motion to Dismiss at 14:2, ECF No. 35 (November 12, 2024) ("Def. UNLV Mot. to Dismiss"); *see also* Mondschein Decl., ¶¶ 7–9. SJP UNLV made these requests to Whitfield because he was the head of UNLV at the time. Hayden Decl., ¶¶ 35; Mondschein Decl.,

¶¶ 8, 13.

Gerwaski believes SJP UNLV's communications are antisemitic, create a hostile environment for Jewish students on UNLV's campus, and ultimately provide assistance to Hamas; the claims he brings against SJP UNLV, including his civil conspiracy claim, hinge on these beliefs. *See, e.g.*, SAC ¶¶ 94–95, 136–137, 214, 218, 229. However, Gerwaski does not allege that SJP UNLV itself has engaged in any violence, vandalism, or other noncommunicative activity. *See generally* SAC; Hayden Decl., ¶¶ 37-40. Gerwaski also does not allege that SJP UNLV has had any contact with him or vice versa. *See generally* SAC. Gerwaski does not complain that SJP UNLV's methods of communication i.e. posting on social media, protesting in public spaces, or petitioning UNLV leadership in person, are inherently harmful or violate the law. *Id.*

### D.  Procedural posture

Plaintiff Gerwaski filed this action on May 26, 2024. ECF No. 1. The Court issued a summons on May 28, 2024. ECF No. 4. Gerwaski amended his complaint on August 9, 2024. ECF No. 6. Gerwaski served SJP UNLV the summons and First Amended Complaint on February 12, 2025. ECF No. 48. SJP UNLV responded with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on March 5, 2025, and a special motion to dismiss on April 11, 2025. ECF No. 51; ECF No. 61. On May 5, 2025, the Court dismissed Gerwaski's claim under the Anti-Terrorism Act without prejudice and dismissed his claim for IIED with prejudice. ECF No. 71.

Gerwaski filed a Second Amended Complaint on June 3, 2025, restating his claim under the ATA and adding a claim for civil conspiracy. ECF No. 79. SJP UNLV now seeks to dismiss all claims once again through both a standard motion to dismiss and this motion to dismiss filed pursuant to Nevada's anti-SLAPP provisions. Since Gerwaski's First Amended Complaint and Second Amended Complaint are nearly identical, this motion to dismiss under Nevada's anti-SLAPP provision is very similar to the one already filed and granted by this Court.

### III.  LEGAL STANDARD

Pursuant to NRS 41.650, "[a] person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." NRS 41.650. NRS 41.637 details what constitutes a communication that qualifies for protection. NRS 41.660 explains how an anti-SLAPP motion is adjudicated including timeline and evidentiary burdens.

#### A.  Defendant's initial burden

In an anti-SLAPP proceeding, a defendant first bears the burden to establish by preponderance of the evidence that the Plaintiff's claim is based upon "a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." NRS 41.660(3)(a). NRS 41.637 defines what communications are protected, which include:

- "Communication that is aimed at procuring any governmental or electoral action, result or outcome";

- "Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity"; and

- "Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum."

NRS 41.637(1); NRS 41.637(2); NRS 41.637(4). A defendant must also show that the communication was made in good faith by establishing the statements were "truthful or [ ] made without knowledge of its falsehood." NRS 41.637. A signed, sworn declaration is sufficient to satisfy a defendant's initial burden of proof. *See Stark v. Lackey*, 136 Nev. 38, 43, 458 P.3d 342 (2020) ("[W]e have previously held that a sworn declaration like Stark's is sufficient evidence that the statements were truthful or made without knowledge of their falsehood.").

**B.  Plaintiff's subsequent burden**

Once a defendant satisfies their burden, the burden shifts to the plaintiff to offer *prima facie* evidence establishing a probability of prevailing on their claim. NRS 41.660(3)(b). To satisfy this burden, "the plaintiff must show that his claim has at least minimal merit," which "exists when the plaintiff makes a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wynn v. AP*, 555 P.3d 272, 278 (Nev. 2024) (quotation omitted).

