DAVID Z. CHESNOFF, ESQ.
*Nevada Bar No. 2292*
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
ROBERT Z. DEMARCO
*Nevada Bar No. 12359*
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
rdemarco@sclawoffice.net
Attorneys for Plaintiff*, COREY GERWASKI*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

COREY GERWASKI,

    Plaintiff,

vs.

STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA LAS VEGAS; KEITH WHITFIELD individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE IN PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX, DEFENDANT(S), an Individual/LLC/Corp; DOE Nevada corporation; DOE Individuals I–XX; ROE Entities, I–XX,

    Defendants.

CASE NO. 2:24-cv-00985

**OPPOSITION TO STUDENTS FOR JUSTICE IN PALESTINE-UNLV'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF 94)**

**[ORAL ARGUMENT REQUESTED]**

- 1 -

1 | COMES NOW, Plaintiff, COREY GERWASKI ("Mr. Gerwaski"), by and through his attorneys of record, DAVID Z. CHESNOFF, ESQ., RICHARD. A. SCHONFELD, ESQ., and ROBERT Z. DEMARCO, ESQ., of CHENSNOFF & SCHONFELD, and files this Opposition to Students for Justice in Palestine-UNLV's Motion to Dismiss Second Amended Complaint (ECF 94).

This Opposition is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any oral argument that may be heard.

DATED this 15th day of August 2025.

                                                Respectfully Submitted:

                                                CHESNOFF & SCHONFELD

                                                By: <u>Robert Z. DeMarco</u>
                                                      DAVID Z. CHESNOFF, ESQ.
                                                      Nevada Bar No. 2292
                                                      RICHARD A. SCHONFELD, ESQ.
                                                      Nevada Bar No. 6815
                                                      ROBERT Z. DEMARCO, ESQ.
                                                      Nevada Bar No. 12359
                                                      520 South Fourth Street
                                                      Las Vegas, Nevada 89101
                                                      Phone: (702) 384-5563
                                                      Fax: (702) 598-1425
                                                      Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. DEFENDANT SJP-UNLV'S MOTION TO DISMISS SHOULD BE DENIED.

### I. INTRODUCTION

Defendant Students for Justice in Palestine UNLV ("SJP-UNLV") seeks dismissal by framing this case as an attempt to suppress political disagreement. That is not what Plaintiff alleges. This case is not about punishing lawful speech on a matter of public concern; it is about Defendant's coordinated participation in, and material support for, a designated Foreign Terrorist Organization's objectives in the wake of the October 7, 2023 terrorist attack.

Defendant's Motion is an effort to silence a Jewish student who dares to call out SJP-UNLV's active role in normalizing, promoting, and providing material support to antisemitic extremism. Defendant's claim that Plaintiff's well-pled allegations are merely "protected advocacy" is a deliberate mischaracterization. When an organization coordinates with networks that glorify terrorist activity, uses "Toolkits" encouraging "real support" for Hamas, and fosters a hostile environment targeting Jewish students, it steps far outside the bounds of protected speech.

The Second Amended Complaint ("SAC") alleges that SJP-UNLV acted in concert with the AJP Educational Foundation, Inc. ("AMP") and National Students for Justice in Palestine ("NSJP") and other groups to operationalize a campaign that expressly endorses confrontation, "armed struggle," and other forms of unlawful support for Hamas, specifically at the campus of UNLV. These coordinated actions foreseeably caused, and were intended to cause, fear, intimidation, and harm to Plaintiff and similarly situated Jewish students at UNLV. Such conduct is not immunized by the First Amendment.

When the well-pleaded factual allegations are taken as true and construed in Plaintiff's favor, as Rule 12(b)(6) requires, the SAC plausibly states claims under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, and Nevada common-law civil conspiracy. Defendants' attempt to ask this Honorable Court to essentially grant summary judgment before discovery has even commenced should be rejected.

## II.    LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(6) tests only the sufficiency of the complaint, not the merits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Dismissal is proper only if the complaint fails to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, the Court does not weigh evidence or resolve factual disputes.

## III.    FACTUAL BACKGROUND

On May 26, 2024, Plaintiff filed this lawsuit and filed an Amended Complaint on August 9, 2024. ECF Nos. 1, 6. On March 5, 2025, Defendant SJP-UNLV moved to dismiss in full, followed by a special motion to dismiss, on April 11, 2025. ECF Nos. 51, 61. This Court granted dismissal of the claims against SJP-UNLV, but granted Plaintiff leave to amend. ECF No. 71.

