DAVID Z. CHESNOFF, ESQ.
*Nevada Bar No. 2292*
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
ROBERT Z. DEMARCO
*Nevada Bar No. 12359*
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
rdemarco@sclawoffice.net
Attorneys for Plaintiff, *COREY GERWASKI*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

COREY GERWASKI,

Plaintiff,

vs.

STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA LAS VEGAS; KEITH WHITFIELD individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE IN PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX, DEFENDANT(S), an Individual/LLC/Corp; DOE Nevada corporation; DOE Individuals I–XX; ROE Entities, I–XX,

Defendants.

CASE NO. 2:24-cv-00985

**OPPOSITION TO STUDENTS FOR JUSTICE IN PALESTINE-UNLV'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660 (ECF 96)**

**[ORAL ARGUMENT REQUESTED]**

COMES NOW, Plaintiff, COREY GERWASKI ("Mr. Gerwaski"), by and through his attorneys of record, DAVID Z. CHESNOFF, ESQ., RICHARD. A. SCHONFELD, ESQ., and ROBERT Z. DEMARCO, ESQ., of CHESNOFF & SCHONFELD, and files this Opposition to Students for Justice in Palestine-UNLV's Special Motion to Pursuant to NRS 41.660 (ECF 96).

This Opposition is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any oral argument that may be heard.

DATED this 18th day of August 2025.

Respectfully Submitted:

CHESNOFF & SCHONFELD

By: Robert Z. DeMarco
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
ROBERT Z. DEMARCO, ESQ.
Nevada Bar No. 12359
520 South Fourth Street
Las Vegas, Nevada 89101
Phone: (702) 384-5563
Fax: (702) 598-1425
Attorneys for Plaintiff

**MEMORANDUM OF POINTS AND AUTHORITIES**

## A. DEFENDANT SJP-UNLV'S SPECIAL MOTION TO DISMISS SHOULD BE DENIED.

## I. INTRODUCTION

Preliminarily, the Anti-SLAPP motion should be denied as Nevada's anti-SLAPP law does not apply to federal causes of action in cases involving both state and federal claims. Here, the underlying tort in the civil conspiracy claim is the Anti-Terrorism Act (ATA) claim. Defendant's attempt to bypass this requirement to seek dismissal of the ATA and conspiracy claims vis-a-vis the anti-SLAPP statute should be rejected.

Second, it is respectfully submitted that the special motion to dismiss is untimely. Defendants AJP Educational Foundation, Inc. (AMP), and Students for Justice in Palestine – UNLV (SJP-UNLV), previously stipulated that the date for responses to Plaintiff's Second Amended Complaint were to be extended to August 1, 2025. There was no agreement that the instant anti-SLAPP motions could be filed past the previously agreed deadline.

Furthermore, the Motion fails on its merits. Nevada's anti-SLAPP law protections were never intended to immunize coordinated campaigns of harassment and conspiratorial misconduct. Defendants attempt to hide behind "petitioning activity" when in reality they engaged in conduct designed to intimidate, threaten, and cause measurable harm to Plaintiff. This is not "protected speech." It is targeted, malicious, and unlawful activity, and Nevada law does not provide a safe harbor for such conduct.

Plaintiff does not seek to silence political advocacy or constitutionally protected speech. Rather, Plaintiff alleges that Defendants AMP coordinated with NSJP and SJP-UNLV to engage in a civil conspiracy to materially support, direct, and coordinate activities with Hamas and its affiliates, conduct that constitutes unlawful action and is not immunized by the First Amendment or NRS 41.660. The acts alleged include threats, intimidation, and incitement to violence on a university campus, all of which fall outside anti-SLAPP protections.

