DAVID Z. CHESNOFF, ESQ.
*Nevada Bar No. 2292*
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. *6815*
ROBERT Z. DEMARCO
*Nevada Bar No. 12359*
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
rdemarco@sclawoffice.net
Attorneys for Plaintiff, *COREY GERWASKI*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

COREY GERWASKI,

              Plaintiff,

vs.

STATE OF NEVADA, ex rel. BOARD OF REGENTS of the NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA LAS VEGAS; KEITH WHITFIELD individually; AJP EDUCATIONAL FOUNDATION INC., a California Non-Profit Corporation; STUDENTS FOR JUSTICE IN PALESTINE-UNLV; NATIONAL STUDENTS FOR JUSTICE OF PALESTINE; NEVADANS FOR PALESTINIAN LIBERATION; DOES I-XX and ROE entities I-XX, DEFENDANT(S), an Individual/LLC/Corp; DOE Nevada corporation; DOE Individuals I–XX; ROE Entities, I–XX,

              Defendants.

CASE NO. 2:24-cv-00985

**OPPOSITION TO DEFENDANTS UNLV AND CHRISTOPHER HEAVEY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF 113)**

**[ORAL ARGUMENT REQUESTED]**

1  COMES NOW, Plaintiff, COREY GERWASKI ("Mr. Gerwaski"), by and through his attorneys of record, DAVID Z. CHESNOFF, ESQ., RICHARD. A. SCHONFELD, ESQ., and ROBERT Z. DEMARCO, ESQ., of CHESNOFF & SCHONFELD, and files this Opposition to Defendants UNLV and Christopher Heavey's Motion to Dismiss Second Amended Complaint (ECF 113).

This Opposition is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any oral argument that may be heard.

DATED this 16th day of September 2025.

Respectfully Submitted:

CHESNOFF & SCHONFELD

By: Robert Z. DeMarco
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
ROBERT Z. DEMARCO, ESQ.
Nevada Bar No. 12359
520 South Fourth Street
Las Vegas, Nevada 89101
Phone: (702) 384-5563
Fax: (702) 598-1425
Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

**A.   DEFENDANTS UNLV AND CHRISTOHER HEAVEY'S MOTION TO DISMISS SHOULD BE DENIED.**

**I.   INTRODUCTION**

Defendants UNLV and Interim President Heavey seek dismissal of the following claims:

- Second Claim (Equal Protection);
- Third Claim (Title VI as to Heavey);
- Fourth Claim (Section 1983—Failure to Train);
- Fifth Claim (Section 1983—Ratification); and
- Seventh Claim (Section 1983—Free Speech Retaliation)[1]

UNLV (and now Interim President Heavey) once again demonstrate a troubling disregard for the seriousness of Plaintiff's allegations and the broader campus climate in which they arise. Defendants UNLV and Interim President Heavey continue to rely on the same tired immunity defenses and procedural technicalities already addressed by this Court, while ignoring the reality of Plaintiff's lived experiences: repeated harassment, religious discrimination, public humiliation, and institutional indifference.  Their Motion to Dismiss minimizes ongoing antisemitic harassment.  It is respectfully submitted that their Motion to Dismiss is not a good-faith application of Rule 12(b)(6), but a transparent attempt to insulate UNLV from accountability while Jewish students, such as Plaintiff remain targets of hostility on campus.

Here, Plaintiff amended to further clarify his allegations (and relief sought) regarding ongoing harassment, retaliation, discriminatory customs, and indifference to antisemitic conduct at UNLV.  UNLV cannot escape the reality that campus safety has become a matter of life and death. In recent months, universities nationwide have witnessed escalating tensions, disruptions, and tragedies, including the recent death of Charlie Kirk, which underscores the devastating consequences when political and ideological hostilities escalate unchecked. Against this backdrop,

---

[1] Defendants do not challenge the Eight Cause of Action (Claim for Damages for Violation of Title VII).