In determining whether a plaintiff has made a *prima facie* showing regarding their claim, courts may apply the same standard as Federal Rule of Civil Procedure 12(b)(6) to determine whether plaintiff has stated a claim. *See Smith v. Craig*, Case No.: 2:19-cv-00824-GMN-EJY, 2020 U.S. Dist. LEXIS 38774, *19 (D. Nev. March 4, 2020) (finding that plaintiff did not satisfy burden to show probability of success because "the Complaint [did] not provide sufficient factual allegations to show how Defendant's disclosure of Plaintiff's settlement agreement and medical records could plausibly support her claims for relief."). To avoid dismissal pursuant to Rule 12(b)(6), a plaintiff must make sufficient factual allegations to establish a plausible entitlement to belief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955 (2007). "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "[C]onclusory allegations of law and unwarranted inferences, however, are insufficient to avoid dismissal." *Id*. As such "allegations must amount to 'more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action.'" *Coleman v. Telles*, No. 2:24-cv-00930-APG-MDC, 2025 U.S. Dist. LEXIS 21413, at *3 (D. Nev. Feb. 5, 2025) (quoting *Bell Atl. Corp.*, 550 U.S. at 556). After separating out any well-plead factual allegations from plaintiff's legal conclusions and unwarranted inferences, the Court must then determine "whether [the factual allegations] plausibly give rise to an entitlement to relief." *Kwan*, 854 F.3d at 1096. "This plausibility

standard requires more than a sheer possibility that a defendant has acted unlawfully"; rather "[a] claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.    ARGUMENT

Plaintiff Gerwaski's state law civil conspiracy claim against SJP UNLV, like the IIED claim in his First Amended Complaint, is premised on communications by SJP UNLV protected under Nevada's anti-SLAPP laws, which include the organization's posts on public social media, protests in public spaces, and petitions to UNLV President Whitfield. SAC ¶¶ 73, 79, 94–95, 118, 122, 123, 136–137, 206, 214, 218, 229.

To establish a civil conspiracy claim under Nevada law, Gerwaski must show "two or more persons undertake some concerted action with the intent to accomplish an unlawful objective for the purpose of harming another, and damage results." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 813 (2014) (quotation omitted). Unlike criminal conspiracy, the plaintiff must establish that he was actually harmed by the agreement. *Id.* (requiring that "damage results" to the plaintiff to sustain a claim). He must also show an actionable underlying civil wrong to the alleged conspiracy. *Watson v. City of Henderson*, Case No: 2:20-cv-01761-APG-BNW, 2021 U.S. Dist. LEXIS 182001, *49 (D. Nev. Sept. 23, 2021) ("A civil conspiracy claim will fail if there is no cognizable civil wrong…."). Though Gerwaski offers little in describing his civil conspiracy claim in his pleading, SAC ¶¶ 362-368, his conspiracy claim is necessarily premised on SJP UNLV's protected communications because that is the only activity that Gerwaski describes harming him. SAC ¶¶ 237-258. Furthermore, the only predicate civil wrong Gerwaski offers as the basis for the conspiracy, his ATA claim, is likewise premised on SJP UNLV's protected communications. SAC ¶ 246**.** Because Gerwaski's civil conspiracy claim must be based on these protected communications, his civil conspiracy claim cannot survive under Nevada's anti-SLAPP laws. And as discussed in SJP UNLV's most recent motion to dismiss and again here, Defendant Students For Justice In Palestine UNLV'S

Motion To Dismiss ECF No. 94 (August 1, 2025), Gerwaski's civil conspiracy claim does not meet the pleading requirements of FRCP 12(b)(6) either, meaning that he cannot establish a probability of succeeding in his claim.

As Gerwaski brings his civil conspiracy claim in response to SJP UNLV's protected good faith communications, and Gerwaski cannot establish a probability of succeeding on his claim, SJP UNLV is entitled to dismissal pursuant to NRS 41.660, and attorney fees, costs, and a monetary award as defined by NRS 41.670. NRS 41.660; NRS 41.670.

**A. SJP UNLV's communications at issue are entitled to protection.**

As this Court has previously found, ECF No. 71 pg. 13-16, each communication placed at issue by Gerwaski, i.e. SJP UNLV's social media posts, protests, and petition to UNLV President Whitfield, satisfies the definition of a "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" as defined by NRS 41.637. SJP UNLV's social media posts and protests were communications directly connected to an issue of public concern in a place open to the public or in a public forum. SJP UNLV's communications to President Whitfield were aimed at procuring a governmental action, and these communications also provided both information and complaints regarding a matter of concern to the UNLV to an employee of the university (i.e. Whitfield). SJP UNLV made all these communications in good faith as defined by NRS 41.637. *Id.*

**1. SJP UNLV's social media posts and protests satisfy NRS 41.637(4).**

"Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum" is identified by NRS 41.637(4) as a protected communication.