On June 6, 2025, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 79). On August 1, 2025, SJP-UNLV filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 94.). Plaintiff was at all times relevant a student at the University of Nevada, Las Vegas (UNLV). Plaintiff's SAC sets forth allegations related to his employment at the UNLV Lied Library and his position as Chair of the Scholarships and Grants Committee. *See* SAC at para. 17-42. Plaintiff's SAC also sets forth that the environment on campus has further exacerbated the hostility Plaintiff faced. Specifically, UNLV has allowed groups to march with megaphones, disrupt campus activities, and chant slogans such as "From the river to the sea." This is clearly an antisemitic chant which calls for the destruction of the sovereign state of Israel and the death of its Jewish inhabitants.

As stated in the Antisemitism and Anti-Israeli Bias at UCLA Report dated October 16, 2024, it should be noted that:

> Hamas uses the phrase "from the river to the sea..." in its 2017 Charter (Section 20) and declares its intention to hunt down Jews everywhere in the world in its 1988 charter, a sentiment which has not been superseded. The phrase has also been used in speeches by Osama bin Laden, Hezbollah's leadership, and Iran's leadership. For many, "from the river to the sea," calls for elimination of the

State of Israel, and for the land of Israel to be placed entirely under Arab rule. Given the record of many Arab regimes in the region, there is a high probability of the forced displacement of Israeli Jews in these hypothetical circumstances.[1]

Furthermore, Plaintiff has been verbally assaulted on the campus of UNLV because he wears a kippah. *See* SAC at para. 43-45.

The SAC also states in part under the ATA cause of action:

- Hamas is a United States designated Foreign Terrorist Organization that committed, planned, or authorized various acts of international terrorism including its (a) terrorist attack on October 7th; (b) ongoing rocket attacks against non-military, civilian targets; and (c) holding innocent civilians hostage.

- For decades, Defendants have provided substantial assistance to Hamas by acting as its propaganda wing in the United States, recruiting domestic foot soldiers for Hamas, and fomenting violence, chaos, and fear in the United States to support Hamas's short and long-term goals and international terrorist activities.

- Defendants intentionally instigate a mass culture of fear, threats, violence, and overt hatred to intimidate politicians and institutions for the benefit of Hamas by organizing, managing, controlling, and intentionally inciting riots and acts of domestic terrorism as part of its substantial assistance to Hamas.

- Indeed, Defendants themselves are successor entities to an original material support enterprise for Hamas. Defendants are operated primarily by many of those who were senior leaders in the original enterprise.

SAC at para. 241-244.

The SAC added the following language in part under the ATA cause of action:

- Defendants AMP, SJP-UNLV, NSJP continue to provide substantial assistance to the Hamas organization and promote Hamas, including at the UNLV campus, and there is an ongoing risk of violence injurious conduct, and terrorist actions at UNLV.  The threats posed by Hamas and Defendants AMP, SJP-UNLV, NSJP, including antisemitic conduct, are an immediate threat to the safety of citizens and students at UNLV, including Plaintiff.  Unless enjoined, citizens and students at UNLV face an ongoing risk of violence injurious conduct, and terrorist actions at UNLV.  For example, an individual was recently charged with two counts of first-degree murder after a shooting outside a Jewish museum in Washington, DC on May 21, 2025.  The suspect in that incident allegedly shouted "free, free Palestine" following the shooting.  *Id.*

---

[1] Antisemitism and Anti-Israeli Bias at UCLA, October 16, 2024, at p. 47, available at https://antisemitismreport.org/ (internal footnotes omitted).

- In addition to the discrimination and harassment at UNLV, as a direct and proximate result of Defendants AMP, SJP-UNLV, NSJP conduct at UNLV, and their aiding and abetting Hamas, Plaintiff is in a state of fear and anxiety in light of the ever-present and real threats posed by said Defendants which have been unrestrained at the UNLV campus since October 7, 2023, including that on May 31st, 2024, Plaintiff collapsed in his calculus class. Plaintiff was taken to the UNLV Health and Wellness Center, where his face became paralyzed on-site. He was rushed to Sunrise Hospital and diagnosed with extreme stress disorder, which had triggered Bell's Palsy. After ruling out all viral and bacterial infections, it was concluded that the facial paralysis was stress-induced. Plaintiff's cranial nerve had been severely impacted by the overwhelming levels of stress he has endured. Plaintiff lost the ability to blink, drink water properly, and see out of one eye. A majority of Plaintiff's face was paralyzed and completely unmovable. Plaintiff was discharged with a high-dose steroid treatment, and the paralysis persisted until the end of August 2024. Plaintiff began to slowly regain movement at that time. As a direct and proximate result Plaintiff was forced to withdraw from two additional classes over the summer.