Defendant misapplies the statute by characterizing the alleged conduct as mere political speech. Plaintiff alleges far more:

- That AMP coordinated with NSJP and SJP to disseminate a "Resistance Toolkit" expressly intended to glorify Hamas' October 7, 2023 terrorist attack, and to direct student groups to intimidate Jewish students on campus. Specifically, the Second Amended Complaint (SAC) further details how SJP-UNLV coordinated messaging with AMP and NSJP, using "toolkits" to organize campus events that directly targeted Jewish students and sought to legitimize antisemitic narratives (SAC at para. 73, 79, 118, 122–123, 206).
- That AMP, NSJP, and SJP operated in concert to promote Hamas' agenda (SAC at para. 55, 65, 90–98, 101–105).
- That the Defendants coordinated events, distributed Hamas propaganda, and threatened/intimidated Jewish students on campus (SAC at para. 114, 116, 123, 136, 363).
- That AMP coordinated with NSJP and SJP to provide organizational support, direction, and resources to effectuate this coordinated campaign of harassment, intimidation, and violence.
- That SJP-UNLV actively participated in efforts to pressure UNLV to divest from entities tied to Israel, presenting demands in a coordinated manner (SAC at para. 93–95, 214–217).
- That these actions were not isolated expressions of opinion, but part of a concerted campaign to intimidate, disrupt, and cause harm (SAC at para. 229, 362–368).

Speech that incites violence, threatens safety, or furthers criminal conduct is not "good faith" speech within the meaning of NRS 41.637. Nor is it immunized by the First Amendment. Such activities were intended not to express political opinions, but to advance the unlawful objectives of a designated foreign terrorist organization. These allegations, taken as true, are sufficient to meet the prima facie burden. At a minimum, they raise factual questions that cannot be resolved at the pleading stage.

The Court's prior dismissal of the intentional infliction of emotional distress claim does not foreclose Plaintiff's conspiracy claim. The two claims require distinct elements and different factual showings. The present claim is based not merely on "hurt feelings" from advocacy speech but on an organized conspiracy to promote and further unlawful objectives, including intimidation and threats

against Plaintiff and other Jewish students. Defendant's attempt to portray the Court's prior ruling as preclusive is inaccurate and misleading, especially considering that the Court granted leave to amend.[1] Accordingly, Defendant's Special Motion to Dismiss should be denied.

## II. LEGAL STANDARD

Under Nevada's anti-SLAPP statutes, a moving party may file a special motion to dismiss if an action is filed in retaliation to the exercise of free speech. *See Coker v. Sassone*, 135 Nev. Adv. Rep. 2, 432 P.3d 746, 748-749 (2019). A district court analyzing a special motion to dismiss under Nevada's anti-SLAPP statute engages in a two-step analysis. Nev. Rev. Stat. § 41.660(3). First, the court "[d]etermine[s] whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern. *Id*. § 41.660(3)(a). If the moving party fails to carry its burden at this first step, the inquiry ends and the case advances to discovery. *Coker*, 432 P.3d 746, 748 (Nev. 2019). If the moving party succeeds, however, the court advances to the second step. There, the burden shifts to the non-moving party to show "with prima facie evidence a probability of prevailing on the claim[s]." Nev. Rev. Stat. § 41.660(3)(b); *Coker*, 432 P.3d at 748.

If the non-moving party fails to satisfy its burden on the second step, the court dismisses the action. *See id*. § 41.660(5).

"The merits of [the plaintiff's] claims should play no part in the first step of the anti-SLAPP analysis." *City of Costa Mesa v. D'Alessio Invs., LLC*, 154 Cal. Rptr. 3d 698, 709 (Cal. Ct. App. 2013). Similar to a summary judgment motion, the district court is not to weigh evidence on an anti-SLAPP motion; rather, the district court must "accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to

[1] Plaintiff objected to the prior Motion and the court dismissed said claim with prejudice prior to discovery.

prevail as a matter of law." *Coker,* 432 P.3d at 749 (2019) (quoting *Park v. Bd. of Tr. of Cal. State Univ.,* 383 P.3d at 911).