- 3 -

UNLV's dismissal of Plaintiff's safety concerns as "psychological consequences" is profoundly reckless.

UNLV has a duty not only under Title VI and the Constitution, but also under its own mission as a public institution, to ensure that students can attend class, participate in student government, and walk across campus without fear of harassment, exclusion, or violence. By ignoring complaints and ratifying discriminatory conduct, Defendants have abdicated this responsibility. It is respectfully submitted that Defendant's Motion asks this Honorable Court to rule on the merits of their claims (and is only a partial Motion to Dismiss). That is insufficient under Rule 12 and their Motion should be summarily denied. Moreover, Plaintiff clearly has standing to bring his claims, and the Eleventh Amendment (and alleged qualified immunity) does not prohibit his claims.

## II.  LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(6) tests only the sufficiency of the complaint, not the merits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Dismissal is proper only if the complaint fails to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, the Court does not weigh evidence or resolve factual disputes.

## III.  FACTUAL BACKGROUND

On May 26, 2024, Plaintiff filed this lawsuit and filed an Amended Complaint on August 9, 2024. ECF Nos. 1, 6. On June 6, 2025, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 79). Defendants UNLV and Christopher Heavey stipulated with Plaintiff for an extension to file a response to the Second Amended Complaint. On September 2, 2025, Defendants UNLV and Christopher Heavey filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 113).

Plaintiff was at all times relevant a student at the University of Nevada, Las Vegas (UNLV). Plaintiff's SAC sets forth allegations related to his employment at the UNLV Lied Library and his position as Chair of the Scholarships and Grants Committee. *See* SAC at para. 17-50.

Specifically, starting in June, 2023, Plaintiff was being asked inappropriate questions about his Jewish heritage and sexual orientation as part of an "onboarding program" when he began working as UNLV Lied Library.

All the events noted herein commenced on or after August, 2023, including unjust termination, harassment, antisemitism, and retaliation, primarily involving members of the University's Administration and student government. On August 8, 2024, Plaintiff received his Right to Sue Letter from the EEOC. In August 2023, Plaintiff was unjustly terminated from his position at the UNLV library as a result of the blatant disparate treatment and antisemitism that was exhibited by supervisors.

In December 2023, Plaintiff returned to the library for personal study, only to have the police called on him by the same individual who had fired him. This person, whose antisemitic views are well-known, claimed Plaintiff posed a threat simply by entering the building. This incident was both humiliating and distressing, further exacerbating the hostile environment he has been subjected to before and after October 7, 2023. As a member of the student government (CSUN)[2] Senate, Plaintiff faced numerous acts of discrimination and hostility, primarily from Marni Dow and other advisors. Plaintiff was elected Chair of the Scholarships and Grants Committee which is responsible for allocating $300,000.00 a year in scholarships to the undergraduate students.

---

[2] The Consolidated Students of the University of Nevada, Las Vegas (CSUN) is UNLV's undergraduate student government. It is CSUN's mission to empower the voice of the undergraduate student population, provide resources to enhance the student experience, and help build community on the UNLV campus. CSUN has three branches, each with their own set of responsibilities: Executive, Legislative, and Judicial.

Plaintiff faced hostility and discriminatory conduct including but not limited to the following:

- Upon announcing his campaign for student government, Marni Dow[3] became visibly upset upon learning he was a conservative candidate running; even pulled the Director of Marketing, Mia Hernandez, into her office to dissuade people from supporting him, stating that she did not want him to win.
- Plaintiff, collaborated with a Muslim leader to draft a resolution that received support from President Whitfield. However, Marni Dow intervened and halted the Resolution's progress without valid reason.
- Marni Dow has made numerous derogatory comments about Plaintiff's appearance, specifically stating that his being a "white male of large size" makes women feel defensive, thus justifying any negative responses toward him.
- In a meeting with Sunny Gittens[4] and Marni Dow to address his concerns, Dow flatly denied all allegations of misconduct, despite clear evidence to the contrary.
- Marni Dow and Dajhe took improperly assumed control of a meeting during public comment, claiming they were self-appointing as CSUN Attorney General and canceling the meeting, which was a violation of NOML (Nevada Open Meeting Law). The UNLV General Counsel later confirmed that they had no authority to take such actions.
- Marni Dow encouraged Makayla Franklin[5] in a public email to file impeachment charges against nine Senators, including Plaintiff, for discussing a candidate via G Chat. This directive was issued despite advisors previously stating that they could not discuss candidates' integrity or character, effectively silencing them.
- In multiple instances, advisors, including Marni Dow, have shut down Senators' questions and discussions, dictating that they can only seek clarifications on agenda items without delving into substantive issues.
- Marni Dow disclosed Plaintiff's private FERPA-protected credit information to a student and encouraged them to spread false accusations of racism and homophobia about him across campus. This information reached admissions and his workplace in OIT.
- There exists uncontroverted evidence that Marni Dow is actively investigating Plaintiff and intends to do everything in her power to get him impeached.
- This campaign against him intensified following his speech at the Board of Regents meeting in November, where he advocated for Jewish safety and inclusion on campus.

*See* SAC at para. 27. The hostility Plaintiff has experienced is not isolated but part of a broader pattern of attacks against Jewish students based on his (and their) race and Jewish faith. Multiple students have informed Plaintiff that Marni Dow dislikes him because he is "a conservative Jew." Many members of the student government are pro-Palestine and have verbally attacked and treated

---

[3] As alleged in the SAC, Dow serves as Senior Associate Director, Student Government and Activities.
[4] Gittens serves as Executive Director of Student Engagement
[5] Franklin served as UNLV Student Body President.

him poorly due to his identity as a kippa-wearing Jew. This blatant antisemitism has created an environment where he has struggled academically, failing two classes due to the stress, and have been effectively exiled from the Senate chambers because of his Jewish identity. The situation was overtly exacerbated in November, 2023 when Plaintiff gave a two-minute speech to the Board of Regents about antisemitism on campus and Dow was present at that meeting. Subsequently, Plaintiff asked Dow to attend a meeting with Aramark about providing kosher foods on campus, but she rejected the meeting twice. On January 22, 2024, during Student Senate, Whitfield and UNLV's Provost came to the Senate meeting to discuss the University shooting, whereby Plaintiff seized the opportunity and told Whitfield that students needed faculty help in fighting antisemitism and writing a resolution. Whitfield said that that was not something faculty should do to fix the tension between Jewish and Muslim students. When Plaintiff requested that Whitfield get the two groups together to facilitate a peaceful resolution Whitfield and the Provost said that such action should come from the students and not the University.

In February 2024, Plaintiff reached out to President Keith Whitfield to explain that he felt targeted for being Jewish and to Sunny Gittens as well, but received no response or resolution.

In March 2024, Plaintiff made formal complaints to the Board of Regents about the antisemitism he was experiencing, but never heard back from anyone regarding same. On March 5, 2024, Plaintiff sent an email to both Elda Sidhu and Whitfield notifying them both that he felt he was being targeted and retaliated against because of his faith, neither of them responded to his email. Remarkably, Marni Dow has consistently opposed Plaintiff's initiatives, dismissing every idea he presents as unfeasible. When Plaintiff raised concerns about proper fund appropriation and inventory management, Dow accused Plaintiff of being inappropriate and offensive, further creating a hostile environment. Marni Dow and Christian Abbo along with the IA committee reduced Plaintiff's pay by 50 percent, for the remainder of the term. The environment on campus has further exacerbated the hostility Plaintiff faces. *See* SAC 17-50.