All of SJP UNLV's protests and social media posts are directly connected to an issue of public interest as they are all related to the war in Gaza. For determining whether a communication is "an issue of public interest" under NRS 41.467(4), the Nevada Supreme Court provides the following guidance:

(1) "public interest" does not equate with mere curiosity;

(2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;

(3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;

(4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and

(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Stark v. Lackey*, 136 Nev. 38, 41-42, 458 P.3d 342, 346 (2020). SJP UNLV's communications easily satisfy each of these factors. As to the first and second factors, as seen by polling, news coverage, nationwide protests, and nationwide backlash to those protests, it is clear that the war in Gaza is more than a "mere curiosity" to the public and has impacted every person in America in some fashion. In turn, SJP UNLV's communication are directly related to the war – they are responding to Israel's invasion of Gaza and the collateral impact on the Palestinians living there. Occurring on public social media pages and in public spaces, SJP UNLV's posts and protests are by their very nature public communications; in fact, Gerwaski's claims are premised on the idea that the communications were not directed at a few individuals but rather meant to reach the entire UNLV community.

In addition to direct connection to an issue of public concern, all of SJP UNLV's protests and posts took place in public spaces. SJP UNLV communications on social media were on the organization's public pages, and under Nevada's Anti-SLAPP law, posts made on public social media pages are considered made in a public forum. *See Stark v. Lackey*, 136 Nev. 38, 41 n.2, 458 P.3d 342, 345 (2020) ("We note that the parties do not dispute, and we agree, that [defendant's] Facebook page is a public forum.") (citing *Barrett v. Rosenthal*, 40 Cal. 4th 33, 51 Cal. Rptr. 3d 55, 146 P.3d 510, 514 n.4 (Cal. 2006) ("Web sites accessible to the public . . . are 'public forums' for the purposes of the anti-SLAPP statute.")). SJP UNLV's protests outside of cyberspace all took place on sidewalks,

streets, and locations on UNLV's campus such as the university amphitheater where the public could attend. Hayden Decl., ¶¶ 22-25, 28-33.

As communications made in public about an issue of public interest, SJP UNLV's protests and posts are protected under Nevada's anti-SLAPP provisions.

### 2. SJP UNLV's communications during its meeting with President Whitfield are protected under NRS 41.637(1) and NRS 41.637(2).

Communications "aimed at procuring any governmental or electoral action, result or outcome" and "of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity" are protected under NRS 41.637(1) and NRS 41.637(2) respectively.

No party disputes that UNLV is a government entity. As such, SJP UNLV's meeting with UNLV's president and social media posts advocating for UNLV to financially divest were aimed at procuring government action, i.e. increased transparency, divestment from companies supporting the war in Gaza, and a statement assuring that Palestinian and Arab students will be protected. Hayden Decl., ¶¶ 35; Mondschein Decl., ¶¶ 10-12. Though Gerwaski may be staunchly against the requested actions, transparency, divestment and providing a statement were actions within UNLV's power.

Turning to NRS 41.637(2), Whitfield was an employee of a Nevadan political subdivision, i.e. UNLV, at the time SJP UNLV met with him. SAC ¶¶ 9, 12; Def. Whitfield Mot. To Dismiss at 13:4-20, 14:5. SJP UNLV met with Whitfield to discuss "matter[s] reasonably of concern to" UNLV, i.e. UNLV's financial investments in particular companies and the safety of UNLV's Palestinian and Arab students. Hayden Decl., ¶¶ 35; Mondschein Decl., ¶¶ 10-12. In communicating with a government employee about a matter of concern to the employee's political subdivision, SJP UNLV's communications are protected under NRS 41.637(2).