SAC at para. 245-246. Accordingly, Plaintiff has alleged what injuries he sustained and how those injuries arose from the Defendants' conduct. *Compare* Court's Order, ECF 71, at pp. 10-11.

It should be noted that the SAC also states in part under the ATA cause of action:

- It is clear that every time Defendants act in the United States, and more specifically on UNLV's campus, there is a direct nexus between the University groups and Hamas, IRGC, Hezbollah and other Foreign Terrorist Organizations.

- It is also clear that directives being given by Hamas, IRGC, Hezbollah and other Foreign Terrorist organizations are being acted out on U.S. college campuses through Defendants and their organizations on UNLV's campus.

- Defendants knowingly provide substantial assistance to Hamas through their services. Indeed, in the NSJP Toolkit, Defendants confirm not only that they are aware that their propaganda and incitement activities support Hamas but also that they perceive themselves as "PART of" Hamas's "Unity Intifada"—the terror regime that has damaged Plaintiff.

- Defendants knowingly provided substantial assistance to Hamas and thus aided and abetted Hamas in committing, planning, or authorizing acts of international terrorism, including the acts of international terrorism that injured Plaintiff.

- Not only do these acts constitute "substantial assistance" under the civil portion of the Antiterrorism Act, but they also satisfy the Antiterrorism Act's criminalization of providing "material support or resources" to a Foreign Terrorist Organization. See 18 U.S.C. §§ 2339A and 2339B.

- UNLV has also provided substantial assistance to these radical pro-terrorist organizations by allowing them to terrorize and demonize students on UNLV's campus, including Defendants' decision to allow the antisemitic chants and chaos on campus precluding Plaintiff from wearing an open kippa without having to hide it under a baseball cap or other type of head covering.

- UNLV has also provided substantial assistance under the Antiterrorism Act by allowing them to use the student campus to distribute their literature, paraphernalia, and hosting meetings by providing substantial resources to disseminate their antisemitic and anti-American rhetoric and propaganda.

- UNLV has provided substantial assistance by emboldening these Defendants, by their actions and meetings with them, "legitimizing" their cause of terrorizing students on campus.

- Plaintiff has been injured in his person because of Hamas's acts of international terrorism.

- By aiding and abetting Hamas in committing, planning, or authorizing acts of international terrorism, including the acts that caused Plaintiff to be injured in his or her person and property, Defendants are liable pursuant to 18 U.S.C. § 2333(d) for, threefold any and all, damages that Plaintiff sustained as a result of such injuries, and the costs of this suit, including attorney's fees.

*See* SAC 247-256.  The SAC also added:

- Plaintiff is entitled to permanent relief preventing and enjoining AMP, SJP-UNLV, NSJP and its agents, from aiding and abetting Hamas in committing, planning, or authorizing acts of international terrorism at the UNLV campus.

- Plaintiff is entitled to an order enjoining AMP, SJP-UNLV, NSJP and its agents from establishing, implementing, instituting, maintaining, or executing policies, practices, procedures, or protocols that: (i) penalize or discriminate against Jewish and/or pro-Israel students, including Plaintiff; (ii) fund student organizations that exclude or penalize Jewish and/or Pro-Israel students; and (iii) officially recognize student organizations that exclude, discriminate against, or harass Jewish and/or pro-Israel students.

*See* SAC 257-258.

## IV. ARGUMENT

### 1. The ATA Claim is properly pled and is factually supported. The First Amendment Does Not Shield Defendant's Conduct

SJP-UNLV simply challenges factual allegations regarding its coordination with NSJP and AMP in its roles in post-October 7 conduct. Whether Plaintiff's allegations will be proven is a question for discovery and trial. The Complaint details in part that under the Antiterrorism Act, "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a).

"[L]iability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). Moreover, a defendant may be liable under the Antiterrorism Act even without a "strict nexus" between the substantial assistance and the act of international terrorism so long as there is "a foreseeable risk" of such act. Indeed, in some cases, "defendant's role in an illicit enterprise can be so systemic that the secondary defendant is aiding and abetting every wrongful act committed by that enterprise." *See Twitter v. Taamneh*, 598 U.S. 471, 495-96 (2023). It should be noted that *Twitter v. Taamneh* involved an internet platform, whereas here, the Defendants AMP, NSJP and SJP-UNLV are organizations.