In federal court, as stated in *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 848-849 (N.D. Cal. 2020):

> Applying state anti-SLAPP laws in federal court raises unique considerations because many anti-SLAPP provisions are procedural and therefore may conflict with the Federal Rules of Civil Procedure. In *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, the Ninth Circuit discussed one such tension between California's anti-SLAPP law and federal procedure. 890 F.3d 828, 833 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018). When a defendant files an anti-SLAPP motion in California state court, "[a]ll discovery proceedings in the action" are stayed and the discovery stay "remain[s] in effect until notice of the entry of the order ruling on the motion." Cal. Code Civ. Proc. § 425.16(g). However, in federal court, "[r]equiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike ... into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure." *Planned Parenthood*, 890 F.3d at 833-34. The court held that preserving the discovery stay aspect of section 425.16 "would effectively allow the state anti-SLAPP rules to usurp the federal rules" and that the court cannot "properly allow such a result." *Id.* at 834. Accordingly, Planned Parenthood set forth the standard that district courts must now apply in evaluating anti-SLAPP motions:
>
> ***If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under [Rule] 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted***.
>
> *Id.* at 833 (quoting *Z.F. v. Ripon Unified School District*, 482 Fed. App'x 239, 240 (9th Cir. 2012)). For purely legal challenges, there is no need for the party opposing the motion to "submit evidence showing the merit of their claims." Id. at 834. For factual challenges, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*
>
> This court previously interpreted *Planned Parenthood* to mean that district courts must apply a two-step standard for evaluating anti-SLAPP motions. *See Todd v. Lovecruft*, Case No. 19-cv-01751-DMR, 2020 WL 60199, at *8 (N.D. Cal. Jan. 6, 2020). First, it must apply step one of California's burden-shifting standard and look at whether the plaintiff has met the burden to show that the allegedly defamatory statements were made "in furtherance of protected expression." See id. (quoting *Metabolife*, 264 F.3d at 840). ***If the plaintiff makes an adequate showing on the first step, then the court looks at whether the defendant's challenges are legal or factual. Id. If the challenges are legal, the court***

> ***evaluates the motion under Rule 12. Id. But if the challenges are factual, then the court must permit discovery under Rule 56. Id. "Once discovery has been completed, then the court applies the 'reasonable probability' standard to the plaintiff's claims." Id.***
>
> The current motion raises both legal and factual challenges. *See* Mot. at 11. Mabray's factual challenges are premature as no discovery has yet taken place.6 Thus, for the reasons explained above and in Todd, the court will evaluate only Mabray's legal challenges to Plaintiffs' complaint.

*Id.* (emphasis added).

## III. FACTUAL BACKGROUND

On May 26, 2024, Plaintiff filed this lawsuit and filed an Amended Complaint on August 9, 2024. ECF Nos. 1, 6. On March 5, 2025, Defendant SJP-UNLV moved to dismiss in full, followed by a special motion to dismiss, on April 11, 2025. ECF Nos. 51, 61. This Court granted dismissal of the claims against SJP-UNLV, but granted Plaintiff leave to amend. ECF No. 71.

On June 6, 2025, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 79). On August 1, 2025, SJP-UNLV filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 94.). Plaintiff was at all times relevant a student at the University of Nevada, Las Vegas (UNLV). Plaintiff's SAC sets forth allegations related to his employment at the UNLV Lied Library and his position as Chair of the Scholarships and Grants Committee. *See* SAC at para. 17-42. Plaintiff's SAC also sets forth that the environment on campus has further exacerbated the hostility Plaintiff faced. Specifically, UNLV has allowed groups to march with megaphones, disrupt campus activities, and chant slogans such as "From the river to the sea." This is clearly an antisemitic chant which calls for the destruction of the sovereign state of Israel and the death of its Jewish inhabitants.

As stated in the Antisemitism and Anti-Israeli Bias at UCLA Report dated October 16, 2024, it should be noted that:

> Hamas uses the phrase "from the river to the sea..." in its 2017 Charter (Section 20) and declares its intention to hunt down Jews everywhere in the world in its 1988 charter, a sentiment which has not been superseded. The phrase has also been used in speeches by Osama bin Laden, Hezbollah's leadership, and Iran's leadership. For many, "from the river to the sea," calls for elimination of the

> State of Israel, and for the land of Israel to be placed entirely under Arab rule. Given the record of many Arab regimes in the region, there is a high probability of the forced displacement of Israeli Jews in these hypothetical circumstances.[2]

Furthermore, Plaintiff has been verbally assaulted on the campus of UNLV because he wears a kippah. *See* SAC at para. 43-45.