The SAC also details, not only the conduct of UNLV, but the conduct of Defendants AJP Educational Foundation, Inc. a/k/a American Muslims for Palestine ("AMP"); Students for Justice in Palestine- UNLV ("SJP-UNLV"); and National Students for Justice in Palestine ("NSJP") on the campus of UNLV. Specifically, Plaintiff's SAC sets forth that the environment on campus has further exacerbated the hostility and discrimination Plaintiff has faced. Specifically, UNLV has allowed groups to march with megaphones, disrupt campus activities, and chant slogans such as "From the river to the sea." This is clearly an antisemitic chant which calls for the destruction of the sovereign state of Israel and the death of its Jewish inhabitants.

As stated in the Antisemitism and Anti-Israeli Bias at UCLA Report dated October 16, 2024, it should be noted that:

> Hamas uses the phrase "from the river to the sea..." in its 2017 Charter (Section 20) and declares its intention to hunt down Jews everywhere in the world in its 1988 charter, a sentiment which has not been superseded. The phrase has also been used in speeches by Osama bin Laden, Hezbollah's leadership, and Iran's leadership. For many, "from the river to the sea," calls for elimination of the State of Israel, and for the land of Israel to be placed entirely under Arab rule. Given the record of many Arab regimes in the region, there is a high probability of the forced displacement of Israeli Jews in these hypothetical circumstances.[6]

Furthermore, Plaintiff has been verbally assaulted on the campus of UNLV because he wears a kippah. *See* SAC at para. 43-45. Plaintiff was also told "go back to Israel" and other abhorrent statements such as "go back to the oven, you fucking Jew." SAC at para. 46.

Accordingly, as alleged in the SAC, the UNLV Defendants have failed and continue to fail in preventing the ongoing harassment and discrimination of Jewish students, such as Plaintiff, have experienced, and continue to experience while attending UNLV. For example, within hours of the October 7, 2023 attack, the language of the Hamas-authored disinformation campaign appeared in NSJP propaganda across social media and on college campuses. Exactly as AMP intended, NSJP

---

[6] Antisemitism and Anti-Israeli Bias at UCLA, October 16, 2024, at p. 47, available at https://antisemitismreport.org/ (internal footnotes omitted).

- 8 -

acted as Hamas' loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States. The next day, NSJP released its Day of Resistance Toolkit ("NSJP Toolkit")[7] across more than 300 American college campuses and on the internet.  On information and belief, UNLV was one of those campuses that SJP-UNLV utilized the NSJP Toolkit in its activities.  The NSJP Toolkit thus compels groups, their members, and their allies to provide support to Hamas not only through their arguments and rhetoric, but also through "confrontation" that includes, among other things, "armed struggle" and violence.  The acts of these organizations working in unison, to perpetuate Hamas propaganda at UNLV against UNLV's student body was a coordinated effort as demonstrated by deliberate acts at UNLV, right after calls to action by Hamas and Iranian Revolutionary Guard Corps ("IRGC") officials.  The "Day of Resistance" riots and protests for many SJP chapters, including UNLV, were organized to coincide with Hamas's proclaimed "Day of Rage" for its supporters in Gaza and the West Bank on October 13, 2023 (which would be late in the evening on October 12, 2023, in many parts of the United States).

    Accordingly, the UNLV Defendants' ongoing failure to cease the ongoing hate speech and promotion of violent conduct of organizations at UNLV, such as Defendants AMP, SJP-UNLV, and NSJP also requires prospective injunctive relief and damages.  SAC at para. 50.  The SAC also alleges that the culture of antisemitism was fomented long before October 7, 2023, as demonstrated by Regent Donald McMichael comments on June 7, 2024, at the end of a long board meeting that included an anti-discrimination policy that was amended to include protection for "...shared ancestry or ethnic characteristics, or citizenship or residency in a country with a dominant religion or distinct religious identity.  McMichael's abhorrent comments included the following:

> "But yet, we have a small group of people, because they were set upon in World War II, have the notion that they can set themselves up in a higher position than anyone else in the United States," McMichael said.