### 3. SJP UNLV's communications were all made in good faith.

Pursuant to NRS 41.637, a communication is in good faith when it "is truthful or is made without knowledge of falsehood." An affidavit by a defendant affirming that the statements at issue are true, were made without knowledge of falsehood, or are statements of opinion is sufficient to show good faith. *Stark*, 136 Nev. at 43, 458 P.3d at 347 (cited by *Williams v. Lazer*, 137 Nev. 437, 440, 495 P.3d 93, 97 (2021)). Whether a defendant made a statement in good faith is dependent on the defendant's subjective beliefs rather than whether the statement was objectively true. *Williams*, 137 Nev. at 442, 495 P.3d at 98 (determining defendant's statements were made in good faith despite evidence her statements were inaccurate because plaintiff did not offer evidence disputing that defendant's statements accurately reflected defendant's "subjective belief"). "Opinion statements are incapable of being false [under Nevada's Anti-SLAPP provision], as there is no such thing as a false idea." *Id.*, 137 Nev. at 440–41, 495 P.3d at 97–98 (determining that defendant's statements that plaintiff was racist, sexist, unprofessional, and unethical were opinions incapable of being false) (citation omitted).

SJP UNLV has not communicated anything that it knew to be false, and to its knowledge has only made truthful statements or offered opinions. Hayden Decl., ¶¶ 27, 34; Mondschein Decl., ¶¶ 14. Furthermore, the communications identified in Gerwaski's complaint clearly express SJP UNLV's opinions about the war in Gaza, Israeli's policies towards Palestinians living in Gaza, or how UNLV should respond to the Israel-Palestine conflict. Hayden Decl., ¶¶ 13, 14, 26 31-35; Mondschein Decl., ¶¶ 10-12. As opinions, these communications could not be knowingly false. To the extent the SJP UNLV's statements are deemed to offer facts, Gerwaski has not accused SJP UNLV of lying, only that Gerwaski believes SJP UNLV's statements are antisemitic and benefit Hamas.

As SJP UNLV made its communications in good faith, they satisfy NRS 41.637 and are entitled to protection under NRS 41.660. NRS 41.637; NRS 41.660.

**B.  Gerwaski cannot show a probability of success on his civil conspiracy claim.**

A plaintiff who fails to offer an evidentiary basis to establish a *prima facie* claim or fails to state a claim pursuant to Rule 12(b)(6) cannot show a probability of success on their claim. *Wynn*, 555 P.3d at 278; *see Smith*, 2020 U.S. Dist. LEXIS 38774 at *19 ("[T]he Complaint [did] not provide sufficient factual allegations to show how Defendant's disclosure of Gerwaski 's settlement agreement and medical records could plausibly support her claims for relief."). Likewise, a plaintiff whose claim is barred by law cannot show a probability of success. *See Williams*, 137 Nev. at 443, 495 P.3d at 99 ("[A] plaintiff cannot show a probability of prevailing on his claim if a privilege applies to preclude the defendant's liability."). Gerwaski cannot show a probability of success on his civil conspiracy claim because his claim is a mere recitation of the elements of civil conspiracy without any factual claims and because he fails to establish an underlying harm. He also cannot show a probability of success because the First Amendment bars his civil conspiracy claim.

**1.  Gerwaski fails to adequately state any viable claim of civil conspiracy against SJP UNLV.[16]**

"Mere recitals of the elements of a cause of action, supported only by conclusory statements, are not sufficient" to establish a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *Warren v. Dollar Tree*, No. 2:23-cv-01377-APG-EJY, 2024 U.S. Dist. LEXIS 6692, at *8 (D. Nev. Jan. 11, 2024). Gerwaski's ninth cause of action, titled "Civil Conspiracy", fails to meaningfully provide a legal theory (i.e. what facts theoretically apply to this claim) let alone sufficient facts to support the claim. See SAC ¶¶ 362-368.

Gerwaski relies on Nevada's common law tort of civil conspiracy for his ninth cause of

---

[16] Plaintiff also fails to adequately plead his federal law claim pursuant to the Anti-Terrorism Act. *See* SJP UNLV Mot. to Dismiss, 12:2–15:10. However, a motion to dismiss pursuant to NRS 41.660 is typically restricted to Nevada state law claims, and Plaintiff's civil conspiracy claim is the only claim asserted against SJP UNLV pursuant to state law. *ProCare Hospice of Nev. LLC v. OneCare Hospice, LLC*, 340 F.R.D. 174, 178 (D. Nev. 2021) ("The Ninth Circuit has made clear that a state's anti-SLAPP law does not apply to the federal causes of action in cases involving both state and federal claims.").