Enacted in 2016 over President Obama's veto, the Justice Against Sponsors of Terrorism Act (JASTA), Pub. L. No. 114-222, § 4(a), 130 Stat. 852, 854 (2016) (codified at 18 U.S.C. § 2333(d)) garnered headlines primarily for its amendments to the Foreign Sovereign Immunities Act (FSIA). However, JASTA also amended the ATA to clarify the rules governing suits against non-governmental defendants. As Congress explained in the text of the statute, "[i]t is necessary to recognize the substantive causes of action for aiding and abetting and conspiracy liability under [the

ATA]." JASTA § 2(a)(4), 130 Stat. at 852 (codified at 18 U.S.C. § 2333 note). Thus, JASTA sought to make explicit that the ATA provides a civil damages remedy against "persons or entities" "that knowingly or recklessly contribute material support or resources, directly or indirectly, to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States or the national security, foreign policy, or economy of the United States." *Id.* § 2(a)(6) (emphasis added). Indeed, Congress could hardly have been clearer in JASTA's text as to its purpose:

> *The purpose of this Act is to provide civil litigants with the broadest possible basis*, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, *directly or indirectly*, to foreign organizations or persons that engage in terrorist activities against the United States.

*Id.* § 2(b), 130 Stat. at 853 (emphases added).

To that end, JASTA created 18 U.S.C. § 2333(d)(2):

> In an action under [§ 2333(a)] for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization [(FTO)] as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

*Id.* § 4(a), 130 Stat. at 854 (emphases added).

Congress also recognized that, to provide both a meaningful remedy and a meaningful deterrent, civil liability had to extend beyond terror operatives to all who helped to facilitate their unlawful activities, even donors: "By its provisions for compensatory damages, tremble [sic] damages, and the imposition of liability *at any point along the causal chain of terrorism*, [the ATA] would interrupt, or at least imperil, the flow of money." S. REP. No. 102-342, at 22 (1992). (emphasis added).

As stated above, Plaintiff has specifically alleged that Defendant AMP and Defendants SJP-UNLV, NSJP continue to provide substantial assistance to the Hamas organization and promote Hamas, including at the UNLV campus, and there is an ongoing risk of violence injurious conduct, and terrorist actions at UNLV.  As alleged, the threats posed by Hamas and Defendants AMP, SJP-UNLV, NSJP, including antisemitic conduct at UNLV, are an immediate threat to the safety of citizens and students at UNLV, including Plaintiff.

The SAC sets forth that unless enjoined, citizens and students at UNLV face an ongoing risk of violence injurious conduct, and terrorist actions at UNLV.  In addition to the discrimination and harassment at UNLV, as a direct and proximate result of Defendants AMP, SJP-UNLV, NSJP conduct at UNLV, and their aiding and abetting Hamas, Plaintiff is in a state of fear and anxiety in light of the ever-present and real threats posed by said Defendants which have been unrestrained at the UNLV campus since October 7, 2023, including injuries suffered on May 31st, 2024.

It is respectfully submitted that the Court's prior findings that "Gerwaski does not allege any actions by the defendants that substantially assisted the October 7, 2023 act of international terrorism. All of the defendants' conduct alleged in the FAC took place after this event" is misplaced.  The instant SAC addresses that the Defendants' conduct after the October 7, 2023 has substantially assisted Hamas (including directly after the October 7, 2023 attacks) in terrorizing Jewish students, specifically, Plaintiff at UNLV.  Those allegations must be accepted as true at this stage.  Plaintiff seeks to pursue discovery, including deposing members of the Defendants, deposing staff and witnesses at UNLV, and propounding discovery requests which is believed to support the allegations.

James Comer, Chairman of the Committee on Oversight and Accountability wrot in a letter dated May 29, 2024 to National Students for Justice in Palestine c/o Dr. Osama Abuirshaid, Executive Director of the American Muslims for Palestine (AMP) wrote in part:

Since the October 7, 2023, terror attack on Israel by Hamas, antisemitic incidences have skyrocketed in the United States.2 At illegal encampments on college campuses, many individuals have championed antisemitic rhetoric calling for the elimination of Jewish people from Israel, employing "From the river to the sea, Palestine will be free" and "Death to Israel" as rallying cries. The Committee is particularly concerned that organizations promulgating pro-Hamas propaganda and engaging in illegal activities at institutions of higher education might be receiving funding or other support from foreign or domestic sources which support the aims of Hamas4 or other foreign terrorist organizations. We therefore seek documents and information from your organization to facilitate oversight into how pro-Hamas propaganda and illegal encampments are being funded.