The SAC also states in part under the ATA cause of action:

- Hamas is a United States designated Foreign Terrorist Organization that committed, planned, or authorized various acts of international terrorism including its (a) terrorist attack on October 7th; (b) ongoing rocket attacks against non-military, civilian targets; and (c) holding innocent civilians hostage.
- For decades, Defendants have provided substantial assistance to Hamas by acting as its propaganda wing in the United States, recruiting domestic foot soldiers for Hamas, and fomenting violence, chaos, and fear in the United States to support Hamas's short and long-term goals and international terrorist activities.
- Defendants intentionally instigate a mass culture of fear, threats, violence, and overt hatred to intimidate politicians and institutions for the benefit of Hamas by organizing, managing, controlling, and intentionally inciting riots and acts of domestic terrorism as part of its substantial assistance to Hamas.
- Indeed, Defendants themselves are successor entities to an original material support enterprise for Hamas. Defendants are operated primarily by many of those who were senior leaders in the original enterprise.

SAC at para. 241-244.

The SAC added the following language in part under the ATA cause of action:

- Defendants AMP, SJP-UNLV, NSJP continue to provide substantial assistance to the Hamas organization and promote Hamas, including at the UNLV campus, and there is an ongoing risk of violence injurious conduct, and terrorist actions at UNLV. The threats posed by Hamas and Defendants AMP, SJP-UNLV, NSJP, including antisemitic conduct, are an immediate threat to the safety of citizens and students at UNLV, including Plaintiff. Unless enjoined, citizens and students at UNLV face an ongoing risk of violence injurious conduct, and terrorist actions at UNLV. For example, an individual was recently charged with two counts of first-degree murder after a shooting outside a Jewish museum in Washington, DC on May 21, 2025. The suspect in that incident allegedly shouted "free, free Palestine" following the shooting. *Id.*

---

[2] Antisemitism and Anti-Israeli Bias at UCLA, October 16, 2024, at p. 47, available at https://antisemitismreport.org/ (internal footnotes omitted).

- In addition to the discrimination and harassment at UNLV, as a direct and proximate result of Defendants AMP, SJP-UNLV, NSJP conduct at UNLV, and their aiding and abetting Hamas, Plaintiff is in a state of fear and anxiety in light of the ever-present and real threats posed by said Defendants which have been unrestrained at the UNLV campus since October 7, 2023, including that on May 31st, 2024, Plaintiff collapsed in his calculus class. Plaintiff was taken to the UNLV Health and Wellness Center, where his face became paralyzed on-site. He was rushed to Sunrise Hospital and diagnosed with extreme stress disorder, which had triggered Bell's Palsy. After ruling out all viral and bacterial infections, it was concluded that the facial paralysis was stress-induced. Plaintiff's cranial nerve had been severely impacted by the overwhelming levels of stress he has endured. Plaintiff lost the ability to blink, drink water properly, and see out of one eye. A majority of Plaintiff's face was paralyzed and completely unmovable. Plaintiff was discharged with a high-dose steroid treatment, and the paralysis persisted until the end of August 2024. Plaintiff began to slowly regain movement at that time. As a direct and proximate result Plaintiff was forced to withdraw from two additional classes over the summer.

SAC at para. 245-246. Accordingly, Plaintiff has alleged what injuries he sustained and how those injuries arose from the Defendants' conduct. *Compare* Court's Order, ECF 71, at pp. 10-11.

It should be noted that the SAC also states in part under the ATA cause of action:

- It is clear that every time Defendants act in the United States, and more specifically on UNLV's campus, there is a direct nexus between the University groups and Hamas, IRGC, Hezbollah and other Foreign Terrorist Organizations.

- It is also clear that directives being given by Hamas, IRGC, Hezbollah and other Foreign Terrorist organizations are being acted out on U.S. college campuses through Defendants and their organizations on UNLV's campus.

- Defendants knowingly provide substantial assistance to Hamas through their services. Indeed, in the NSJP Toolkit, Defendants confirm not only that they are aware that their propaganda and incitement activities support Hamas but also that they perceive themselves as "PART of" Hamas's "Unity Intifada"—the terror regime that has damaged Plaintiff.

- Defendants knowingly provided substantial assistance to Hamas and thus aided and abetted Hamas in committing, planning, or authorizing acts of international terrorism, including the acts of international terrorism that injured Plaintiff.