---

[7]    DAY-OF-RESISTANCE-TOOLKIT.pdf (imgix.net)

- 9 -

"I feel very badly and thought that the Hamas massacre was atrocious," he added. "But the United States has been massacring Indians and Blacks for a lot longer. So if you really want to have a discrimination, anti-discrimination, setting for this I would agree to it. But the way things are going, we're setting aside a group that is above all other groups."[8]

In said meeting, McMichael added: "So these things that we are trying to settle on right now because some Jewish students are frightful to come to campus, get in line. There's others who have been here a lot longer and have been treated more poorly."  SAC at para. 232-235.

As such, the SAC plausibly alleges specific facts to support Plaintiff's claims, and Plaintiff alleges damages and ongoing constitutional violations for which he seeks injunctive relief (in addition to his Title VII claims).

## IV. ARGUMENT

### A. Plaintiff Has Standing to bring his Claims

Shockingly, the UNLV Defendants argue that "aside from alleging termination from his employment at the library, plaintiff has failed to allege any concrete injuries."  This argument is offensive and is belied by the plain language of the SAC.  Significantly, his termination alone is sufficient for Plaintiff to have standing.  However, not only was Plaintiff told on campus to "go back to Israel" and "go back to the oven, you fucking Jew" (SAC at para. 46), the SAC specifically states in part:

> … Plaintiff is in a state of fear and anxiety in light of the ever-present and real threats posed by said Defendants which have been unrestrained at the UNLV campus since October 7, 2023, including that on May 31st, 2024, Plaintiff collapsed in his calculus class. Plaintiff was taken to the UNLV Health and Wellness Center, where his face became paralyzed on-site. He was rushed to Sunrise Hospital and diagnosed with extreme stress disorder, which had triggered Bell's Palsy. After ruling out all viral and bacterial infections, it was concluded that the facial paralysis was stress-induced. Plaintiff's cranial nerve had been severely impacted by the overwhelming levels of stress he has endured. Plaintiff lost the ability to blink, drink water properly, and see out of one eye. A majority of Plaintiff's face was paralyzed and completely unmovable.  Plaintiff was discharged with a high-dose steroid treatment, and the paralysis persisted until the end of August 2024. Plaintiff began to slowly regain movement at that time. As a

---

[8] https://nshe.nevada.edu/html/wp-content/uploads/file/BoardOfRegents/Agendas/2024/08-aug-mtgs/supp-mat/BOR7.2sm.pdf

direct and proximate result Plaintiff was forced to withdraw from two additional classes over the summer.

SAC at para. 246. Accordingly, Plaintiff has set forth that he has suffered damages and he has alleged concrete injuries.

**B.      Plaintiff's Second Claim (Equal Protection) Should Not Be Dismissed**

Here, Defendant Heavey argues that dismissal is appropriate in light of the Eleventh Amendment, however, Plaintiff amended his Complaint in line with the Court's May 5, 2025 Order. Claims 2-5, and 7 now specifically name Heavey in his official capacity and the Complaint alleges in part that:

> The UNLV Defendants have failed and continue to fail in preventing the ongoing harassment and discrimination of Jewish students, such as Plaintiff, have experienced, and continue to experience while attending UNLV. Moreover, the UNLV Defendants ongoing failure to cease the ongoing hate speech and promotion of violent conduct of organizations at UNLV, such as Defendants AMP, SJP-UNLV, and NSJP requires prospective injunctive relief and damages.

SAC at Para. 50.

The Plaintiff seeks prospective injunctive relief against Heavey under *Ex Parte Young*, to remedy ongoing constitutional violations, including, but not limited to Title VI and the Equal Protection Clause. *See* SAC at para. 273-274.[9] This squarely falls within the established exception. Defendants allege that "Plaintiff fails to allege sufficient facts to make out a claim that Heavey (or the Office of the President) violated his Equal Protection rights. Plaintiff does not allege any discriminatory intent on Heavey's part. Nor does plaintiff describe any specific action that Heavey, or anyone in the Office of the President, took against him. He only alleges that he was denied educational services, which is clearly contradicted since he says that he continues to be a student and enrolled in classes." The Defendants' argument is entirely misplaced. The First Amended

---

[9] All of Defendants' arguments regarding the Eleventh Amendment fail because Plaintiff properly seeks prospective injunctive relief against Heavey under *Ex Parte Young*, to remedy ongoing constitutional violations.