action, see SAC ¶¶ 362-368, and he fails to adequately plead such a claim. When pleading conspiracy "enough facts to raise a reasonable expectation that discovery will reveal evidence" of a conspiracy must be plead. *Twombly*, 550 U.S. at 556. An actionable civil conspiracy claim under Nevada law "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Compare Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) *with* SAC ¶¶ 363 (accusing SJP in "combination with two or more persons" of engaging in "concerted action . . . intended to accomplish an unlawful objective" for "the purpose of harming" another person, i.e. "Jewish students at UNLV"). The underlying harm or damages are the "essence of civil conspiracy" claims. *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003). Gerwaski offers no substance to support his civil conspiracy claim beyond restating the elements above. He fails to identify a valid underlying civil wrong to serve as predicate for his conspiracy, he offers nothing but conclusory statements to claim the existence of an agreement to perpetuate a civil wrong, and he fails to explain what, if any, damages he suffered as a direct result of his alleged conspiracy.

Under Nevada law, civil conspiracy claims cannot standalone and require an underlying civil wrong. *Vested Hous. Grp., Ltd. Liab. Co. v. Principal Real Estate Inv'rs, Ltd. Liab. Co.*, 648 F. App'x 646, 649 (9th Cir. 2016); see also *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 984 P.2d 164, 168 (Nev. 1999) (dismissing a civil conspiracy claim because the underlying defamation claim was dismissed). The underlying civil wrong Gerwaski alleges to have been perpetrated by the alleged conspiracy is, in his words, "furthering the terrorist organization of Hamas and antisemitic conduct at UNLV for the purpose of harming Jewish students at UNLV." SAC ¶ 363. This is simply inadequate to establish a civil conspiracy claim.

First, this claim is conclusory and unsupported by any actual factual allegation. Asserting that SJP UNLV is "furthering the terrorist organization Hamas and antisemitic conduct at UNLV" is a

conclusion that does not satisfy the requirements imposed by Rule 12(b)(6). *Iqbal*, 556 U.S. at 678). According to the facts actually alleged by Gerwaski, SJP UNLV is a student group that advocates for the Palestinians living in Gaza, not Hamas, and against Israel's military campaign against those people. Gerwaski does not identify a single time where SJP UNLV intended to help Hamas or encourage discrimination in any form. Furthermore, Gerwaski does not specify what, if any, law his vague accusation would violate. Perhaps Gerwaski is implicitly predicating his conspiracy claim on the Anti-Terrorism Act, but as his ATA claim is not viable therefore his conspiracy claim is not viable.

Second, in pursuing a claim of civil conspiracy, a plaintiff must show "an explicit or tacit agreement between the conspirators" and the intent was to "harm the plaintiff." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 813 (2014) . He offered no facts establishing that SJP UNLV had any agreement whatsoever with NSJP or AMP. In describing his claim, Gerwaski only states that "AMP, SJP-UNLV, NSJP" engaged in "concerted action" to further "the terrorist organization of Hamas and antisemitic conduct at UNLV for the purpose of harming Jewish students at UNLV", this is a conclusion rather than a factual allegation, and otherwise sends SJP UNLV to hunt through the rest of his complaint to guess at the factual basis for this allegation. *Id*. ¶ 362-363. As far as SJP UNLV can divine, Gerwaski's "agreement" allegation hinges on SJP UNLV "utilizing" a publicly available social media toolkit and "communicating" with NSJP. Neither of these are activities require that the parties reach an agreement of any sort, and certainly not one to harm Gerwaski or any other UNLV student.

Finally, a plaintiff must show he was actually damaged by the alleged conspiracy to raise a civil conspiracy claim. All Gerwaski offers for damages is that he "suffered damages." SAC ¶ 363. Self-fulling conclusions are not factual allegations.

Relying on insinuations rather than objective facts is inappropriate and legally insufficient for a complaint filed in a United States federal district court. Given a second opportunity to bring claims

against SJP-UNLV, Gerwaski was obligated to explain what, if any, factual allegations supported each element of his civil conspiracy claim, and he has, once again, offered nothing but conclusory statements and innuendos in an effort to subject SJP UNLV to liability.