National Students for Justice in Palestine (National SJP), which is founded and controlled by American Muslims for Palestine (AMP), is one group claiming to "support[] over two hundred Palestine solidarity organizations on college campuses across occupied Turtle Island (U.S. and Canada)." It has recently released statements, some purportedly signed by various campus chapter organizations, expressing support for the "Popular University for Gaza, a coordinated pressure campaign against university administrations and trustees to immediately divest from the [I]sraeli state" and pledging, "[a]s we across Turtle Island (the so-called [U]nited [S]tates and [C]anada) and around the world establish encampments and popular, liberated spaces on our campuses…" to "completely divest our tuition dollars from—and to cut all institutional ties to—the zionist entity as well as all companies complicit in the colonization of Palestine." Individuals previously affiliated with Hamas-backed charities are providing the trainings, materials, and financial support to college campus protests. National SJP's new publication, "The Written Resistance", curiously began in September 2023, mere days before the October 7th terrorist attacks. This publication hosts various authors, including editorials from the "Editorial Board" of National SJP. One such editorial from April 2024 positively cites quotes from Mao Tse Tung—an individual directly responsible for the repression and deaths of tens of millions of people—in its efforts to promote the "struggle for liberation against Zionism and US imperialism..."

National SJP founder Dr. Hatem Bazian serves as the Chairman of the National Board of AMP, further solidifying the current relationship between National SJP and AMP. AMP has substantial ties to Hamas via its financial sponsor, Americans for Justice in Palestine Educational Foundation, Inc. (AJP), a 501(c)(3) non-profit organization. AJP is currently under investigation by the Virginia Attorney General for violating state charitable solicitation laws and "benefitting or providing support to terrorist organizations." Reportedly, current AMP board members have been involved in fundraising for Hamas charities.

According to the Anti-Defamation League, AMP is the alter ego of the Islamic Association of Palestine (IAP), once the main propaganda arm for Hamas in the U.S., which was dissolved in 2004 after being implicated in terror finance. Several of IAP's employees and officers went on to found AMP as the rebranded material support arm for Hamas. AMP is also linked to the Holy Land Foundation (HLF), which sent approximately $12.4 million outside the U.S. to support Hamas. Like IAP, HLF was founded by members of Hamas senior leadership20 and was shut down due to five of its officers being convicted for

terror financing. Four former employees of HLF now work for AMP, which frequently sponsors events featuring past leaders of HLF and their families.[2]

This case is not about free speech. It is not legal for organizations to support and substantially assist Hamas whereby there is a threat to the safety of citizens and students at UNLV.

Material support for terrorism is not protected speech. The Supreme Court in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28–39 (2010), held that the First Amendment does not protect the provision of coordinated services, training, or advocacy conducted in concert with a designated Foreign Terrorist Organization.

SJP-UNLV attempts to transform the First Amendment into an absolute shield against liability for conduct that crosses the line into unlawful support of terrorism and intentional civil conspiracy. This argument is a strawman. The First Amendment does not protect incitement, coordination with terrorist organizations, or conspiracies to harm members of a protected group.

Defendant deliberately blurs the distinction between protected expression and unprotected conduct. Plaintiff does not seek to punish political disagreement. Plaintiff seeks redress for concrete actions: adopting and using NSJP's toolkit that calls for confrontation and "real support" of Hamas, organizing "intifada" rallies that openly glorify violent uprisings, and conspiring with other groups to foster a hostile and threatening environment for Jewish students. None of these are mere "political debates." They are coordinated acts that further antisemitic extremism. Use of this coordinated program crosses the line from abstract advocacy into unlawful material support.

The SAC alleges that Defendant organized and participated in events where participants chanted "Long live the intifada" and "From the river to the sea," in direct temporal and thematic connection to Hamas's October 7 massacre. The coordinated nature of these events plausibly supports the inference of intent and likelihood to promote unlawful acts. Accordingly, Defendant's Motion to Dismiss should be denied.[3]

---

[2] https://oversight.house.gov/wp-content/uploads/2024/05/Letter-to-National-SJP-5.29.24.pdf (internal footnotes omitted).
[3] It should be noted that Defendant's citation to *Jan v. People Media Project*, No. 3:24-CV-05553-TMC, 2025 WL 359009 (W.D. Wash. Jan. 31, 2025) is misplaced and distinguishable. That case

- 12 -

The ATA, 18 U.S.C. § 2333, permits civil actions against those who aid and abet international terrorism. Courts recognize that providing operational, propaganda, or recruitment support may constitute substantial assistance. *Boim v. Holy Land Found.*, 549 F.3d 685, 690–91 (7th Cir. 2008) (en banc).

As stated above, and in the SAC, Plaintiff's allegations regarding SJP-UNLV's use of NSJP's Hamas-aligned toolkit and coordinated campus actions easily meet the threshold for plausibility.