- Not only do these acts constitute "substantial assistance" under the civil portion of the Antiterrorism Act, but they also satisfy the Antiterrorism Act's criminalization of providing "material support or resources" to a Foreign Terrorist Organization. See 18 U.S.C. §§ 2339A and 2339B.

- UNLV has also provided substantial assistance to these radical pro-terrorist organizations by allowing them to terrorize and demonize students on UNLV's campus, including Defendants' decision to allow the antisemitic chants and chaos on campus precluding Plaintiff from wearing an open kippa without having to hide it under a baseball cap or other type of head covering.

- UNLV has also provided substantial assistance under the Antiterrorism Act by allowing them to use the student campus to distribute their literature, paraphernalia, and hosting meetings by providing substantial resources to disseminate their antisemitic and anti-American rhetoric and propaganda.

- UNLV has provided substantial assistance by emboldening these Defendants, by their actions and meetings with them, "legitimizing" their cause of terrorizing students on campus.

- Plaintiff has been injured in his person because of Hamas's acts of international terrorism.

- By aiding and abetting Hamas in committing, planning, or authorizing acts of international terrorism, including the acts that caused Plaintiff to be injured in his or her person and property, Defendants are liable pursuant to 18 U.S.C. § 2333(d) for, threefold any and all, damages that Plaintiff sustained as a result of such injuries, and the costs of this suit, including attorney's fees.

*See* SAC 247-256. The SAC also added:

- Plaintiff is entitled to permanent relief preventing and enjoining AMP, SJP-UNLV, NSJP and its agents, from aiding and abetting Hamas in committing, planning, or authorizing acts of international terrorism at the UNLV campus.

- Plaintiff is entitled to an order enjoining AMP, SJP-UNLV, NSJP and its agents from establishing, implementing, instituting, maintaining, or executing policies, practices, procedures, or protocols that: (i) penalize or discriminate against Jewish and/or pro-Israel students, including Plaintiff; (ii) fund student organizations that exclude or penalize Jewish and/or Pro-Israel students; and (iii) officially recognize student organizations that exclude, discriminate against, or harass Jewish and/or pro-Israel students.

*See* SAC 257-258.

## IV. ARGUMENT

### 1. The Conspiracy Claim involves the underlying Federal ATA tort claim and under Federal law is not subject to Dismissal under Nevada's Anti-SLAPP Statute

Here, SJP-UNLV has conceded that a "motion to dismiss pursuant to NRS 41.660 is typically restricted to Nevada state law claims." *See* ECF 61 at p. 15, n. 14; *see also* ECF 96, at p. 16, n. 16 (citing *ProCare Hospice of Nev. LLC v. OneCare Hospice, LLC*, 340 F.R.D. 174, 178 (D. Nev. 2021) ("The Ninth Circuit has made clear that a state's anti-SLAPP law does not apply to the federal causes of action in cases involving both state and federal claims."); *see also Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 711 F.3d 1136, 1141 (9th Cir. 2013); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010); *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 n.3 (9th Cir. 2013).

The Ninth Circuit has also made clear that a state's anti-SLAPP law cannot be utilized in a manner to "usurp" the procedures provided in the Federal Rules of Civil Procedure. *See supra*, *Planned Parenthood Federation of Am., Inc. v. Cntr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

Here, the underlying tort in the civil conspiracy claim is the ATA claim. Specifically, Plaintiff has alleged "Defendants AMP, SJP-UNLV, NSJP were a combination of two or more persons who, by concerted action, in conjunction with their actions and conduct in following the directives and instructions of Hamas, intended to accomplish an unlawful objective of furthering the terrorist organization of Hamas and antisemitic conduct at UNLV for the purpose of harming Jewish students at UNLV, such as Plaintiff. As a result of said conduct, Plaintiff suffered damages." SAC at para. 363.

Defendant argues "Perhaps Gerwaski is implicitly predicating his conspiracy claim on the Anti-Terrorism Act, but as his ATA claim is not viable therefore his conspiracy claim is not viable." *See* ECF 96, p. 16, lines 6-8. Under notice pleading standards, Plaintiff has sufficiently put

Defendant on notice of the claim and has properly asserted the elements. The claim also incorporates the prior paragraphs of the SAC.