Complaint filed by Plaintiff's prior counsel also included Whitfield individually.  This cause of action now only includes Heavey in his official capacity.

Defendant also argues that "[t]he Court also required Plaintiff to clarify "what these customs, policies, or practices are, or what actions can be fairly attributed to Whitfield."  The Defendants concede that in his Second Amended Complaint, "Plaintiff adds the allegation that: "the Defendants carried out customs and/or policies and/or practices and usage of deliberate indifference to Jewish people such as Plaintiff and tolerance for discrimination of Jewish people such as Plaintiff and failed to protect Plaintiff and prohibit the discriminatory conduct of Jewish people."  Accordingly, the allegations in the SAC meet the notice pleading standard and Plaintiff has complied with the Court's order.

Defendants' claim that Plaintiff failed to allege a constitutional violation is contradicted by the SAC, which sets forth:

- Disparate treatment based on Jewish identity: Plaintiff was terminated from the UNLV Lied Library due to his faith;
- Retaliation and exclusion from student government: Plaintiff was subject to impeachment attempts, pay reductions, and exclusion from meetings following his advocacy for Jewish safety;
- Compelled concealment of religious identity: Plaintiff was forced to hide his kippah to avoid harassment.

*See supra.*  The Equal Protection Clause prohibits state actors from denying individuals equal protection based on race or religion. UNLV administrators knowingly tolerated antisemitic harassment and ratified discriminatory practices. These allegations, pled with specificity, state a clear constitutional violation and the requested relief is appropriate.

**C.      Plaintiff's Third Claim (Title VI) Should Not Be Dismissed as to Defendant Heavey**

Defendants' next argument is a confusing position. Plaintiff has asserted his Title VI claims against the UNLV Defendants. Defendants argue that "[t]he Court already found that Plaintiff made out a plausible claim under Title VI against UNLV. However, Plaintiff's claim against Heavey is in his official capacity under Title VI lacks a request for prospective relief to address ongoing violations of his rights under Title VI." ECF 113 at p. 13. Defendant adds, "Plaintiff has clearly not fashioned the requested remedy to a violation tied to him." *See id.*

Defendants conveniently ignore that the claim also asserts in part:

284.    Plaintiff is entitled to permanent injunctive relief prohibiting the UNLV Defendants from violating his Title VI and Title VII rights, including from Defendants engaging in discriminatory and harassing conduct, against Plaintiff based on his Jewish background, and specifically, that no person shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

285.    There is an ongoing violation Plaintiff's civil rights and Plaintiff is entitled to permanent injunctive relief preventing and enjoining UNLV/NSHE and its agents, from violating Title VI, including, but not limited to, preventing and enjoining UNLV and its agents from establishing, implementing, instituting, maintaining, or executing policies, practices, procedures, or protocols that penalize or discriminate against Jewish students, including plaintiff and other similarly situated individuals, in any way, and ordering UNLV and its agents to take all necessary, adequate, and appropriate remedial, corrective, and preventative measures including by, among other things: (i) disciplinary measures, including the termination of, deans, administrators, professors, and other employees responsible for antisemitic discrimination and abuse, whether because they engage in it or permit it; (ii) disciplinary measures, including suspension or expulsion, against students who engage in such conduct; (iii) declining and returning donations, whether from foreign countries or elsewhere, implicitly or explicitly conditioned on the hiring or promotion of professors who espouse antisemitism or the inclusion of antisemitic coursework or curricula; and (iv) adding required antisemitism training for UNLV community members.