### 2. First Amendment bar

The First Amendment can serve as a defense in tort suits; whether the Free Speech Clause shields a defendant "turns largely on whether [the defendant's] speech is of public or private concern." *Snyder v. Phelps*, 562 U.S. 443, 451, 131 S. Ct. 1207, 1215 (2011).

"Speech deals with matters of public concern [. . .] when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 453 (quotations omitted). Whether expressive conduct is "inappropriate or controversial [. . .] is irrelevant to the question whether it deals with a matter of public concern." *Id.* If a plaintiff seeks to hold a defendant liable for the content of speech related to a matter public concern rather than that "of purely private significance," the plaintiff's claims are barred by the First Amendment. *Id.*, 56 U.S. at 460–61 (barring the plaintiff's claims of intentional infliction of emotional distress and civil conspiracy as they were based entirely upon content of the defendant's speech related to a matter of public concern).

Gerwaski's civil conspiracy claim against SJP UNLV is premised exclusively upon SJP UNLV's communications about the war in Gaza and SJP UNLV's opinions about that war. The Palestine-Israel conflict is clearly an issue of public concern, triggering protests and counterprotests across the country, polarizing the American public, and even impacting the outcome of the United States presidential election. This speech is entitled to the strongest protection under the First Amendment. *Carey v. Brown*, 447 U.S. 455, 466-67, 100 S. Ct. 2286, 2293 (1980); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982) (finding "[t]he established elements of speech, assembly, association, and petition" inseparable from the right to organize a non-violent economic

boycott to serve a political purpose).

Gerwaski cannot dispute that his claim against SJP UNLV is premised on the viewpoint expressed in the organization's messaging. *See Snyder*, 562 U.S. at 457 (emphasizing that "that any distress occasioned by [the defendant]'s picketing turned on the content and viewpoint of the message conveyed" in determining that the First Amendment barred plaintiff's claims). Gerwaski's claims are based on Gerwaski's belief that SJP UNLV's messages are antisemitic and, by advocating against Israel's actions in Gaza, assist Hamas. This is necessarily viewpoint discrimination: if SJP UNLV engaged in the exact same conduct (i.e. organizing protests, petitioning UNLV, and calling for boycotts) in favor of Israel rather than Palestine, Gerwaski would likely promote SJP UNLV rather than sue them. *See Snyder*, 562 U.S. at 457 (considering whether an uncontroversial message conveyed by the defendant in the same manner would have resulted in liability in determining whether claims were content based).

As currently pled, Gerwaski seeks to hold SJP UNLV liable solely due to SJP UNLV's statements presenting a particular viewpoint on a matter of public concern, but such claims are barred by the First Amendment. As such, Gerwaski does not have a probability of success in his civil conspiracy claim.

## CONCLUSION

Plaintiff Gerwaski's civil conspiracy claim is based entirely on communications by SJP UNLV that are protected by Nevada's anti-SLAPP laws. All relevant communications by SJP UNLV were made in good faith. All social media posts and protests made by SJP UNLV were directly connected with an issue of public concern and occurred in public fora or spaces open to the public. The organization's petition to UNLV President Whitfield, was made in an effort to procure action by UNLV. In doing so, SJP UNLV also communicated information and a complaint to a government employee, i.e. Whitfield, about matters of reasonable concern to UNLV, i.e. the university's financial

investments and the safety of its students. As such, all communications at issue were protected under NRS 41.660.

Gerwaski cannot demonstrate a probability of prevailing on his civil conspiracy claim because he has failed to adequately allege his claim and his claim as alleged is barred by the First Amendment.

For these reasons, SJP UNLV respectfully requests that this Court dismiss Gerwaski's civil conspiracy claim in full and award SJP UNLV reasonable costs, attorney fees, and other monetary relief as provided by statute.

Dated: August 4, 2025

ACLU OF NEVADA

/s/ *Jacob T. S. Valentine*
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
JACOB T. S. VALENTINE, ESQ
Nevada Bar No.: 16324
AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 366-1331
Emails: peterson@aclunv.org
            jvalentine@aclunv.org

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2025, I electronically filed the foregoing **Defendant Students for Justice in Palestine – UNLV's Special Motion To Dismiss Pursuant To NRS 41.660**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on all participants by:

☒    CM/ECF

☐    Electronic mail; or

☐    US Mail or Carrier Service

_/s/Jacob T. S. Valentine_
An employee of ACLU of Nevada