Notably, SJP-UNLV does not contest its involvement with NSJP, rather, SJP-UNLV declares that it is protected by the First Amendment. However, this case does not involve mere "demonstrations, protest marches, and picketing." These are not mere independent advocates; they are recruiters and propagandists. Knowingly providing such services, especially in such an ongoing, systematic fashion, violates the Antiterrorism Act.

Unfortunately, antisemitic conduct has occurred on university campuses across the United States, post-October 7, 2023. Such conduct has resulted in assorted litigation, including certain matters which have arisen in conjunction with reports documenting antisemitism violations. For example, universities' respective task forces (UCLA and Harvard) which found that the universities had fostered an antisemitic environment.

Specifically, in *Frankel et al v. Regents of the University of Southern California et al.*, 2:24-CV-4702, the plaintiffs, three Jewish students and a Jewish professor brought the case in June of 2024, in the wake of UCLA's facilitation of encampments that were run as exclusionary zones that blocked Jews from attending classes, using the library and accessing other essential areas of campus. UCLA's misconduct was documented in a report filed by UCLA's own Task Force to Combat Antisemitism and Anti-Israeli Bias, which found that the university had fostered an antisemitic environment. *See supra.* The court granted a preliminary injunction banning the exclusion zones.[4] The case recently resulted in a $6 million settlement.[5]

---

involved the Alien Tort Statute and the court granted leave to amend. In its subsequent Order, the court denied the Defendants' Motion to Dismiss. 2025 WL 1311970.
[4] https://becketnewsite.s3.amazonaws.com/20240813183534/injunction.pdf

In that case, the agitators on the campus refused to let students through unless they disavowed Israel's right to exist. For a full week, UCLA's administration failed to clear the Jew Exclusion Zone and instead ordered campus police to stand down and allow the illegal encampment to stay. The administration even stationed security staff around the encampment to keep students unapproved by the protesters out of the area. Even after the first encampment was cleared, activists have continued to stage encampments and occupations of public spaces at UCLA. Even after UCLA's belated decision to disband the initial encampment, agitators continued to erect encampments replete with anti-Semitic imagery and, in one case, an attack on a campus rabbi.

As stated in the Antisemitism and Anti-Israeli Bias at UCLA Report dated October 16, 2024, there are direct citations to Hamas at campus activities:

> "***The encampment was weird because it was at once claiming to be peaceful and anti-war, but also had a critical mass of people who were in support of Hamas, and who would refuse to disassociate with them***. Also, they completely ignored the hostages and the horrific attacks of October 7th. Things intensified after the pro-Israel rally, and after the screen with videos from October 7th was put up directly across the encampment. For so much of the war being on people's private screens, streamed through goPro cameras, through social media, it was jarring to have that screen brought into a public space. It's a lot harder to look away from the atrocities when it is glaring in your face. But, I am not sure how impactful it was for people in the encampment and for passersby. They may have just seen it as Israeli propaganda. I have friends who thought the encampment was "beautiful" and "peaceful." But, that all felt like a facade. And there was a lot of antisemitic and Anti-Israeli imagery and messaging everywhere."
>
> …
>
> Walking by campus and having routes blocked while seeing signs emblazoned with "Israelis are native to hell"33 and swastikas was a sight I will never forget. It was extremely hard to focus and go on as usual, and I have heard of experiences of those being physically blocked or slapped because they showed signs of Jewish identity or were known to not agree with the encampment's values. My roommate was walking home when someone from the encampment screamed "We are terrorism" at her. ***While I am extremely dedicated to free speech, there is no context in which swastikas are ok, Hamas headbands are on***. or this level of disrupment is accepted.
>
> …

---

[5] UCLA reaches $6 million settlement with Jewish students over campus protests : NPR

> "***I was approached and told by a protestor that she belongs to Hamas***. A friend of mine was pepper sprayed by a protester for her Jewish identity. I put up posters of kidnapped Israelis on the Jewish Law Students Association, as I was authorized to do, only for them to be repeatedly ripped down.43 I had to walk past chants calling for the extermination of my people and chants supporting genocidal terrorist organizations on a regular basis."

> "I was assaulted, threatened, and harassed during the encampment. I had an Israeli flag and a man ran towards me in order to push me. I was blocked for being Jewish. They were calling for an intifada collectively which is to kill the Jews. They had a star of david on the floor with the writing "step here" next to it.44 ***Some of the people there were praising Hamas who's main goal (also stated in their charter) is to kill Jews. I was told to kill myself from people***. It also prevented me from getting to class on time and utilizing campus resources. The people at the protest were told not to talk to me because I'm from Israel. I also think that it's a shame that UCLA let the protestors stay in the quad (which they did illegally) but they wouldn't let me and my friends who weren't doing anything violent or illegal go past the fence (on the Israeli side) with the press to talk on TV."