Defendants have cited insufficient authority supporting their argument that the conspiracy claim is subject to anti-SLAPP dismissal at this stage. This is not merely a legal dispute, but a factual dispute. At a minimum, Defendant's challenges are also factual, and it is respectfully submitted that the court must permit discovery under Rule 56. *See supra.*

Accordingly, Defendant's Motion should be summarily denied on this basis alone.

**2. The Motion is Untimely as SJP-UNLV and AMP previously stipulated that responses to Plaintiff's Second Amended Complaint were extended to August 1, 2025**

Here, on July 22, 2025, Plaintiff and Defendants AJP Educational Foundation, Inc., and Students for Justice in Palestine – UNLV, stipulated that the date for responses to Plaintiff's Second Amended Complaint were to be extended to August 1, 2025. *See* ECF 89. The Court entered the Order on July 29, 2025. ECF 91. While said Defendants filed Motions to Dismiss on August 1, 2025, said Defendants have filed additional Motions to Dismiss on August 4, 2025. There was no agreement that the instant anti-SLAPP motions could be filed past the previously agreed deadline. Accordingly, the Defendants' respective anti-SLAPP motions filed on August 4, 2025 should be stricken and denied.

**3. The Defendant's Anti-SLAPP motion fails on the merits**

Here, this case involves numerous legal and factual disputes which preclude the Motion from being granted. *See, e.g., Nano Found., Ltd. v. Silver*, No. 2:19-cv-04237-SVW-PJW, 2019 WL 6723428, at *2 (C.D. Cal. Aug. 20, 2019) (citing *Planned Parenthood*, and explaining that a defendant claiming its statements were truthful, and thus within the protection of California's anti-SLAPP statute, created a factual issue requiring consideration under Federal Rule of Civil Procedure 56); *see also Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 849 (N.D. Cal. 2020)

("The current [anti-SLAPP] motion raises both legal and factual challenges. [The defendant's] factual challenges are premature as no discovery has yet taken place.").

Defendant has already addressed the merits of the conspiracy claim in its Motion to Dismiss filed on August 1, 2025. Plaintiff's Oppositions to the respective Motions Dismiss are incorporated by reference as though fully set forth herein.

**A. SJP-UNLV failed to satisfy the first step under Nevada's anti-SLAPP analysis**

To prevail on a Motion to Dismiss under Nevada's anti-SLAPP statute, SJP-UNLV must show by a preponderance of evidence that the claim is based on a good faith exercise of the right of petition or free speech in "direct connection with an issue of public concern." Nev. Rev. Stat. Ann. § 41.660(1)(a). The defendant must show the communications at issue falls within one of the four categories: (1) those aimed at procuring governmental or electoral action; (2) those informing or complaining to a federal, state, or local legislator or employee about a matter reasonably of concern to the respective governmental entity; (3) statements made in direct connection with an issue under consideration by a governmental body; and (4) communication made in direct connection with an issue of public interest in a forum open to the public. NRS 41.637. Additionally, the defendant must satisfy the second component of "good faith," the communication must be "truthful or made without knowledge of its falsehood." *Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) ("[N]o communication falls within the purview of NRS 41.660 unless it is 'truthful or is made without knowledge of its falsehood.'") (quoting Nev. Rev. Stat. § 41.637).

Here, the Complaint focuses on SJP-UNLV's violation of the ATA; not good faith communications made in furtherance of the right to free speech. Furthermore, SJP-UNLV failed to demonstrate that the comments at issue fall into one of the four categories of protected communications enumerated in NRS 41.637. *See Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020). While SJP-UNLV wants to focus on communications based on free speech, Mr. Gerwaksi's Complaint focuses on SJP-UNLV's material assistance to foreign terrorist organizations

across the Middle East, hiding under the auspices of "free speech" and the conduct at the UNLV campus.

Additionally, Congress rejected SJP-UNLV's position when it enacted § 2339(b), finding that, "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that *any contribution* to such organization facilitates that conduct." *See* § 301(a)(7), 110 Stat. 1247, note following § 2339(b).[3] Hamas is a deadly group. It is not difficult to conclude, as Congress did, that the taint of their violent activities is so great that working in coordination with them or at their command legitimizes and furthers their terrorist means. Furthermore, the Supreme Court holds 18 U.S.C. § 2339B does not violate freedom of speech when a defendant materially supports international terrorist organizations. *See Holder*, 561 U.S. 1, 18 (2010).