286.    Plaintiff is entitled to an order enjoining Defendant Heavey, in his official capacity as current interim UNLV President, and successor to Keith Whitfield, and its agents from establishing, implementing, instituting, maintaining, or executing policies, practices, procedures, or protocols that: (i) penalize or discriminate against Jewish and/or pro-Israel students, including Plaintiff; (ii) fund student organizations that exclude or penalize Jewish and/or Pro-Israel

students; and (iii) officially recognize student organizations that exclude, discriminate against, or harass Jewish and/or pro-Israel students.

SAC at 284-286.

In its May 5, 2025 Order (ECF 72), the Court also stated in part "[b]ecause Gerwaski may proceed only against Whitfield under *Ex parte Young*, however, he must also plausibly allege that there is an ongoing violation of his rights under Title VI and request prospective relief appropriate to remedy that violation." *Id.* at 15, lines 13-15. Plaintiff's Complaint sets forth that the UNLV Defendants have failed and continue to fail in preventing the ongoing harassment and discrimination of Jewish students, such as Plaintiff, have experienced, and continue to experience while attending UNLV."

Here, Plaintiff's SAC details the necessity for prospective injunctive relief, as the antisemitism that Plaintiff (and other students) have suffered has not been remedied.

**D.   Plaintiff's Fourth Claim (Section 1983—Failure to Train) Should Not Be Dismissed**

As to this claim, in its May 5, 2025 Order (ECF 72), the Court stated in part:

> Gerwaski has plausibly alleged that Whitfield failed to adequately train UNLV employees on Title VI requirements, that Whitfield was aware of the need to train employees on Title VI, that faculty members engaged in discriminatory conduct, and that Whitfield did not correct this training deficiency. For example, Gerwaski alleges that Whitfield "failed to train [personnel], administrators and faculty in identifying and allowing violations of Title VI discrimination against Jewish students and faculty on campus." ECF No. 6 at 63. According to the FAC, UNLV employees who oversaw the student government discriminated against him by dissuading people from voting for Gerwaski on account of his religion, violating open meeting laws, and encouraging his impeachment from the student senate. *See id.* at 53-54. Gerwaski also alleges that he notified Whitfield and the Board of Regents about discrimination against Jewish students at UNLV. *Id.* at 54-55. And he alleges that the failure to train these employees on Title VI constitutes deliberate indifference against him because he is the kind of person these employees routinely encounter. Gerwaski has plausibly alleged the substantive portion of a failure-to-train claim.
>
> Because Gerwaski may proceed only against Whitfield under *Ex parte Young*, however, he must also plausibly allege that there is an ongoing violation of his rights under Title VI and request prospective relief appropriate to remedy that violation. Gerwaski has not done so. Rather, he explicitly seeks money damages,

- 14 -

punitive damages, and attorney fees, which are not available against Whitfield in this kind of § 1983 action. Id. at 64-65.

*Id.* at pp. 14-15.

Again, the First Amended Complaint also included Whitfield individually in this claim. The SAC includes Heavey in his official capacity. The Court in its Order stated "[s]o, only Gerwaski's § 1983 claims against Whitfield in his official capacity may continue in federal court, and only for prospective injunctive relief for ongoing violations of federal law under the *Ex Parte Young* exception." Heavey is the current interim president and was substituted in. The SAC now includes a request for prospective injunctive relief for ongoing violations of federal law under the *Ex Parte Young* exception and the request to dismiss this claim should be denied. *See* SAC para. 287-309.

E.  **Plaintiff's Fifth Claim (Section 1983—Ratification) Should Not Be Dismissed**

Again, the First Amended Complaint also included Whitfield individually in this claim. The SAC includes Heavey in his official capacity. Here, Defendant argues that "Plaintiff fails to allege a constitutional violation that Heavey (or the Office of the President) expressly ratified." The SAC adds that "UNLV was deliberately indifferent to Plaintiff's rights to be free from harassment, bullying, demonization and retaliation as a result of his Jewish faith. UNLV engaged in the deliberate indifference and misconduct of its employees, including Defendants' decision to allow the antisemitic chants and chaos on campus precluding Plaintiff from wearing an open kippa without having to hide it under a baseball cap or other type of head covering." SAC 318. The Complaint also sets forth the conduct of subordinates (and lack thereof). SAC at para. 27-42. Furthermore, the SAC also alleges the culture of antisemitism as demonstrated by Regent Donald McMichael's comments on June 7, 2024. SAC at para. 232-235. As such, it is respectfully submitted that Plaintiff has stated a claim for relief related to ratification under Section 1983.