*See id.* UCLA Report at pp. 27, 35 (emphasis added).

Accordingly, the involvement of the Defendants at UNLV, specifically AMP and Defendants SJP-UNLV, NSJP, including their assistance of (and association with) Hamas is a genuine material factual issue that precludes sanctions or dismissal.

Furthermore, at Harvard, several matters have recently arisen as a result of antisemitic conduct on the campus.

- There is a pending matter involving the school and the government, but there has not yet been a settlement. This arose after the Trump administration's termination of more than $2.6 billion in funding over its handling of antisemitism. Harvard sued the government and defended its right to control academic and campus policies. There were also detailed reports by the school finding antisemitic conduct,[6] including a violation of Title VI found by the U.S. Department of Health and Human Services Office for Civil Rights, with incidents

---

[6] Presidential Task Force on Combating Antisemitism and Anti-Israeli Bias, April 29, 2025 https://www.harvard.edu/wp-content/uploads/2025/04/FINAL-Harvard-ASAIB-Report-4.29.25.pdf; see also Presidential Task Force on Combating Anti-Muslim, Anti-Arab, and Anti-Palestinian Bias, April 29, 2025 https://www.harvard.edu/wp-content/uploads/2025/04/FINAL-Harvard-AMAAAPB-Report-4.29.25.pdf

involving direct student-on-student harassment and targeted harassment by *student groups*, including Harvard student groups and faculty groups posted to Instagram an antisemitic cartoon that included the Star of David, dollar signs, and nooses.[7]

- Harvard University has settled three lawsuits related to antisemitism on campus, one with Students Against Antisemitism and another with the Brandeis Center for Human Rights Under Law and Jewish Americans for Fairness in Education. These largely related to general claims outlined in the task force reports. A separate settlement was reached with former Harvard Divinity School student Alexander Shabbos Kestenbaum, who also sued the university over antisemitism.

- The settlements involve Harvard agreeing to strengthen its policies against antisemitism and adopt the International Holocaust Remembrance Alliance (IHRA) definition of antisemitism. The specific terms including any financial compensation are not public. Again, the case involving Alexander Kestenbaum was settled but the terms are not public. In that case, he encountered various antisemitic incidents, including roving mobs and other documented incidents of antisemitism.

- Barnard College, StandWithUs Center for Legal Justice, Students Against Antisemitism, Inc. and the Barnard student plaintiffs in the federal court action *Students Against Antisemitism, Inc. et al v. The Trustees of Columbia University in the City of New York et al (S.D.N.Y. 1:24-cv-01306-VSB-SN)* announced an agreement to resolve claims against Barnard College. As part of the settlement, Barnard has committed to implement important measures to address antisemitism on its campus and to ensure access and inclusion of all students to the College's educational mission and environment.[8]

- AMP and NSJP, among other Defendants, have also been sued in the Eastern District of Virginia Case styled *Parizer et al v. AJP Educational Foundation, Inc. et al*, 1:24-cv-00724-

---

[7] https://www.hhs.gov/sites/default/files/harvard-title-vi-notice-violation.pdf

[8] https://www.kasowitz.com/media/client-news/kasowitz-and-barnard-announce-settlement-of-lawsuit/

RDA-IDD. That case specifically involves allegations regarding the use of the "Toolkit."[9] The Complaint in that case specifically states in part "When someone tells you they are aiding and abetting terrorists—**believe them**." *Id.* (emphasis in original).

Likewise, here, Mr. Gerwaski, like other students at UNLV, has been victimized by the antisemitic and tortious conduct on the UNLV campus, post October 7, 2023. He has properly asserted his claims against the Defendants and the Motion for Sanctions and the related Motions to Dismiss should be denied.

### 2. The Conspiracy Claim is properly pled and is factually supported

Lastly, Defendant argues that Plaintiff "fails to identify a valid underlying civil wrong to serve as predicate for his conspiracy." This argument, again, is incorrect and is a factual dispute. First, the underlying tort is the violation of the ATA. Moreover, Plaintiff's allegations of coordinated action with NSJP, SJP-UNLV, and other groups to advance Hamas's objectives survive at the pleading stage. The alleged conspiracy is also specifically alleged in the SAC. For example, the launch of the on-campus activities, including the launch of the "Toolkit" were directly after the October 7, 2023 attacks:

- Within hours of the attack, the language of the Hamas-authored disinformation campaign appeared in NSJP propaganda across social media and on college campuses. Exactly as AMP intended, NSJP acted as Hamas' loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States. The next day, NSJP released its Day of Resistance Toolkit ("NSJP Toolkit")[10] across more than 300 American college campuses and on the internet.