SJP-UNLV's motion is based on erroneous arguments that mischaracterize Mr. Gerwaksi's allegations as presented in his Complaint.

**B. SJP-UNLV's conduct was not based on "good faith" communications**

Communications under NRS 41.650 "good faith" communications must be true or made without knowledge of their falsity. Nev. Rev. Stat. Ann. § 41.650; Nev. Rev. Stat. Ann. § 41.637. "To determine whether a cause of action arises from protected activity, [courts] disregard its label and instead examine its gravamen by identifying [t]he allegedly wrongful and injury-producing conduct … that provides the foundation for the claim." *Area 51 Prods. v. City of Alameda*, 229 Cal. Rptr. 3d 165, 175 (Cal. Ct. App. 2018) (citations and quotation marks omitted).

SJP-UNLV asserts a flawed argument in their motion as the gravamen of SJP-UNLV acts substantially support foreign terrorist organizations through the galvanized anti-Israel and anti-Semitic activists across UNLV. Furthermore, SJP-UNLV knowingly used or permitted the use of

---

[3] *See Holder*, 130 S. Ct. 2705, 2710–2711("[M]aterial support meant to promote peaceable, lawful conduct can be diverted to advance terrorism in multiple ways… Providing material support in any form would also undermine cooperative international efforts to prevent terrorism and strain the United States' relationships with its allies, including those that are defending themselves against violent insurgencies waged by foreign terrorist groups).

funds raised by a solicitation of contributions and manpower to provide support to terrorists, terrorist organizations and terrorist activities as explained Mr. Gerwaski's Complaint in violation of 18 U.S.C. § 2339B.

Section 2339B(a) prohibits "knowingly" providing material support to foreign terrorist organizations. The federal statute then specifically describes the type of knowledge that is required: "To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization…, that the organization has engaged or engages in terrorist activity…, or that the organization has engaged or engages in terrorism…" *Ibid*. The ordinary person standard is applicable to SJP-UNLV in this case. *See Holder*, 561 U.S. 1, 18 (2010).[4]

Here, Defendant failed to sufficiently satisfy their initial burden under Nevada's anti-SLAPP analysis. Nevada law only requires the court to consider the second step of the anti-SLAPP analysis if the defendant makes its initial showing under the first step of the anti-SLAPP analysis. *See Shapiro v. Welt*, 133 Nev. 35, 38, 389 P.3d 262, 267 (2017); *see also, Smith*, 481 P.3d at 1229.

**4. Plaintiff can demonstrate a probability of success on the merits**

Where a defendant "makes [its] initial showing" on the first step of the anti-SLAPP analysis, the burden shifts to the plaintiff to show "with prima facie evidence a probability of prevailing on the claim." *Shapiro*, 133 Nev. at 38, 389 P.3d at 267 (2017) (quoting NRS 41.660(3)(b). If the plaintiff meets his burden, then the claim may proceed and is not subject to early dismissal. *See John v. Douglas County Sch. Dist.*, 125 Nev. 746, 754, 219 P.3d 1276 (2009).

[4] Section 2339(b) prohibits providing a service to a foreign terrorist organization. The use of the word "to" indicates a connection between the service and the foreign group. *See* Merriam-Webster's Dictionary (2025) (defining "service" to mean: "a helpful act"; or "useful labor that does not produce a tangible commodity"; or "an administrative division" A person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause.

As discussed *supra*, Mr. Gerwaski has the probability of prevailing on his ATA and civil conspiracy claims.

Here, SJP-UNLV simply challenges factual allegations regarding its coordination with NSJP and AMP in its roles in post-October 7 conduct. Whether Plaintiff's allegations will be proven is a question for discovery and trial.