F.     **Plaintiff's Seventh Claim (Section 1983—Free Speech Retaliation) Should Not Be Dismissed**

Defendants argue that Plaintiff has failed to plausibly allege a First Amendment retaliation claim under § 1983. Their argument ignores the detailed factual allegations in the SAC showing that Plaintiff engaged in protected speech, was subjected to adverse actions, and that those actions were causally linked to his protected expression/religion. At the pleading stage, these allegations are more than sufficient to withstand dismissal. Defendants' attempt to downplay their conduct is belied by the allegations in the SAC. Here, the SAC alleges multiple instances of Plaintiff's protected speech, including his:

- November 2023 speech to the Board of Regents regarding antisemitism on campus. SAC at para. 32;
- January 22, 2024 statement to President Whitfield during the Student Senate meeting requesting faculty support in fighting antisemitism. SAC at para. 34-36;
- March 2024 written complaints to Whitfield and UNLV General Counsel reporting discriminatory treatment and hostile campus conditions. SAC at para. 38-39;

Furthermore, the SAC alleges that following Plaintiff's protected speech, UNLV officials and advisors:

- Reduced his student government pay by 50% for the remainder of his term. SAC at para. 42;
- Encouraged impeachment proceedings and silenced his speech in Senate sessions. SAC at para. 27;
- Publicly disseminated false accusations of racism and homophobia against him. SAC at para. 27, 31;
- Excluded him from student government chambers and activities, effectively isolating him from governance participation.

These actions are sufficient to deter a reasonable student from continuing to speak out. Additionally, the temporal proximity and context support a causal link (including after the October 7, 2023 attacks and subsequent conduct occurring on the UNLV campus).

- 16 -

For example:

- The impeachment and pay reduction campaign intensified immediately after Plaintiff's Board of Regents testimony in November 2023.  SAC at para. 27-28, 32;
- Retaliation escalated following his direct confrontation with Whitfield in January 2024. SAC at para. 34-42;
- Defendants' consistent failure to protect him from harassment, while simultaneously imposing punitive measures, shows retaliatory motive.  SAC at para. 37-39.

At the pleading stage, Plaintiff need only allege facts supporting a reasonable inference of causation, which he has done.  Accordingly, Defendants' request to dismiss Count 7 should be denied.

**G.    In the event this Honorable Court deems any claim insufficient, leave to amend should be Granted.**

If this Honorable Court finds that a cause of action does not state a claim upon which relief can be granted, Plaintiff requests leave to amend.  Generally, FRCP 15 advises the court that "leave shall be freely given when justice so requires." This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir.2001); *Foman v. Davis*, 371 U.S. 178 (1962).  Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996). A district court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants UNLV and Christopher Heavey's Motion to Dismiss in its entirety.

DATED this 16th day of September 2025.

        Respectfully Submitted:

        CHESNOFF & SCHONFELD

        By: <u>Robert Z. DeMarco</u>
            DAVID Z. CHESNOFF, ESQ.
            Nevada Bar No. 2292
            RICHARD A. SCHONFELD, ESQ.
            Nevada Bar No. 6815
            ROBERT Z. DEMARCO, ESQ.
            Nevada Bar No. 12359
            Counsel for Plaintiff, *COREY GERWASKI*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court to be served by the Court's electronic filing system on all counsel of record.

**DATED** this 16th day of September 2025.

/s/ Robert Z. DeMarco
Employee of Chesnoff & Schonfeld