- The Toolkit, literally, was an instruction manual including the following pictures as guidelines for online media distribution whereby student organizations would simply use Canva to modify the prototype provided by NSJP, and subsequently blast it out on social media networks, such as Facebook, Instagram, Twitter, Snapchat, Tik Tok.

- Immediately thereafter, SJP-UNLV and NPL had coordinated their "day of rage" hosting a variety of off campus protests initially in downtown, Las Vegas in accordance with directives issued by Hamas.

---

[9] https://ia804601.us.archive.org/14/items/gov.uscourts.ilnd.464113/gov.uscourts.ilnd.464113.1.2.pdf

[10] DAY-OF-RESISTANCE-TOOLKIT.pdf (imgix.net)

- Subsequently SJP-UNLV coordinated with non-student groups to facilitate antisemitic protests on UNLV's campus with other non-student organizations such as NLP, the Fifth Sun Project, and Red Desert Collective, among others, in clear advancement of carrying out NSJP's and Hamas' instructions in Las Vegas.

- These organizations worked in unison with SJP, taking instructions from NSJP to wreak havoc on UNLV's campus with antisemitic protests commencing on October 19, 2024 and continuing to present day.

- The NSJP Toolkit is a direct response to Hamas' "call for mass mobilization" issued the day prior. In it, NSJP demands its members and allies "not only support, but struggle alongside our people back home … and above all normalize and support our fearless resistance."

- To do so, the NSJP Toolkit puts forth a strategy to "normalize the resistance," Hamas, by arguing that Liberation is not an abstract concept… [L]iberating colonized land is a real process that requires confrontation by any means necessary. In essence, decolonization is a call to action . . . It calls upon us to engage in meaningful actions that go beyond symbolism and rhetoric. Resistance comes in all forms—armed struggle, general strikes, and popular demonstrations. All of it is legitimate, and all of it is necessary. (emphases added).

- AMP controls NSJP and NSJP communicates with its local chapters including SJP-UNLV. UNLV was one of those campuses that SJP-UNLV utilized the NSJP Toolkit in its activities.

SAC 90-98. Plaintiff's SAC contains specific allegations to support how the Defendant groups worked together to engage in the conduct at UNLV. Here, the October 7, 2023 attack is the predicate act. Plaintiff identifies the October 7 Hamas attack as the act of international terrorism, 18 U.S.C. § 2331(1), that caused his injuries. The SAC alleges that SJP UNLV's coordinated activities amplified the threat environment created by that attack, directly causing Plaintiff severe damages, physical illness (Bell's Palsy), and educational setbacks. Defendant's organization of protests using NSJP's messaging, mobilization of students, and promotion of Hamas-aligned slogans are factual allegations of substantial assistance to Hamas's objectives. At this stage, Plaintiff need not prove the assistance was indispensable, only that it was substantial. Allegations that SJP UNLV coordinated with NSJP, AMP, and other groups, adopted the NSJP Toolkit, and executed protest activities aligned with Hamas's strategy are sufficient to infer an agreement at the pleading stage. Twombly recognizes that conspiracies are often proven through circumstantial evidence and context.

If this Honorable Court finds that a cause of action does not state a claim upon which relief can be granted, Plaintiff requests leave to amend. Generally, FRCP 15 advises the court that "leave shall be freely given when justice so requires." This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001); *Foman v. Davis*, 371 U.S. 178 (1962). Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996). A district court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## II.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant SJP-UNLV's Motion to Dismiss in its entirety and allow this matter to proceed to discovery.

DATED this 15th day of August 2025.

    Respectfully Submitted:

    CHESNOFF & SCHONFELD

    By: <u>Robert Z. DeMarco</u>
        DAVID Z. CHESNOFF, ESQ.
        Nevada Bar No. 2292
        RICHARD A. SCHONFELD, ESQ.
        Nevada Bar No. 6815
        ROBERT Z. DEMARCO, ESQ.
        Nevada Bar No. 12359
        Counsel for Plaintiff, *COREY GERWASKI*

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court to be served by the Court's electronic filing system on all counsel of record.

**DATED** this 15th day of August 2025.

/s/ Robert Z. DeMarco
Employee of Chesnoff & Schonfeld