Plaintiff's allegations of coordinated action with NSJP, SJP-UNLV, and other groups to advance Hamas's objectives survive at the pleading stage. The alleged conspiracy is specifically alleged in the SAC. For example, the launch of the on-campus activities, including the launch of the "Toolkit" were directly after the October 7, 2023 attacks:

- Within hours of the attack, the language of the Hamas-authored disinformation campaign appeared in NSJP propaganda across social media and on college campuses. Exactly as AMP intended, NSJP acted as Hamas' loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States. The next day, NSJP released its Day of Resistance Toolkit ("NSJP Toolkit")[5] across more than 300 American college campuses and on the internet.
- The Toolkit, literally, was an instruction manual including the following pictures as guidelines for online media distribution whereby student organizations would simply use Canva to modify the prototype provided by NSJP, and subsequently blast it out on social media networks, such as Facebook, Instagram, Twitter, Snapchat, Tik Tok.
- Immediately thereafter, SJP-UNLV and NPL had coordinated their "day of rage" hosting a variety of off campus protests initially in downtown, Las Vegas in accordance with directives issued by Hamas.
- Subsequently SJP-UNLV coordinated with non-student groups to facilitate antisemitic protests on UNLV's campus with other non-student organizations such as NLP, the Fifth Sun Project, and Red Desert Collective, among others, in clear advancement of carrying out NSJP's and Hamas' instructions in Las Vegas.
- These organizations worked in unison with SJP, taking instructions from NSJP to wreak havoc on UNLV's campus with antisemitic protests commencing on October 19, 2024 and continuing to present day.
- The NSJP Toolkit is a direct response to Hamas' "call for mass mobilization" issued the day prior. In it, NSJP demands its members and allies "not only support, but struggle alongside our people back home … and above all normalize and support our fearless resistance."

[5] DAY-OF-RESISTANCE-TOOLKIT.pdf (imgix.net)

- To do so, the NSJP Toolkit puts forth a strategy to "normalize the resistance," Hamas, by arguing that Liberation is not an abstract concept… [L]iberating colonized land is a real process that requires confrontation by any means necessary. In essence, decolonization is a call to action . . . It calls upon us to engage in meaningful actions that go beyond symbolism and rhetoric. Resistance comes in all forms—armed struggle, general strikes, and popular demonstrations. All of it is legitimate, and all of it is necessary. (emphases added).
- AMP controls NSJP and NSJP communicates with its local chapters including SJP-UNLV. UNLV was one of those campuses that SJP-UNLV utilized the NSJP Toolkit in its activities.

SAC 90-98. Plaintiff's SAC contains specific allegations to support how the Defendant groups worked together to engage in the conduct at UNLV. Here, the October 7, 2023 attack is the predicate act. Plaintiff identifies the October 7 Hamas attack as the act of international terrorism, 18 U.S.C. § 2331(1), that caused his injuries. The SAC alleges that SJP UNLV's coordinated activities amplified the threat environment created by that attack, directly causing Plaintiff severe damages, physical illness (Bell's Palsy), and educational setbacks. Defendant's organization of protests using NSJP's messaging, mobilization of students, and promotion of Hamas-aligned slogans are factual allegations of substantial assistance to Hamas's objectives. At this stage, Plaintiff need not prove the assistance was indispensable, only that it was substantial. Allegations that SJP UNLV coordinated with NSJP, AMP, and other groups, adopted the NSJP Toolkit, and executed protest activities aligned with Hamas's strategy are sufficient to infer an agreement at the pleading stage. Accordingly, the special motion to dismiss should also be denied on the merits.

If this Honorable Court finds that a cause of action does not state a claim upon which relief can be granted, Plaintiff requests leave to amend. Generally, FRCP 15 advises the court that "leave shall be freely given when justice so requires." This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001); *Foman v. Davis*, 371 U.S. 178 (1962). Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996). A district court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant SJP-UNLV's Special Motion to Dismiss in its entirety and allow this matter to proceed to discovery.

DATED this 18th day of August 2025.

Respectfully Submitted:

CHESNOFF & SCHONFELD

By: Robert Z. DeMarco
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
ROBERT Z. DEMARCO, ESQ.
Nevada Bar No. 12359
Counsel for Plaintiff, *COREY GERWASKI*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court to be served by the Court's electronic filing system on all counsel of record.

**DATED** this 18th day of August 2025.

/s/ Robert Z. DeMarco
Employee of Chesnoff & Schonfeld